BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAN JUAN NAVIGATION (SINGAPORE) PTE. LTD., <br><br> Plaintiff, <br><br> - against - <br><br> TRANS POWER CO. LTD., <br><br> Defendant. | 08 CV 1562 (RMB) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE OR
VACATE ORDER OF MARITIME ATTACHMENT AND GARNISHMENT
OBTAINED UNDER SUPPLEMENTAL RULE B OF THE SUPPLEMENTAL
RULES OF F. R. CIV. P. FOR CERTAIN ADMIRALTY AND MARITIME
CLAIMS AND/OR IN THE ALTERNATIVE FOR COUNTER-
SECURITY UNDER SUPPLEMENTAL RULE E**

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

601518.00602/6624008v.3

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................i

INTRODUCTION..........................................................................................................1

THE BASIC FACTS.......................................................................................................1
    A.    THE AMENDED COMPLAINTS ..............................................................1
    B.    TRANS POWER'S REGISTRATION WITH THE STATE OF NEW
          YORK SECRETARY OF STATE ................................................................2

ARGUMENT ................................................................................................................2

POINT I.........................................................................................................................2
PLAINTIFF CARRIES THE BURDEN TO SHOW WHY THE ATTACHMENTS
SHOULD BE MAINTAINED; OTHERWISE THE COURT IS REQUIRED TO
VACATE THE ATTACHMENTS ................................................................................2

POINT II .......................................................................................................................4
THE APPLICATION FOR A RULE B ATTACHMENT IN RESPECT OF THE
INDEMNITY CLAIMS WAS PREMATURE................................................................4
    A.    THE APPLICABLE STANDARD...............................................................4
    B.    JUDGE KAPLAN'S DECISION ................................................................6
      1.    DISCUSSION OF ENGLISH LAW...............................................................6
      2.    APPLICATION OF ENGLISH LAW TO THE FACTS TO FIND THE
           INDEMNITY CLAIM PREMATURE.............................................................7
    C.    SDNY RULE B CASES HOLDING AN INDEMNITY CASE IS "RIPE" ...8
    D.    THE ISSUE OF WHETHER PLAINTIFF PLEADED VALID
          ADMIRALTY CLAIMS MUST BE DECIDED UNDER ENGLISH LAW .8
    E.    APPLICATION OF ENGLISH LAW TO THE CAUSES OF ACTION FOR
          THE INDEMNITY CLAIMS .........................................................................9
      1.    THE INDEMNITY CLAIMS .......................................................................10
      2.    THE LIEN CLAIM.....................................................................................11
      3.    THE "COSTS" CLAIM: $475,000............................................................11

POINT III ....................................................................................................................12
TRANS POWER IS NOW "FOUND" WITHIN THE MEANING OF RULE B SO
THAT SAN JUAN MAY NOT OBTAIN AN ADDITIONAL ATTACHMENT ORDER
AS REQUESTED BY THE SECOND COMPLAINT ................................................12
      1.    THE SUPPLEMENTAL PMAG SHOULD NOT BE ISSUED ...................13
        (A)    THE APPLICABLE STANDARD .........................................................13
        (B)    SAN JUAN IS NOW "FOUND"..............................................................14

601518.00602/6624008v.3

POINT IV .................................................................................................................16

IF THE ATTACHMENT IN RESPECT OF THE INDEMNITY CLAIMS AND LIEN
CLAIM IS NOT VACATED THEN, IN THE ALTERNATIVE, TRANS POWER IS
ENTITLED TO COUNTER-SECURITY UNDER SUPPLEMENTAL RULE E ...........16

      1.    HISTORICAL BACKGROUND ................................................................17

      2.    RECENT SDNY DECISIONS ....................................................................19

CONCLUSION .......................................................................................................25

601518.00602/6624008v.3

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006)..................................................................................................3,16,22

*Bottiglieri di Navigazione SPA v. Tradeline LLC*, 472 F. Supp. 2d 588 (S.D.N.Y. 2007).....................................................................................................6

*Chiquita International Ltd., et al. v. M/V BOSSE, et al.*, 518 F. Supp. 2d 591 (S.D.N.Y. 2007).............................................................................................13

*Fednav International Ltd. v. Sunwoo Merchant Marine Co. Ltd.*, 2007 U.S. Dist. LEXIS 79685 (S.D.N.Y. October 18, 2007).........................................21,22

*Great Eastern Shipping Co., Ltd. v. Phoenix Shipping Corporation*, 2007 U.S. Dist. LEXIS 88911 (S.D.N.Y. December 4, 2007)....................................22

*Greenwich Marine, Inc. v. S.S. ALEXANDER*, 339 F.2d 901 (2d Cir. 1965)........4,5

*Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519.................................................13

*Mitsui Steamship Co. Ltd. v. Jarka Corp.*, 218 F. Supp. 424 (E.D.PA. 1963) .........4

*Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd.*, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. January 9, 2008).............................................................8

*North Offshore AS v. Rolv Berg Drive AS*, 2007 U.S. Dist. LEXIS 87648 (S.D.N.Y. November 29, 2007).........................................................................20

*In re Oil Spill by the Amoco Cadiz*, 491 F. Supp. 161 (N.D. Ill. 1979)..................23

*Patricia Hayes & Associates, Inc. v. Cammell Laird Holdings U.K.*, 339 F.3d 76 (2d Cir. 2003) ......................................................................................4,5

*Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394 (2d Cir. 1995).......................................................................................................17,18

*Royal Swan Navigation Co. v. Global Container Lines, Ltd.*, 868 F. Supp. 599 (S.D.N.Y. 1994)......................................................................................15,16

*Salazar v. THE ATLANTIC SUN*, 881 F.2d 73 (3d Cir. 1989) ..................................3

*Seaplus Line Co. v. Bulkhandling Handymax*, 409 F. Supp. 2d 316
    (S.D.N.Y. 2005)....................................................................................................2

*Seawind Compania, S.A. v. Crescent Line*, 320 F.2d 580 (2d Cir. 1963)...............14

*Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532
    (S.D.N.Y. 2007)..................................................................................................9,5

*Staronset Shipping Ltd. v. North Star Nav. Inc.*, 659 F. Supp. 189
    (S.D.N.Y. 1987)....................................................................................................8

*T& O Shipping, Ltd. v. Lydia Maritime Shipping Co. S.A.*, 415 F. Supp. 2d
    310 (S.D.N.Y. 2006).............................................................................................9

*Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS
    95870 (S.D.N.Y. Aug. 15, 2006).......................................................................22

*Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400 (5th Cir. 1987).....................18

*Ulisses Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318
    (S.D.N.Y. 2006)..................................................................................................22

*V.T.T. Vulcan Petroleum, S.A. v. Langham-Hill Petroleum, Inc.*, 684 F.
    Supp. 389 (S.D.N.Y. 1988) ...............................................................................15

*Washington Southern Navigation Co. v. Baltimore & Philadelphia
    Steamboat Co.*, 263 U.S. 629 (1924)..................................................................17

## FEDERAL STATUTES

Fed. R. Civ. P. 12 .......................................................................................................13

601518.00602/6624008v.3

## INTRODUCTION

Defendant Trans Power Co. Ltd. ("Trans Power") respectfully submits this memorandum of law in support of its motion pursuant to Supplemental Rule E and F. R. Civ. P. Rule 12 to reduce and/or vacate the original order of maritime attachment and garnishment obtained under Supplemental Rule B of the Supplemental Rules of F. R. Civ. P. for Certain Admiralty And Maritime Claims ("Supplemental Rules") and the request for a further such order and/or in the alternative for counter-security under Supplemental Rule E.

## THE BASIC FACTS

The facts relating to this application are set out in the declarations of Nicholas Woo dated March 17 and 27, 2008 ("Woo Declaration No. 1" and "No. 2," respectively). The issues of foreign law, raised pursuant to notice under F. R. Civ. P. Rule 44.1, are also set out in the Woo Declarations and the expert opinion of Nevil Phillips dated March 27, 2008 attached as an exhibit to Woo Declaration No. 2.

### A.    The Amended Complaints

Plaintiff San Juan Navigation (Singapore) Pte. Ltd. ("San Juan") obtained a Rule B attachment order dated February 15, 2008 (the "Attachment Order") pursuant to an amended verified complaint dated February 15, 2008 (the "Complaint").    It filed a "Second Amended Verified Complaint" on March 28, 2008 ("Second Complaint").  San Juan attached $2,236,495 belonging to Trans Power.  San Juan's Complaint asserted claims relating to the damage of a vessel's crane in respect of which it claims and has attached a total of $556,785 (the "Indemnity Claims"). Id. ¶ 18, Woo Dec. No. 1 ¶¶ 4, 5.

The Indemnity Claims are subject to London arbitration but San Juan has not yet served any claim submissions in respect of them. Woo Dec. No. 2 ¶ 4. As shown in the Woo Declaration No. 1, the total sum of the Indemnity Claims stated in paragraph 18 A-D of the Complaint in respect of the crane damage is $556,785. San Juan has provided no evidence that it has paid or provided security to the head owner of the Vessel, Chang Sung Shipping Co. Ltd. ("Chang Sung"), or its charterer Hanjin, in respect of any of the Indemnity Claims. Woo. Dec. 2 No. ¶ 8.

### B. Trans Power's Registration With The State of New York Secretary of State

Trans Power filed with the New York Secretary of State a certificate of doing business on February 19, 2008. Harwood Dec. Ex. 1. C.S.C. was the named agent for service of process and, by email dated March __, 2008 Trans Power's New York City based counsel advised that its office would also accept service of process. On March 26, 2008 C.S.C.'s Manhattan address was identified with the Secretary of State as the designated agent for service of process. Harwood Aff. Ex. __.

**ARGUMENT**

**POINT I**

**PLAINTIFF CARRIES THE BURDEN TO SHOW WHY THE ATTACHMENTS SHOULD BE MAINTAINED; OTHERWISE THE COURT IS REQUIRED TO VACATE THE ATTACHMENTS**

An order of maritime attachment and garnishment pursuant to Rule B is typically issued upon a minimal prima facie showing, usually made ex parte. See, e.g., Seaplus

2

Line Co. v. Bulkhandling Handymax, 409 F. Supp.2d 316 (S.D.N.Y. 2005). Once property has been restrained:

> Any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall **be required to show why the arrest or attachment should not be vacated*** or other relief granted consistent with these rules.

Rule E(4)(f) (emphasis supplied).

The Second Circuit has found that Rule E(4)(f) is clear and the burden is on the plaintiff to show the attachment "was properly ordered and complied with the requirements of Rules B and E." Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006).[1]  Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends entirely upon the issues in controversy. Salazar v. THE ATLANTIC SUN, 881 F.2d 73, 79 (3d Cir. 1989).

