BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAN JUAN NAVIGATION (SINGAPORE) PTE. LTD., <br><br> Plaintiff, <br><br> - against - <br><br> TRANS POWER CO. LTD., <br><br> Defendant. | 08 CV 1562 (RMB) |

## AFFIDAVIT OF JEREMY J. O. HARWOOD

STATE OF NEW YORK       )
                                              : ss.:
COUNTY OF NEW YORK    )

Jeremy J.O. Harwood, being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and of the firm of Blank Rome, LLP, attorneys for Defendant.

2.      I attach as Exhibit 1 hereto a true copy of a print out from the "NYS Department of State," Division of Corporations, recording the "Initial DOS Filing "Date" of Trans Power's registration to do business as of February 19, 2008.

601518.00602/6628085v.1

3.      I attach as Exhibit 2 hereto a true copy of my email to Plaintiff's counsel advising that Blank Rome's New York city office is authorized to accept service.

4.      I attach as Exhibit 3 hereto a true copy of the N.Y.S. Department of State, Division of Corporations and State Records, filing receipt on March 26, 2008 recording Corporation Service Company, 1133 Avenue of the Americas, New York, NY 10036 as Trans Power's agent for service of process.

5.      I attach as Exhibit 4 hereto the transcript of the Court's ruling at oral argument in Centauri Shipping Ltd. v. Western Bulk Carriers KS, et al., (September 7, 2007 S.D.N.Y.) (07 CV 4761(RJS)).

Jeremy J.O. Harwood

Sworn to before me this
1st day of April, 2008

Notary Public

BARBARA WALSH
**Notary** Public, State of New York
No. 01WA49254.5
**Qualified** in Queens County
**Commission Expires August 15, 2010**

**BARBARA WALSH**
**Notary** Public, State of **New York**
No. 01WA4925486
Qualified    Queens **County**
Commission Expires **August 15, 2010**

601518.00602/6628085v.1

# EXHIBIT 1

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: TRANS POWER CO., LTD.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | TRANS POWER CO., LTD. |
| **Initial DOS Filing Date:** | FEBRUARY 19, 2008 |
| **County:** | ALBANY |
| **Jurisdiction:** | ALL OTHERS |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

**Registered Agent**

NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page     NYS Department of State Home Page

# EXHIBIT 2

## Harwood, Jeremy J.O.

**From:** Harwood, Jeremy J.O.

**Sent:** Tuesday, March 25, 2008 1:20 PM

**To:** LENCK, ERIC

**Subject:** San Juan v Trans Power

Eric awaiting the stip - as a heads up please note that Trans Power is registered as doing business and CSC and ourselves , in our NYC office , are agents for service - we will raise this in the briefing but an amended complaint accompanied by an amended Rule b affidavit should refer to these issues .
Best regards

**Jeremy J.O. Harwood | Blank Rome LLP**
The Chrysler Building, 405 Lexington Avenue | New York, NY 10174-0208
Phone: 212.885.5149 | Fax: 917.332.3720 | Email: JHarwood@BlankRome.com

# EXHIBIT 3

N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS                    ALBANY, NY 12231-0001

                              FILING RECEIPT
======================================================================================
ENTITY NAME: TRANS POWER CO., LTD.

DOCUMENT TYPE: CHANGE (FOR/BUS/FICT)                              COUNTY: ALBA
               PROCESS

======================================================================================
FILED:03/26/2008 DURATION:*********  CASH#:080326000218 FILM #:080326000207

    FILER:
    ------
    BLANK ROME LLP
    15TH FLOOR 405 LEXINGTON AVENUE

    NEW YORK, NY 10174

    ADDRESS FOR PROCESS:
    --------------------
    C/O CORPORATION SERVICE COMPANY
    1133 AVENUE OF THE AMERICAS              SUITE 3100
    NEW YORK, NY 10036-6710