Accordingly, the burden is now on Plaintiff to establish why the attachments should be maintained.

---

[1] To the extent the attachment is to be vacated on an equitable ground, however, the burden is on the defendant to establish any equitable grounds for vacatur. Id.

## POINT II

## THE APPLICATION FOR A RULE B ATTACHMENT IN RESPECT OF THE INDEMNITY CLAIMS WAS PREMATURE

### A.    THE APPLICABLE STANDARD

The touchstone case for any discussion as to when and whether a maritime plaintiff's claim is too premature to sustain an application for an attachment is Greenwich Marine, Inc. v. S.S. ALEXANDER, 339 F.2d 901 (2d Cir. 1965). In Greenwich, the District Court was called upon to determine whether there was just cause for arresting and attaching the defendant vessel. The District Court held that the plaintiff's claim was premature. The Second Circuit agreed because "no judgment had been entered against Greenwich for the cargo damage, and no suit had been instituted against Greenwich for the cargo damage". Id. at 905. The Second Circuit affirmed.

The Second Circuit recognized that occasionally some district judges were willing, under certain circumstances, to ignore the prematurity of a claim, but "this does not mean that all doctrines of accrual have been abrogated in admiralty." Id. The Greenwich Court gave as an example the decision by Judge Kraft in Mitsui Steamship Co. Ltd. v. Jarka Corp., 218 F.Supp. 424 (E.D.PA. 1963) in which an indemnity cause of action in a maritime case was dismissed for failure to state a cause of action because it was premature and "nothing more than an abstraction" **even though** suit against the party seeking indemnification was pending in another court. Greenwich, 339 F.2d at 905.

In Patricia Hayes & Assocs., Inc. v. Cammell Laird Holdings U.K., 339 F.3d 76, 82-83 (2d Cir. 2003), the Court held that "a district court may in some circumstances

4

disregard the prematurity of a plaintiff's claim as a matter of discretion" (emphasis in original).

In <u>Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.</u>, 478 F. Supp.2d 532, 540-41 (S.D.N.Y. 2007), however, the Court found that "courts in this circuit have not been receptive to contingent indemnity claims as bases for maritime arrests [or] attachments" and found that to the extent that the Court still has discretion to disregard the prematurity of a plaintiff's claim, such discretion "should only be exercised under compelling circumstances". <u>Id.</u> at 543-44. <u>See also</u>, <u>Sanko Steamship Co. Ltd. v. China National Chartering Corp.</u>,

Indeed, the <u>Greenwich</u> Court noted that objections to prematurity are ignored "only in isolated situations under peculiar factual circumstances." <u>Greenwich</u>, 339 F.2d at 905. Such a peculiar factual circumstance may arise where a claim might have been premature when filed but was certain to mature shortly (<u>i.e.</u>, within a matter of hours), as was the case in <u>Patricia Hayes</u>, 339 F.3d at 82-83. The time to measure whether a claim is "ripe enough" to sustain an attachment is as of the time of the filing of the complaint. Absent such a fairly anticipated maturity of a claim within a very brief period of time, the <u>Greenwich</u> Court held that later events, including the protraction of litigation, cannot serve to ripen a claim that was premature at the time the application for the attachment was made. <u>Greenwich</u>, 339 F.2d at 908-909 ("a concern for future cases leads us to squelch all hope that a litigation may become sufficiently protracted so as to enable a premature claim to ripen just before judgment is rendered on appeal").

5

## B.   JUDGE KAPLAN'S DECISION

In <u>Bottiglieri di Navigazione SPA v. Tradeline LLC</u>, 472 F. Supp.2d 588 (S.D.N.Y. 2007) there was a charter party claim between the "vessel's actual owner" (known as "Head Owner") and Bottiglieri as "disponent" or chartered owner and its charterer, Tradeline. As stated by the court: "[t]he substantive provisions of the two charter parties are substantially the same". <u>Id</u>. Both the head charter and the sub-charter called for London arbitration, under English law, of any disputes.

The Head Owner settled a cargo receiver's claim and "announced its intention to commence arbitration against plaintiff [Bottiglieri] for breach of their charter party." <u>Id</u>. Bottiglieri "in turn, announced its [own] intention" to arbitrate against Tradeline. The Court noted that "[t]he arbitrations have not progressed much over the years" and:

> It is uncontested … that there has been no settlement in the dispute between plaintiff and [Head] Owner, no finding that plaintiff is liable to the Owner for damages, and no award against plaintiff [in favor of the Head Owner].

472 F. Supp.2d at 589.

Tradeline moved to vacate a Rule B attachment of approximately $3 million of its funds brought by Bottiglieri for its potential liability in the arbitration with Head Owner. The "principal argument is that plaintiff's indemnity claim is unripe under English law …". <u>Id</u>.

### 1.   Discussion of English Law

The Court first reviewed the parties' agreement that English law governed the nature of the claims:

6

The parties agree that the seminal English case addressing when indemnity claims accrue is *Telfair Shipping Corp. v. Intersea Carriers S.A.* (*The "Caroline P"*), *The Caroline P*, after an exhaustive survey of the case law, concluded that:

> it is possible to identify at least three ways in which a person (A) who has become liable to (B) may be able to obtain redress from (C). The first way is by an action for damages for breach of contract (or warranty). In such a case (A) will be in a position to claim that the incurring of his liability to (B) flowed directly from an act of (C) which constituted a breach of a contract between (A) and (C) or of a warranty given by (C) to (A) …. The cause of action will date from the date of breach.