    REGISTERED AGENT:
    -----------------


======================================================================================
SERVICE COMPANY: CORPORATION SERVICE COMPANY - 45          SERVICE CODE: 45


FEES        340.00                                      PAYMENTS        340.00
            --------                                                    --------
FILING       30.00                                      CASH              0.00
TAX           0.00                                      CHECK             0.00
CERT          0.00                                      CHARGE            0.00
COPIES       10.00                                      DRAWDOWN        340.00
HANDLING    300.00                                      OPAL              0.00
                                                        REFUND            0.00
======================================================================================
500815DB                                                DOS-1025 (04/2007)

# EXHIBIT 4

//δ∂

7979CEND.txt

1

7979CEND                    Decision
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3
3    CENTAURI SHIPPING LTD.,
4
4                 Plaintiff,
4
5                  v.                        07 CV 4761 (RJS)
5
6    WESTERN BULK CARRIERS KS, ET
6    AL.,
7
7                 Defendants.
8
8    ------------------------------x
9                                         New York, N.Y.
9                                         September 7, 2007
10                                        9:30 a.m.
10
11   Before:
11
12                    HON. RICHARD J. SULLIVAN,
12
13                                        District Judge
13
14                        APPEARANCES
14
15   LYONS & FLOOD, L.L.P.
15        Attorneys for Plaintiff
16   BY:  KIRK M.H. LYONS
16        JON WERNER
17
17   LENNON, MURPHY & LENNON, LLC
18        Attorney for Defendants
18   BY:  PATRICK F. LENNON
19
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

7979CEND                    Decision
1              (Case called)
2              THE DEPUTY CLERK:  If the parties could stated their
3    appearances for the record, please.
4              MR. LYONS:  Kirk Lyons and John Werner from Lyons &
5    Flood for plaintiff.
6              THE COURT:  Good morning.  I'm sorry.  I didn't --
7              MR. LYONS:  Jon Werner.
8              THE COURT:  Mr. Werner.
9              Good morning.
10             MR. WERNER:  Good morning.
11             MR. LENNON:  Good morning.  Patrick Lennon from
12   Lennon, Murphy & Lennon for the defendant, Western Bulk
13   Carriers KS.
Page 1

7979CEND.txt

14          THE COURT:  Good morning, Mr. Lennon.
15          Thank you both for coming in.
16          We last met on Wednesday.  We had pretty extensive
17  argument, and I had asked basically for a couple days to
18  consider the arguments, review the cases, review the facts, and
19  to try to come up with where I came out on this thing.
20          I'm prepared to do that unless there is anything you
21  want to handle preliminarily.
22          MR. LYONS:  None from plaintiff's side, your Honor.
23          MR. LENNON:  None for defendant, your Honor.
24          THE COURT:  I had contemplated issuing a written
25  opinion but I think in the interest of speed decided to just do
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                3

7979CEND                    Decision
1  it from the bench.  I will read portions of it.  I hope it's
2  all right.
3          I'll ready slowly.  Cites and things I can give you
4  copies of those as we go or afterwards.
5          This case is before the court on the defendants'
6  motion to vacate an order of maritime attachment that was
7  entered by Judge Karas on June 5 of 2007.  The case was
8  subsequently reassigned to me, and a hearing was conducted
9  pursuant to Supplemental Admiralty Rule E(4)(f) on September 5,
10  2007.  After considering the arguments presented at the hearing
11  as well as those set forth in the parties' extensive papers and
12  submissions, I hereby grant the defendants' motion and vacate
13  the June 5 attachment order.
14          By way of background, under Rule B of the Supplemental
15  Rules of Certain Admiralty and Maritime Claims, a plaintiff may
16  obtain an ex parte order authorizing attachment of defendants'
17  property upon the filing of a verified complaint praying for an
18  attachment and affidavit stating that to the best of
19  plaintiff's knowledge the defendant cannot be found within the
20  judicial district.  On June 5, plaintiff presented such a
21  verified complaint and affidavit to Judge Karas, who, accepting
22  the representations contained therein, issued the attachment
23  order at issue in this case.
24          Once its property had been restrained, the defendant
25  has the right under Rule E(4)(f) to appear before the district
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                4