> \* \* \*

> The third way in which (A) may clam against (C) in respect of sums which he has had to pay to (B) is under an implied indemnity. As I understand the matter, such an implied indemnity would prima facie be a general indemnity of the kind recognized by the common law …. [and A()]) could not sue [(C)' unless he could aver payment to [(B)]."

*The Caroline P* does not precisely lay out how to distinguish between these theories. It appears, however, that the former contemplates a contract defining A's potential liability to B and a breach by C that expands the scope of that potential liability. Thus, the mere exposure to grater liability is the injury to A. The latter, in contrast, includes the common identity scenario whereby C's act causes A to breach its pre-existing contract with B.

472 F. Supp.2d at 590.

## 2.    Application of English Law To The Facts To Find The Indemnity Claim Premature

Judge Kaplan then held:

> Here, plaintiff does not allege that any act by defendant increased plaintiff's potential liability to the Owner. Rather,

7

plaintiff's claim falls squarely within The Caroline P's latter category. This is clear from the allegations of the complaint, which trace the bulk of the monetary claim made against defendant to the damages claimed by the Owner and state plainly that "Defendant is liable to indemnify Plaintiff for all amounts claimed against it by [the Owner]." This claim for indemnity is not ripe under English law. Plaintiff thus has not established the "valid prima facie admiralty claim" required under Aqua Stoli.

472 F. Supp.2d at 591.

## C. SDNY RULE B CASES HOLDING AN INDEMNITY CASE IS "RIPE"

Staronset Shipping Ltd. v. North Star Nav. Inc., 659 F. Supp. 189 (S.D.N.Y. 1987) represents one of the very few cases in which the Court determined that a contingent indemnity claim was "ripe enough" to sustain an attachment. In Staronset, Judge Knapp held that where the party seeking indemnity had itself been sued (or arbitration brought against it) and where that party had been put to significant expense as a result, such as by being required to post security, then an otherwise premature contingent indemnity claim, upon a balancing of the equities in the Court's discretion, could be considered "ripe enough" to support an application for a Rule B attachment. Id. At 190-91.

## D. THE ISSUE OF WHETHER PLAINTIFF PLEADED VALID ADMIRALTY CLAIMS MUST BE DECIDED UNDER ENGLISH LAW

There is no dispute that Plaintiff's claims are governed by English law. As Judge Leisure recently decided in Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd., 2008 U.S. Dist. LEXIS 2438* 9-10 (S.D.N.Y. January 9, 2008) "the validity of a prima facie admiralty claim is a substantive issue and, as the parties agreed that English law would

8

govern the charter in question, the substantive issue would be determined under English law," citing Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007) (holding that English law, the applicable substantive law of the underlying contract, applies to the Court's consideration of whether plaintiff has demonstrated a valid prima facie admiralty claim); and T& O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F. Supp. 2d 310, 314 (S.D.N.Y. 2006) "[t]he law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is reasonable."

## E.    APPLICATION OF ENGLISH LAW TO THE CAUSES OF ACTION FOR THE INDEMNITY CLAIMS

Plaintiff's claims, both *at the time it made its application for a Rule B* attachment and now, were premature.[2]

As stated in the Woo Declaration:

> 13.    Under English common law, the cause of action will only accrue, upon a contract or any other obligation to indemnify a person against a liability to a third party, when the plaintiff has made payment to (and thereby discharged any liability to) the third party and not upon the happening of the event that gives rise to the indemnity.  See, Reynolds v. Doyle, (1849) 1 M&G 753.

---

[2]    On April 25, 2005, Rule B(1)(a) was amended to clarify, inter alia, that the point in time for measuring whether a plaintiff has met its burden to entitle it to a maritime attachment is as of the time the application for the attachment was made. While the former language was possibly unclear, Rule B presently leaves no room for confusion: "If a defendant is not found within the district *when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed* , a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process" (emphasis supplied). The amendment came into effect December 1, 2005 and was therefore in effect at the time that BDN made its application on May 15, 2006.

Woo Dec. 2 ¶ 16.

## 1.    The Indemnity Claims

The Woo Declaration No. 2 sets out English law on the Indemnity Claims as

follows:

> 30.    I believe that the Indemnity Claims have not accrued, as
> a matter of English Law, because no settlement or
> payment has been made of them by San Juan to Hanjin
> or Head Owner.

The opinion of Nevil Phillips, Esq. addresses the issue of whether San Juan "has

as matters stand any accrued right which might give rise to an entitlement to security."

Id. ¶ 1.7.1. Mr. Phillips' discussion is set out at pages 9-12 of his opinion. The summary

of his conclusions is:

> (1)    As a matter of English law, SJN's claims as identified in
> paragraphs 18A to 18D of the Complaint can, at present,
> give rise only to relief by way of nominal damages or
> declaratory relief.
>
> (2)    Such relief is not enforceable against substantial
> security.
>
> (3)    Accordingly, there is no justification or legal basis in
> English law for ordering the provisions of security in
> respect of such claims.
>
> (4)    It follows that SJN are not, as a matter of English law,
> entitled to security in respect of their claims in their
> present form.
>
> (5)    SJN will be entitled to security (in principle) in respect
> of the said claims only once they have actually incurred
> (and, properly speaking, discharged) the liability to the
> third party which underlies the claims.