7979CEND                    Decision
1  court to contest that attachment; whereupon the plaintiff must
2  show why the arrest or attachment should not be vacated or
3  other relief granted.  Under the Second Circuit's ruling in
4  Aqua Stoli Shipping Limited v. Gardner Smith, the plaintiff at
5  such a hearing bears the burden of demonstrating that:  One, it
6  has a valid prima facie admiralty claim against the defendant;
7  two, defendant cannot be found within the district; three, the
8  defendants' property may be found within the district; and
9  four, there is no statutory or maritime law bar to the
10  attachment.
11          In the instant action, the defendant challenges the
12  June 5 attachment order on three grounds.  First, defendant
13  asserts that the plaintiff's verified complaint failed to state
14  a valid prima facie admiralty claim and that the claim, styled
15  as a motion to enforce a money judgment entered by the Angolan
16  Supreme Court, was unripe.  Specifically, defendant argues that
17  no such judgment had been issued by the Angolan Court and that,
18  in fact, plaintiff had failed to even commence an action that
                        Page 2

7979CEND.txt
19    might result in such judgment at the time of the attachment.
20           Second, defendant asserts that plaintiff failed to
21    demonstrate the second prong of the Aqua Stoli test, namely,
22    that the defendant could not be found within the Southern
23    District of New York.
24           Finally, defendant asserts that the attachment order
25    should be vacated as a result of the court's equitable
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    5
7979CEND            Decision
1     discretion to vacate maritime attachments that otherwise comply
2     with Rule B.  And I'm quoting from Aqua Stoli at 444.
3            Because I find that the defendant was, in fact, found
4     within the district at the time that the attachment order was
5     issued, I grant the defendants' motion to vacate the June 5
6     order without necessarily reaching the other two bases.  The
7     reasons for my finding are as follows.
8            Although the supplemental rules do not precisely
9     define what it means to be found within the district, the
10    Second Circuit has articulated a two-prong test designed to
11    facilitate the determination of whether defendant is, in fact,
12    found within the district for purposes of Rule B.  This test,
13    first enunciated in Seawind Compania, SA v. Crescent Line,
14    Inc., provides that the defendant is found within the district
15    if:  One, he's found within the district for purposes of
16    jurisdiction; and two, he's found within the district for
17    purposes of the service of process.  In essence, the Seawind
18    test requires that the defendant be both amenable to suit in
19    the district and readily susceptible to process in the
20    district.
21           Addressing the second prong first, there appears to be
22    no dispute that at the time the attachment was sought, the
23    defendant had a valid registered agent for service of process
24    in the Southern District of New York.  Accordingly, the parties
25    appear to concede that the defendant was readily susceptible to
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    6
7979CEND            Decision
1     process in the district, thereby satisfying the process prong
2     of Seawind.  I cited to plaintiff's memorandum of law at 7 and
3     8 and Mr. Lyons' affidavit in support thereof at paragraph 10.
4            However, the parties dispute whether the defendant was
5     present jurisdictionally under the first prong of the Seawind
6     test.  Although plaintiff concedes that at the time of the
7     attachment it was, in fact, aware that WBC was registered to do
8     business in the State of New York, and had a registered agent
9     for the service of process -- and that's Mr. Lyons' affidavit,
10    10 -- plaintiff nevertheless insists that a defendant may only
11    be found within the jurisdiction -- found within the district
12    for jurisdictional purposes if it engages in substantial
13    commercial activity within the district.  Relying principally
14    on Magistrate Judge Gorenstein's opinion in Erne Shipping v.
15    HBC Hamburg Bulk Carriers, plaintiff asserts that general
16    jurisdiction under New York law may be found only where a
17    defendant corporation's contacts with the district are
18    continuous and systematic, requiring inquiry into "whether the
19    company has an office in the state, whether it has any bank
20    accounts or other property in the state, whether it has a phone
21    listing in the state, whether it does public relations work
22    there, and whether it has individuals permanently located in
23    the state to promote its interests."  That's plaintiff's
                          Page 3