Woo Dec. No. 2, Ex. B.

10

Accordingly, none of the Indemnity Claims are "ripe under English law" so that, as in <u>Bottiglieri</u>, Plaintiff has failed to establish valid <u>prima facie</u> admiralty claims so that the Attachment Order, obtained under the color of a proper libel in admiralty, should be vacated and the security released in respect of those claims.

### 2. The Lien Claim

As described in the Woo Declaration No. 2, ¶¶ 10-13, Trans Power received a lien notice on sub-hire in the sum of $376,000 from the Head Owner of the vessel (Chang Sung) that San Juan had chartered to Trans Power (the "Notice"). This meant that, as a matter of English law, if Trans Power paid San Juan the debt represented by the $376,000 subject to the Notice then it would be obliged to pay the same sum to the Head Owner. <u>Id.</u>, ¶ 12.

San Juan has attached the sum of $556,450.80 in "outstanding hire", which includes the same hire that the Head Owner has claimed. <u>Id.</u>, ¶ 13. Trans Power has been "required to provide security both to Chang Sung for San Juan's failure to pay the Lien Sum while San Juan has also obtained security ..." for the same amount. Woo Dec. No. 2, ¶ 13. The Attachment should be vacated in respect of this sum.

### 3. The "Costs" Claim: $475,000

Trans Power has paid to San Juan $323,623 for its claim for "advance hire" and San Juan has agreed to reduce its attachment both of this principal sum and from the $287,440 attached for interest (the "Interest Sum") by a proportional amount. It has refused to reduce its "costs" claim of $475,000 ("Costs Sum") which is fully attached.

11

If and to the extent the attached sums in respect of either the Indemnity Claims or the Lien Claim (or both) are vacated or reduced then both the Interest Sum and the Costs Sum should be reduced in the proportion that they may relate to each claim. The Woo Declaration No. 2 attributes 75% of the Costs Sum to the Indemnity Claims. Id., ¶ 9.

## POINT III

**TRANS POWER IS NOW "FOUND" WITHIN THE MEANING OF RULE B SO THAT SAN JUAN MAY NOT OBTAIN AN ADDITIONAL ATTACHMENT ORDER AS REQUESTED BY THE SECOND COMPLAINT**

Plaintiff's Complaint, dated February 15, 2008, sought damages in the principal sum of $1,474,054.53 and interest and costs. Pursuant to the Complaint the Court issued an "Amended Order Directing Clerk To Issue Proceeds of Maritime Attachment or Garnishment...", dated February 19, 2008 (the "Attachment Order").

On or about March 28, 2008, San Juan filed its Second Complaint for a principal claim of $3,409,913.54 for a total claim amount of $4,612,614.54 for which it seeks to freeze Trans Power's funds for the length of an arbitration that it estimates will be 3 years. The Second Complaint purports to seek a supplemental attachment order and supplement process of maritime attachment and garnishment for an additional $2,695,743.54. It is not accompanied by the mandatory Supplemental Rule B(1)(b) affidavit that requires "plaintiff or plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district."

12

1.    **The Supplemental PMAG Should Not be Issued**

(a)    **The Applicable Standard**

Rule E(4)(f) entitled "Procedure for Release From Arrest or Attachment" refers to

the Plaintiff's obligation to show "why the arrest or attachment should not be vacated"

"[w]henever <u>property</u> is arrested or attached."    San Juan has not attached "property"

pursuant to its Second Complaint.    As Judge Leisure noted in <u>Chiquita International Ltd.,</u>

<u>et al. v. M/V BOSSE, et al.</u>, 518 F. Supp.2d 591, 596 (S.D.N.Y. 2007):

> . . . E(4)(f) allows a motion for vacatur of attachment, but
> does not provide for dismissal ... Rule 12 of the [F.R.Civ.P.]
> is the proper vehicle by which a party moves to dismiss. See
> Fed. R. Civ. P. 12. GWF, however, made no mention of Rule
> 12 in its submission to the Court.    Courts "will not consider
> such an argument lest Rule 12(b)(6) be completely subsumed
> by Supplemental Rule E(4)(f)." <u>Maersk, Inc. v. Neewra, Inc.</u>,
> 443 F. Supp.2d 519; 531 (S.D.N.Y. 2006).

The motion in respect of the Amended Complaint is therefore made on the basis,

as stipulated by the parties, that San Juan would not seek from the Court or serve an

additional PMAG until arguments under both Rule E, and, in respect of the additional

requested process of maritime attachment and garnishment ("PMAG"), under F.R.Civ.P.

Rule 12, had been heard.

13

(b)    **San Juan Is Now "Found"**

(i)    **Pre-Requisites For A Rule B**

Supplemental Rule B provides "[w]ith respect to any admiralty or maritime claim *in personam*" for attachment of "credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant <u>shall not be found within the district</u>." (emphasis added).

There is a well defined two-prong test to determine whether a defendant can be "found" within a jurisdiction of the district court in which the action is filed. "First, whether (the respondent) can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." <u>Seawind Compania, S.A. v. Crescent Line</u>, 320 F.2d 580, 582 (2d Cir. 1963).