7979CEND.txt
24   memorandum at 9.  Applying these factors to the defendant,
25   plaintiff contends that WBC's contacts "taken as a whole are

7

7979CEND                    Decision
1    insufficient to establish a jurisdictional presence in New
2    York" thereby defeating WBC's motion to vacate the attachment
3    on the basis that WBC is not present in New York in the
4    jurisdictional sense.  That's also plaintiff's memorandum at 10
5    and 11 and 13.
6             I reject this argument as inconsistent with the Second
7    Circuit's opinion in Seawind.  Like Judge Lynch in Express Sea
8    Transport Corp. v. Novel Commodities SA, 06 CV 2404, cited in
9    the defendants' brief, I reiterate that the key inquiry
10   relating to the jurisdictional prong of the Seawind test is
11   whether the defendant is amenable to suit within the district.
12   Although such amenability may at times be demonstrated tacitly
13   through the existence of continuous and systematic contacts
14   such as those described by plaintiff, such contacts are by no
15   means the only method of demonstrating a defendant's
16   jurisdictional presence in the district.  In fact, the language
17   and context of Seawind suggests that inquiry into the
18   intra-district activities of the defendant is most relevant
19   perhaps as a default in the absence of more explicit
20   manifestations of jurisdictional acquiescence.  Here, there is
21   no dispute that the defendant is and was at all times relevant
22   to the attachment a registered foreign corporation within the
23   State of New York.  As such, defendant, under New York law, has
24   consented to jurisdiction in the courts of this state.  And I
25   cite New York Business Corporations Law 1304 through 1314.  The

8

7979CEND                    Decision
1    defendant, by the way, explicitly consented or rather conceded
2    as much at oral argument on Wednesday.
3             The suggestion that Rule B and the jurisdictional
4    prong of Seawind somehow require more than this so that they
5    would require the court to ignore defendants' explicit consent
6    to jurisdiction in this district in favor of a more cumbersome
7    and unwieldy balancing test of intra-district commercial
8    activity I believe flies in the face of common sense and is not
9    required by Seawind.
10            Having determined that defendant was both amenable to
11   suit in the district and readily available to accept service of
12   process in the district, I conclude the defendant meets both
13   prongs of the Seawind test.  Accordingly, I find the defendant
14   was, in fact, found in the district under Rule B and that the
15   June 5 attachment order must be vacated.  As a necessary
16   corollary, I also vacate Judge Karas' June 15 order in which he
17   approved the parties' stipulation to substitute a bond for the
18   attached funds.
19            Although defendants' motion also requested the
20   dismissal of the complaint in this matter, I believe that the
21   parties agreed at oral argument that there may be at least
22   potentially a basis for this action to continue even though the
23   attachment order has been vacated.  I leave that for the
24   plaintiff and plaintiff's counsel to consider, and I will grant
25   plaintiffs ten days in which to amend the complaint if they so