In <u>Centauri Shipping Ltd. v. Western Bulk Carriers KS</u>, (S.D.N.Y. September 7, 2007)[3] the Rule B defendant Western Bulk (WBC") sought to vacate a Rule B attachment filed against it, on alternative grounds. The Court ruled that WBC was "found" and vacated the attachment order, holding that:

(i)    WBC had a valid registered agent for service of process in the Southern District of New York.

(ii)    WBC was registered to do business at the time the Rule B action was filed.

---

[3] Not officially reported, attached as Exhibit 4 to the Harwood affidavit.

14

The plaintiff argued that WBC must "engage in substantial commercial activity within the district," which it claimed WBC did not do. Aff. Ex. A, p. 3. Judge Sullivan disagreed, holding that the "key enquiry ... is whether the defendant is amenable to suit within the district." Id., p. 4. Although "systematic contacts" within the district were one way of establishing amenability to suit so was a "more explicit manifestation[] of jurisdictional acquiescence" by way of registering to do business by which, under New York law, the company consents to the court's jurisdiction over it in New York. Id., p. 4.

The Court rejected the proposal that a "more cumbersome and unwieldy balance test" of weighing the amount of commercial activity in fact transacted in the District was necessary. Id. In addition, the attorney for the plaintiff knew or should have known that WBC had an agent for service of process as well as being registered to do business in New York but failed to disclose those facts in the affidavit supporting the *ex parte* application for the Rule B order.

The decision would appear to be contrary to an earlier decision:  V.T.T. Vulcan Petroleum, S.A. v. Langham-Hill Petroleum, Inc., 684 F. Supp. 389, 390 (S.D.N.Y. 1988) where the Court held that:

> In other words, not only must the defendant be able to accept process, but the defendant must also 'be engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process.

The WBC case, while not controlling, is nevertheless persuasive. In Aqua Stoli, supra, the Second Circuit referred to an earlier approach taken by the Court in Royal Swan Navigation Co. v. Global Container Lines, Ltd., 868 F. Supp. 599 (S.D.N.Y. 1994)

15

where the Rule B defendant claimed to be present in an adjacent jurisdiction. The District Court had decided in Royal Swan that it was "justified in inquiring into the substantiality of the defendant's business activity in that adjacent jurisdiction …".  868 F. Supp. at 604.06. Aqua Stoli Court "reject[ed] the approach" saying that it:

> Would impose a fact-intensive inquiry into the substantiality and nature of a defendant's presence in an adjacent district before deciding whether an attachment should be vacated. Such inquiry is improper because Rule B specifies the sum total of what would be shown for a valid maritime attachment.

460 F.3d at 447.

The same logic applies to assessing the "substantiality" of the Rule B defendant's presence in the district where the attachment is originally sought - if the defendant is "found" by registering to do business then whether or not it does so and how "substantially" is irrelevant: a Rule B attachment order should not issue.

Here, San Juan's Second Amended Complaint is fatally deficient in not being accompanied by the mandatory Rule B affidavit: that affidavit would show that Trans Power is found both through an agent of service of process and by registration. See Harwood Aff. Exs. A, B, C. In the circumstances neither law nor equity permit further attachment of Trans Power's assets.

## POINT IV

**IF THE ATTACHMENT IN RESPECT OF THE INDEMNITY CLAIMS AND LIEN CLAIM IS NOT VACATED THEN, IN THE ALTERNATIVE, TRANS POWER IS ENTITLED TO COUNTER-SECURITY UNDER SUPPLEMENTAL RULE E**

Supplemental Rule E(7) states in material part:

16

> . . . a plaintiff for whose benefit such security has been given <u>must give security for damages demanded in the counterclaim unless the court for cause shown,</u> directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise direct. (emphasis added)

It is undisputed that "costs" under English law include "attorney's fees" and are awarded to the prevailing party. Complaint ¶¶ 21, 22, Answer and Counter-claim, ¶¶ 21, 22 and 13. Trans Power, in its answer and counter-claim, filed with this application, asserts a counter-claim for "costs" in the same sum, $475,000, as attached by San Juan. The issue of whether Trans Power is entitled to Rule E counter-security for such a claim has been fully briefed in virtually identical circumstances (Hong Kong law rather than English law) in <u>Med-Asia Shipping Ltd. v. COSCO Beijing International Freight Co. Ltd.,</u> 07 CIV 9624 (RMB) from which this briefing point is adopted.

### 1.    <u>Historical Background</u>

In <u>Washington Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,</u> 263 U.S. 629, 638-39 (1924), the Supreme Court stated that the purpose of Admiralty Rule 50 (the forerunner of Rule E(7)) was "to place the parties on an equality as regards security."

The leading case on Rule E(7) in the Second Circuit is <u>Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc.,</u> 56 F.3d 394 (2d Cir. 1995). After first quoting the text of the Rule, the Second Circuit stated (emphasis added):

> Although this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear

17

> that the *trial court possesses broad discretion* in deciding
> whether to order countersecurity under such conditions. . . .

> In exercising this discretion, the court should be guided
> primarily by two principles, which sometimes conflict with
> one another. On the one hand, the purpose of Rule E(7) is "'to
> place the parties on an equality as regards security,'" . . .
> which usually favors granting countersecurity when a
> defendant whose property has been attached asserts non-
> frivolous counterclaims growing out of the same transaction,
> especially when the counterclaimant could have proceeded in
> rem or quasi in rem in an independent suit. On the other hand,
> the Rule is not intended to impose burdensome costs on a
> plaintiff that might prevent it from bringing suit. . . .