9

7979CEND.txt
7979CEND                    Decision
1  choose, ten days from today.
2         Now, as was brought out during the September 5 hearing
3  and in the written submissions made in connection with this
4  motion, the verified complaints and the supporting affirmation
5  of this case contained what I consider to be serious
6  misstatements of fact that to my mind require further comment
7  and action by the court, which brings me to the second portion
8  of my ruling, and I think requires a further discussion of the
9  facts leading up to the issuance of the June 5, 2007
10 attachment.
11        On June 5, 2007, plaintiff, proceeding ex parte,
12 presented to U.S. District Judge Kenneth M. Karas, a writ of
13 maritime attachment and garnishment and verified complaint.
14        They sought to attach more than fifteen million
15 dollars of the defendants' funds.  Accompanying the attachment
16 was an affirmation by counsel, Mr. Lyons.  And in the second
17 paragraph of that affirmation, which was signed by Mr. Lyons
18 under the penalty of perjury, the affirmation read as follows:
19 "Your affiant has attempted to locate the defendants, Western
20 Bulk Carriers KS, Western Bulk AS, and Western Bulk Carriers AS
21 within the district.  As part of the investigation, my office
22 has contacted the Division of Corporations of the New York
23 Department of State and found no records indicating that
24 defendants were either incorporated or licensed to do business
25 in the State of New York."  That's at paragraph 2 of the
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

10

7979CEND                    Decision
1  affirmation.
2         Pursuant to Supplemental Admiralty Rule B(1) of the
3  Federal Rules of Civil Procedure, Judge Karas signed
4  plaintiff's attachment.  Plaintiffs thereupon proceeded to
5  attach the defendants' funds and on June 15, 2007 the parties
6  entered into a stipulation to substitute a bond for the
7  attached funds.
8         In August, 2007, defendants requested a
9  post-deprivation hearing pursuant to Rule of Civil Procedure --
10 well, Supplemental Admiralty Rule E(4)(f).  The parties briefed
11 their positions.  And on September 5 of 2007 I held a hearing
12 on the defendants' application to vacate the attachment.  Among
13 other things, the defendants argued, as I noted before, that
14 the attachment should be vacated because the defendants could
15 be found in the district within the meaning of Supplemental
16 Rule B(1)(a).  Specifically, defendants argue that contrary to
17 the assertions set forth in Mr. Lyons' June 5 affirmation, they
18 had, in fact, been registered with the New York State
19 Department of Corporations to conduct business in New York as a
20 foreign limited partnership since June 22, 2005.
21        I'm citing the memorandum of law in support of the
22 defendants' motion to vacate the maritime attachment, 3, 4, and
23 page 10 through 15.
24        Defendants also noted that they had retained a
25 registered agent in New York to accept service of legal
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

11

7979CEND                    Decision
1  process.
2         In response to defendants' claims that they could be
3  found in the district, plaintiff offered a mea culpa -- that's
4  plaintiff's term, not mine -- acknowledging that it had made a
                         Page 5

7979CEND.txt

5  misstatement to the court in that it failed to disclose that
6  defendant was, in fact, registered to do business in the State
7  of New York and had a registered agent for the service of legal
8  process within the district.
9         And I'm quoting the memorandum of law in opposition to
10 the motion to vacate, that's plaintiff's memorandum of law at
11 6.
12        Insisting that the misstatement was at most a harmless
13 error, plaintiff attributed the misstatement in Mr. Lyons' ex
14 parte affirmation to a "clerical error" occasioned by
15 plaintiff's use of "a pro forma Rule B(1) affirmation in
16 support of the application for an attachment order" that
17 plaintiffs failed to "revise to properly reflect the results of
18 our investigation." That's Mr. Lyons' affirmation in support
19 of the opposition motion at paragraph 10.
20        I find that the facts surrounding plaintiff's
21 misstatements suggest otherwise and are highly troubling.  In
22 the first place, it should be noted that it was not until
23 August 16 of 2007, more than two months after the issuance of
24 an ex parte attachment order that totaled more than fifteen
25 million dollars, that plaintiff first notified the court that
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              12
7979CEND              Decision
1  its affirmation in support of the attachment was inaccurate.
2         Second, counsel's euphemistic characterization of the
3  misstatement as a clerical error seems wholly inconsistent with
4  the record developed before and during the September 5 oral
5  argument in this matter.  For example, in Mr. Lyons'
6  affirmation in opposition to defendants' motion to vacate the
7  attachment, he acknowledged that at the time the initial
8  affirmation was submitted to Judge Karas, "Plaintiff was, in
9  fact, aware that WBC was registered to do business in the State
10 of New York and had a registered agent for the service of
11 process." That's paragraph 10 of the affirmation of Mr. Lyons.
12        At oral argument Mr. Lyons reaffirmed this fact,
13 conceding that at the time he signed the affirmation presented
14 to Judge Karas, he was, in fact, aware that the defendants were
15 registered in New York and had an agent to accept legal process
16 in New York.
17        Indeed, Mr. Lyons went even further, stating that he
18 and his cocounsel had actually researched whether registration
19 to do business in New York and having an agent to accept
20 process was sufficient to be found within the district.  And he
21 did this research before he signed the affirmation accompanying
22 the attachment.  Counsel stated that it was their conclusion
23 that it was not sufficient to be found in the district.
24        In light of the knowledge and forethought apparently
25 expanded on this issue prior to plaintiff's submission of the
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                              13
7979CEND              Decision
1  affirmation in this matter, I find it all but inconceivable
2  that counsel could have signed an affirmation under penalty of
3  perjury asserting, as I noted before, that the affiant had
4  attempted to locate the defendants in the district and that as
5  part of the investigation counsel's office had contacted the
6  Division of Corporations of the New York Department of State
7  and found no records indicating that defendants were either
8  incorporated or licensed to do business in the State of New
9  York.
                        Page 6