Id. at 399-400 (citations omitted). The Second Circuit continued:

> In balancing these policies, the trial court "is to be guided by
> the essential and equitable purposes of the rule. In doing so,
> the court must weigh the importance of the security interest
> giving rise to the initial seizure, and the burden of posting
> countersecurity, against the potential injustice of requiring the
> defendant-counterclaimant to post security without affording
> reciprocal protection."

Id. at 400 (quoting Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 404 (5th Cir.
1987)).

As noted by the Second Circuit, the discretion afforded the district court should
usually be exercised in favor of granting countersecurity "especially when the
counterclaimant could have proceeded in rem or quasi in rem." The fact that the Second
Circuit qualified that class of cases with "especially" makes it clear, however, that it is
not necessary that the "counterclaim" support such an independent *in rem* or *quasi in rem*
suit; a district court's discretion includes other types of claims as well. Otherwise, the
Second Circuit would have stated that the class of claims for which countersecurity could

18

be ordered included such claims and no others.  District courts have noted and made use of the "broad discretion" granted them under Rule E(7).

## 2.    <u>Recent SDNY Decisions</u>

Judge Leisure recently issued a decision in a case which is instructive in defining the issues involved in the present case, <u>Naias Marine, S.A. v. Trans Pacific Carriers Co., Ltd.</u>, 2008 U.S. Dist LEXIS 2438 (S.D.N.Y. January 10, 2008).  The defendant, Trans Pacific, had previously commenced a Rule B action against the plaintiff, Naias, in another action, assigned to Judge Stanton, and obtained security in that action.  Naias, however, did <u>not</u> seek countersecurity in the action before Judge Stanton.  Instead, it provided substitute security to Trans Pacific and Trans Pacific dismissed the action before Judge Stanton and released the attached funds.  A month later Naias filed a <u>new</u> action against Trans Pacific, and it was assigned to Judge Leisure.  The only claim asserted by Naias was for its costs, including attorney's fees, in the London arbitration in defending itself against Trans Pacific's claim.

Trans Pacific moved to dismiss for lack of subject matter jurisdiction, contending that such a claim for "costs" under either English law or U.S. law was not a "maritime" claim, the *sine qua non* for a maritime attachment under Rule B.  Judge Leisure agreed and dismissed the claim for lack of subject matter jurisdiction.  Judge Leisure did not dismiss the claim for "costs" because it was not a "claim," but because it was not a <u>maritime</u> claim.

In response to Naias' contention that Judge Leisure would have had the power to award countersecurity under Rule E(7) for such "costs," Judge Leisure held:  "The

19

question of whether Naias would have had a valid claim for counter-security under Rule E(7) is not appropriate in this action. Naias missed its opportunity to assert *such a counterclaim* by failing to do so while the Trans Pacific action [before Judge Stanton] was still pending." 2008 U.S. Dist LEXIS at \*17 n.8 (emphasis added). Moreover, Judge Leisure specifically noted that the standards for granting countersecurity under Rule E(7) and maintaining an attachment under Rule B are different. Under Rule E(7), "the Court's analysis differs from the consideration here of whether Naias's independent claim affords subject matter jurisdiction." Id. at \*16 & n.9. "While Rules E(2)(b) and E(7) may be indicative of the Court's ability to grant security for costs under other circumstances, here, where Naias has failed to set forth a maritime claim, those rules do not apply." Id. at \*17. See also North Offshore AS v. Rolv Berg Drive AS, 2007 U.S. Dist LEXIS 87648, \*6 (S.D.N.Y. November 29, 2007) (Stein, J.) ("Nothing in the Second Circuit's decision in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006)] suggests that a motion for countersecurity pursuant to Rule E(7) need only meet the *prima facie* requirements of an admiralty claim pursuant to *Rule B.* Rather, motions for countersecurity remain—even post-Aqua Stoli—subject to the "broad discretion" of the Court.").

Accordingly, Judge Leisure's decision strongly suggests that a claim for "costs" under English law is a claim, and an independent claim, for which countersecurity under Rule E(7) may be granted; it is simply not a "maritime claim" which satisfies Rule B.

In Med-Asia the plaintiff cited Judge Stein's decision in Aifos Trade S.A. v. Midgulf Int'l Ltd., 06 Civ. 203 (SHS) (S.D.N.Y. 2006). In Aifos, the plaintiff had

20

obtained security by maritime attachment. The defendant asserted a counterclaim in the principal amount of $34,212.58. It asked for countersecurity in that amount plus $30,000 in arbitrators' fees and expenses and $50,000 in attorneys' fees and expenses for a total of $120,905. Judge Stein held that this amount was "excessive because it appears to incorporate the expense of not only prosecuting its counterclaim, but also of defending against the original complaint, a purpose that is beyond the scope of Rule E(7) . . . which provides that countersecurity is to cover only the 'damages demanded in the counterclaim.'" Judge Stein reduced the amount of countersecurity to $51,000, an amount which included "the full amount of the counterclaim plus interest as well as attorney's fees and arbitrators' costs of $10,000, which is a reasonable estimate of the cost of prosecuting the counterclaim."