7979CEND.txt

```
10        Indeed, the only two possible explanations that come
11   to mind for me are these:  Either counsel signed a crucial ex
12   parte affirmation without reading it in even the most cursory
13   fashion; or worse, counsel deliberately submitted an affidavit
14   which he knew to be false and materially misleading to the
15   court.  Although the latter conclusion is far more serious,
16   each is gravely troubling, particularly in the context of an ex
17   parte proceeding involving significant sums of money and
18   implicating important and fundamental due process rights.   In
19   any event, under no circumstances to my mind could the
20   misstatement at issue here be blindly dismissed as a clerical
21   error.
22        Equally disturbing to me is the fact that
23   notwithstanding plaintiff's mea culpa, plaintiff nevertheless
24   insists that the misstatement contained in the affirmation was
25   a harmless error and that the June 5 attachment would have
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                                              14

7979CEND                    Decision
```
 1   appropriately issued even if plaintiff had not misstated the
 2   facts about defendants' presence in the district.  Obviously,
 3   that is not a determination that plaintiff's counsel is
 4   entitled to make.  Moreover, plaintiff conceded at oral
 5   argument that the information omitted by plaintiff's counsel in
 6   the affirmation could have been determinative of whether a
 7   judge of this court would have signed the attachment.  In light
 8   of that concession, not to mention this court's prior ruling
 9   today, in which it, in fact, vacated the June 5 attachment
10   order on precisely those grounds, it seems safe to say that
11   counsel's confidence in the harmlessness of the misstatements
12   at issue was highly misplaced.  I would also suggest that the
13   facts presented here would arguably justify vacatur of the June
14   5 order as an exercise of the Court's equitable discretion
15   generally recognized by the Second Circuit in Aqua Stoli and
16   other maritime cases, though, as I mentioned before, it was not
17   necessary to reach that finding for purposes of the motion to
18   vacate.
19        Finally, I would note that if fifteen million dollar
20   ex parte maritime attachments have now become so routine, so
21   automatic, and so perfunctory as to render the supporting
22   affirmations mere pro forma documents not worthy of being read
23   before they are signed, or that misstatements of the sort at
24   issue here can be brushed aside as mere clerical errors that
25   are simply harmless in nature, then I must consider this entire
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                                              15