Judge Chin, however, reached the <u>opposite</u> conclusion on the same facts in <u>Fednav International Ltd. v. Sunwoo Merchant Marine Co. Ltd.</u>, 2007 U.S. Dist LEXIS 79685 (S.D.N.Y. October 18, 2007). The plaintiff had a claim for $1,605,367, including "costs" in the amount of $300,000, and obtained security for its claims in London in that amount through a Rule B attachment here. Defendant then asserted a counterclaim in the amount of $92,289.35 and asked for countersecurity in that amount plus $300,000 in costs. Plaintiff contended that the defendant was entitled only to costs associated with the counterclaim, not for defending the plaintiff's claim. Defendant countered that to prevail on its counterclaim it had to defeat the original claim. Noting that the case law was "limited," Judge Chin directed the plaintiff to provide countersecurity in the <u>full</u> amount of $300,000.

21

In reaching this conclusion, Judge Chin stated that Judge Scheindlin's decision in Ulisses Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y. 2006) was "the most relevant."[4] Fednav, 2007 U.S. Dist LEXIS 79685 at *3. There, the plaintiff had asserted a claim for wrongful attachment. The defendant agreed, and Judge Scheindlin found, that such a counterclaim did not arise from the same occurrence or transaction which was the subject of litigation between the parties in London. 415 F.Supp. 2d at 329. Nevertheless, she found that the defendant's claim for "costs" (in the amount of £756,526.15) in defending itself against plaintiff's claim in London were "inextricably intertwined with the original transaction that is the subject of the London Litigation." Id.

In Great Eastern Shipping Co., Ltd. v. Phoenix Shipping Corporation, 2007 U.S. Dist. LEXIS 88911 (S.D.N.Y. December 4, 2007), Judge Cote admonished the maritime bar to cite district court decisions (although not controlling) adverse to one's position. In Daeyang Shipping Co. Ltd. v. Flame S.A., 05 CV 7522 (AKH), (S.D.N.Y. May 11, 2006), Judge Hellerstein issued a one sentence ruling stating: "There not being a claim or counterclaim by the party moving for countersecurity, Flame, S.A., against plaintiff, Daeyang Shipping Co. Ltd., in neither arbitration or judicial litigation, and no other

---

[4] *Ulisses* was decided prior to *Aqua Stoli*, 460 F.3d 434 (2d Cir. 2006), and the Second Circuit rejected the "needs" test Judge Scheindlin applied with respect to the Rule B attachment, 460 F.3d at 446 & n.8, as noted by Judge Wood in the same context in *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist LEXIS 95870 (S.D.N.Y. Aug. 15, 2006). Neither the Second Circuit nor Judge Wood addressed the holding in *Ulisses* allowing countersecurity for costs.

22

sufficient ground for countersecurity having been given, defendant Flame's motion for countersecurity is denied."

Rule 13(a)(1) of the Federal Rules of Civil Procedure uses virtually the same words as Rule E(7) in defining a "compulsory counterclaim" as a claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Under Rule 13(a), courts have addressed claims for contribution/indemnity, including attorney's fees.   In such a case, the "recent trend" is to allow such a claim for contribution/indemnity to proceed in the one action under Rule 13(a) and deny the plaintiff's motion to dismiss. For example, in In re Oil Spill by the Amoco Cadiz, 491 F. Supp. 161 (N.D. Ill. 1979), the vessel owner filed a counterclaim against the Republic of France asking France to contribute to its costs in connection with cleaning up an oil spill. France moved to dismiss, inter alia, on the ground that this claim for contribution was "not mature" and cannot be asserted by counterclaim under Rule 13(a) because it depends on the outcome of the main action, that is, the claim did not arise unless and until the vessel owner was held liable. The district court stated that "the recent trend and the more pragmatic approach, has been to permit counterclaims for contribution."   Id. at 165. Wright and Miller had already endorsed this approach in 1979 and continue to do so today: "This approach seems sound when the counterclaim is based on pre-action events and only the right to relief depends upon the outcome of the main action." 6 C. Wright and A. Miller, Federal Practice and Procedure, § 1411 (2007).

Here, Defendant's counterclaim for "costs" is based on the same contract and events giving rise to the alleged breach, i.e., the "same transaction or occurrence" as

23

Plaintiff's claim. Defendant's right to relief, to recover its costs from Plaintiff under English law, "depends upon the outcome of the main action." Under English law, the claim rises or falls, as does Plaintiff's claim for costs, with the outcome of the action.

Where, as here, the merits are being decided in a jurisdiction where "costs follow the event," and where, as here, Plaintiff has been given security which include its costs, the better rule, we submit, is the rule adopted by Judge Scheindlin, that countersecurity for costs is appropriate because the claim for costs is "inextricably intertwined with the original transaction that is the subject of the [English proceeding]."

Plaintiff has obtained security from Defendant. The well-recognized goal of Supplemental Rule E(7) is to place the parties on equal footing as regards security and thereby afford reciprocal protection while the parties arbitrate. Trans Power is entitled to counter-security as asserted in its Answer and Counter-Claim, which arise by way of the same "transaction or occurrence."

24

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the PMAG in respect of the

Indemnity Claims and Lien Claim be vacated or that Plaintiff be ordered, pursuant to

Supplemental Rule E(7) to post a bond or other security satisfactory to the Court in the

sum of $475,000 and for such other relief as is fair and equitable and as requested herein.

Date:    New York, New York
         April 1, 2008

                              Respectfully submitted,

                              BLANK ROME LLP

                         By:    _____
                                Jeremy J.O. Harwood
                                405 Lexington Avenue
                                New York, New York 10174
                                (212) 885-5000

                                *Attorneys for Defendant*

25