7979CEND                    Decision
```
 1   area of law may have gotten off the rails, to the detriment of
 2   the defendants and the court.
 3        Rule B is a powerful and in some ways unprecedented
 4   tool available to plaintiffs in maritime actions.  There are
 5   good reasons for it.  But, it is premised on the assurance that
 6   plaintiffs and their counsel will act with care and candor in
 7   ex parte proceedings with the court.  That clearly did not
 8   happen here.
 9        Be that as it may, I believe that the conduct of
10   counsel in this case requires further action by the court.
11   Regardless of whether plaintiff's counsel was careless or
12   deliberately misled the court, the result was the same.  The
13   court issued an ex parte order attaching more than fifteen
14   million dollars of defendants' assets based on the affirmation
```
Page 7

7979CEND.txt
15  which plaintiff's counsel now admits was false, at least in
16  part.
17          In light of these facts, plaintiff is hereby ordered
18  to show cause why the court should not impose sanctions,
19  payable to the court, on plaintiff's counsel under Federal Rule
20  of Civil Procedure 11(b) for submitting an affirmation in the
21  court, Judge Karas in this case, that plaintiff's counsel knew
22  or should have known was materially false, at least in part.
23  And I would cite the Federal Rule of Civil Procedure
24  11(c)(1)(B) and also the Second Circuit's ruling in Baffa v.
25  Donaldson, Lufkin & Jenrette Securities Corp., at 222 F.3d 52,
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                                16

7979CEND              Decision
1   at 57, Second Circuit, 2000.
2          Plaintiff's memorandum of law is due no later than
3   September 28, 2007. That's two weeks from today.
4          Defendants' counsel, Mr. Lennon, is invited, but not
5   required, to submit its own memorandum on or before that date.
6          As a concluding comment, let me just say, I derive no
7   satisfaction in issuing an order to show cause in this case,
8   and I don't do it lightly.
9          Mr. Lyons, I don't know you. I met you on Wednesday
10  for the first time. You struck me as a decent man and a very
11  capable lawyer. I was impressed by the quality of the papers
12  you submitted. I was impressed by the quality and
13  sophistication of the legal arguments that you made at the
14  hearing. I want to assure you, I have not made up my mind with
15  regard to the Rule 11 sanctions issue. I'm keeping an open
16  mind and I intend to read your submissions very carefully and
17  with great attention. I have to admit, however, that I find
18  that the affirmation that was submitted in support of the
19  June 5 attachment order to have been, at best, so careless and
20  so negligent as to border on an abdication of your duties as an
21  officer of the court.
22          As I just mentioned, that is arguably the best gloss
23  one can put on it. But under these circumstances, I feel I
24  have no choice but to issue this order to show cause and
25  consider the Rule 11 sanctions.
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                                17

7979CEND              Decision
1          Again, I intend to keep an open mind. I really do
2   hope you'll persuade me that they are not warranted here, but I
3   think on these facts and on this record I have no choice.
4          That's all I have to say. Unless there are other
5   matters we need to cover, we are adjourned.
6          MR. LENNON:  Your Honor, I'd just like to add a couple
7   of comments about the second portion of your decision on the
8   order to show cause. And I can only say, based on my
9   relationship with Mr. Lyons over many, many years, that this is
10  completely an out-of-character incident for him. We've had
11  countless, countless cases together. And when it came to light
12  that this affidavit was incorrect, which only came to my
13  attention on the 10th of August, which is the first date that
14  we actually attempted to file the motion, I was surprised. And
15  I can tell from you speaking with Mr. Lyons that he, at that
16  time when he first realized the mistake himself.
17          I'm not offering that as an excuse. I take fully and
18  seriously the comments you made about the impact of that
19  affidavit in terms of a lawyer's obligations.
                           Page 8

7979CEND.txt

20    But I do want to add those comments to the court in
21  terms of your consideration of the order to show cause because
22  this is not, to my knowledge and my experience with Mr. Lyons,
23  in keeping with his character and reputation as a lawyer in
24  this bar.
25          THE COURT:  I appreciate that, and I certainly credit
            SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                                18

7979CEND                  Decision
1   it.  And as I said, I haven't made up my mind on this.  And
2   this is, obviously, not personal because my own observations of
3   Mr. Lyons were very positive.  But I'm troubled at a state of
4   affairs where an affidavit like that gets presented to a judge
5   on what is not a small matter.  This is not a certificate of
6   service demonstrating that a brief was served on an opposing
7   party or that somebody received an innocuous document.  This is
8   a fifteen million dollar attachment that in effect was in place
9   for three months, in an ex parte proceeding where the judge is
10  relying on the statement of counsel in the affirmation in
11  making a determination of an attachment.  It is a serious,
12  serious matter.  And so, I just think I have an obligation to
13  follow up along the lines I've suggested.
14          MR. LENNON:  I'm not disagreeing with your Honor.  In
15  fact, some of those comments are arguments that we made in our
16  papers as well.  So I appreciate that.
17          I just wanted to share my thoughts about the situation
18  before the order to show cause comes on for decision.
19          THE COURT:  Thank you, Mr. Lennon.  I appreciate that.
20          Mr. Lyons, you'll have an opportunity to think about
21  this and submit something in writing.  But, I do want to hear
22  from you if you want to be heard.
23          MR. LYONS:  No.  I have no comments at this time, your
24  Honor.  I'll save that for the order to show cause.
25          THE COURT:  Thank you.  Anything else we need to cover
            SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                                19

7979CEND                  Decision
1   today, gentlemen?
2           MR. LENNON:  Your Honor, I think the only point of
3   clarification I would request with respect to the first part of
4   the court's decision is with regard to return of the bond.
5           One of the things we did request as part of the motion
6   to vacate is that if the court did grant the motion, that the
7   bond be ordered to be returned, which I think is a necessary
8   part of the process.
9           THE COURT:  Yes.  I think that's right.  And I think I
10  alluded to that in suggesting that as a corollary to the
11  vacatur of the attachment order, I would also be vacating the
12  June 15 order of Judge Karas.  But I think I should be more
13  explicit.  So I thank you for that.
14          Yes.  I would order that the bond be returned -- or
15  how do you style it?
16          MR. LENNON:  Just the return of the bond.
17          THE COURT:  Okay.  Mr. Lyons, do you object to that?
18          MR. LYONS:  The only requirement, your Honor, there's
19  a ten-day automatic stay in respect of your decision and
20  vacation of the attachment.  That gives us an opportunity to
21  decide whether we want to appeal.  We have the right to appeal
22  your decision.
23          THE COURT:  Understood.
24          MR. LYONS:  So there's an automatic ten-day stay.  And
                            Page 9

7979CEND.txt
25    then there's an opportunity, and we probably will file a motion

20

7979CEND                    Decision
1    to stay the -- your decision pending appeal.
2            So, I would ask that we not have to return the bond
3    until after at least the ten-day automatic stay.
4            THE COURT:  I don't think we've discussed really this,
5    but Mr. Lennon you want to respond to that?
6            MR. LENNON:  I have no problem with that position.
7    I've taken that same position myself.
8            THE COURT:  Understood.  All right.
9            And that should be reflected in the order of the
10   court.
11           Anything else we need to cover today gentlemen?
12           MR. LENNON:  No.  Thank you, your Honor.
13           MR. LYONS:  No.  Thanks, your Honor.
14           THE COURT:  Thank you all very much.
15           You know, I'm talking to Mr. Hernandez, and he
16   suggests maybe I should invite the parties or Mr. Lennon to
17   submit a proposed order for the return of the bond that I can
18   then execute.
19           MR. LENNON:  I will do that, your Honor.  Is it okay
20   if I submit that by fax?
21           THE COURT:  That's fine.  Yes.
22           MR. LENNON:  I'll get the fax number at the end of the
23   hearing.
24           (Adjourned)
25