FREEHILL HOGAN & MAHAR LLP
Attorneys for the Plaintiff
SAN JUAN NAVIGATION (SINGAPORE) PTE LTD
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Eric E. Lenck (EL4547)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SAN JUAN NAVIGATION (SINGAPORE) PTE LTD**<br><br>      **Plaintiff,**<br><br>   **-against-**<br><br>**TRANS POWER CO LTD,**<br><br>      **Defendant.** | **08-CV-1562 (RMB)** |

**DECLARATION OF GERARD ANTHONY HOPKINS UNDER ENGLISH LAW**

I, GERARD ANTHONY HOPKINS, pursuant to Title 28, § 1746, declare under penalty of perjury:-

1.  I am a partner in the firm of English solicitors, MFB Solicitors, with offices at 45 Moorfields, London EC2Y 9AE, England. I was admitted as a Solicitor of the Supreme Court of England & Wales in November 1991.

2.  I submit this Declaration of English law based upon my personal knowledge of the claims of San Juan Navigation (Singapore) Pte Ltd ("San Juan") as stated in (i) the Second Amended Verified Complaint in this matter dated 28 March 2008: and (ii) my firm's representation of San Juan in relation to the disputes and the arbitrations described below.

279128

- 2 -

## A.  CONTRACTUAL BACKGROUND

3.     On or around June 13, 2007, San Juan entered into a maritime contract of a Charter Party with the Disponent Owners, Hanjin Shipping Co Ltd, ("Hanjin") to charter the MV "FANY" for a period from June 20, 2007.

4.     On or about January 8, 2008 San Juan in their capacity as Time Charterer of the MV "FANY" sub-chartered the MV "FANY" under a maritime contract of Charter Party with Trans Power Co Ltd ("Trans Power") under which Trans Power agreed to charter the vessel on a time chartered trip for a duration of about 25 days for the carriage of a cargo of nickel ore in bulk to be loaded at Waigeo Anchorage, Indonesia and discharged at Yangpu, China.

5.     Pausing briefly here, it is suggested by Mr. Woo (paragraph 6 of his declaration) and by Mr. Phillips (paragraph 1.3.2 of his opinion) that they have not seen copies of the Charter Parties between the Head Owners (Chang Sung) and Hanjin and Hanjin and San Juan. This comment is presumably made to give the impression that they are unsure if the Charter Party terms down the chain of Charter Parties are back-to-back.

6.     However, the Hanjin Charter Party [admittedly with the hire rate and names blanked out] formed the basis of the Charter Party with Trans Power. The email recap of the Trans Power Charter Party stating *"OTHERWISE AS PER OWS BTBCP MV FANY/SAN JUAN C/P WITH LOGICAL AMENDMENTS EXCEPT FOLL ALTERATIONS...".* The recap and the Hanjin Charter Party are exhibited at Exhibit A of the San Juan Second Amended Verified Complaint dated 28 March. Accordingly, Trans Power are fully aware of the contractual terms up the chain of Charter Parties and can see that they are back-to-back in relation to the provisions relevant to the crane and hull damage discussed in more detail below.

279128

- 3 -

**B.  THE CLAIMS / DISPUTES**

7.      As detailed in the Second Amended Verified Complaint, the jib and grab of
        the vessel's No.3 crane sustained serious damage as a result of stevedore
        negligence and/or breach of the safe berth/safe anchorage warranty in the
        Charter Party.

8.      Additionally, during the course of the loading operations at Waigeo anchorage
        the vessel's hull sustained serious damage due to contact with barges used to
        bring the cargo alongside for loading at the anchorage.  The damage being
        sustained as result of loading operations from the barges being conducted by
        Trans Power's stevedores; the loading operations being undertaken during
        periods of poor weather / sea conditions and high swells and the barges being
        without sufficient fenders in breach of the safe berth/safe anchorage warranty
        and/or Clause 46 in the Charter Party.

9.      Furthermore, damage was sustained by the grabs of the No.2 and No.4 cranes
        and also damage to the handrails and certain junction boxes on deck and the
        hatch covers as a result of stevedore negligence.

**C.  THE REPAIRS TO THE DAMAGE TO THE VESSEL AND EQUIPMENT**

10.     The Vessel completed discharge at Yangpu, China on 22 February 2008.
        Trans Power purported to redeliver the Vessel upon dropping outward pilot at
        Yangpu and failed to make any arrangements for the carrying out of the
        repairs to the damage to the Crane No. 3 or the Vessel's hull and equipment.

11.     Thereafter, the Vessel immediately proceeded to Huangpu, China to undertake
        permanent repairs to the damage to the No.3 crane and the grabs of cranes
        No.2 and No.4 and the extensive hull damage.  The vessel arrived at Guishan
        Anchorage at 17:54 hours local time on February 23, 2008 and was scheduled
        to wait about one day for the tide before proceeding to the repair berth at
        Huangpu. The Vessel delayed by dense fog and eventually went alongside the
        repair berth at Huangpu at 17:00 hours local time on February 26, 2008.

279128

- 4 -

12.    The Vessel underwent repairs to the No.3 crane jib and the extensive damage to hull plating, which were completed and the Vessel sailed on March 11 2008. Thus the repair took a total of 14 days. The Head Owners have now indicated that they are claiming for the costs of the crane and hull damage repairs (see: Exhibit A) and associated loss of time / repairs. The total amount claimed including interest and costs is US$3,804,630.01.

## D. ARBITRATION PROCEEDINGS

13.    The Head Owners and likewise Hanjin Shipping Co indicated on January 15, 2008 the intention to hold San Juan and their Sub-Charterers liable for all losses, damages and expenses resulting from the crane damage.    These indications can be seen in Exhibit B.

14.    The Head Owners and Hanjin have likewise given various notices of the intention to hold San Juan and their Sub-Charterers fully liable and responsible for all damages, losses and expenses resulting from the hull and grab damage (see Exhibit C).

15.    San Juan have in turn given notice to Trans Power of their intention to hold Trans Power fully responsible for the hull and crane damages sustained during loading at Waigeo Anchorage.

16.    The Head Owners have indicated to me in correspondence the intention to pursue all claims arising from the damage sustained to the vessel at Waigeo Anchorage (see Exhibit D).

17.    Although San Juan was in a position to commence London arbitration proceedings against Trans Power in respect of their accrued claims for damage there were certain practical considerations that needed to be borne in mind which reflected their position in the middle of the chain of Charter Parties. The most important of these was the need to avoid inconsistent findings in the arbitration proceedings with Hanjin and the arbitration proceedings under the Sub-Charter Party with Trans Power. With this firmly in mind, my firm wrote

279128

- 5 -

to Head Owners and to Trans Power inviting them to commence London arbitration proceedings without delay (see Exhibit E).

18.    On February 29, 2008 Hanjin commenced London arbitration proceedings against San Juan.

19.    San Juan commenced London arbitration proceedings against Trans Power on February 29, 2008 and on March 3, 2008 we received Trans Power's written notification of the appointment of their arbitrator (see Exhibit F).

20.    Whilst it is correct that San Juan have not yet served Claim Submissions in the arbitration, this is not unsurprising and nothing should be read into this fact. The amount of the Head Owners claim for the hull damage has only relatively recently become known. It would also be highly unusual in a case of this nature for Claim Submissions to be served quite so soon – the arbitration proceedings having only been commenced shortly over a month ago. Most importantly however, San Juan is in the middle of the Charter Party chain and for the reasons mentioned in paragraph 17 above, it would be expected that the Claim submissions would be served by the Head Owners, as the claimant, on Hanjin and the submissions would then get passed down the chain of Charter Party arbitrations. At this moment in time the Head Owners have not served their Claim Submissions and hence San Juan have not served their submission in the arbitration with Trans Power.

**E. LIEN CLAIMS**

21.    Head Owners served a notice of lien over sub-freights on Trans Power and the Shippers/Receivers demanding payment of US$376,520.59 in respect of hire that had not been paid by Hanjin.

22.    It is not disputed that as a matter of English law a party served with a valid notice of lien must pay the sums claimed/liened to the party serving the lien notice and if they were to pay another party they could face liability to pay the hire twice.

279128

- 6 -

23.    What Trans Power's solicitor omits to mention is that before the lien notice was served Trans Power had already defaulted on the payment of hire installment due on 30 January to San Juan with the result that a substantial balance of hire of US$556,450.80 was already due.

24.    Trans Power made no effort before the Rule B was obtained or for that matter subsequently to pay the sums liened to Head Owners and have in fact sought to use Head Owners' lien as a convenient excuse not to pay any party. This situation persists.

25.    The fact however remains that a balance of hire remained due to San Juan over and above the amount covered by the Head Owners' notice of lien.

**F.THE RELEVANT CHARTER PARTY TERMS**

26.    I would pause here to briefly highlight the Charter Party terms under the Trans Power Charter Party since these are germane to the understanding of the legal position.

27.    The starting point is that by virtue of clause 48, the Charter Party is subject to English law and disputes are to be determined in London arbitration.

28.    The Charter Party at lines 14-17 provides:-

> *"Said Charterers agree to hire the said vessel ... trading via safe port(s), safe berth(s), safe anchorage(s) ..."*

There is a further provision under clause 6 of the Charter Party which provides:-

> *"That the cargo or cargoes to be laden and/or discharged in any safe dock or at any safe wharf or in safe port or elsewhere or safe place in safe port or elsewhere that the Charterers or their agents may direct ... provided where it is customary for similar size vessels ..."*

Thus by virtue of these provisions there is a clear warranty that the vessel will only trade between safe ports and anchorages, etc.

279128

- 7 -

29.    It is further provided at clause 8

"...and Charterers are to load, stow...cargo at their expense.."

Accordingly, Trans Power was responsible for the loading operations under the Charter Party and the employment of the stevedores and crane drivers for the loading operations.

30.    Clause 46 of the Charter Party states as follows:-

**Stevedore Damage**

"Should any damages be caused to the vessel or her fittings by the Charterers or their stevedores...

The Charterers shall have the liberty to redeliver the vessel without repairing the damage for which the Charterers were responsible as long as the damages do not affect the vessel's seaworthiness or the proper working of the vessel and/or her equipment that the Charterers undertake to reimburse costs of repairs against production of repair bills by repairers of stockyard unless otherwise agreed. Any stevedore damage affecting the vessel's seaworthiness or the proper working of the vessel and/or her equipment, shall be repaired without delay to the vessel after each occurrence in the Charterers' time, risk and shall be paid for by the Charterers before sailing from the port".

31.    Thus there is a clear statement to the effect that any damage by the stevedores to the vessel's hull or equipment during the course of loading or discharging operations must be repaired by Trans Power at their expense and in their time.

32.    Clause 46 needs to be read alongside the provisions of clause 8 highlighted above which together make perfectly clear that loading operations and the employment of the stevedores were Trans Power's responsibility and so it naturally follows that damage caused by stevedores is Trans Power's responsibility and clause 46 reinforces this and deals with the relevant liability and procedure. The breach of Clauses 8 and 46 gives rise to a breach of

279128

- 8 -

contract claim and do not give rise to an "*indemnity claim*" as Mr. Woo in paragraph 22 of his Second Declaration erroneously tries to suggest.

33.    The final provision of the Charter Party to be highlighted is clause 4/ Lines 70-75 which provides

> "*That the Charterers shall pay for use and hire of the said Vessel ... commencing on and from the time of delivery ... to continue until the time of day of redelivery ... in good order and condition ...*"

This provision making clear that Trans Power has an obligation to redeliver the Vessel in good order and condition, and, as such, this reinforces the above-mentioned provisions relating to stevedore damage and damage during loading from barges.

34.    It is San Juan's case that Trans Power in breach of their contractual warranty in lines 14 – 17 / clause 6 that the Vessel would trade to safe ports / anchorages ordered the Vessel to load from barges at Waigeo anchorage and the Vessel suffered damage as a result. Moreover, Trans Power in breach of clause 46 failed to carry out before redelivery the repairs to the damage to the Vessel caused by the stevedores during loading operations.  The essential point to note is that these are breach of contract claims.

## G.  THE RELEASE OF THE HIRE

35.    Having defaulted on the hire due on 30 January Trans Power initially defaulted on the next hire installment that fell due on 14 February and then subsequently arranged on 18 February for payment of a lesser sum of US$182,113.39 (reflecting what Trans Power erroneously asserted was the hire due up to the anticipated date of redelivery). This payment subsequently became caught by the Rule B attachment.

36.    The amended Rule B attachment order was obtained for US$556,540.80 of hire that was due and owing up to 14 February and a further sum of hire of

279128

- 9 -

US$260,549 that was due and owing for the period from 14 February up to the then anticipated date of redelivery of 21 February.

37.    The Vessel was actually redelivered by Trans Power on 22 February and hence further hire of US$85,345 was owed. Trans Power belatedly made arrangements to remit this amount to San Juan on 26 February.

38.    It was agreed between the parties that the two payments of hire of US$182,113.39 and US$85,345 would be released from the Rule B attachment and there was a corresponding reduction in the amount restrained in respect of interest.

39.    I believe San Juan's attorneys proposed on or about 7 March 2008, that, as a result of the matters mentioned in paragraph 38 above, there would be a reduction of US$10,000 in the amount restrained in respect of legal costs. The US$10,000 figure reflecting that the legal costs to be incurred in fighting the dispute would not be appreciably reduced by virtue of the reduction of the amount restained in respect of the <u>unpaid hire</u>. It is accordingly incorrect of Mr. Woo to assert at paragraph 15 of his Second Declaration that San Juan refused to reduce its costs despite the consensual reduction of the hire element of the claim. However, I think possibly because of the fact that there were different attorneys handling the file the Revised Amended Verified Complaint in error failed to record the consensual reduction.

40.    There however still remains a <u>balance of hire</u> of US$ 588,480.64 still due and owing the San Juan and the subject of the Rule B attachment order.

## H. THE COSTS FIGURE

41.    San Juan has indicated that the likely costs in connection with the dispute will be in the region of US$475,000. The reasonableness of this costs estimate has been endorsed by the Head Owners' solicitors in connection with the Head Owners' demand for security -- see further comments in paragraph 63 below.

279128

- 10 -

42.     The costs figure has been reduced to US$465,000 by virtue of the agreement mentioned paragraph 39 above. I do not understand Trans Power to be challenging this figure. Rather they seek a reduction in the event that the claims are vacated or reduced

43.     Mr. Woo makes the point in paragraph 9 of his Second Declaration that he would attribute 75% of the costs for which security is sought by San Juan as attributable to the crane damage claim. I do not know how Mr. Woo has arrived at this percentage or the logic behind his approach. It is simply unsupported and not explained.

## I. ENGLISH LAW AS IT RELATES TO AN ACCRUAL OF A CAUSE OF ACTION FOR A BREACH OF CONTRACT

44.     As it is clear from the preceding paragraphs, San Juan has claims against Trans Power for breaches of lines 14-17, clause 6 and clause 46 of the Charter Party for the crane and hull damage. These claims are, as a matter of English law, categorized as direct claims for breach of contract.

45.     As the Complaints filed in this action demonstrate, San Juan's claims are not based on causes of action for indemnity, as erroneously alleged by Trans Power. Any reliance by Trans Power upon English law concerning express or implied indemnities under a contract (e.g. Reynolds v. Doyle (1849) 1 M & G 753) is misguided and irrelevant.

46.     A claim for damages for the breach of a contract is to be distinguished from a claim for the performance of a contract, such as a claim for a debt. A claim for a debt is not founded upon breach by the debtors; it is a claim for a debt and not a claim for damages. Likewise, claims for indemnities must be distinguished into two types. The first is a claim for damages for breach in order to *indemnify* the Claimant for a loss suffered. This remains a claim for damages for breach. This is to be distinguished from the second type which is a claim based upon a contractual promise of indemnity which is not founded

279128

- 11 -

on an allegation of breach. This second category is closer in analysis to that of a debt.

47.    It is essential for an understanding of the accrual of the cause of action under English law to appreciate this distinction between a party to a contract breaching a contractual term and the situation where it is the claim of another party (outside the contract) that results in a claim between the parties to the contract. The former being a claim for a breach of contract and the latter giving rise to the enforcement of a contractual promise to indemnify.

48.    Under English law, the general rule in contract is that the cause of action for **breach of contract** accrues, when the breach of contract takes place and not when the damage is suffered. See Gould -v- Johnson (1702) 2 SALK.422; Battley -v- Faulkner [1820] 3B. & ALD. 288; Short -v- McCarthy (1820) 3B. & ALD. 626; Howell -v- Young (1826) 5B. & C. 259; Walker -v- Milner (1866) 4F. & F. 745; Gibbs -v- Guild (1881) 8Q.B.D. 296, 301. Differently stated, San Juan's causes of action based upon breaches of the Charter Party with Trans Power will accrue upon the date of those breaches and will not depend upon the final resolution of the underlying claims brought by Hanjin against San Juan.

49.    This principle of English law is clearly stated in the leading treatise Chitty on Contract Volume 1 28-032, see Exhibit G. It is important to appreciate that, as a matter of English law, where the defendant is liable for breach of contract, the claimant is in general entitled to nominal damages, although no actual damage is proved. See Chitty on Contract Volume 1 26-008.

50.    In contrast, where there is a claim based on the contractual promise to indemnify the cause of action will only accrue when the liability of the party seeking the indemnity is established by judgment or arbitration award or binding settlement: see paragraph 28-049 of Chitty on Contract Volume 1 [Exhibit G]. This general rule is subject to the construction of the express term of the contract give rise to the indemnity, which could have the effect of advancing or deferring the accrual of the cause of action.

279128

- 12 -

51.    The focus of much of the discussion about the accrual of the cause of action has arisen in the context of cargo claims where the contractual carrier under a bill of lading is facing a cargo claim from the bill of lading holder and the contractual carrier has, in turn, pursued a claim or intimated the intention to pursue a claim against their contractual partner under the relevant Charter Party such a claim either arising under an indemnity (express or implied) or an express agreement to apportion liabilities for cargo claims (e.g. the Inter-Club Agreement). In the case of the Inter-Club Agreement there is a condition precedent (clause (4)(c)) requiring the cargo claim to have been properly settled and paid before the contractual apportionment applies and the accrual of the right of action only occurs upon breach by the other party to the Charter Party not paying their apportioned share of the cargo claim.

52.    The crucial point in these cargo claims is, of course, that unless and until the cargo claimant establishes the contractual carrier's liability for the breach of the bill of lading contract by way of a judgment or arbitration award or binding settlement, the contractual carrier's cause of action if <u>based on an indemnity</u> (as opposed to a claim based on a breach of contract) does not accrue.

53.    The <u>Caroline P [1984] 2 LR 466</u> [see Exhibit H] is often cited in connection with disputes about the accrual of the right of action under English law. The first point that needs to be made is that this decision concerns an attempt by a Ship Owner to recover from their Charterers under a Charter Party in respect of a cargo claim made against them in Iraqi Courts. The English Court held that the Ship Owner was entitled to an indemnity from the Charterers for the cargo claim; the indemnity to be implied as a matter of common law.  As stated above, San Juan's causes of action are based on direct breaches of the San Juan-Trans Power charter party; they are not "indemnity claims."

54.    The second point about the <u>Caroline P</u> that needs to be amplified is that it primarily concerns the effect of time bars or limitation of action under English

279128

- 13 -

law depending on the manner in which a claim is presented. Trans Power seek to ignore the clear dicta of the Caroline P in this regard. As Mr. Justice Neill expressly recognised (at 475R), different claims may be pursued by a party at the same time:

> "Furthermore, it appears that where a person is entitled to rely on an implied indemnity he can make a claim on such an indemnity in addition to making a claim based on some express provision of his contract with the indemnifier or (semble) a claim for damages for a breach of contract."

In the Caroline P [1984] 2 LR 466 the claim by the Ship Owner was presented in two ways. The first was a claim for breach of contract. In fact, Mr. Justice Neill (at 475R) properly recognised the validity under English law of presenting the claim as such:

> "As a claim on a breach of an implied term of the charter-party, the breach consisting in the presentation of the bills of lading for signature. On this basis the cause of action arose at the moment of the breach."

This claim based on breach of contract was time barred because six years (the relevant period under Section 5 of the Limitation Act 1980) from the accrual of the cause of action had elapsed.

55.    The second was a claim for an indemnity on the cargo claim implied as a matter of common law. This claim was not time barred because the English Court decided that the time for the accrual of the Ship Owner's cause of action for an indemnity against the Time Charterers arose at the earliest when the liability of the Ship Owners for the cargo claims had been ascertained by the Iraqi Courts. This is of course in accordance with the legal principles that are identified in paragraph 50 above.

56.    The comments of Neill, J in column 2 on page 474 of Caroline P [1984] 2 LR have regrettably given rise to some confusion in relation to the accrual of a cause of action. In column 2 on page 474, Neill, J identifies three broad categorizations of claims where party who has become liable to another party

279128

- 14 -

(outside the contract) can seek redress against their contractual partner. The first category is under contract and the second and third category which respectively arise under an express contractual indemnity and a general implied indemnity under the common law.

57.   The crucial point to understand from the comments of Neill, J is that the accrual of the cause of action under the first category (breach of contract) arises on the date of breach of contract and for the second and third category (express or implied indemnity) the accrual of the cause of action arises when liability to the other party has been established or ascertained. This conclusion is amplified in sub-paragraphs (a) – (c) of column 2 on page 475 where Neill, J observes that the Ship Owners had a claim for breach of an implied term of the contract (the accrual of action arising on the breach by presentation of the bills of lading) and additionally a claim for an indemnity.

58.   It is unclear exactly what point is being made by Trans Power's English solicitor in paragraph 21 of his declaration when commenting on the approach of the English Commercial Court. The pleaded formulation of the claim is highly relevant. The **Caroline P** is a clear example of this approach. In that case the claim in contract was time-barred and hence the Owners' need in that case to plead its claim as one for an indemnity.

59.   The claims of San Juan are all claims for a breach of contract that has already occurred [i.e. breach of the safe anchorage warranty or damage by stevedores] so the <u>cause of action</u> for those breaches has already accrued and thus are "ripe" even if the precise quantum of the damages remains to be decided in the related arbitration proceedings up the chain of Charter Parties. I am supported in these views by the expert opinion of Mr. Timothy Young Q.C., an English barrister and Queen's Counsel. A copy of his opinion and his curriculum vitae can be seen at Exhibit I.

- 15 -

**J. ENGLISH LAW AS IT RELATES TO THE ENTITLEMENT TO SECURITY FOR A BREACH OF CONTRACT**

60.     Mr. Woo in his Second Declaration (see paragraphs 22 – 27) and Mr. Phillips seek to develop the erroneous argument that San Juan would not, as a matter of English law, be entitled to security because San Juan's claim for breach of contract cannot give rise to a substantial monetary award.

61.     Leaving aside that it is implicit in such an argument that Trans Power are accepting that San Juan's claim is for a breach of contract (see: Mr Phillip paragraph 1.5.1), their argument is without legal merit as a matter of English law for the reasons Mr. Young Q.C. makes clear in paragraphs 12 onwards of his opinion.

62.     Crucially, as Mr. Young Q.C explains in paragraph 21 of his opinion, the English Court, when faced with an application for security in a claim similar to San Juan's, would order security based on the claimants' assessment of the likely claim against him plus interest and costs and Mr. Woo's assertion in paragraph 27 of his Second Declaration is, with respect, incorrect on this point.

**K. SECURITY UP THE CHAIN OF CHARTER PARTIES**

63.     The Head Owners (Chang Sung) have provided all of the parties (including Trans Power) with a breakdown of their claims for their losses arising from the breaches of Charter Party giving rise to damage to the crane and the vessel's hull – see their message of 20 March 2008 (Exhibit A) – and have demanded the provision of security of US$3,804,630.01. This figure included US$475,000 for legal/expert fees. Head Owners' solicitors indicating in their message "...*we would agree with San Juan's own estimate of US$475,000 for legal/expert costs is reasonable...*".

64.     These claim figures were revised on 4 April 2008 (Exhibit J) and have increased by a further US$10,921.57 (Note that this increased figure is not currently reflected in San Juan's Second Amended Verified Complaint and

279128

- 16 -

near enough balances the earlier error in relation to the consensual costs reduction) and they have demanded security from Hanjin of US$3,815,000 to be provided by 21 April 2008.

65.    Hanjin's solicitors have advised me that that they will be providing this security to Head Owners in the form of a letter of undertaking to be given by Hanjin's P&I Club, Britannia, and that this should be given early next week.

66.    Hanjin have, in turn, demanded security from San Juan and San Juan have already agreed in principle to provide security to Hanjin in the amount of US$3,993,678.46 in the form of a letter of undertaking from their P&I Club, the West of England. The wording of West of England letter of undertaking is currently being finalized and will be provided to Hanjin early next week when the relevant director of the Club returns to their office (Exhibit J)

67.    So it can be seen that all of the parties in the chain of Charter Parties (with the exception of Trans Power) recognize and accept that there is an entitlement to security for the claims and in the process of providing such security.

68.    In summing up, for the reasons indicated,

(a) San Juan's claim against Trans Power is a claim for breach of a maritime contract in a Charter Party.

(b) This claim for breach of contract or breach of Charter Party under English law accrues upon breach and this has already accrued and is not a mere abstraction or dependent upon a claim by another party.

(c) Moreover, Head Owners and Hanjin have made plain that they have suffered real expenses and loss of time repairing the Vessel and have confirmed their intention to claim against San Juan and London arbitration proceedings have been commenced in respect of these claims.

(d) Thus both legally and factually the San Juan's claims have without doubt accrued.

279128

- 17 -

    (e) Trans Power's solicitor's assertion than San Juan's claims are by way of an indemnity is with respect legally incorrect and seeks to mis-categorize San Juan's claims.

    (f) Trans Power's solicitor's assertion that San Juan has no entitlement to security for the claims against them is legally incorrect and security would, as a matter of English law, be ordered.

    (g) With the exception of Trans Power, all of the other parties in the chain of Charter Parties recognize and accept that there is an entitlement to security for the claims and are in the process of providing security and San Juan will be providing substantial security to Hanjin next week.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

DATED April 18, 2008

at London, England.

*Gerard Hopkins*

**GERARD ANTHONY HOPKINS**

279128

# EXHIBIT "A"

**Gerard Hopkins**

| | |
|---|---|
| **From:** | Bentham, Sonja [SBentham@ReedSmith.com] on behalf of Andrews, Alex T. [AAndrews@ReedSmith.com] |
| **Sent:** | 20 March 2008 15:10 |
| **To:** | linos.choo@dlapiper.com |
| **Cc:** | Gerard Hopkins; nicholas-woo@birketts.co.uk; Andrews, Alex T. |
| **Subject:** | "FANY" |
| **Importance:** | High |
| **Attachments:** | 20080320143859266.pdf; 20080320143922437.pdf; 20080320143938532.pdf |

<<20080320143859266.pdf>>          <<20080320143922437.pdf>>
<<20080320143938532.pdf>>


We write to set out clients' claim as presently quantified in this matter.

The claim breaks down as follows:-

1.     Balance due on final hire account - US$302,121.35 in accordance with the attached final hire statement marked "A".

2.     Cost of drydocking for hull damage repairs - US$1,269,518.49 in accordance with the attached invoice breakdown marked "B".

3.     Time and bunker consumption in respect of those repairs:-

    0820 GMT on 22.2 to 0924 on 11.3 = 18.04444 days @ US$55,000 per day (market rate) = US$992,444.20.

    Bunker consumption IFO 60.32 mt x $350 PMT = $21,112

    MDO 7.2 mt x $65 PMT = $4,680

    Total bunker consumption = $25,792.

4.     Cost of crane repairs - US$95,714.61 in accordance with the attached invoice marked "C". Please note that we are taking instructions from our clients on whether the items SE and stores are referable to the crane damage and our clients' position is reserved in that respect.

5.     Cost of jib bearing - US$2,531 in accordance with the attached invoice marked "D".

6.     Cost of jib drawing - US$3,451 in accordance with the attached quotation marked "E".

7.     Two wire ropes for hoisting, luffing - estimated US$10,000. Please note that this item may represent part or all of the SE/stores items on which we are seeking instructions from our clients.

8.     Grab spare parts - US$19,460 in accordance with the attached invoice marked "F".

9.   Class Occasional surveys - estimated US$20,000.

This statement of claim is expressly without prejudice to any further claims that our clients may advance.  However, by our calculation the claims presently put forward total US$2,744,032.65.

Adding interest compounded at three monthly rests at 6.5% per annum for three years brings the total claim to US$3,329,630.01.

In addition for the moment we would agree that San Juan's own estimate of US$475,000 for lawyer/expert fees is reasonable although again our clients reserve their right to re-estimate the same at a later stage.

It follows that our clients seek security for a total of US$3,804,630.01.  We are instructed that unless satisfactory security is provided within 14 days we may be instructed to take steps to secure our clients' claim without further reference to you.

We look forward to hearing from you.

Regards.

**Alex Andrews**
**Partner**
AAndrews@reedsmith.com
+44 (0) 20 7772 5850

Reed Smith Richards Butler LLP
Beaufort House
15 St. Botolph Street
London EC3A 7EE
DX 1066 City / DX18 London
T: +44 (0) 20 7247 6555
F: +44 (0) 20 7247 5091
www.reedsmith.com

Reed Smith Richards Butler LLP is a limited liability partnership registered in England (registered no. OC303620) with its registered office at Beaufort House, Tenth Floor, 15 St. Botolph Street, London EC3A 7EE, England. Reed Smith Richards Butler LLP is regulated by the Solicitors Regulation Authority.

A list of members of Reed Smith Richards Butler LLP, and their professional qualifications, is available at the registered office.  Any reference in this email to a partner of Reed Smith Richards Butler LLP is to a person who is a member of Reed Smith Richards Butler LLP or to an employee of equivalent standing.  Reed Smith Richards Butler LLP is associated with Reed Smith LLP of Delaware, USA.

This e-mail is confidential and may be protected by legal privilege.  If you have received it in error, you are on notice of its status.  Please notify us immediately by reply e-mail and then delete this message from your system.  Please do not copy it or use it for any purposes, or disclose its contents to any other person.  Thank you for your cooperation.  Please contact us on **+44 (0) 20  7247 6555** if

20/03/2008

you need assistance.

Disclaimer Version RS.UK.1.01.03

---

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

---

FROM :                    FAX NO. :79452130           Mar. 10 2008 04:27AM  P1        C



Tel:0086 755 7899 7360          博福鑫泰船舶修理（深圳）有限公司              INVOICE

FAX:0086 755 26003343

Mobile:13923163482       BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.        xjfbf@sohu.com

| Item | Description | Amount USD |
|---|---|---|

# INVOICE

**MV: FANY          ITEM №: 2K08 02018**

According to the quotation confirmed by your good company &
According to the content of acknowledgements signed by your good vessel MV FANY
The cost of this time repairs is :

| | | | |
|---|---|---|---|
| 1) | 2K08 02018-Crane jib | $95,714.61 | |
| 2) | 2K08 02018-SE | $16,752.00 | |
| 3) | 2K08 02018-STORES | $19,360.00 | |
| | Total: | $131,826.61 | |
| | Pre-payed : | $45,000.00 | |
| | Balanced : | $86,826.61 | $86,826.61 |
| 4) | 2K08 02018-HULL : | $1,269,518.49 | |
| | Prepay 90% before sailing: | $1,269,518.49 | $1,142,566.64 |
| | | | $1,229,393.25 |

Please make payment (USD1,229,393.25) to the following A/C

The balance USD126,951.84 to be paid within one month.

Bank and Account :

The HongKong and ShangHai banking corporation limited Des Voeux road west branch.

Hong Kong

Account №: 026 391 318 838

In favour of :BOFU (HK) LIMITED

Swift code : HSBC HK HHH KH

博福鑫泰船舶修理（深圳）有限公司
BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.
**2008-03-10**

2K08 02018 FANY INV-COVER.xls(Invoice)          E.&.O.E              2008-03-10page:1

2001-06-21  15:29  FROM:                    TO:027574315        P.1/1



## 견 적 서

날자 ; 2008년   2 월  15일
수신 ; 창성해운 주.  귀하
참조 ; 윤 옥 감독님
선명 ; M.V. FANY
N O : 13. FEB . 2008.

아이 . 엠
TEL:(051)        414-5
FAX:(051)430 6954

NO.IM-08 - 45

합 계:일금이백삼십오만사천원정(부가세 별도)(₩2,354,000)

| 항 | 품 명 | 수 량 | | 단 가 | 금 합 가 |
|---|---|---|---|---|---|
| A | HYD' DECK CRANE . JIB BEARING BODY . DWG NO. 20-14695 | | | | |
| 1 | BOLT | NO 2 | 8  PCS | 48,000 | 384,000 |
| 2 | NUT | NO 3 | 8  PCS | 8,500 | 68,000 |
| 3 | NUT | NO 4 | 8  PCS | 8,500 | 68,000 |
| 4 | SET SCREW | NO 5 | 16  PCS | 2,500 | 40,000 |
| 5 | GREAS NIPPLE; PIN TYPE | NO 6 | 2  PCS | 2,000 | 4,000 |
| 6 | BUSH; OILES #800SP1, 330Ø | NO 7 | 2  PCS | 895,000 | 1,790,000 |
| | * DELIVERY; 7DAYS | | | | |
| | * REMARK; DELIVERY 3DAYS  (NO.6 ITEM 제외) | | | | |
| | 합         계 | | ₩ | | 2,354,000 |

16 JAN '08 15:59 JONGNAP_MARITIME_ENGINEERING_INC                                    P. 1    **E**



# SUNAMI MARINE CO., LTD.

652-0831 HYOGO P.O. BOX 55                                    No.    JHQ-S080136-19
**KOBE, JAPAN**                                               Date   : 2008-01-16

Messrs   : CHANG SUNG SHIPPING CO.                           Your Ref. :
Attn     : 분부 / 강독님 /                                      FAX No :
Vessel's Name:  FANY

# QUOTATION

Terms & Place of Delivery :
Validity of quotation
Terms of payment  AS USUAL
Remark :

( Currency : JPY )

| Description of goods | Qty | Unit Price | Amount |
|---|---|---|---|
| * DECK CRANE, FUKUSHIMA | | | |
| : DESIGNS DRAWING | 1 SET | 600,000.00 | 600,000.00 |
| | | Sub Total | 600,000.00 |
| | | Total Amount | 600,000.00 |

**SUNAMI MARINE CO., LTD**
6-18 KENCHINOMIYA-CHO, 1-CHOME
www.sq...KU1. KOBE, JAPAN

| FIRM ORDER | |
|---|---|
| DATE | JAN 16 2008 |
| SIGN | ... |
| CHANGSUNG SHIPPING CO., LTD | |

Crone 신방으로 된 complete 사이즈와는
The Drawing 및 Date 요청 하여 중요 Remark 에 기재합니다
감흥니다

Page P/1





# GoodSen International Co., Ltd.

Rm 405, Hanyoung - Bldg, 57-9, Seosomun - Dong, Jung-Ku, Seoul, Korea
Tel : + 82 2 756 3506,    Fax : + 82 2 756 3505,    e-mail : goodsen@goodsen.co.kr

## COMMERCIAL INVOICE

TO : Changsung Shpping Co., Ltd,
ATTN: Mr. Wook. YOON (Managaer)

FM: Goodsen International Co.
DATE : 2007-11-07
INVOICE NO. : GSIN071107-SM12

C. UNIT : US $

| NO | ITEM | REMARK | QUAN | UNIT | U/PRICE | AMOUNT |
|----|------|--------|------|------|---------|--------|
| 1 | Electric Motor 65Kw 1700 Rpm, compact body | | 2 | SETS | 4,160.00 | 8,320.00 |
| 2 | Air Filter | | 4 | PCS | 26.00 | 104.00 |
| 3 | Return Filter (RFBN / HC 500 20) | | 4 | PCS | 260.00 | 1,040.00 |
| 4 | Axial Piston Pump (H1C – 90) | | 1 | SETS | 4,550.00 | 4,550.00 |
| 5 | Hydraulic block item no:5 | | 1 | PC | 1,300.00 | 1,300.00 |
| 6 | Hydraulic block item no:9 | | 1 | PC | 910.00 | 910.00 |
| 7 | Pressure relief valve (DB 20) | | 2 | PCS | 390.00 | 780.00 |
| 8 | QS1 Main Switch 3x100-125A Compac | | 1 | PC | 350.00 | 350.00 |
| 9 | FU1/FU2/FU3 Fuse B1 x 1CA | | 4 PCS Each Fuse | | 7.00 | 84.00 |
| 10 | KL1/KR1 Contactor 3TF51 – 22 200V AC | | PC Each Contact | | 650.00 | 1,300.00 |
| 11 | TC1 Transformer 300VA 440V / 220V 60Hz | | 1 | PC | 170.00 | 170.00 |
| 12 | R1 Relay 3TG1010 220V | | 2 | PCS | 26.00 | 52.00 |
| 13 | ELECTRIC CABLE ( Power supply) | | 1 | coil | 4,160 | 4,160 |

SUB-TOTAL :     US$18,990.00

| Total Ex Works Istanbul | US$18,960.00 |
|-------------------------|--------------|
| Packing by steel box + custom formalities | US$500.00 |
| **Total FOB Istanbul** | **US$19,460.00** |

**1. Delivery Time**                    : For all spares within 7 days from Istanbul

** Transportation : Transportation fee is not included the above total amount

*** The charge will occur depending on Destination and Transportation type

**** Tax is not included

**2. Terms of Payment**                    : Payment in Advance on Commercial Invoice base

Please let us know when you are ready to get delivered from the supplier

***** BANK DETAIL
    ACCOUNT NO.: 650-004565-393
    KOREA EXCHANGE BANK SEOSOMUN BRANCH
    BENEFICIARY : GOODSEN INTERNATIONAL CO., LTD.
    SWIFT BIC : KOEXKRSE

A

| | | | | GMT | Date |
|---|---|---|---|---|---|
| DELIVERED "DLOSP SINGAPORE" | | | From | 9:55 | 2006-12-06 |
| 1st Hire | | Days | To | 9:55 | 2006-12-21 |
| 2nd Hire | | Days | To | 9:55 | 2007-01-05 |
| 3rd Hire | | Days | To | 9:55 | 2007-01-20 |
| 4th Hire | | Days | To | 9:55 | 2007-02-04 |
| 5th Hire | | Days | To | 9:55 | 2007-02-19 |
| 6th Hire | | Days | To | 9:55 | 2007-03-06 |
| 7th Hire | | Days | To | 9:55 | 2007-03-21 |
| 8th Hire | | Days | To | 9:55 | 2007-04-05 |
| 9th Hire | | Days | To | 9:55 | 2007-04-20 |
| 10th Hire | | Days | To | 9:55 | 2007-05-05 |
| 11th Hire | | Days | To | 9:55 | 2007-05-20 |
| 12th Hire | | Days | To | 9:55 | 2007-06-04 |
| 13th Hire | | Days | To | 9:55 | 2007-06-19 |
| 14th Hire | | Days | To | 9:55 | 2007-07-04 |
| 15th Hire | | Days | To | 9:55 | 2007-07-19 |
| 16th Hire | | Days | To | 9:55 | 2007-08-03 |
| 17th Hire | | Days | To | 9:55 | 2007-08-18 |
| 18th Hire | | Days | To | 9:55 | 2007-09-02 |
| 19th Hire | | Days | To | 9:55 | 2007-09-17 |
| 20th Hire | | Days | To | 9:55 | 2007-10-02 |
| 21st Hire | | Days | To | 9:55 | 2007-10-17 |
| 22nd Hire | | Days | To | 9:55 | 2007-11-01 |
| 23rd Hire | | Days | To | 9:55 | 2007-11-16 |
| 24th Hire | | Days | To | 9:55 | 2007-12-01 |
| 25th Hire | | Days | To | 9:55 | 2007-12-16 |
| 26th Hire | | Days | To | 9:55 | 2007-12-31 |
| 27th Hire | | Days | To | 9:55 | 2008-01-15 |
| 28th Hire | | Days | To | 9:55 | 2008-01-30 |
| 29th Hire | | Days | To | 9:55 | 2008-02-03 |
| | | Days | To | 8:20 | 2008-02-22 |
| Total Duration | | Days | | | |
| Off-Hire (A) | | Days | | | |
| Net Duration | | Days | | | |

| | | | | | |
|---|---|---|---|---|---|
| Charter Hire | | $24,500.00 | PDAY | | |
| Gross Ballast Bonus | | $0.00 | LSUM | | |
| *Additional Hire from 3 Feb, 2008* | | *$0.00* | *PDAY* | | |
| (Less) Address Commission | | 2.50% | | | |
| (Less) Collect Commission | | 0.00% | | | |
| Bunkers on Delivery as per Master / Survey | | | | | |
| IFO | 864.372 | $350.00 | PMT | | |
| MDO | 128.995 | $650.00 | PMT | 10% VAT | |
| (Less) Bunkers on Redelivery | | | | | |
| IFO | 823.920 | $350.00 | PMT | | |
| MDO | 120.300 | $650.00 | PMT | 10% VAT | |
| Cable/Entertainment/Victualing | | $1,250.00 | Per 30 Days | | |
| Intermediate Hold Cleanings :- | | | | | |
| 1. Dampier - Quanzhou | | $1,000.00 | PHOLD | 5 | |
| 2. Port Hedland - Inchon | | $1,000.00 | PHOLD | 5 | |
| 3. Prince Rupert, BC - Lazaro Cardenas | | $600.00 | PHOLD | 5 | |

1 / 3

| | | | | |
|---|---|---|---|---|
| 4. Lazaro Cardenas - Houston | $600.00 | PHOLD | 5 | |
| 5. NOLA - Hachinohe + Shibushi | $600.00 | PHOLD | 5 | |
| 6. Zhangzhou - Singapore | $600.00 | PHOLD | 5 | |
| 7. Bunbury - Femdale | $600.00 | PHOLD | 5 | |
| 8. Vancouver, BC - Port Kelang + Belawan | $600.00 | PHOLD | 5 | |
| 9. Sangatta - Chennai | $600.00 | PHOLD | 5 | |
| 10. Chennai - Beilun | $600.00 | PHOLD | 5 | |
| 11. Kwinana - Xingang | $600.00 | PHOLD | 5 | |
| *12. Waigeo Is - Yangpu* | *$600.00* | *PHOLD* | *0* | |

| | | | |
|---|---|---|---|
| In Lieu of Hold Cleaning | $5,000.00 | LSUM | 5,000.00 |
| On-Hire bunker survey 50% | | | 390.00 |
| ENOA/D at Houston | | | 375.00 |
| Charterers on-Hire survey at Zhoushan | | | 826.67 |
| Charterers on-Hire survey report couier charge | | | 26.40 |
| AP for calling Belawan, Indonesia | | | 9,000.00 |
| Charterers compensation for calling Dumai, Indonesia | | | 30,000.00 |

(Less) Off-Hire Bunker Consumption (B)

(Less) Actual Owners Expenses ( C )

(Less) Payment Received ;-

| | | |
|---|---|---|
| 2006-12-12 | 1st Hire + Value of BOD | (774,255.15) |
| 2006-12-22 | 2nd Hire | (358,937.50) |
| 2007-01-05 | 3rd Hire | (373,634.50) |
| 2007-01-19 | 4th Hire | (358,937.50) |
| 2007-02-05 | 5th Hire | (358,937.50) |
| 2007-02-16 | 6th Hire | (364,327.50) |
| 2007-03-06 | 7th Hire | (358,937.50) |
| 2007-03-22 | 8th Hire | (358,937.50) |
| 2007-04-04 | 9th Hire | (361,937.50) |
| 2007-04-20 | 10th Hire | (361,937.50) |
| 2007-05-03 | 11th Hire | (358,937.50) |
| 2007-05-18 | 12th Hire | (358,937.50) |
| 2007-06-04 | 13th Hire | (358,937.50) |
| 2007-06-18 | 14th Hire | (361,937.50) |
| 2007-07-03 | 15th Hire | (49,807.57) |
| 2007-07-18 | 16th Hire | (361,937.50) |
| 2007-08-07 | 17th Hire | (352,851.08) |
| 2007-08-16 | 18th Hire | (358,937.50) |
| 2007-08-31 | 19th Hire | (361,937.50) |
| 2007-09-14 | 20th Hire | (358,937.50) |
| 2007-10-02 | 21st Hire | (358,990.57) |
| 2007-10-15 | 22nd Hire | (400,937.50) |
| 2007-11-01 | 23rd Hire | (361,937.50) |
| 2007-11-16 | 24th Hire | (355,461.31) |
| 2007-11-30 | 25th Hire | (351,487.16) |
| 2007-12-14 | 26th Hire | (358,937.50) |
| 2007-12-28 | 27th Hire | (357,455.51) |
| 2008-01-15 | 28th Hire | (98,571.84) |
| 2008-02-19 | 29th Hire | (119,645.83) |

**A) Off-Hire Details (Basis LT) ;-**

| | | | | |
|---|---|---|---|---|
| 1. Zhoushan | Dry-dock | 07-6-7 9:50 | 07-6-20 10:15 | GMT |
| 2. Singapore | No.1 Grab | 07-7-1 10:50 | 07-7-2 10:00 | 25% |
| 3. Chennai | No.4 Grab | 07-10-19 15:50 | 07-10-19 19:00 | 25% |
| | | 07-10-19 19:30 | 07-10-19 22:30 | 25% |

2 / 3

| 4. Kwinana | Frayed lines | 07-12-3 12:00 | 07-12-3 13:25 | 100% | |
| 5. Wolgeo | No.2 Grab | 08-1-17 5:00 | 08-1-17 15:00 | 25% | |

Total Days Off-Hire:



**B) Off-Hire Bunker Consumption/Day ;-**

| 1. Zhoushan | IFO | (6.860) | $350.00 | |
| | MDO | 2.030 | $650.00 | |
| 2. Singapore | IFO | 0.680 | $350.00 | |
| | MDO | 0.070 | $650.00 | |
| 3. Chennai | Due Grab No.4 | 0.166 | $350.00 | IFO |
| | | 0.002 | $650.00 | MDO |
| 4. Kwinana | IFO | 0.148 | $350.00 | |
| | MDO | 0.018 | $650.00 | |

Bunker Consumed during Off-Hire :
10% VAT :
Total Bunker Consumed during Off-Hire :

**C) Owners Expenses ;-**

| | Actual | Estimated |
| Panama | 311.00 | |
| Hachinohe | 1,512.61 | |
| | 44.02 | |
| Bunbury | 76.97 | |

Owners' Expenses:
2.5% Commission:
10% VAT:
Total Owners' Expenses:

3 / 3

Tel: 0086 755 3689 7360
FAX: 0086 755 26693842
Mobl: 139019 34007

博福鑫泰船舶修理（深圳）有限公司

*INVOICE*

**B**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbfi@sohu.com

| Item | Description | | | | Amount USD |
|---|---|---|---|---|---|
| | ## INVOICE | | | | |
| | MV : FANY          ITEM № : 2K08 02018-2 | | | | |
| | REPAIRING OF WATER BALLAST TANK STEEL PLATES | | | | |
| 1、 | **DRY DOCK EXPEND** | Unit | Qtty | U/Price | |
| | 1)   Pilots for ship's docking | time | 1 | 2000 | $2,000.00 |
| | Pilots for ship's undocking | time | 1 | 2000 | $2,000.00 |
| | Pilots for ship's arrival | time | 1 | 2000 | $2,000.00 |
| | Pilots for ship's departure | time | 1 | 2000 | $2,000.00 |
| | 2)   Tugs for ship's docking | time | 1 | 5500 | $5,500.00 |
| | Tugs for ship's undocking | time | 1 | 5500 | $5,500.00 |
| | Tugs for ship's arrival | time | 1 | 5500 | $5,500.00 |
| | Tug for ship's departure | time | 1 | 5500 | $5,500.00 |
| | 3)   Riggers,handle for ship's docking | time | 1 | 2000 | $2,000.00 |
| | Riggers,handle for ship's undocking | time | 1 | 2000 | $2,000.00 |
| | Riggers,handle for ship's arrival | time | 1 | 2000 | $2,000.00 |
| | Riggers,handle for ship's departure | time | 1 | 2000 | $2,000.00 |
| | 4)   Wharfage, | day | 9 | 1350 | $12,150.00 |
| | 5)   Shore power | | | | |
| | Electric power connection, | line/time | 2 | 140 | $280.00 |
| | Current supply, | KWH | 6900 | 0.45 | $3,105.00 |
| | Hire frequency charger | day | 8 | 90 | $720.00 |
| | 6)   Cooling water | | | | |
| | Cooling water line to conn./disconn., | line/time | 1 | 52 | $52.00 |
| | Cooling water supply , | line/day | 7 | 54 | $378.00 |
| | 7)   Fire watchman, 2 men, | day | 14 | 160 | $2,240.00 |
| | Frontier safety watchman | day | 14 | 80 | $1,120.00 |
| | 8)   Galley garbage | day | 14 | 40.6 | $568.40 |
| | 9)   Fire water line to connect/disconnect,  . | line/time | 4 | 54 | $216.00 |
| | Fire water line to keep pressure, | line/day | 70 | 40 | $2,800.00 |
| | Put fire extinguisher | day | 14 | 44 | $616.00 |
| | 10)  Fresh water line to conn./disconn. | line/time | 1 | 52 | $52.00 |
| | Fresh water supply, | ton | 200 | 3.25 | $650.00 |
| | 12)  Gas free | | | | |
| | Cost of initial inspection | | 1 | 180 | $180.00 |

Tel: 0086 755 2689 7360

FAX: 0086 755 26693842

Mobil: 139029 34002

博福鑫泰船舶修理（深圳）有限公司

*INVOICE*

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

| Item | Description | | | | Amount USD |
|---|---|---|---|---|---|
| | Cost of subsequent inspection | time | 5 | 40 | $200.00 |
| 13) | Telephone line to Conn./disconn., | | | | $90.00 |
| 14) | Ballast for undocking | | | | |
| | Ballast water line to Conn./disconn., | line/time | 3 | 54 | $162.00 |
| | Ballast water supply | ton | 1500 | 0.54 | $810.00 |
| | Remove and refit vent head,renew packing | pc | 4 | 54 | $216.00 |
| 15) | Rental of shore crane, | set/hour | 23 | 180 | $4,140.00 |
| 18) | Vent fan supply (5sets*2day) | set/8hrs | 10 | 70 | $700.00 |
| | Line connect/discon. | line/time | 5 | 15 | $75.00 |
| 19) | Cleaning oil tank : | | | | |
| A | №3oil tank to be cleaned 114m$^3$ | M3 | 114 | 13 | $1,482.00 |
| | dirty oil to be reclaimed and disposed | ton | 2 | 200 | $400.00 |
| B | M/E L.O sump tank 23.2m$^3$ | M3 | 50 | 13 | $650.00 |
| | dirty oil to be reclaimed and disposed | ton | 0.2 | 200 | $40.00 |
| C | M/E L.O store tank20.8m$^3$ | M3 | 50 | 13 | $650.00 |
| | dirty oil to be reclaimed and disposed | ton | 0.3 | 200 | $60.00 |
| D | M/E №1L.O CY L.O store tank 12.9m$^3$ | M3 | 50 | 13 | $650.00 |
| | dirty oil to be reclaimed and disposed | ton | 0.7 | 200 | $140.00 |
| E | M/E №2L.O CY L.O store tank 17.5m$^3$ | M3 | 50 | 13 | $650.00 |
| | dirty oil to be reclaimed and disposed | ton | 0.5 | 200 | $100.00 |
| F | Charge for storing oil about 26tons | day | 9 | 480 | $4,320.00 |
| G | certificate included | | 1 | 230 | $230.00 |
| 22) | Open/clsoe manhole | pc | 20 | 65 | $1,300.00 |
| | Renew rubber packing | pc | 20 | 20 | $400.00 |
| 23) | Dry docking | | | | |
| | Dockage for first two days | 2 days | 1 | 36000 | $36,000.00 |
| | Dockage for each subsequent day | day | 6 | 14500 | $87,000.00 |
| 24) | Gangway on/off | time | 3 | 975 | $2,925.00 |
| 25) | Cherry picker rental | hour.set | 4 | 80 | $320.00 |
| 26) | Pick up other superintendents | time | 12 | 60 | $720.00 |
| **2、** | **STEEL PLATES(straight flat hull) TO BE RENEWED** | | | | |
| HI-00 | Hull preparation and painting | | | | |
| HI-06 | Hull painting | | | | |
| | painted with 3 coats( in & out side ) | coat.m² | 3300 | 0.5 | $1,650.00 |
| HW-00 | ER shell plate to be cut and renewed | | | | |



Tel: 0086 755 2689 7360
FAX: 0086 735 26093842
Mobil: 139029 34002

**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|--------|
| HW-01 | E/R S/S : | | | | | | | | |
| | double curve | δ14 | x 1800 | x 8000 | x 2pc | kg | 3225.6 | 8 | $25,804.80 |
| | double curve | δ14 | x 800 | x 3600 | x 1pc | kg | 322.56 | 8 | $2,580.48 |
| | double curve | δ14 | x 1800 | x 2100 | x 2pc | kg | 846.72 | 8 | $6,773.76 |
| | double curve | δ14 | x 800 | x 5300 | x 1pc | kg | 474.88 | 8 | $3,799.04 |
| | double curve | δ14 | x 1800 | x 1500 | x 1pc | kg | 302.4 | 8 | $2,419.20 |
| | double plate for oil tank via welding hole | | | | | | | | |
| | | δ10 | x 80 | x 100 | x 58pc | kg | 580 | 5 | $2,900.00 |
| | vacuum test | | | | | m | 79.7 | 40 | $3,188.00 |
| | UT | | | | | loc | 30 | 40 | $1,200.00 |
| HW-02 | №1PS AND №2PS shell plate to cut and renewed | | | | | | | | |
| | UT | | | | | loc | 86 | 40 | $3,440.00 |
| | single curve | δ16 | x 5900 | x 1800 | x 2pc | kg | 2718.7 | 6 | $16,312.32 |
| | double curve | δ20 | x 1800 | x 5700 | x 1pc | kg | 1641.6 | 7 | $11,491.20 |
| | single curve | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 6 | $12,528.00 |
| | single curve | δ16 | x 1900 | x 3400 | x 1pc | kg | 826.88 | 6 | $4,961.28 |
| | single curve | δ16 | x 1800 | x 3400 | x 1pc | kg | 783.36 | 6 | $4,700.16 |
| | double curve | δ20 | x 1800 | x 5700 | x 1pc | kg | 1641.6 | 7 | $11,491.20 |
| | | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 5 | $10,440.00 |
| | single curve | δ16 | x 950 | x 3400 | x 1pc | kg | 413.44 | 6 | $2,480.64 |
| | | δ20 | x 950 | x 5700 | x 1pc | kg | 866.4 | 5 | $4,332.00 |
| | | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 5 | $10,440.00 |
| | single curve | δ16 | x 1800 | x 3400 | x 1pc | kg | 783.36 | 6 | $4,700.16 |
| | double curve | δ20 | x 1800 | x 5700 | x 1pc | kg | 1641.6 | 7 | $11,491.20 |
| | | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 5 | $10,440.00 |
| | single curve | δ20 | x 1600 | x 2800 | x 1pc | kg | 716.8 | 6 | $4,300.80 |
| | double curve | δ20 | x 1600 | x 5700 | x 1pc | kg | 1459.2 | 7 | $10,214.40 |
| | double curve | AH36 | δ16 | x 800 | x 2800 | x 1pc | kg | 286.72 | 8 | $2,293.76 |
| | double curve | AH36 | δ16 | x 800 | x 7250 | x 1pc | kg | 742.4 | 8 | $5,939.20 |
| | double curve | AH36 | δ16 | x 1250 | x 3200 | x 1pc | kg | 512 | 8 | $4,096.00 |
| | vacuum test | | | | | m | 128.7 | 40 | $5,148.00 |
| HW-03 | №1PORT SIDE : | | | | | | | | |
| | 1) handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 8pc | m | 8.8 | 30 | $264.00 |
| | round pipe | Φ32 | x 7000 | | x 2pc | m | 14 | 25 | $350.00 |



Tel: 0086 755 3609 3360

FAX: 0086 755 76093812

Mobil. 139039 34002

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | Amount USD |
|------|-------------|--|--|--|--|--|--|-----------|
| | round pipe | Φ32 | x 3200 | x 1pc | m | 3.2 | 25 | $80.00 |
| | round bar | Φ20 | x 9000 | x 4pc | m | 18 | 25 | $450.00 |
| | round bar | Φ20 | x 3200 | x 2pc | m | 6.4 | 25 | $160.00 |
| | round bar | Φ20 | x 800 | x 8pc | m | 6.4 | 25 | $160.00 |
| 2) | frame for top side tank to but and renewed | | | | | | | |
| | vertical frame L12 | x 90 | x 200 | x 4200 | x 1pc | kg | 121 | 7.25 | $877.25 |
| | L12 | x 90 | x 150 | x 5200 | x 1pc | kg | 125 | 7.25 | $906.25 |
| | frame | δ14 | x 600 | x 600 | x 6pc | kg | 241.92 | 5.75 | $1,391.04 |
| | | δ14 | x 1200 | x 2600 | x 2pc | kg | 698.88 | 5.75 | $4,018.56 |
| | | δ14 | x 1350 | x 1350 | x 2pc | kg | 408.24 | 5.75 | $2,347.38 |
| 4) | fixed ear plate for staging | | | | | | | |
| | | δ10 | x 80 | x 80 | x 26pc | kg | 260 | 5 | $1,300.00 |
| 5) | frame for low side tank cut and renewed | | | | | | | |
| | | δ14 | x 600 | x 2200 | x 2pc | kg | 295.68 | 6 | $1,774.08 |
| | | δ14 | x 1200 | x 2200 | x 1pc | kg | 295.68 | 6 | $1,774.08 |
| | | δ14 | x 350 | x 450 | x 1pc | kg | 17.64 | 6 | $105.84 |
| | | δ14 | x 1750 | x 1750 | x 1pc | kg | 343 | 6 | $2,058.00 |
| 7) | shell plate for replacing the big dent | | | | | | | |
| | double curve AH36 | δ16 | x 1300 | x 4000 | x 1pc | kg | 665.6 | 8 | $5,324.80 |
| 8) | DBT | | | | | | | |
| | bracket to be cut and renewed | | | | | | | |
| | | δ12 | x 600 | x 1300 | x 3pc | kg | 224.64 | 6 | $1,347.84 |
| | | δ12 | x 700 | x 1300 | x 3pc | kg | 262.08 | 6 | $1,572.48 |
| | | δ14 | x 1000 | x 2000 | x 2pc | kg | 448 | 6 | $2,688.00 |
| | vertical frame L12 | x 90 | x 200 | x 4000 | x 1pc | kg | 115 | 7.5 | $862.50 |
| | T-frame for cargo hold to be cut and renewed | | | | | | | |
| | | δ12 | x 1300 | x 1500 | x 2pc | kg | 374.4 | 5.75 | $2,152.80 |
| | | δ12 | x 180 | x 1600 | x 2pc | kg | 55.296 | 5.75 | $317.95 |
| HW-04 | №1Stb side | | | | | | | |
| | handrail for main deck to be cut and renewed | | | | | | | |
| | round pipe | Φ32 | x 1600 | x 1pc | m | 1.6 | 25 | $40.00 |
| 1) | shell plate to be cut and renewed | | | | | | | |
| | UT | | | loc | 40 | 40 | $1,600.00 |
| | double curve | δ16 | x 1700 | x 7850 | x 1pc | kg | 1708.2 | 7 | $11,957.12 |
| | double curve | δ16 | x 1800 | x 7850 | x 1pc | kg | 1808.6 | 7 | $12,660.48 |

*INVOICE*

Tel: 0086 755 2689 7360

FAX: 0086 755 26693822

Mobil: 139019 34002

**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbfl@sohu.com

| Item | Description | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|
| | Single curve | δ20 | x 1700 | x 1700 | x 1pc | kg | 462.4 | 6 | $2,774.40 |
| | single curve | δ20 | x 1800 | x 1700 | x 1pc | kg | 489.6 | 6 | $2,937.60 |
| | single curve | δ20 | x 2000 | x 1750 | x 1pc | kg | 560 | 6 | $3,360.00 |
| | single curve | δ20 | x 2000 | x 1600 | x 1pc | kg | 512 | 6 | $3,072.00 |
| | single curve | δ20 | x 1750 | x 1700 | x 1pc | kg | 476 | 6 | $2,856.00 |
| | single curve | δ20 | x 1550 | x 1400 | x 1pc | kg | 347.2 | 6 | $2,083.20 |
| | vacuum test | | | | | m | 80.1 | 40 | $3,204.00 |
| 2) | deformed dent to be ground and welded to smooth | | | | | | | | $450.00 |
| | | δ30 | x 500 | x 500 | x 1pc | | | | |
| 3) | frame to be cut and renewed | | | | | | | | |
| | | δ14 | x 1300 | x 1300 | x 2pc | kg | 378.56 | 5 | $1,892.80 |
| 4) | bracket for low side tank to be cut and renewed | | | | | | | | |
| | | δ14 | x 600 | x 1300 | x 6pc | kg | 524.16 | 5.75 | $3,013.92 |
| 5) | general access hole | δ14 | x 400 | x 2000 | x 1pc | kg | 89.6 | 3.45 | $309.12 |
| 6) | fixed ear plate for staging | δ10 | x 80 | x 80 | x 20pc | kg | 200 | 5 | $1,000.00 |
| 7) | staging for low side tank | L63 | x 63 | x 100 | x 18pc | kg | 180 | 5 | $900.00 |
| 8) | DBT | | | | | | | | |
| | bracket to be cut and renewed | | | | | | | | |
| | | δ12 | x 600 | x 1300 | x 2pc | kg | 149.76 | 6 | $898.56 |
| | | δ12 | x 700 | x 1300 | x 2pc | kg | 174.72 | 6 | $1,048.32 |
| | | δ14 | x 1000 | x 2000 | x 2pc | kg | 448 | 6 | $2,688.00 |
| | T-frame for cargo hold to be cut and renewed | | | | | | | | |
| | | δ12 | x 1300 | x 1500 | x 2pc | kg | 374.4 | 5.75 | $2,152.80 |
| | | δ12 | x 180 | x 1600 | x 2pc | kg | 55.296 | 5.75 | $317.95 |
| 9) | top side tank | | | | | | | | |
| | | δ12 | x 1300 | x 1300 | x 3pc | kg | 486.72 | 5.75 | $2,798.64 |
| | | δ12 | x 80 | x 1300 | x 2pc | kg | 19.968 | 5.75 | $114.82 |
| 10) | frame for №1S/side upper side tank to be added | | | | | | | | |
| | | δ14 | x 1500 | x 1500 | x 3pc | kg | 756 | 5.75 | $4,347.00 |
| 11) | frame for №1S/ side down  side tank to be added | | | | | | | | |
| | | δ14 | x 1000 | x 1000 | x 3pc | kg | 336 | 5.75 | $1,932.00 |
| 12) | frame for №1S/ side T-bar | | | | | | | | |
| | triangular plate | δ14 | x 1500 | x 1500 | x 2pc | kg | 504 | 5.75 | $2,898.00 |
| | face plate | δ14 | x 100 | x 1500 | x 2pc | kg | 33.6 | 5.75 | $193.20 |
| 13) | general access hole for №1down side tank | | | | | | | | |



Tel: 0086 755 2689 7360

FAX: 0086 755 26093842

Mobll: 139029 34002

*INVOICE*

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|------------|
| | | δ20 | x 500 | x 1800 | x 1pc | kg | 144 | 3.45 | $496.80 |
| HW-05 | №2 Port side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 8pc | m | 8.8 | 30 | $264.00 |
| | round pipe | | Φ32 | x 9000 | x 1pc | m | 9 | 25 | $225.00 |
| | round pipe | | Φ32 | x 3000 | x 1pc | m | 3 | 25 | $75.00 |
| | round bar | | Φ20 | x 9000 | x 2pc | m | 18 | 25 | $450.00 |
| | round bar | | Φ20 | x 800 | x 4pc | m | 3.2 | 25 | $80.00 |
| 2) | frame for top side tank to be cut and renewed | | | | | | | | |
| | | δ14 | x 1300 | x 1300 | x 2pc | kg | 378.56 | 5.75 | $2,176.72 |
| | | δ14 | x 1200 | x 2600 | x 2pc | kg | 698.88 | 5.75 | $4,018.56 |
| 3) | fixed ear plate for staging | δ10 | x 80 | x 80 | x 26pc | kg | 260 | 5 | $1,300.00 |
| 4) | general access hole | δ14 | x 400 | x 2000 | x 2pc | kg | 179.2 | 3.45 | $618.24 |
| HW-05 | №2 Stbt side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 10pc | m | 11 | 30 | $330.00 |
| | round pipe | | Φ32 | x 9000 | x 1pc | m | 9 | 25 | $225.00 |
| | round pipe | | Φ32 | x 6000 | x 1pc | m | 6 | 25 | $150.00 |
| | round bar | | Φ20 | x 9000 | x 2pc | m | 18 | 25 | $450.00 |
| | round bar | | Φ20 | x 6000 | x 2pc | m | 12 | 25 | $300.00 |
| | round bar | | Φ20 | x 800 | x 8pc | m | 6.4 | 25 | $160.00 |
| | platform for hatch coaming to cut and renewed ,checker plated (double flanging) | | | | | | | | |
| | checker plate | δ6 | x 350 | x 700 | x 1pc | kg | 12 | 6 | $72.00 |
| | bracket | δ8 | x 50 | x 250 | x 2pc | kg | 20 | 5 | $100.00 |
| 2) | shell plate to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 30 | 40 | $1,200.00 |
| | single curve | δ18 | x 1800 | x 6430 | x 2pc | kg | 3333.3 | 6 | $19,999.87 |
| | single curve | δ20 | x 1800 | x 2200 | x 2pc | kg | 1267.2 | 6 | $7,603.20 |
| | single curve | δ20 | x 1000 | x 2000 | x 1pc | kg | 320 | 6 | $1,920.00 |
| | single curve | δ20 | x 1600 | x 2000 | x 1pc | kg | 512 | 6 | $3,072.00 |
| | single curve | δ18 | x 1380 | x 4100 | x 1pc | kg | 814.75 | 6 | $4,888.51 |
| | single curve | δ20 | x 1400 | x 2200 | x 1pc | kg | 492.8 | 6 | $2,956.80 |
| | single curve | δ20 | x 2000 | x 1600 | x 1pc | kg | 512 | 6 | $3,072.00 |
| | single curve | δ20 | x 1800 | x 2200 | x 1pc | kg | 633.6 | 6 | $3,801.60 |
| | single curve | δ18 | x 6430 | x 1800 | x 1pc | kg | 1666.7 | 6 | $9,999.94 |

Tel: 0086 755 2689 7260
FAX: 0086 755 26693642
Mobil: 139029 34002

博福鑫泰船舶修理（深圳）有限公司

*INVOICE*

xjtbfi@sohu.com

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| | single curve | δ18 | x 1250 | x 4000 | x 1pc | kg | 720 | 6 | $4,320.00 |
| | single curve | δ20 | x 2200 | x 1260 | x 1pc | kg | 443.52 | 6 | $2,661.12 |
| | vacuum test | | | | | m | 117.4 | 40 | $4,696.00 |
| | vertical frame for №2top side tank to be cut and renewed | | | | | | | | |
| | | L12 | x 90 | x 200 | x 7200 | x 1pc | kg | 207 | 7.25 | $1,500.75 |
| | | L12 | x 90 | x 150 | x 7200 | x 1pc | kg | 173 | 7.25 | $1,254.25 |
| | strong frame to be cut and renewed | | | | | | | | |
| | frame | δ12 | x 1000 | x 2000 | x 2pc | kg | 384 | 5.75 | $2,208.00 |
| | | δ12 | x 1400 | x 1630 | x 2pc | kg | 438.14 | 5.75 | $2,519.33 |
| | | δ12 | x 180 | x 1200 | x 1pc | kg | 20.736 | 5.75 | $119.23 |
| | | δ12 | x 180 | x 180 | x 4pc | kg | 40 | 5.75 | $230.00 |
| | | δ14 | x 300 | x 500 | x 2pc | kg | 33.6 | 5.75 | $193.20 |
| | | δ14 | x 120 | x 1800 | x 2pc | kg | 48.384 | 5.75 | $278.21 |
| | angle bar for staging | | | | | | | | |
| | | L6 | x 63 | x 63 | x 1000 | x 20pc | | 200 | 5 | $1,000.00 |
| 3) | manhole cover for №1&№2 passage to be cut and renewed | | | | | | 2 | 30 | $60.00 |
| | | δ10 | x 50 | x 200 | x 2pc | | | | |
| | screw | M14 | x 60 | x 2pc | | | | | |
| 5) | №2Port Side : | | | | | | | | |
| | vertical frame | L12 | x 90 | x 200 | x 5000 | x 1pc | kg | 144 | 6.5 | $936.00 |
| | | L12 | x 90 | x 150 | x 4000 | x 1pc | kg | 96 | 6.5 | $624.00 |
| | bracket to be cut and renewed | | | | | | | | |
| | | δ12 | x 600 | x 1300 | x 3pc | kg | 224.64 | 5 | $1,123.20 |
| | | δ12 | x 700 | x 1300 | x 3pc | kg | 262.08 | 5 | $1,310.40 |
| | | δ14 | x 100 | x 2000 | x 3pc | kg | 67.2 | 5 | $336.00 |
| | general access hole for main deck | | | | | | | | |
| | | δ16 | x 500 | x 600 | x 1pc | kg | 38.4 | 3 | $115.20 |
| | №2 Stbd top Side tank : | | | | | | | | |
| | | L12 | x 90 | x 200 | x 3000 | x 1pc | kg | 86 | 7.25 | $623.50 |
| HW-06 | №3 Port side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 1pc | kg | 1.1 | 30 | $33.00 |
| | round pipe | Φ32 | x 600 | x 1pc | m | 1 | 25 | $25.00 |
| | round bar | Φ20 | x 600 | x 1pc | m | 1 | 25 | $25.00 |
| | face plate for hatch coaming bracket  to be cut and renewed | | | | | | | | |
| | | δ14 | x 180 | x 800 | x 1pc | kg | 16.128 | 5 | $80.64 |
| | | δ14 | x 180 | x 600 | x 1pc | kg | 12.096 | 5 | $60.48 |



Tel: 0086 755 2689 7360

FAX: 0086 755 2669 38 47

Mobil: 139039 31003

*INVOICE*

# 博福鑫泰船舶修理（深圳）有限公司

## *BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| | | δ14 | x 300 | x 400 | x 1pc | kg | 13.44 | 5 | $67.20 |
| 2) | shell plate for top side tank to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 20 | 40 | $800.00 |
| | | δ18 | x 700 | x 3450 | x 1pc | kg | 347.76 | 6 | $2,086.56 |
| | | δ18 | x 700 | x 1000 | x 1pc | kg | 100.8 | 6 | $604.80 |
| | single curve | δ18 | x 1800 | x 3450 | x 3pc | kg | 2682.7 | 7 | $18,779.04 |
| | single curve | δ18 | x 1000 | x 3600 | x 1pc | kg | 518.4 | 7 | $3,628.80 |
| | vacuum test | | | | | m | 23.2 | 40 | $928.00 |
| 4) | fixed ear plate for staging | δ10 | x 80 | x 80 | x 8pc | kg | 80 | 5 | $400.00 |
| | shell plate for low side tank to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 22 | 40 | $880.00 |
| | single curve | δ18 | x 1800 | x 4200 | x 1pc | kg | 1088.6 | 7 | $7,620.48 |
| | single curve | δ18 | x 1400 | x 4200 | x 1pc | kg | 846.72 | 7 | $5,927.04 |
| 5) | vacuum test | | | | | m | 40.4 | 40 | $1,616.00 |
| 6) | angle bar to be cut and renwed | | | | | | | | |
| | | L12 | x 90 | x 150 | x 4500 x 1pc | kg | 108 | 7.25 | $783.00 |
| 7) | general access hole | δ14 | x 600 | x 1200 | x 1pc | kg | 80.64 | 3.45 | $278.21 |
| 8) | shell plate for №3cargo hold PS to be cut and renewed | | | | | | | | |
| | | δ18 | x 10000 | x 3600 | x 1pc | kg | 5184 | 5 | $25,920.00 |
| HW-07 | №3 Stbd. side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | m | 11 | 30 | $330.00 |
| | stanchion | δ14 | x 80 | x 1100 | x 10pc | | | | |
| | round pipe | Φ32 | x 9000 | | x 1pc | m | 9 | 25 | $225.00 |
| | round pipe | Φ32 | x 6000 | | x 1pc | m | 6 | 25 | $150.00 |
| | round bar | Φ20 | x 9000 | | x 2pc | m | 18 | 25 | $450.00 |
| | | Φ20 | x 6000 | | x 2pc | m | 12 | 25 | $300.00 |
| | | Φ20 | x 800 | | x 8pc | m | 6.4 | 25 | $160.00 |
| 2) | platform for hatch coaming to be cut and renewed | | | | | | | | |
| | checker plate | | | | | | | | |
| | | δ6 | x 350 | x 700 | x 1pc | kg | 11.76 | 6 | $70.56 |
| | | δ8 | x 50 | x 250 | x 2pc | kg | 20 | 5 | $100.00 |
| | | L10 | x 100 | x 100 | x 1800 x 2pc | kg | 58 | 6 | $348.00 |
| 3) | shell plate for top side tank to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 20 | 40 | $800.00 |
| | | δ18 | x 1800 | x 4100 | x 1pc | kg | 1062.7 | 6 | $6,376.32 |
| | | δ18 | x 1400 | x 4100 | x 1pc | kg | 826.56 | 6 | $4,959.36 |

Tel: 0086 755 2609 7360
FAX: 0086 755 26603847
Mobil: 139029 34002

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| 4) | vacuum test | | | | | m | 23.2 | 40 | $928.00 |
| 5) | fixed ear plate | δ10 | x 80 | x 80 | x 8pc | kg | 80 | 5 | $400.00 |
| HW-08 | №4 Port side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 16pc | m | 17.6 | 30 | $528.00 |
| | round pipe | | Φ32 | x 6000 | x 3pc | m | 18 | 25 | $450.00 |
| | round pipe | | Φ32 | x 3000 | x 1pc | m | 3 | 25 | $75.00 |
| | round bar | | Φ20 | x 6000 | x 5pc | m | 30 | 25 | $750.00 |
| | round bar | | Φ20 | x 3000 | x 1pc | m | 3 | 25 | $75.00 |
| | round bar | | Φ20 | x 800 | x 8pc | m | 6.4 | 25 | $160.00 |
| 3) | №4 shell plate  to be cut and renewed | | | | | | | | |
| | | | | | | loc | 66 | 40 | $2,640.00 |
| | UT | | | | | | | | |
| | | δ18 | x 1850 | x 2750 | x 1pc | kg | 732.6 | 5 | $3,663.00 |
| | | δ16 | x 900 | x 3450 | x 1pc | kg | 397.44 | 5 | $1,987.20 |
| | | δ16 | x 1800 | x 3450 | x 1pc | kg | 794.88 | 5 | $3,974.40 |
| | | δ16 | x 1000 | x 7220 | x 1pc | kg | 924.16 | 5 | $4,620.80 |
| | | δ16 | x 1800 | x 7220 | x 1pc | kg | 1663.5 | 5 | $8,317.44 |
| | | δ16 | x 1000 | x 7850 | x 1pc | kg | 1004.8 | 5 | $5,024.00 |
| | single curve | δ18 | x 1800 | x 7850 | x 1pc | kg | 2034.7 | 6 | $12,208.32 |
| | single curve | δ20 | x 1700 | x 7850 | x 1pc | kg | 2135.2 | 6 | $12,811.20 |
| | | δ18 | x 1700 | x 7220 | x 1pc | kg | 1767.5 | 5 | $8,837.28 |
| | single curve | δ22 | x 2350 | x 4550 | x 1pc | kg | 1881.9 | 6 | $11,291.28 |
| | vacuum test | | | | | m | 149 | 40 | $5,960.00 |
| 4) | plate in cargo hold bo be cut and renewed | | | | | | | | |
| | | δ12 | x 2500 | x 3000 | x 16pc | kg | 11520 | 5 | $57,600.00 |
| | | δ12 | x 350 | x 2800 | x 16pc | kg | 1505.3 | 5 | $7,526.40 |
| | | δ12 | x 120 | x 2800 | x 16pc | kg | 516.1 | 5 | $2,580.48 |
| | | δ12 | x 120 | x 2500 | x 18pc | kg | 518.4 | 5 | $2,592.00 |
| | bulb bar cut and renew | δ16 | x 160 | x 800 | x 16pc | kg | 294.4 | 6.5 | $1,913.60 |
| 5) | frame in low side tank cut and renewed | | | | | | | | |
| | | δ14 | x 1400 | x 1400 | x 2pc | kg | 439.04 | 5.75 | $2,524.48 |
| | angle bar staging in low side tank | | | | | | | | |
| | | L8 | x 75 | x 75 | x 1000 | x 40pc | kg | 400 | 5 | $2,000.00 |
| | | L8 | x 75 | x 75 | x 800 | x 40pc | kg | 400 | 5 | $2,000.00 |
| | | L8 | x 75 | x 75 | x 1500 | x 20pc | kg | 20 | 5 | $100.00 |
| 6) | general access hole | δ14 | x 600 | x 1200 | x 2pc | kg | 161.28 | 3.45 | $556.42 |



Tel: 0086 755 2689 7360

FAX: 0086 755 26693842

Mobil: 139829 34003

*INVOICE*

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbfi@sohu.com

| Item | Description | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|------------|
| | fixed ear plate | δ10 | x 80 | x 80 | x 36pc | kg | 360 | 5 | $1,800.00 |
| 9) | hatch coaming to be cut and renewed | | | | | | | |
| | | δ14 | x 1500 | x 1300 | x 1pc | kg | 218.4 | 5 | $1,092.00 |
| | | δ20 | x 250 | x 1500 | x 1pc | kg | 60 | 5 | $300.00 |
| | deformed S/S flat iron to be fair up | | | | | | | |
| | | δ16 | x 45 | x 1500 | x 1pc | kg | 10 | 5 | $50.00 |
| | fixed ear plate for hatch cover to be welded and cut off ater finishing | | | | | | | |
| | | δ30 | x 50 | x 150 | x 1pc | kg | 10 | 5 | $50.00 |
| | to operate erect up staging | | | | | | | |
| | fixed ear plate for hatch cover to be welded and cut off ater finishing | | | | | | | |
| | | δ20 | x 200 | x 200 | x 2pc | kg | 20 | 5 | $100.00 |
| 10) | frame for №4PS cargo hold  to be cut and renewed | | | | | | | |
| | | δ14 | x 350 | x 2400 | x 16pc | kg | 1505.3 | 5 | $7,526.40 |
| | | δ16 | x 120 | x 2600 | x 16pc | kg | 638.98 | 5 | $3,194.88 |
| HW-09 | №4 Stbt side | | | | | | | |
| 1) | shell plate for top side tank  to be cut and renewed | | | | | | | |
| | UT | | | | | loc | 4 | 40 | $160.00 |
| | single curve | δ16 | x 1450 | x 1350 | x 1pc | kg | 250.56 | 7 | $1,753.92 |
| | vacuum test | | | | | m | 7.2 | 40 | $288.00 |
| | UT | | | | | loc | 12 | 40 | $480.00 |
| | | δ16 | x 530 | x 4400 | x 1pc | kg | 298.5 | 6 | $1,790.98 |
| | | δ16 | x 1800 | x 4400 | x 1pc | kg | 1013.8 | 6 | $6,082.56 |
| | vacuum test | | | | | m | 22.3 | 40 | $892.00 |
| 2) | fixed ear plate | δ10 | x 80 | x 80 | x 8pc | kg | 80 | 5 | $400.00 |
| HW-10 | №5 Portt side | | | | | | | |
| 1) | shell plate  to be cut and renewed | | | | | | | |
| | UT | | | | | loc | 90 | 40 | $3,600.00 |
| | double curve | δ14 | x 1800 | x 8000 | x 1pc | kg | 1612.8 | 7 | $11,289.60 |
| | double curve | δ14 | x 1800 | x 3700 | x 1pc | kg | 745.92 | 7 | $5,221.44 |
| | double curve | δ16 | x 1800 | x 3700 | x 1pc | kg | 852.48 | 7 | $5,967.36 |
| | double curve | δ16 | x 1800 | x 8000 | x 1pc | kg | 1843.2 | 7 | $12,902.40 |
| | single curve | δ22 | x 2500 | x 4250 | x 1pc | kg | 1870 | 6 | $11,220.00 |
| | single curve | δ22 | x 1700 | x 4250 | x 1pc | kg | 1271.6 | 6 | $7,629.60 |
| | double curve | δ16 | x 2000 | x 5500 | x 1pc | kg | 1408 | 7 | $9,856.00 |
| | double curve | δ16 | x 1300 | x 5500 | x 1pc | kg | 915.2 | 7 | $6,406.40 |



**INVOICE**

Tel: 0086 755 26693340

FAX: 0086 755 26693842

Mobil: 139020 34002

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbfi@sohu.com

| Item | Description | | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|---|------------|
| | double curve | δ16 | x 1800 | x 8000 | x 1pc | kg | 1843.2 | | 7 | $12,902.40 |
| | double curve | δ16 | x 1600 | x 8000 | x 1pc | kg | 1638.4 | | 7 | $11,468.80 |
| | double curve | δ16 | x 1800 | x 1700 | x 1pc | kg | 391.68 | | 7 | $2,741.76 |
| | double curve | δ16 | x 1600 | x 1700 | x 1pc | kg | 348.16 | | 7 | $2,437.12 |
| | single curve | δ16 | x 1400 | x 2350 | x 1pc | kg | 421.12 | | 6 | $2,526.72 |
| | single curve | δ14 | x 1800 | x 8000 | x 1pc | kg | 1612.8 | | 6 | $9,676.80 |
| | double curve | δ14 | x 3700 | x 1800 | x 1pc | kg | 745.92 | | 7 | $5,221.44 |
| | double curve | δ14 | x 1800 | x 2350 | x 1pc | kg | 473.76 | | 7 | $3,316.32 |
| | single curve | δ16 | x 1800 | x 2350 | x 1pc | kg | 541.44 | | 6 | $3,248.64 |
| | vacuum test | | | | | m | 222.3 | | 40 | $8,892.00 |
| 2) | strong bracket for top side tank to be cut and renewed | | | | | | | | | |
| | | δ16 | x 280 | x 750 | x 17pc | kg | 456.96 | 5.75 | | $2,627.52 |
| | | δ16 | x 300 | x 750 | x 7pc | kg | 201.6 | 5.75 | | $1,159.20 |
| | | δ16 | x 200 | x 750 | x 12pc | kg | 230.4 | 5.75 | | $1,324.80 |
| 3) | general access hole | δ16 | x 500 | x 2000 | x 2pc | kg | 256 | 3.45 | | $883.20 |
| | | δ16 | x 1800 | x 2000 | x 1pc | kg | 460.8 | 3.45 | | $1,589.76 |
| 4) | angle bar staging | L8 | x 75 | x 75 | x 1000 | x 20pc | kg | 200 | 5 | $1,000.00 |
| | | L8 | x 75 | x 75 | x 1200 | x 20pc | kg | 240 | 5 | $1,200.00 |
| | | L8 | x 75 | x 75 | x 1500 | x 20pc | kg | 300 | 5 | $1,500.00 |
| | ear plate for staging | δ10 | x 80 | x 80 | x 23pc | kg | 230 | | 5 | $1,150.00 |
| 6) | shell plate to be cut and renewed in E/R P/Side | | | | | | | | | |
| | double curve | δ14 | x 1800 | x 2200 | x 1pc | kg | 443.52 | | 8 | $3,548.16 |
| | UT | | | | | loc | 4 | | 40 | $160.00 |
| HW-11 | №5 Stbd side | | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 10pc | m | 11 | | 30 | $330.00 |
| | round pipe | Φ32 | x 9000 | | x 1pc | m | 9 | | 25 | $225.00 |
| | round pipe | Φ32 | x 6000 | | x 1pc | m | 6 | | 25 | $150.00 |
| | round bar | Φ20 | x 9000 | | x 2pc | m | 18 | | 25 | $450.00 |
| | round bar | Φ20 | x 6000 | | x 2pc | m | 12 | | 25 | $300.00 |
| | round bar | Φ20 | x 800 | | x 6pc | m | 4.8 | | 25 | $120.00 |
| | face plate for hatch coaming bracket to be cut and renewed | | | | | | | | | |
| | | δ14 | x 180 | x 600 | x 1pc | kg | 12.096 | | 5 | $60.48 |
| 2) | №5 cargo hold Stb side shell plate to be cut and renewed | | | | | | | | | |
| | UT | | | | | loc | 62 | | 40 | $2,480.00 |



Tel 0086 755 2689 7360
FAX: 0086 755 26603843
Mobil 139029 34002

**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbfl@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| | single curve | δ16 | x 1600 | x 2300 | x 1pc | kg | 471.04 | 6 | $2,826.24 |
| | single curve | δ16 | x 2380 | x 1100 | x 1pc | kg | 335.1 | 6 | $2,010.62 |
| | single curve | δ14 | x 1800 | x 8700 | x 1pc | kg | 1753.9 | 6 | $10,523.52 |
| | double curve | δ14 | x 1800 | x 8700 | x 3pc | kg | 5261.8 | 7 | $36,832.32 |
| | single curve | δ14 | x 6150 | x 1800 | x 1pc | kg | 1239.8 | 6 | $7,439.04 |
| | double curve | δ14 | x 6150 | x 1800 | x 2pc | kg | 2479.7 | 7 | $17,357.76 |
| | single curve | δ14 | x 1800 | x 6200 | x 1pc | kg | 1249.9 | 6 | $7,499.52 |
| | single curve | δ14 | x 600 | x 3200 | x 1pc | kg | 215.04 | 6 | $1,290.24 |
| | single curve | δ14 | x 1000 | x 600 | x 1pc | kg | 67.2 | 6 | $403.20 |
| | double curve | δ14 | x 3900 | x 2000 | x 2pc | kg | 1747.2 | 7 | $12,230.40 |
| | single curve | δ16 | x 1300 | x 8000 | x 1pc | kg | 1331.2 | 6 | $7,987.20 |
| | UT | | | | | loc | 14 | 40 | $560.00 |
| | vacuum test | | | | | m | 219 | 40 | $8,760.00 |
| | | δ16 | x 2000 | x 4000 | x 2pc | kg | 2048 | 5 | $10,240.00 |
| | | δ16 | x 1400 | x 4000 | x 1pc | kg | 716.8 | 5 | $3,584.00 |
| | | δ16 | x 2000 | x 2000 | x 1pc | kg | 512 | 5 | $2,560.00 |
| 4) | vertical frame to be cut and renewed | | | | | | | | |
| | L12 | x 90 | x 150 | x 1000 | x 2pc | kg | 48 | 6.5 | $312.00 |
| 5) | fixed ear plate for staging | δ10 | x 80 | x 80 | x 26pc | kg | x 260 | 5 | $1,300.00 |
| 6) | general access hole | δ14 | x 600 | x 800 | x 4pc | kg | 215.04 | 3 | $645.12 |
| 7) | erect up angle bar staging for low side tank | | | | | | | | |
| | L6 | x 63 | x 63 | x 1000 | x 40pc | pcs | 400 | 5 | $2,000.00 |
| 8) | bulkhead to be cut and renewed | | | | | | | | |
| | | δ8 | x 200 | x 600 | x 2pc | kg | 20 | 5 | $100.00 |
| | ER/3F O/5 TS draft word to be cut and renewed | | | | | | | | |
| | | δ8 | x 200 | x 200 | x 11pc | pcs | 110 | 5 | $550.00 |
| HW-12 | cable box for №4and №5cargo hold passage to be cut and renewed | | | | | | | | |
| | | δ8 | x 600 | x 1100 | x 2pc | kg | 84.48 | 5 | $422.40 |
| | | δ8 | x 600 | x 700 | x 2pc | kg | 53.76 | 5 | $268.80 |
| | | δ8 | x 700 | x 1100 | x 1pc | kg | 49.28 | 5 | $246.40 |
| | | δ8 | x 800 | x 1100 | x 2pc | kg | 112.64 | 5 | $563.20 |
| | drill hold | | | | x 32pc | pcs | 32 | 3 | $96.00 |
| | screw | | M10 | x 30 | x 32pc | pcs | 32 | 2 | $64.00 |
| | rubber pillow | δ4 | x 800 | x 1100 | x 1pc | m | 1.1 | 20 | $22.00 |
| HW-13 | platform for №3crane to be cut and renewed | | | | | | | | |



Tel: 0086 755 2689 7368

FAX: 0086 755 26093847

Mobil: 139029 34002

*INVOICE*

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbfl@sohu.com

| Item | Description | | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|---|------------|
| | | | δ14 | x 80 | x 1100 | x 10pc | kg | 100 | 5 | $500.00 |
| | | | δ14 | x 250 | x 1100 | x 1pc | kg | 30.8 | 6 | $184.80 |
| | round pipe | bent | | Φ32 | x 9000 | x 2pc | m | 18 | 30 | $540.00 |
| | round bar | bent | | Φ20 | x 9000 | x 4pc | m | 36 | 30 | $1,080.00 |
| | checker plate | bent | δ6 | x 1500 | x 2000 | x 4pc | kg | 576 | 6.5 | $3,744.00 |
| | high location | | | | | | | | | $100.00 |
| HW-14 | Safty fence for deck manhole | | | | | x 20pc | pc | 20 | 30 | $600.00 |
| SW-00 | staging | | | | | | | | | |
| SW-01 | shell plate renewed | | | | | | | | | |
| | P: | | | 24 | x 1.3 | x 16 | M3 | 499.2 | 4 | $1,996.80 |
| | | | | 12 | x 1.3 | x 16 | M3 | 249.6 | 4 | $998.40 |
| | | | | 40 | x 1.3 | x 12 | M3 | 624 | 4 | $2,496.00 |
| | | | | 18 | x 2.6 | x 15 | M3 | 702 | 4 | $2,808.00 |
| | | | | 8 | x 3.17 | x 15 | M3 | 444 | 4 | $1,776.00 |
| | S: | | | 1.1 | x 2.60 | x 12 | M3 | 312 | 4 | $1,248.00 |
| | | | | 2.28 | x 1.30 | x 15 | M3 | 546 | 4 | $2,184.00 |
| | | | | 3.1 | x 1.30 | x 15 | M3 | 495 | 4 | $1,980.00 |
| | | | | 4.12 | x 1.30 | x 15 | M3 | 234 | 4 | $936.00 |
| | | | | 5.2 | x 2.60 | x 15 | M3 | 780 | 4 | $3,120.00 |
| | | | | 6.12 | x 3.17 | x 15 | M3 | 666 | 4 | $2,664.00 |
| SW-02 | №1cargo hold | | | | | | | | | |
| | P: | | | 16 | x 1.3 | x 12 | M3 | 249.6 | 4 | $998.40 |
| | S: | | | 22 | x 1.3 | x 12 | M3 | 343.2 | 4 | $1,372.80 |
| | №2cargo hold | | | | | | | | | |
| | P: | | | 6 | x 1.3 | x 12 | M3 | 93.65 | 4 | $374.60 |
| | S: | | | 14 | x 1.3 | x 12 | M3 | 218.4 | 4 | $873.60 |
| | №3cargo hold | | | | | | | | | |
| | P: | | | 22 | x 1.3 | x 12 | M3 | 343.2 | 4 | $1,372.80 |
| | S: | | | 10 | x 1.3 | x 12 | M3 | 156 | 4 | $624.00 |
| | №4cargo hold | | | | | | | | | |
| | P: | | | 28 | x 1.3 | x 12 | M3 | 436.8 | 4 | $1,747.20 |
| | S: | | | 6 | x 1.3 | x 12 | M3 | 93.6 | 4 | $374.40 |
| | №5cargo hold | | | | | | | | | |
| | P: | | | 28 | x 1.3 | x 16 | M3 | 582.4 | 4 | $2,329.60 |
| | S: | | | 24 | x 1.3 | x 16 | M3 | 499.2 | 4 | $1,996.80 |



**博福鑫泰船舶修理（深圳）有限公司**

Tel: 0086 755 2689 7360

FAX: 0086 755 2689 3612

Mobil: 139079 34003

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbfl@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|--|--|--|--|--|--|--|------------|
| SW-03 | №1top side tank | | 14 | x 2.0 | x 2 | M3 | 56 | 5 | $280.00 |
| | №2top side tank | P | 8 | x 2.0 | x 2 | M3 | 32 | 5 | $160.00 |
| | | S | 10 | x 2.0 | x 2 | M3 | 40 | 5 | $200.00 |
| | №3top side tank | | 6 | x 2.0 | x 2 | M3 | 24 | 5 | $120.00 |
| | №5top side tank | P | 28 | x 2.0 | x 2 | M3 | 112 | 5 | $560.00 |
| | | S | 16 | x 3.2 | x 4 | M3 | 204.8 | 5 | $1,024.00 |
| SW-04 | №4 low side tank | | 28 | x 2.0 | x 2 | M3 | 112 | 5 | $560.00 |
| SW-05 | deck | P/S  x 24 | 2 | x 1.3 | x 2 | M3 | 124.8 | 4 | $499.20 |
| ME-00 | machinery and electrical work: | | | | | | | | |
| ME-01 | ER removal and refitting of filter ,renewal of seal | | | | | | | | $162.00 |
| | | Φ200 | x 200 | x 1pc | | | | | |
| | filter to be newly fabricated | Φ200 | x 200 | x 1pc | | | | | $620.00 |
| | | Φ140 | x 100 | x 2pc | | | | | |
| | the following fitting to be machined | | | | | | | | |
| | flange | Φ200 | | x 2pc | | | | | |
| | mothr board | Φ200 | x 200 | x 1pc | | | | | |
| | seal plane | Φ200 | Φ180 | x 1pc | | | | | |
| ME-02 | the cable be removal and reconnection upon completion | | | | | | | | $760.00 |
| 1) | power supply line to be connected and disconnected for socket box | | | | | | | | |
| | | 2 *2.5² | 8m | x 1pc | | | | | |
| 2) | detecter line to be connected and disconnected | | | | | | | | |
| | | 4 *0.75² | 6m | x 1pc | | | | | |
| 3) | flange to be removed and refitted | | x 3pc | | | | | | |
| ME-03 | №1 65kw 1set motor to be lifted odwn and taken to workshop ,disjointed and cleaned | | | | | | | | $1,164.00 |
| 1) | renewal of import bearing with yard's supplied | | | | | | | | $612.00 |
| | NTN6314C3 | | x 1pc | | | | | | |
| | NTN6214C3 | | x 1pc | | | | | | |
| 2) | stator coil for electrical engine to be rewinded | | | | | | | | $4,120.00 |
| | enamel wire | Φ1.2 | 15kg | | | | | | |
| | enamel wire | Φ1.0 | 20kg | | | | | | |
| | be varnished baken | | | | | | | | |
| ME-04 | №2 65kw 1set motor to be lifted down and taken to workshop disjointed and cleaned | | | | | | | | $1,164.00 |
| 1) | renewal of import bearing with yard's supplied | | | | | | | | $612.00 |
| | NTN62413C3 | | x 2pc | | | | | | |
| 2) | stator coil rewund | | | | | | | | |



Tel: 0086 755 3689 7360

FAX: 0086 755 26693842

Mobil. 139029 14002

**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | Amount USD |
|---|---|---|---|---|---|
| | enamel wire | Φ1.0 | 32kg | | $4,120.00 |
| ME-05 | №3 65kw 1set motor to be lifted down and taken to workshop disjointed and cleaned | | | | $1,164.00 |
| 1) | renewal of import bearing with yard's supplied | | | | $612.00 |
| | NTN6315C3 | | x 1pc | | |
| | NTN6215C3 | | x 1pc | | |
| 2) | stator coil rewund | | | | $4,120.00 |
| | enamel wire | Φ1.0 | 32kg | | |
| ME-06 | lamp 2 sets | | | | $100.00 |
| 1) | the following fitting to be renewed with yard's supply | | | | |
| | toggle switch | | x 2pc | | |
| | battery 5# | | x 4pc | | |
| | lamp holder | | x 2pc | | |
| | bulb | | x 2pc | | |
| | plastic seat for battery | | x 2pc | | |
| | connecting line to be rewelded | | x 8pc | | |
| ME-08 | the following cable pipe on deck and interrelated fitting to be renewed | | | | |
| | pipe to be cut into half & protected with asbestus . | | | | $370.00 |
| | | Φ273 | x 3100 | x 1pc | $896.00 |
| | | Φ273 | x 600 | x 1pc | $289.00 |
| | | Φ34 | x 1100 | x 1pc | $27.50 |
| | expansion joint | Φ273 | x 220 | x 1pc | $560.00 |
| | | Φ60 | x 2400 | x 2pc | $163.00 |
| | flange | DN50 | | x 4pc | $20.00 |
| | | DN25 | | x 1pc | $2.50 |
| | sleeve | Φ100 | | x 2pc | $55.00 |
| | pipe clamp | L75 | x 200 | x 3pc | $75.00 |
| | | L50 | x 200 | x 3pc | $75.00 |
| | drill hole | M16 | | x 4pc | $20.00 |
| ME-09 | DN 168 *1pc vent cap to be removed and refitted | | | | $40.00 |
| 1) | the following to be renewed | | | | |
| | air vent pipe | Φ168 | x 600 | x 1pc | $87.00 |
| | flange | DN150 | | x 1pc | $12.50 |
| ME-10 | manhole cover for ER oil tank to refitted | | | | $180.00 |
| | seal to be renewed with yard's suppl | x 600 | x 450 | x 6pc | $180.00 |
| | additional--3 | | | | |



Tel: 0086 755 2689 7360

FAX: 0086 755 26693842

Mobil: 139019 34002

**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjbfl@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|------------|
| 1 | Supply for ventilation (380V 5sets*2day) | | | | | set.day | 10 | 70 | $700.00 |
| | line connect / disconnect | | | | | time.line | 5 | 15 | $75.00 |
| 2 | Manhole be closed | | | | | pc | 20 | 10 | $200.00 |
| | renewed the gaskets | | | | | pc | 20 | 20 | $400.00 |
| | man hole opened and closed & gasket renewed | | | | | pc | 4 | 40 | $160.00 |
| 3 | No.1 S/S deformed web plate to be cut and renewed | | | | | | | | |
| | | δ12 | x 400 | x 600 | x 2pc | kg | 46.08 | 5 | $230.40 |
| | low side tank | δ12 | x 400 | x 400 | x 2pc | kg | 30.72 | 6 | $184.32 |
| 5 | No.1PS frame for low side tank to be cut and renewed | | | | | | | | |
| | | δ14 | x 800 | x 1300 | x 2pc | kg | 232.96 | 6 | $1,397.76 |
| | | δ14 | x 600 | x 1400 | x 1pc | kg | 94.08 | 6 | $564.48 |
| | angle bar | L6 | x 63 | x 63 | x 1000 | x 32pc | kg | 320 | 5 | $1,600.00 |
| 6 | No.2 PS T-bar for cargo hold to be cut and renewed | | | | | | | | |
| | | δ12 | x 1400 | x 1400 | x 1pc | kg | 188.16 | 5 | $940.80 |
| | | δ18 | x 120 | x 1500 | x 1pc | kg | 25.92 | 5 | $129.60 |
| | pipe clamp to be cut and renewed | | | | | | | | |
| | | L6 | x 63 | x 63 | | x 1pc | kg | 10 | 5 | $50.00 |
| | | Φ20 | | x 800 | x 1pc | m | 1 | 25 | $25.00 |
| 7 | General access hole for No.5 S/S cargo hold | | | | | | | | |
| | | δ14 | x 600 | x 600 | x 1pc | kg | 40.32 | 3 | $120.96 |
| 8 | Handrail for No.2 crane platform to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1200 | x 8pc | m | 9.6 | 30 | $288.00 |
| | round pipe | δ6 | Φ32 | x 9000 | x 2pc | m | 18 | 25 | $450.00 |
| | round bar | | Φ20 | x 9000 | x 4pc | kg | 36 | 25 | $900.00 |
| | No.4 cargo hold to be cut and renewed | | | | | | | | |
| | | δ8 | x 800 | x 2300 | x 1pc | kg | 117.76 | 5 | $588.80 |
| | | δ8 | x 500 | x 1500 | x 1pc | kg | 48 | 5 | $240.00 |
| | | δ8 | x 70 | x 1800 | x 1pc | m | 1.8 | 50 | $90.00 |
| | flat iron | δ6 | x 50 | x 800 | x 2pc | kg | 20 | 5 | $100.00 |
| | | δ6 | x 50 | x 2300 | x 2pc | m | 4.6 | 50 | $230.00 |
| | the following to be faired up | | | | | | | | |
| | | δ8 | x 150 | x 2300 | x 1pc | kg | 22.08 | 4 | $88.32 |
| | | δ8 | x 300 | x 1500 | x 1pc | kg | 28.8 | 4 | $115.20 |
| 11 | No.1S/S hydraulic platform to be cut and renewed | | | | | | | | |
| | | L10 | x 100 | x 100 | x 2000 | x 2pc | kg | 64 | 6 | $384.00 |



Tel: 0086 755 2689 7360
FAX: 0086 755 26603843
Mobil: 139029 31002

**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbfi@sohu.com

| Item | Description | | | | | | | Amount USD |
|------|-------------|--|--|--|--|--|--|------------|
| 12 | Stiffener for No.2 S/S top side to be cut and renewed | | | | | | | |
| | | δ16 | x 400 | x 800 | x 3pc | kg | 122.88 | 6 | $737.28 |
| | round bar | Φ20 | x 400 | x 3pc | m | 3 | 25 | $75.00 |
| 13 | Frame for No.2 S/S top side tank to be cut and renewed | | | | | | | |
| | | δ12 | x 1350 | x 1400 | x 1pc | kg | 181.44 | 6 | $1,088.64 |
| | | δ12 | x 80 | x 1500 | x 1pc | kg | 11.52 | 6 | $69.12 |
| | additional -4 | | | | | | | |
| 1 | Renewal of stainless nuts of all man holes | M20 | x 680pc | pc | 680 | 2.8 | $1,904.00 |
| 2 | Side of propeller to be welded & ground | | | | | | | $278.00 |
| | | 30 | x 120 | x 1pc | pc | | | |
| 3 | Re-welding of leaking pipe in side tank | | | | | | | |
| | | 15 | x 20 | x 1600 | x 1pc | | | $160.00 |
| | | 15 | x 10 | Φ189 | x 2pc | | | $200.00 |
| | cherry picker cooperated for 2 hours | | | | | | | $160.00 |
| 4 | No.3 deck crane platform staging | 2m | *4m | *10m | | | | $320.00 |
| 5 | No.5 stbd cargo hold leaking, Old seam to be re-welding | | | | | | | |
| | | 10 | x 20 | x 200 | x 3pc | | | $300.00 |
| | Doubler | 10 | x 300 | x 300 | x 1pc | | | $100.00 |
| 6 | No.5 port cargo hold leaking, Old plate hole to be re-welding | | | | | | | $100.00 |
| | | 10 | x | Φ20 | x 1pc | | | |
| 7 | Stiffener for cargo hold frame to be cut and renewed | | | | | | | |
| | | δ12 | x 400 | x 1000 | x 26pc | kg | 998.4 | 5 | $4,992.00 |
| 8 | Strong frame for top side tank to be cut and renewed | | | | | | | |
| | | δ12 | x 600 | x 900 | x 2pc | kg | 103.68 | 6 | $622.08 |

TOTAL: $1,269,518.49

2K08 02018 FANY-HULL.xls(Quotation)          E.&O.E          10/03/2008page:17

# EXHIBIT "B"

**Jenny Gao**

TO CHTRS

| | |
|---|---|
| **From:** | San Juan Navigation (Singapore) Pte Ltd [sjn@sjnav.com.sg] |
| **Sent:** | Tuesday, January 15, 2008 7:04 PM |
| **To:** | 'SIWAN HUANG' |
| **Cc:** | 'San Juan Navigation Spore'; 'Trans Power-ops' |
| **Subject:** | MV FANY / TRANSPOWER - DAMAGE OF NO.3 CRANE AT WAIGEO // TOP URGENT // |
| **Attachments:** | CRANE NO.3.zip; MV FANY - STEVEDORE DAMAGE REPORT IN WAIGEO.pdf |

Siwan / Jenny

Foll received frm ows, pls treat it as coming frm us:

Q T E

**TOP URGENT**

**Subject:** MV FANY / TRANSPOWER - DAMAGE OF NO.3 CRANE AT WAIGEO // TOP URGENT //


TO: SAN JUAN NAVIGATION
FM: HANJIN SHIPPING
RE: MV FANY / SJN - DAMAGE OF NO.3 CRANE AT WAIGEO // TOP URGENT //
DEAR SIRS,

GOOD DAY!

FOLLOWING HAS BEEN RECEIVED FROM HEAD OWNERS AND PLS CONSIDER IT COMING
FROM HANJIN AS WELL.

// TOP URGENT //

RE MV FANY / HANJIN - STEVEDORE DAMAGE
==

PLS SEE ATTACHED MASTERS STEVEDORE DAMAGE REPORT INCL PHOTOS

DURING CARGO LOADING OPERATION IN WAIGEO, INDONESIA, STEVEDORE OPERATED
VSLS NO.3 CRANE WITH GRAB ATTACHED. AT THAT TIME THE BIG SWELL COMMING
SUDDENLY AND STEVEDORE COULD NOT STOP VSLS CRANE WHICH VSLS NO.3 CRANE
HAS BEEN BROKEN AND GRAB FALLEN INTO THE SEA.

MEANTIME ANY STEVEDORE DAMAGE AFFECTING THE PROPER WORKING OF VESSEL
AND/OR HER EQUIPMENT SHALL BE REPAIRED IMMEDIATELY WITHOUT DELAY IN THE
CHARTERERS TIME, RISK AND EXPENSES BEFORE SAILING FROM THE PORT
AS PER GOVERNING C/P

1/23/2008

IN THIS REGARDS, OWNRS STRONGLY ASK CHTRS TO REPAIR VSLS NO.3 CRANE
AND SUPPLY GRAB IMMEDIATELY WITHOUT ANY DELAY

VESSEL TO REMAIN ON-HIRE THROUGHOUT AND OWNRS HV OUR ALL RIGHTS

TKS/BRGDS
/// UNQUOTE ///

THANKS.


U N Q T E

Brgds / Jenny

FROM :                          FAX NO. :79452130            Jan. 15 2008 09:25AM P1

*1/1*

## STEVEDORE DAMAGE REPORT (SHIP, GEAR or EQUIPMENT)

M/V    FANY                                Date: 1620LT 15TH JAN. '08

Voy.   013                                 Port     WAIGEO, INDONESIA

TO:  PT. KARUNIA ALAM WAIGEO and stevedore at above port.

     I beg to advise that on the above date you damaged my, ship, gear and/or equipment as specified below I hereby notify you that you are responsible therefore and that cost of replacement and/or repair will be billed against you.

Damage Consists of :
NO.3 CRANE'S BOOM BROKEN.

Remarks by Stevedore, if any :

Disposition of Damaged Equipment of Gear Turned over to Stevedore? ?
NOTIFY TO STEVEDORE AND SHIPPER'S REPRESENTATIVE.

Received by :

Other Disposition (state fully) :
NO.3 CRANE'S GRAB WAS FALLEN INTO THE SEA WITH CARGO WIRE.

Damage was Caused as Follows :
DURING CARGO OPERATION, STEVEDORE OPERATED NO.3 CRANE AT THAT TIME COMING BIG SWELL SUDDENLY, HE COULD NOT STOP SWING OF NO.3 CRANE'S GRAB, SO THE BOOM HAS BEEN BROKEN.

PT. KARUNIA ALAM WAIGEO
SHIPPER'S REPRESENTATIVE

Form  CSSM-11-F05 / 0 / 2002. 10. 01

EXHIBIT "C"

*Fm OWS*

## Jenny Gao

| | |
|---|---|
| **From:** | JOONGBO SHIPPING [joongboship@kornet.net] |
| **Sent:** | Monday, January 28, 2008 6:05 PM |
| **To:** | San Juan Navigation (Singapore) Pte Ltd |
| **Cc:** | joongbo |
| **Subject:** | Fw: MV FANY / SJN – HULL DAMAGES IN WAIGEO // TOP URGENT // |

**Attachments:** fany-dam h.pdf; ATT01721.txt



fany-dam h.pdf (72  ATT01721.txt (103
KB)                B)

JENNY/CS

RCVD FLWG MSG FM OWS

Q T E

Re: MV FANY / SJN – HULL DAMAGES IN WAIGEO // TOP URGENT //
======================================================
DEAR SIRS,

GOOD DAY!

FOLLOWING HAS BEEN RECEIVED FROM HEAD OWNERS AND PLS CONSIDER IT FROM OWNERS.

OWNERS RESERVE ALL THEIR RIGHTS IN THE CASE.

/// FULL QUOTE ///
// TOP URGENT //

PLS BE ADVD THAT VSL DAMAGED TO HULL AS ATTACHED BY SHIPPERS BARGE ALONGSIDE VSL FOR LDG IN WAIGEO.

OWNRS HV OUR ALL RIGHTS
/// UNQUOTE ///

THANKS.

Best Regards, Kelvin Lee

U N Q T E


BRGDS/CS

1

FROM :                          FAX NO. :79452130              Jan. 28 2008 10:17AM P1

# HULL DAMAGE REPORT

M/V   FANY                               Date: 28TH JAN. '08

Voy.   013                               Port    WAIGEO, INDONESIA

TO:  PT. KARUNIA ALAM WAIGEO and stevedore at above port.


I beg to advise that on the above date you damaged my ship, gear and/or equipment as specified below I hereby notify you that you are responsible therefore and that cost of replacement and/or repair will be billed against you.


Damage Consists of :
SHELL PLATE OF NO.4 DBT(P) DAMAGED BETWEEN FRAME NO.80 AND
NO.87, ABOUT LENGTH 10M X HIGH 2M X DEPTH 10CM

Remarks by Stevedore, if any :
~ Condition high sea, ship swelling and big swell.
~ Barge cast off for avoid damage.
Disposition of Damaged Equipment of Gear Turned over to Stevedore ?
NOTIFIED SHIPPER'S REPRESENTATIVE.


Received by :


Other Disposition (state fully) :
WE FOUND THE ABOVE DAMAGE BY VISUAL CHECKING DUE TO HEAVY
SWELL AND ROLLING SO THE DETAILS WILL BE REVERT.

Damage was Caused as Follows :
DURING ALONGSIDE THE BARGE, NAMED TB TRANS POWER 206 TO OUR VESSEL FORM 1500LT ON
24TH TO 0845LT ON 25TH JAN'08, THE VESSEL HAS BEEN DAMAGED BY THE BARGE. RESULTING IN
SEVERE DAMAGE TO THE ABOVE DAMAGE AND AS SET OUT ABOVE. OWNERS HOLD SHIPPER'S
RESPONSIBILITY FOR THIS DAMAGE AND RESERVE ALL THEIR RIGHTS ACCORDINGLY.

Received only
without prejudice
ADI. R.

PT. KARUNIA ALAM WAIGEO
SHIPPER'S REPRESENTATIVE

Form  CSSM-11-F05 / 0 / 2002. 10. 01

**Jenny Gao**

**FVM OWS**

| | |
|---|---|
| **From:** | JOONGBO SHIPPING [joongboship@kornet.net] |
| **Sent:** | Tuesday, January 29, 2008 1:36 PM |
| **To:** | San Juan Navigation (Singapore) Pte Ltd |
| **Cc:** | joongbo |
| **Subject:** | Fw: MV FANY / SJN - DAMAGE TO HULL |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

**Attachments:** MV FANY - DAMAGE TO HULL.pdf; ATT02909.txt



MV FANY - DAMAGE ATT02909.txt (103
   TO HULL.pdf (...        B)          JENNY/CS

GOOD DAY !

RCVD FLWG MSG FM OWS

Q T E

To: SAN JUAN NAVIGATION
Fm: HANJIN SHIPPING

Re: MV FANY / SJN- DAMAGE TO HULL
=================================================================
DEAR SIRS,

FOLLOWING RECEIVED FROM HEAD OWNERS AND PLEASE CONSIDER IT FROM OWNERS.

OWNERS RESERVE ALL THEIR RIGHTS IN THE CASE.

/// QUOTE ///
PLS SEE ATTACHED THE ADDITIONAL DAMAGES TO HULL WHICH OWNRS HV OUR ALL RIGHTS ///
UNQUOTE ///

THANKS.

Best Regards, Kelvin Lee

U N Q T E

BRGDS/CS

1

FROM :                          FAX NO. :79452130            Jan. 29 2008 02:18AM  P1

## HULL DAMAGE REPORT

M/V    FANY                                    Date:  26TH JAN. '08

Voy. ___013___                                 Port ___WAIGEO, INDONESIA___

TO:  PT. KARUNIA ALAM WAIGEO and stevedore at above port.

        I beg to advise that on the above date you damaged my ship, gear and/or equipment as specified below I hereby notify you that you are responsible therefore and that cost of replacement and/or repair will be billed against you.

Damage Consists of :

1. SHELL PLATE(P) DAMAGED BETWEEN FRAME NO.85 AND NO.87; ABOUT LENGTH 3M X HIGH 1.5M X DEPTH 10CM, SPECIALLY NO.86 FRAME BRACKET OF WBT(P) WAS BENT
2. SHELL PLATE DAMAGED BETWEEN FRAME NO.78 AND NO.90, ABOUT LENGTH 12M X HIGH 2M X DEPTH 10CM, SPECIALLY ALL FRAME BRACKETS BETWEEN NO.78 AND NO.90 OF NO.4 HOLD WERE BENT

Remarks by Stevedore, if any :

~Shipper not responsable due to bad weather condition
~Barge alongside order by Master

Disposition of Damaged Equipment of Gear Turned over to Stevedore ?

NOTIFIED SHIPPER'S REPRESENTATIVE.

Received by :

Other Disposition (state fully) :

WE FOUND THE ABOVE DAMAGE BY VISUAL CHECKING ON DECK DUE TO HEAVY SWELL AND ROLLING SO THE DETAILS WILL BE REVERT.

Damage was Caused as Follows :

DURING ALONGSIDE THE BARGE, NAMED GOLD TRANS 309 TO OUR VESSEL FORM 1500LT ON 24TH TO 0845LT ON 25TH JAN'08, THE VESSEL HAS BEEN DAMAGED BY THE BARGE. RESULTING IN SEVERE DAMAGE TO THE ABOVE DAMAGE AND AS SET OUT ABOVE. OWNERS HOLD SHIPPER'S RESPONSIBILITY FOR THIS DAMAGE AND RESERVE ALL THEIR RIGHTS ACCORDINGLY.

Acknowledge only without prejudice be

AOI R.

PT. KARUNIA ALAM WAIGEO
SHIPPER'S REPRESENTATIVE

Form  CSSM-11-F05 / 0 / 2002. 10. 01

**Jenny Gao**

| | |
|---|---|
| **From:** | FANY [DSOX5@globeemail.com] |
| **Sent:** | Thursday, January 31, 2008 10:15 AM |
| **To:** | hua@huashipping.com |
| **Cc:** | sjn@sjnav.com.sg; CHANGSUNG@CSSHIP.CO.KR; handy@hanjin.com; shipping@transpower.sina.net |
| **Subject:** | HULL DAMAGE |

REF: FANY-01-124

TO: AGENT
CC: SAN JUAN NAVIGATION
CC: HANJIN SHIPPING
CC: TRANS POWER
CC: CHANGSUNG

DEAR SIRS,

PLS PASS BELOW MSG TO ALL PARTIES CONCERNED.

PLS NOTE THAT VSL HAS BEEN DAMAGED BY THE BARGES LAST NIGHT DUE TO NOT PROVIDED SUFICIANT FENDERS.

THE SHELL PLATE DAMAGE IS ASF;
1. SHELL PLATE(P) BETWEEN FRAME NO. 169 & 179 ABT LENGTH 8M X
    HIGH 1.5M X DEPTH 10CM , SPECIALLY FRAME BRACKETS NO. 170,
    172, 177 & 178 WERE BENT.

2. SHELL PLATE(S) BETWEEN FRAME NO. 40 & 51 ABT LENGTH 9M X
    HIGH 1.5M X DEPTH 5CM & FRAME NO. 53 & 60 ABT LENGTH 6M X
    HIGH 1.5M X DEPTH 10CM.

3. HANDRAIL OF NO. 2 HOLD(P) DAMAGED ABT 6M.

4. HANDRAIL OF NO. 5 HOLD(S) DAMAGED ABT 5M.

WITH THE ABOVE CONSEQUENCE THAT THE SHELL PLATE IS BEING DAMAGED.
SO I HEREBY STRONGLY REQUEST AGAIN TO ARRANGE BIG FENDERS LIKE YOKOHAMA FENDERS BECAUSE AT PRESENT THE FENDERS OF THE BARGES ARE NOT ENOUGH WHILE ALONGSIDE.

B.RGDS/CAPT. PAK

Received: from GCC at Globe Wireless;
Thu, 31 Jan 2008 02:17 UTC
Message-id: 228868349

1

**Jenny Gao**

| | |
|---|---|
| **From:** | JOONGBO SHIPPING [joongboship@kornet.net] |
| **Sent:** | Thursday, January 31, 2008 2:18 PM |
| **To:** | San Juan Navigation (Singapore) Pte Ltd |
| **Cc:** | joongbo |
| **Subject:** | Fw: MV FANY / SJN - FENDERS OF THE BARGE // TOP URGENT // |

**Attachments:**        MV FANY DAMAGE REPORT.pdf; ATT00903.txt

 

MV FANY DAMAGE    ATT00903.txt (103
REPORT.pdf (72 ...        B)
                                        JENNY/CS

RCVD FLWG MSG FM OWS

Q T  E

To: SAN JUAN NAVIGATION
Fm: HANJIN SHIPPING

Re: MV FANY / SJN - FENDERS OF THE BARGE // TOP URGENT //
===================================================
DEAR SIRS,

FOLLOWING RECEIVED FROM HEAD OWNERS AND PLS CONSIDER IT FROM OWNERS AS WELL.

OWNERS RESERVE ALL THEIR RIGHTS IN THE CASE.

/// FULL QUOTE ///
-----Original Message-----


FLWG FM OWS;
===

PLS SEE ATTACHED VSLS DAMAGE REPORT FOR CHTRS REF

OWNRS HV OUR ALL RIGHT

TKS/BRGDS



----- Original Message -----

TO HANJIN VIA ILDO
CC MASTER OF FANY
FM CHANGSUNG

PLS BE ADVD THAT VSL DAMAGED TO HULL AGAIN LAST NIGHT DUE LACK OF FENDERS WHILE BARGE
ALONGSIDE VESSEL

IN THIS REGARDS, OWNRS STRONGLY ASK CHTRS TO ARRANGE ENOUGH/BIG FENDERS URGENTLY AS PER
MASTERS REQUEST TO AVOID ANY FUTHER DAMAGES TO HULL.
OTHERWISE MASTER AND/OR OWNRS WL NOT ALLOW BARGE TO ALONGSIDE VSL

OWNRS HV OUR ALL RIGHTS AS PER C/P CL.82 DOUBLE BANKING.

TKS/BRGDS
/// FULL UNQUOTE ///

THANKS.


U N Q T E


BRGDS/CS

FROM :                        FAX NO. :79452130              Jan. 31 2008 04:16AM P1

1/1

# HULL DAMAGE REPORT

M/V    FANY                          Date:  31ST JAN. '08

Voy.    013                          Port _____WAIGEO, INDONESIA_____

TO:  PT. KARUNIA ALAM WAIGEO and stevedore at above port.

      I beg to advise that on the above date you damaged my ship, gear and/or equipment as specified below I hereby notify you that you are responsible therefore and that cost of replacement and/or repair will be billed against you.

Damage Consists of :

1. SHELL PLATE(P) BETWEEN FRAME NO. 169 & 179 ABT LENGTH 8M X HIGH 1.5M X DEPTH 10CM, SPECIALLY FRAME BRACKETS NO. 170, 172, 177 & 178 WERE BENT.
2. SHELL PLATE(S) BETWEEN FRAME NO. 40 & 51 ABT LENGTH 9M X HIGH 1.6 M X DEPTH 5CM & FRAME NO. 53 & 60 ABT LENGTH 6M X 1.5M X DEPTH 10CM
3. HANDRAIL OF NO. 2 HOLD(P) DAMAGED ABT 6M.
4. HANDRAIL OF NO. 5 HOLD(S) DAMAGED ABT 5M.

Remarks by Stevedore, if any :



Disposition of Damaged Equipment of Gear Turned over to Stevedore ?
NOTIFIED SHIPPER'S REPRESENTATIVE.



Received by :



Other Disposition (state fully) :
WE FOUND THE ABOVE DAMAGE BY VISUAL CHECKING ON DECK DUE TO HEAVY SWELL AND ROLLING SO THE DETAILS WILL BE REVERT.

Damage was Caused as Follows :
DURING ALONGSIDE THE BARGE, NAMED GOLD TRANS 309 & RMN 313 TO OUR VESSEL FORM 0001LT ON 31ST TO 0700LT ON 31ST JAN'08, THE VESSEL HAS BEEN DAMAGED BY THE BARGE, RESULTING IN SEVERE DAMAGE TO THE ABOVE DAMAGE AND AS SET OUT ABOVE, OWNERS HOLD SHIPPER'S RESPONSIBILITY FOR THIS DAMAGE AND RESERVE ALL THEIR RIGHTS ACCORDINGLY.



                              _____
                              PT. KARUNIA ALAM WAIGEO
                              SHIPPER'S REPRESENTATIVE

                              Form  CSSM-11-F05 / 0 / 2002. 10. 01

**Jenny Gao**

| | |
|---|---|
| **From:** | FANY [DSOX5@globeemail.com] |
| **Sent:** | Saturday, February 02, 2008 10:26 AM |
| **To:** | hua@huashipping.com |
| **Cc:** | sjn@sjnav.com.sg; CHANGSUNG@CSSHIP.CO.KR; handy@hanjin.com; shipping@transpower.sina.net |
| **Subject:** | HULL DAMAGE |

REF: FANY-02-007

TO: AGENT
CC: SAN JUAN NAVIGATION
CC: HANJIN SHIPPING
CC: TRANS POWER
CC: CHANGSUNG

DEAR SIRS,

PLS PASS BELOW MSG TO ALL PARTIES CONCERNED.

PLS NOTE THAT VSL HAS BEEN DAMAGED BY THE BARGE DUE TO NOT PROVIDED SUFFICIANT FENDERS.

THE SHELL PLATE DAMAGE IS ASF;
1. SHELL PLATE(P) BETWEEN FRAME NO. 181 & 189 ABT LENGTH 7M X
   HIGH 4M X DEPTH 10CM.

WITH THE ABOVE CONSEQUENCE THAT THE SHELL PLATE IS BEING DAMAGED.
SO I HEREBY STRONGLY REQUEST AGAIN TO ARRANGE BIG FENDERS LIKE YOKOHAMA FENDERS BECAUSE
AT PRESENT THE FENDERS OF THE BARGES ARE NOT ENOUGH WHILE ALONGSIDE.

B.RGDS/CAPT. PAK

Received: from GCC at Globe Wireless;
Sat, 02 Feb 2008 02:28 UTC
Message-id: 229316120

1

**Jenny Gao**

| | |
|---|---|
| **From:** | JOONGBO SHIPPING [joongboship@kornet.net] |
| **Sent:** | Monday, February 04, 2008 9:11 AM |
| **To:** | San Juan Navigation (Singapore) Pte Ltd |
| **Cc:** | joongbo |
| **Subject:** | Fw: MV FANY / SJN - OWNERS' MSG |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| **Attachments:** | mv fany - additional damage to hull.pdf |

JENNY/CS

GOOD DAY !

RCVD FLWG MSG FM OWS

Q T E

----- Original Message -----
**From:** Kelvin Lee
**To:** joongboship@kornet.net
**Cc:** 'handy'
**Sent:** Monday, February 04, 2008 10:03 AM
**Subject:** MV FANY / SJN -- OWNERS' MSG

To: SAN JUAN NAVIGATION

Fm: HANJIN SHIPPING

Re: MV FANY / SJN -- OWNERS' MSG
========================================================

DEAR SIRS,

GOOD DAY!

FOLLOWING RECEIVED FROM HEAD OWNERS AND PLS CONSIDER IT FROM OWNERS.
OWNERS RESERVE ALL THEIR RIGHTS IN THE CASE.

/// QUOTE 1 ///
Owners note the response from Trans Power's lawyers, Birketts.

Owners maintain their position for the reasons set out. Further, while Charterers are in any case responsible
for the loss of the grab and time taken to retrieve it, that time did not cause delay by reason of the

2/4/2008

prevailing
weather conditions.

Charterers are urged not to make any deductions from hire and Owners fully reserve their position should
Charterers do so.
/// UNQUOTE 1 ///

/// QUOTE 2 ///
PLS BE ADVD THAT VSL DAMAGED AGAIN TO HULL BY BARGES WHILE ALONGSIDE VESSEL WHICH OWNRS STRONGLY ASK AGAIN CHTRS TO PROVIDE SUITABLE/ENOUGH FENDERS AS PER REQUEST OF MASTER TO AVOID ANY FURTHER DAMAGES TO HULL.

OTHERWISE OWNERS AND/OR MASTER SHALL HAVE THE RIGHT TO ALLOW BARGES TO ALONGSIDE FOR LOADING IF IT IS NOT SAFE SO TO DO.

THE CHTRS SHALL FURTHER INDEMNIFY THE OWNRS FOR ANY COSTS, DAMAGE AND LIABILITIES RESULTING FROM SUCH OPERATION AND THE VESSEL SHALL REMAIN ON HIRE FOR ANY TIME LOST INCLUDING PERIODS FOR REPAIRS AS A RESULT OF SUCH OPERATION.

MASTER OF FANY, READING IN COPY, PLS TAKE OFF BARGES FROM VESSEL IMMEDIATELY AND DO NOT ALLOW BARGES TO ALONGSIDE UNLESS THEY HV SUITABLE/ENOUGH FENDERS UPTO SATISFACTIONS OF MASTER
/// UNQUOTE 2 ///

/// QUOTE 3 ///
RCVD FLWG FM MASTER AND
PLS SEE ATTACHED ADDITIONAL HULL DAMAGE REPORT

OWNRS HOLD CHTRS THAT THE VESSEL SHALL REMAIN ON-HIRE FOR ANY TIME LOST INCL PERIODS FOR REPAIRS AS A RESULT OF ABV DAMAGE TO HULL

TKS/BRGDS

----- Original Message -----
Sent: Saturday, February 02, 2008 11:26 AM
Subject: HULL DAMAGE

2/4/2008

REF: FANY-02-007

TO: AGENT
CC: SAN JUAN NAVIGATION
CC: HANJIN SHIPPING
CC: TRANS POWER
CC: CHANGSUNG

DEAR SIRS,

PLS PASS BELOW MSG TO ALL PARTIES CONCERNED.

PLS NOTE THAT VSL HAS BEEN DAMAGED BY THE BARGE
DUE TO NOT PROVIDED SUFFICIANT FENDERS.

THE SHELL PLATE DAMAGE IS ASF;
1. SHELL PLATE(P) BETWEEN FRAME NO. 181 & 189 ABT LENGTH 7M X
   HIGH 4M X DEPTH 10CM.

WITH THE ABOVE CONSEQUENCE THAT THE SHELL PLATE IS BEING DAMAGED.
SO I HEREBY STRONGLY REQUEST AGAIN TO ARRANGE BIG FENDERS LIKE
YOKOHAMA FENDERS BECAUSE AT PRESENT THE FENDERS OF THE BARGES
ARE NOT ENOUGH WHILE ALONGSIDE.

B.RGDS/CAPT. PAK
/// UNQUOTE 3 ///

THANKS.


Best Regards, **Kelvin Lee**

U N Q T E


BRGDS/CS

2/4/2008

1/1

# HULL DAMAGE REPORT

M/V    FANY                              Date: 02ND FEB. '08
Voy. ___013_____          Port ___WAIGEO, INDONESIA____

TO:  PT. KARUNIA ALAM WAIGEO and stevedore at above port.

      I beg to advise that on the above date you damaged my ship, gear and/or equipment as specified below I hereby notify you that you are responsible therefore and that coat of replacement and/or repair will be billed against you.

Damage Consists of :
1. SHELL PLATE(P) BETWEEN FRAME NO. 181 & 189 ABT LENGTH 7M X HIGH 4M X DEPTH 10CM,

Remarks by Stevedore, if any :

Disposition of Damaged Equipment of Gear Turned over to Stevedore ?
NOTIFIED SHIPPER'S REPRESENTATIVE.

Received by :

Other Disposition (state fully) :
WE FOUND THE ABOVE DAMAGE BY VISUAL CHECKING ON DECK
SO THE DETAILS WILL BE REVERT.

Damage was Caused as Follows :
DURING ALONGSIDE THE BARGE, NAMED GOLD TRANS 311 TO OUR VESSEL FORM 0800LT ON 2ND TO 0830LT ON 2ND FEB'08, THE VESSEL HAS BEEN DAMAGED BY THE BARGE. RESULTING IN SEVERE DAMAGE TO THE ABOVE DAMAGE AND AS SET OUT ABOVE. OWNERS HOLD SHIPPER'S RESPONSIBILITY FOR THIS DAMAGE AND RESERVE ALL THEIR RIGHTS ACCORDINGLY.

                                        PT. KARUNIA ALAM WAIGEO
                                        SHIPPER'S REPRESENTATIVE

                        Form  CSSM~11~F05 / 0 / 2002. 10. 01

**Jenny Gao**

| | |
|---|---|
| From: | FANY [DSOX5@globeemail.com] |
| Sent: | Tuesday, February 05, 2008 9:25 AM |
| To: | hua@huashipping.com |
| Cc: | sjn@sjnav.com.sg; shipping@transpower.sina.net; handy@hanjin.com; CHANGSUNG@CSSHIP.CO.KR |
| Subject: | HULL DAMAGE |

REF: FANY-02-017

TO: AGENT
CC: SAN JUAN NAVIGATION
CC: HANJIN SHIPPING
CC: TRANS POWER
CC: CHANGSUNG

DEAR SIRS,

PLS PASS BELOW MSG TO ALL PARTIES CONCERNED.

PLS NOTE THAT VSL HAS BEEN DAMAGED BY THE BARGE DUE TO NOT PROVIDED SUFFICIANT FENDERS.

THE SHELL PLATE DAMAGE IS ASF;
1. SHELL PLATE(S) BETWEEN FRAME NO. 89 & 98 ABT LENGTH 8M X
   HIGH 4M X DEPTH 10CM.
2. SHELL PLATE(S) BETWEEN FRAME NO.157 & 189 ABT L 25M X H 6M
   X D 10CM
3. SHELL PLATE(S) BETWEEN FRAME NO. 204 & 208 ABT L 4M X H 4M
   X D 10CM

WITH THE ABOVE CONSEQUENCE THAT THE SHELL PLATE IS BEING DAMAGED.
SO I HEREBY STRONGLY REQUEST AGAIN TO ARRANGE BIG FENDERS LIKE YOKOHAMA FENDERS BECAUSE
THE FENDERS OF THE LAST BARGE WAS NOT SUITABLE WHILE ALONGSIDE.

B.RGDS/CAPT. PAK

Received: from GCC at Globe Wireless;
Tue, 05 Feb 2008 01:27 UTC
Message-Id: 229811857

1

**Jenny Gao**

| | |
|---|---|
| **From:** | JOONGBO SHIPPING [joongboship@kornet.net] |
| **Sent:** | Tuesday, February 05, 2008 12:30 PM |
| **To:** | San Juan Navigation (Singapore) Pte Ltd |
| **Cc:** | joongbo |
| **Subject:** | Fw: MV FANY / SJN - ADDITIONAL DAMAGES TO HULL  "URGENT" |

**Attachments:**        mv fany - Additional damages to hull.pdf; ATT02092.txt



mv fany - Additional   ATT02092.txt (103
    damages t...            B)
                                    JENNY/CS

GOOD DAY !

RCVD FLWG MSG FM OWS

Q T E

To: SAN JUAN NAVIGATION
Fm: HANJIN SHIPPING

Re: MV FANY / SJN - ADDITIONAL DAMAGES TO HULL
===========================================================
DEAR SIRS,

PLS SEE ATTACHED THE REPORT OF ADDITIONAL DAMAGES TO HULL FOR CHTRS REF.

THANKS.

Best Regards, Kelvin Lee

U N Q T E


BRGDS/CS

1

FROM :                    FAX NO. :79452130              Feb. 05 2008 02:43AM  P1


# HULL DAMAGE REPORT

M/V    FANY                          Date:  05TH FEB. '08
Vcy.  ___013_____              Port ____WAIGEO, INDONESIA_____

TO:  PT. KARUNIA ALAM WAIGEO and stevedore at above port.


      I beg to advise that on the above date you damaged my ship, gear and/or equipment as specified below I hereby notify you that you are responsible therefore and that cost of replacement and/or repair will be billed against you.


Damage Consists of :
1. SHELL PLATE(S) BETWEEN FRAME NO. 89 & 98 ABT LENGTH 8M X
   HIGH 4M X DEPTH 10CM.
2. SHELL PLATE(S) BETWEEN FRAME NO.157 & 189 ABT L 25M X H 6M
   X D 10CM
3. SHELL PLATE(S) BETWEEN FRAME NO. 204 & 208 ABT L 4M X H 4M
   X D 10CM


Remarks by Stevedore, if any :



Disposition of Damaged Equipment or Gear Turned over to Stevedore ?
NOTIFIED SHIPPER'S REPRESENTATIVE.



Received by :



Other Disposition (state fully) :
WE FOUND THE ABOVE DAMAGE BY VISUAL CHECKING ON DECK
SO THE DETAILS WILL BE REVERT.


Damage was Caused as Follows :
DURING ALONGSIDE THE BARGE, NAMED GOLD TRANS 311 TO OUR VESSEL FORM 2052LT ON 4TH TO 0315LT ON 05TH FEB'08, THE VESSEL HAS BEEN DAMAGED BY THE BARGE. RESULTING IN SEVERE DAMAGE TO THE ABOVE DAMAGE AND AS SET OUT ABOVE. OWNERS HOLD SHIPPER'S RESPONSIBILITY FOR THOSE DAMAGE AND RESERVE ALL THEIR RIGHTS ACCORDINGLY.



                                           PT. KARUNIA ALAM WAIGEO
                                           SHIPPER'S REPRESENTATIVE

                               Form  CSSM-11-F05 / 0 / 2002. 10. 01

**Jenny Gao**

| | |
|---|---|
| From: | JOONGBO SHIPPING [joongboship@kornet.net] |
| Sent: | Tuesday, February 12, 2008 8:40 AM |
| To: | San Juan Navigation (Singapore) Pte Ltd |
| Cc: | joongbo |
| Subject: | Fw: MV FANY / SJN - ONWER'S MSG |

Attachments:    MV FANY - LETTER OF PROTEST.pdf; MV FANY - HULL DAMAGE REPORT.pdf;
ATT00196.txt

 

MV FANY - LETTER   MV FANY - HULL   ATT00196.txt (103
OF PROTEST.pd... )AMAGE REPORT.p..        B)
                                                          JENNY/CS

GOOD MORNING !

RCVD FLWG MSG FM OWS

Q T E

Subject: MV FANY / SJN - HEAD ONWER'S MSG


To: SAN JUAN NAVIGATION
Fm: HANJIN SHIPPING

Re: MV FANY / SJN - HEAD ONWER'S MSG
========================================================
DEAR SIRS,

GOOD DAY!

FOLLOWING HAS BEEN RECEIVED FROM HEAD OWNERS AND PLS CONSIDER IT FROM OWNERS AS WELL.

OWNERS HEREBY RESERVE ALL THEIR RIGHTS IN THE CASE.

/// QUOTE 1 ///
PLS SEE ATTCHED MASTERS LETTER OF PROTEST FOR CHTRS REF AND OWNRS HV OUR ALL RIGHT ///
UNQUOTE 1 ///

/// QUOTE 2 ///
PLS SEE ATTACHED VSLS HULL DAMAGE REPORTS SIGNED BY SHIPPERS WHICH OWNRS HV OUR ALL RIGHT
/// UNQUOTE 2 ///

THANKS.

Best Regards, Kelvin Lee


MMMM

-----Original Message-----

1

From: ILDO - Handy [mailto:handy@ildochtrg.co.kr]
Sent: Monday, February 11, 2008 7:30 PM
To: HANJIN HANDY
Cc: Kelvin Lee
Subject: MV FANY / HANJIN - LETTER OF PROTEST


ILDO CHARTERING CORP.LTD., SEOUL, KOREA - JADE TEL 82-2-364-3644 / FAX 82-2-364-3645

DIRECT    82-2-3276-3841
MOB       82-11-9528-6832
EMAIL     handy@ildochtrg.co.kr
MSN       geon.ho@hotmail.com


KELVIN / JADE

RE: MV FANY / HANJIN - LETTER OF PROTEST

FLWG FM OWS;
===

PLS SEE ATTCHED MASTERS LETTER OF PROTEST FOR CHTRS REF AND OWNRS HV OUR ALL RIGHT

TKS/BRGDS


U N Q T E


BRGDS/CS

2

# LETTER OF PROTEST

Messers:

Date: 11ᵀᴴ FEB. 2008                    Port: WAIGEO ANCHORAGE, INDONESIA
Name of ship: M/V FANY                  Voy.: 013

Dear sirs,

## LETTER OF PROTEST

   I hereby advise you that the cargo quantity loaded to the
vessel at this port is 43,280.0MT by checking drafts survey
during coming about 2 mtrs swell.

So, at the discharging port, the difference of cargo quantity
between B/L figures and ship's figures, vessel is not responsible
for any dispute and consequences arising from such differences
between the shippers/ consignees and carriers.

                                        Yours faithfully,

PT. KARUNIA ALAM WAIGEO

   PT. Kurnia Abadi Waigeo
   Mr. ADI RUSMINTO                     PAK
   Shipper representative               Master of M/V FANY

FROM :                          FAX NO. :79452130            Feb. 11 2008 08:36AM P9

- 1/4

# HULL DAMAGE REPORT

M/V    FANY                           Date: 31ST JAN. '08

Voy. ___013_____        Port ____WAIGEO, INDONESIA____

TO:  PT. KARUNIA ALAM WAIGEO and stevedore at above port.

I beg to advise that on the above date you damaged my ship, gear and/or equipment as specified below I hereby notify you that you are responsible therefore and that cost of replacement and/or repair will be billed against you.

Damage Consists of :

1. SHELL PLATE(P) BETWEEN FRAME NO. 169 & 179 ABT LENGTH 8M X HIGH 1.5M X DEPTH 10CM, SPECIALLY FRAME BRACKETS NO. 170, 172, 177 & 178 WERE BENT.
2. SHELL PLATE(S) BETWEEN FRAME NO. 40 & 51 ABT LENGTH 9M X HIGH 1.5 M X DEPTH 5CM & FRAME NO. 53 & 60 ABT LENGTH 6M X 1.5M X DEPTH 10CM
3. HANDRAIL OF NO. 2 HOLD(P) DAMAGED ABT 6M.
4. HANDRAIL OF NO. 5 HOLD(S) DAMAGED ABT 5M.

Remarks by Stevedore, if any :

Disposition of Damaged Equipment of Gear Turned over to Stevedore ?

NOTIFIED SHIPPER'S REPRESENTATIVE.

Received by :

Other Disposition (state fully) :

WE FOUND THE ABOVE DAMAGE BY VISUAL CHECKING ON DECK DUE TO HEAVY SWELL AND ROLLING SO THE DETAILS WILL BE REVERT.

Damage was Caused as Follows :

DURING ALONGSIDE THE BARGE, NAMED GOLD TRANS 309 & RMN 313 TO OUR VESSEL FORM 0001LT ON 31ST TO 0700LT ON 31ST JAN'08, THE VESSEL HAS BEEN DAMAGED BY THE BARGE. RESULTING IN SEVERE DAMAGE TO THE ABOVE DAMAGE AND AS SET OUT ABOVE. OWNERS HOLD SHIPPER'S RESPONSIBILITY FOR THIS DAMAGE AND RESERVE ALL THEIR RIGHTS ACCORDINGLY.

PT. KARUNIA ALAM WAIGEO
PT. KARUNIA ALAM WAIGEO
SHIPPER'S REPRESENTATIVE

Form  CSSM-11-F05 / 0 / 2002. 10. 01

FROM :                          FAX NO. :79452130              Feb. 11 2008 08:37AM P10

2/4

# HULL DAMAGE REPORT

M/V    FANY                              Date:  02ND FEB. '08

Voy.    013                              Port _____ WAIGEO, INDONESIA _____

TO:  PT. KARUNIA ALAM WAIGEO and stevedore at above port.


        I beg to advise that on the above date you damaged my ship, gear. and/or equipment as specified below I hereby notify you that you are responsible therefore and that coat of replacement and/or repair will be billed against you.


Damage Consists of :

1. SHELL, PLATE(P) BETWEEN FRAME NO. 181 & 189 ABT LENGTH 7M X HIGH 4M X DEPTH 10CM,


Remarks by Stevedore, if any :


Disposition of Damaged Equipment of Gear Turned over to Stevedore ?

NOTIFIED SHIPPER'S REPRESENTATIVE.


Received by :


Other Disposition (state fully) :

WE FOUND THE ABOVE DAMAGE BY VISUAL CHECKING ON DECK
SO THE DETAILS WILL BE REVERT.


Damage was Caused as Follows :

DURING ALONGSIDE THE BARGE, NAMED GOLD TRANS 311 TO OUR VESSEL FORM 0800LT ON 2ND TO 0830LT ON 2ND FEB'08, THE VESSEL HAS BEEN DAMAGED BY THE BARGE. RESULTING IN SEVERE DAMAGE TO THE ABOVE DAMAGE. AND AS SET OUT ABOVE. OWNERS HOLD SHIPPER'S RESPONSIBILITY FOR THIS DAMAGE AND RESERVE ALL THEIR RIGHTS ACCORDINGLY.

*Receive duly w/o prejudice*

PT. KARUNIA ALAM WAIGEO
             PT. KARUNIA ALAM WAIGEO
             SHIPPER'S REPRESENTATIVE


                    Form  CSSM-11-F05 / 0 / 2002. 10. 01

FROM :                          FAX NO. :79452130              Feb. 11 2008 08:38AM P11

# HULL DAMAGE REPORT

M/V   FANY

Voy. ___013___                           Date: 05TH FEB. '08

                                         Port ____WAIGEO, INDONESIA____

TO:   PT. KARUNIA ALAM WAIGEO and stevedore at above port.

        I beg to advise that on the above date you damaged my ship, gear and/or equipment as specified below I hereby notify you that you are responsible therefore and that cost of replacement and/or repair will be billed against you.

Damage Consists of :

1. SHELL PLATE(S) BETWEEN FRAME NO. 89 & 98 ABT LENGTH 8M X
   HIGH 4M X DEPTH 10CM.
2. SHELL PLATE(S) BETWEEN FRAME NO.157 & 189 ABT L 25M X H 6M
   X D 10CM
3. SHELL PLATE(S) BETWEEN FRAME NO. 204 & 208 ABT L 4M X H 4M
   X D 10CM

Remarks by Stevedore, if any :

Disposition of Damaged Equipment of Gear Turned over to Stevedore ?
NOTIFIED SHIPPER'S REPRESENTATIVE.

Received by :

Other Disposition (state fully) :
WE FOUND THE ABOVE DAMAGE BY VISUAL CHECKING ON DECK
SO THE DETAILS WILL BE REVERT.

Damage was Caused as Follows :
DURING ALONGSIDE THE BARGE, NAMED GOLD TRANS 311 TO OUR VESSEL FORM 2052LT ON 4TH TO
0315LT ON 05TH FEB'08, THE VESSEL HAS BEEN DAMAGED BY THE BARGE. RESULTING IN SEVERE
DAMAGE TO THE ABOVE DAMAGE AND AS SET OUT ABOVE. OWNERS HOLD SHIPPER'S
RESPONSIBILITY FOR THOSE DAMAGE AND RESERVE ALL THEIR RIGHTS ACCORDINGLY.

                                              PT. KARUNIA ALAM WAIGEO

                                              PT. KARUNIA ALAM WAIGEO
                                              SHIPPER'S REPRESENTATIVE

                               Form  CSSM-11-F05 / 0 / 2002. 10. 01

EXHIBIT "D"

**Gerard Hopkins**

| | |
|---|---|
| **From:** | Bentham, Sonja [SBentham@ReedSmith.com] on behalf of Andrews, Alex T. [AAndrews@ReedSmith.com] |
| **Sent:** | 07 February 2008 16:41 |
| **To:** | Gerard Hopkins |
| **Cc:** | Andrews, Alex T. |
| **Subject:** | "FANY" |

Gerard,

Thank you for your various e-mails.

As to preservation of evidence, I have put the requests to our own expert but they are noted.

As to the continuing damage to the vessel's hull/shell plating, we confirm that those claims will be pursued against Charterers and would expect that they will pursue the claim down the line. I have passed on to clients your request for information as to repair cost and time.

As to further details of the vessel's next employment, while we will take instructions on whether to provide further information, we do not accept that a failure to provide that information constitutes any failure to mitigate properly any losses. Your clients are fully aware as to their obligations to redeliver the vessel and as to the anticipated time of redelivery given the progress of loading operations. They are also aware that our clients have a further fixture and that the market may move so that there is a risk of loss in the event your clients are in breach of their redelivery obligations.

Best regards.

**Alex Andrews**
**Partner**
AAndrews@reedsmith.com
+44 (0) 20 7772 5850

Reed Smith Richards Butler LLP
Beaufort House
15 St. Botolph Street
London EC3A 7EE
DX 1066 City / DX18 London
T: +44 (0) 20 7247 6555
F: +44 (0) 20 7247 5091
www.reedsmith.com

Reed Smith Richards Butler LLP is a limited liability partnership registered in England (registered no. OC303620) with its registered office at Beaufort House, Tenth Floor, 15 St. Botolph Street, London EC3A 7EE, England. Reed Smith Richards Butler LLP is regulated by the Solicitors Regulation Authority.

A list of members of Reed Smith Richards Butler LLP, and their professional qualifications, is

07/02/2008

# EXHIBIT "E"

**Gerard Hopkins**

| | |
|---|---|
| **From:** | Gerard Hopkins |
| **Sent:** | 21 February 2008 11:09 |
| **To:** | 'Alex Davey'; 'Nicholas Woo' |
| **Subject:** | FANY |

To:    **Birketts**

Atten:    Nicholas Woo / Alex Davey

Alex,

**FANY**

Thanks for your message of yesterday received when I was out of the office looking after one of my children who was sick.

I note your clients' attempts to pick and choose which off-hire events are disputed and those which are not, whilst ignoring the uncomfortable fact that time lost due to bad weather / swell can never be an off-hire event. Indeed, you have not even sought to argue to the contrary. Accordingly there remains absolutely no basis for your clients' unlawful deductions of nearly 11 days of off-hire. Likewise, there is no basis for arguing that this wrongful deduction from hire is disputed and suggesting that it is paid into escrow. I repeat that this hire of USD0.6 million must be paid now.

The so-called "undisputed" off-hire periods are noted. However, by such characterisation your clients seek to ignore the fact that they cannot claim prorata hire reduction for crane down time that is a result of the incident to crane No 3, which is very much in dispute and the breakdown's of the grabs which seem to be the result of the manner in which they were being operated by your clients' stevedores and the unreasonable demands made on them dealing with this difficult cargo. In any event, without prejudice to above points, the amount of time your clients claim was lost to breakdowns is inaccurate and on the most generous calculation only amounts 1.444333 days and not the 2.3 days claimed.

It seems from the above that your clients are quite content to unjustifiably lock up other parties' funds in purported escrow arrangements yet are not so keen that the same applies to those periods which they like to think are "undisputed".

I also note the fact that your clients are dragging their feet about commencing arbitration notwithstanding indicating last Friday that the disputes about the hire should be referred to arbitration. If your clients have any faith in their off-hire allegations then start arbitration now.

The allegation that the cargo has been seriously damaged due to sea water ingress is strenuously denied. We are advised by the master that the water found in cargo hold No.1 only is not sea water but rather fresh water. The reason for the presence of fresh water in this hold in all likelihood due to either inherent moisture within the cargo (a

1

cargo which I would add is notorious for having a high water content) or due to the fact that the cargo was loaded by your clients' stevedores during periods of rain. With respect, neither of these can give rise to any allegation of either cargo damage having been caused by the ship nor any question of the ship being off-hire. The fact that your clients seem so keen to make such allegations and are so quick to allege that the vessel is off-hire (even if there is no loss of time) without first checking facts sadly seems to typify their approach to matters generally.

I have made clear in previous messages that if your clients have genuine proposals for securing our claims then it is incumbent on them to provide the escrow terms, details of the amount in dispute and evidence that the monies are in your firm's client account in readiness for payment into escrow. Instead, what we have from you is a "recommendation" [not an formal offer and not even binding on your clients], a vague suggestion as to the amount to be held in escrow which for the reasons stated above is unacceptable, no draft wording and absolutely no evidence of your clients having remitted any funds to your client account in readiness for such an escrow arrangement. By any measure, there is no proposal on the table worthy of serious consideration and in the circumstances our clients are entitled (and indeed have no real options given your clients ' approach) to take whatever steps they feel are necessary to secure their claims.

If your clients want to resolve matters, then rather than playing games they should pay the undisputed hire of nearly US$0.6M to our clients without any further delay and additionally come forward with escrow terms / monies to cover the disputed 1.4 / 2.3 days prorata off-hire and provide security for our clients other claims, which include the overrun liabilities and the crane and hull damage repairs plus interest and costs.

Kind regards

**Gerard Hopkins**

(direct) +44 (0) 20 7330 8015
(mobile) +44 (0) 7799 898071

**Gerard Hopkins**

| | |
|---|---|
| **From:** | Gerard Hopkins |
| **Sent:** | 21 February 2008 17:49 |
| **To:** | 'AAndrews@reedsmith.com' |
| **Subject:** | RE: FANY |

Oh sorry, are you going to appoint an arbitrator?

Kind regards
**Gerard Hopkins**

(direct) +44 (0) 20 7330 8015
(mobile) +44 (0) 7799 898071

| | |
|---|---|
| **From:** | Gerard Hopkins |
| **Sent:** | 21 February 2008 17:49 |
| **To:** | 'AAndrews@reedsmith.com' |
| **Subject:** | FANY |

Alex,

I tried to speak with you earlier today.

1. FYI, the cargo receivers are threatening to arrest the vessel for the alleged damage to the cargo in Hold No.1. If your clients haven't already it would make sense to advise their club so that security can be promptly furnished to avoid unnecessary delays due an arrest.

2. Any developments on security with Hanjin??

3. Any idea about the costs / timing of possible repairs to the alleged hull damage?

Kind regards
**Gerard Hopkins**

(direct) +44 (0) 20 7330 8015
(mobile) +44 (0) 7799 898071

1

# EXHIBIT "F"

# FACSIMILE TRANSMISSION

# M F B

## S O L I C I T O R S

**Confidentiality Notice**
The information contained in this fax is confidential and may be privileged. It is only for the use of the intended recipient. If you are not the named or intended recipient, please notify us immediately. In such an event, you must not make any use of this fax or the information contained in it and you may not disclose the contents to any other person. Please contact us immediately if any part of this fax is inadequately received.

**DIRECT
TEL:**                                            020 7330 8015

**EMAIL:**                            ghopkins@m-f-b.co.uk

TOTAL NUMBER OF PAGES                        2

45     M O O R F I E L D S
L O N D O N     E C 2 Y     9 A E

**TELEPHONE:** 020 7330 8000
**FACSIMILE:**  020 7256 6778
**EMAIL:** mail@m-f-b.co.uk
**WEBSITE:** www.m-f-b.co.uk

| | |
|---|---|
| DATE: | 29 February 2008 |
| TO: | **BIRKETTS** |
| REF/ATT: | Nicholas Woo / Alex Davey |
| FAX NO: | 01473 230524 |
| | |
| OUR REF: | GAH/WOE/0118/276328 |
| MATTER: | **MV "FANY" – C/P dd 08.01.08 – A/C Trans Power Co Ltd** |

We represent San Juan Navigation (Singapore) Pte Ltd, the Disponent Owners of the MV "FANY".

The MV "FANY" was time chartered to your clients, Trans Power Co Ltd, on an amended NYPE form dated 8 January 2008.

On behalf of San Juan Navigation (Singapore) Pte Ltd, we hereby give your clients, Trans Power Co. Ltd., notice that they are referring all disputes under the charterparty to arbitration in London pursuant to clause 48 of the C/P.

Please kindly note that our clients have appointed Mr Christopher Moss as their arbitrator in respect of all disputes under the charterparty. Mr Moss' contact details are as follows:-

Mr Christopher J W Moss
4 Charlotte Place
London
SW1V 1DP

Work tel: 020 7233 7032
Home tel: 020 8788 4309
Work Fax: 020 7233 7035

· Stuart Blaxell · Joanna Bruce · Faye Doherty · Edward Gray · Ian Hawkes · Gerard Hopkins · Andrew Hughes ·
· Peter Jago · Michael Mitchell, *Master Mariner* · Mark Seward · Jonathan Watson · Simon Wolsey · Andrew Wright ·
Regulated by the Solicitors Regulation Authority

2

We hereby call upon Trans Power Co Ltd to appoint their arbitrator within 14 days of today's date and to notify us of his/her identity. Please kindly note that if Trans Power Co Ltd fail to appoint their arbitrator within 14 days, then Mr Moss will be appointed as the sole arbitrator for this arbitration dispute pursuant to clause 48 of the C/P.

We look forward to hearing from you.

Yours faithfully

**MFB Solicitors**

| | |
|---|---|
| **TO:** | MFB |
| **ATTN:** | Gerard Hopkins  (Your ref: GAH/WOE/0118/276328) |
| **FAX NO:** | 020 7256 6778 |
| **FROM:** | Alex Davey  (Our ref: NW/ACD/83199-3) |
| **DATE:** | 3 March 2008 |
| **NO. PAGES:** | 1 (including this page) |



birketts llp

24-26 Museum Street
Ipswich
IP1 1HZ
United Kingdom

t: (01473) 406241
f: (01473) 406384
e: alex-davey@birketts.co.uk
dx: 3206 Ipswich
www.birketts.co.uk

IF THIS MESSAGE IS NOT RECEIVED PROPERLY, PLEASE CALL US. IF YOU RECEIVE THIS MESSAGE BUT ARE NOT THE STATED INTENDED RECIPIENT YOU ARE EXPRESSLY NOTIFIED THAT ANY COPYING, DISTRIBUTION OR DISSEMINATION OF IT WITHOUT OUR PERMISSION IS PROHIBITED. IF YOU RECEIVE IT IN ERROR PLEASE NOTIFY US

Dear Sirs

**mv "Fany" - cp dd 08.01.08 - A/C Trans Power Co. Ltd**

We refer to your fax of 29 February 2008.

As you will have seen from his email a few moments ago, our clients have appointed Mark Hamsher as an arbitrator in respect of all disputes under the Charterparty. Mr Hamsher's details can be found at www.markhamsher.com.

For the avoidance of doubt, we reject the suggestion that, as a matter of costs, our clients were under any obligation whatsoever to give up the contractual agreement to refer disputes to two arbitrators (and an umpire, where appropriate).

Best regards

Alex Davey
Associate, Shipping Logistics and International Services
For and on behalf of Birketts LLP

030308 fax to MFB

Also at Paston House, 11-13 Princes Street, Norwich, Norfolk, NR3 1AZ t: +44 (0) 1603 232300 f: +44 (0) 1603 230533 dx:5230 Norwich
An LLP registered in England under no. OC317545. Registered office at Ipswich. A list of members is available for inspection at either office.
Regulated by the Solicitors Regulation Authority

EXHIBIT "G"

**28–028**     CHAP. 28—LIMITATION OF ACTIONS

effective date of termination or within such further period as the tribunal considers reasonable in a case where it is satisfied that it was not reasonably practicable for the complaint to be presented within the period of three months.[116] Short periods of limitation are further provided for proceedings where an employer has not provided an employee with a statement of terms of employment[117] and in respect of guarantee payments.[118]

**28–029**     Legal proceedings by the employer of a worker in retail employment for the recovery from the worker of any amount in respect of a cash shortage or stock deficiency cannot be instituted after the end of a period of 12 months beginning with the date when the employer established the existence of the deficiency or (if earlier) the date when he ought reasonably to have done so, unless he has within that period made a statutory demand for payment in respect of that amount.[119] An employment tribunal cannot entertain a complaint in respect of unauthorised deductions from the wages of a worker or an unlawful payment to an employer unless it is presented within the period of three months from the date of payment of the relevant wages or the date of the receipt of the payment by the employer or within such further period as the tribunal considers reasonable in a case where it is satisfied that it was not reasonably practicable for the complaint to be presented within the period of three months.[120]

**28–030**     The Equal Pay Act 1970,[121] the Sex Discrimination Act 1975,[122] the Race Relations Act 1976[123] and the Disability Discrimination Act 1995[124] also establish time limits within which proceedings must be brought.

## 2. ACCRUAL OF THE CAUSE OF ACTION

**28–031**     **Meaning of cause of action.** Section 5 of the Limitation Act 1980 provides that the action "shall not be brought after the expiration of six years from the date on which the cause of action accrued." The ascertainment of this date is often a question of some difficulty. There is no definition of the term "cause of action" in the Act, and therefore the old law is still applicable. In 1888 it was defined by Lord Esher as "every fact which it would be necessary for the plaintiff to prove, if traversed, in order to support his right to the judgment of the court."[125] In 1891 Lindley L.J. said "it has always been held that the statute runs from the earliest

---

[116] *ibid.* s.111(2). But see s.111(3)(4). See Vol.II, para.39–236.
[117] *ibid.* s.11(4) (three months); Vol.II, para.39–040.
[118] *ibid.* s.34(2) (three months); Vol.II, para.39–086.
[119] *ibid.* s.20(5); see Vol.II, para.39–094.
[120] *ibid.* s.23(2)–(4); see Vol.II, para.39–092.
[121] s. 2(5) (as amended).
[122] s.76 (as amended).
[123] s.68.
[124] Sch.3, Pt.I, para.3.
[125] *Read v Brown* (1888) 22 Q.B.D. 128, 131. See also *Cooke v Gill* (1873) L.R. 8 C.P. 107, 116; *Coburn v Colledge* [1897] 1 Q.B. 702, 706, 707; *Central Electricity Board v Halifax Corp.* [1963] A.C. 785, 800, 806. *Letang v Cooper* [1964] 1 Q.B. 232, 242; *Paragon Finance v Thakerar & Co* [1999] 1 All E.R. 405.

Case 1:08-cv-01562-RMB Document 25-8 Filed 04/18/2008 Page 3 of 9

time at which an action could be brought."[126] And in 1927 Lord Dunedin defined cause of action to mean "that which makes action possible."[127] There must also be in existence at this moment a competent claimant and a competent defendant.[128] There is no competent defendant if, *e.g.* he enjoys diplomatic privilege[129] or, being a corporation, it has been dissolved in the country of its incorporation.[130] On the other hand, the mere fact that the defendant cannot be traced, so that in practice the claimant cannot start proceedings, does not prevent the cause of action from accruing.[131] Where a claim arises at or after the death of an intestate and not before (*e.g.* for a debt payable after the death of the creditor or debtor) it appears to be the rule that there is no competent claimant or defendant, as the case may be, in the interval between the death and the grant of letters of administration so that the cause of action does not accrue until the grant of letters.[132] This is because the title of an administrator is derived from the grant and he cannot sue or be sued until a grant is made. There is also some authority for saying that if at the time when the cause of action would have accrued the potential claimant and defendant were one and the same person, so that the hand to pay and the hand to receive were the same, the cause of action does not accrue and time does not begin to run.[133] It should be noted that what is said above about competent parties refers only to the accrual of the cause of action. It does not refer to the suspension of the statute once time has begun to run.[134]

**General rule in contract.** The general rule in contract is that the cause of action accrues, not when the damage is suffered, but when the breach takes place.[135] "In an action of assumpsit, the Statute of Limitations begins to run not from the time when the damage results from breach of the promise, but the time when the breach of promise takes place."[136] The gist of an action for breach of 28–032

---

126 *Reeves v Butcher* [1891] 2 Q.B. 509, 511.

127 *Board of Trade v Cayzer, Irvine & Co* [1927] A.C. 610, 617. See also *Letang v Cooper* [1965] 1 Q.B. 232, 242.

128 *Thomson v Lord Clanmore* [1900] 1 Ch. 718, 728–729 (Vaughan Williams L.J.).

129 *Musurus Bey v Gadban* [1894] 2 Q.B. 352.

130 *Re Russo-Asiatic Bank* [1934] Ch. 720, 738.

131 *R.B. Policies at Lloyd's v Butler* [1950] 1 K.B. 76; Goodman (1966) 29 M.L.R. 366. *cf. Clark v Forbes Stuart (Thames Steel) Ltd* [1964] 1 W.L.R. 836; Limitation Act 1980, ss.14(1)(c), 14(1A)(c), 14A(8)(c).

132 *Jolliffe v Pitt* (1715) 2 Vern. 694; *Murray v East India Co* (1821) 5 B. & Ald. 204; *Douglas v Forrest* (1828) 4 Bing. 686, 704; *Pratt v Swaine* (1828) 8 B. & C. 285; *Burdick v Garrick* (1870) L.R. 5 Ch.App. 233, 241; *Chan Kit Sam v Ho Fung Ham* [1902] A.C. 257; *Meyappa Chetty v Supramanian Chetty* [1916] 1 A.C. 603, 610. But there is some doubt about whether this rule can stand subsequent to RSC Ord.15, r.6A—now CPR r.19.8—which was made by virtue of s.2 of the Proceedings against Estates Act 1970 (now repealed). There are also statutory limitation provisions for particular causes of action which presumably override any such rule, *e.g.* Limitation Act 1980, ss.11(5), 12(2). See also s.26 of the Limitation Act 1980 (recovery of land). For accrual after date of death where there is an executor, see *Webster v Webster* (1804) 10 Ves.Jun. 93; *Flood v Patterson* (1861) 29 Beav. 295; *Knox v Gye* (1871) L.R. 5 H.L. 656; *Lovett v Ambler* (1876) 3 Ch.D. 198; *Meyappa Chetty v Supramanian Chetty*, above, at 608.

133 *Binns v Nichols* (1866) L.R. 2 Eq. 256; *Re Pardoe* [1906] 1 Ch. 265.

134 As to this, see below, paras 28–065—28–066.

135 *Gould v Johnson* (1702) 2 Salk. 422; *Battley v Faulkner* (1820) 3 B. & Ald. 288; *Short v M'Carthy* (1820) 3 B. & Ald. 626; *Howell v Young* (1826) 5 B. & C. 259; *Walker v Milner* (1866) 4 F. & F. 745; *Gibbs v Guild* (1881) 8 Q.B.D. 296, 302.

136 *Howell v Young* (1826) 5 B. & C. 259, 265.

contract is the breach, and not any resulting damage which may be occasioned thereby. Consequently, the Act runs from the time when the contract is broken, and not from the time at which any damage resulting therefrom is sustained by the claimant. Therefore, although such damage may occur within six years before the action is brought, the action will be barred if the contract was broken before that period. For example, in an action for breach of warranty or condition against a seller of goods, the cause of action accrues when the goods are delivered, and not when the defect is discovered.[137]

**28–033**     **Concurrent liability in tort.** It is, however, well established that in the tort of negligence the cause of action arises when the damage is suffered and not when the act or omission complained of occurs. If, therefore, a claimant has, independently of or in addition to any cause of action in contract, a cause of action in tort for negligence, time will not begin to run in respect of his claim in tort until the damage is sustained. In a number of cases it was held that an action for negligence against, for example, a solicitor[138] or architect[139] was contractual in nature, so that the cause of action accrued when his negligent act or omission took place.[140] But more recent cases have held that the existence of a contractual relationship between the parties does not necessarily exclude a concurrent or independent cause of action in tort.[141] So an action may be brought in tort for negligence in respect of professional services rendered, for example, by a solicitor,[142] insurance broker,[143] architect[144] or engineer[145] within six years of the date when the claimant first sustains damage.[146]

Where :
the defenc
(including
accrue wh
when the c
having ent

**Success**
himself as
contract,[1]
tory breach
accrues at
perform a
breaches v
sufficiently
having that
also be a s
instalment:
of a coven
respect of s
within the
failure to ;
performed
elects to tr
Thus the f
constitute a
not become

**Money I**
a contract ε

---

[137] *Battley v Faulkner*, above; *Lynn v Bamber* [1930] 2 K.B. 72, 74.

[138] *Short v M'Carthy*, above; *Brown v Howard* (1820) 2 Brod. & B. 73; *Howell v Young*, above; *Bean v Wade* (1885) 2 T.L.R. 157; *Wood v Jones* (1889) 61 L.T. 551; *Groom v Crocker* [1939] 1 K.B. 194; *Somers v Erskine* [1944] Ir.R. 368; *Clark v Kirby-Smith* [1964] Ch. 506. See also *Cook v Swinfen* [1967] 1 W.L.R. 457; *Heywood v Wellers* [1976] Q.B. 446; *Rowe v Turner Hopkins & Partners* [1980] N.Z.L.R. 550.

[139] *Bagot v Stevens Scanlon & Co Ltd* [1966] 1 Q.B. 197.

[140] *Clark v Kirby-Smith*, above; *Bagot v Stevens Scanlan & Co Ltd*, above.

[141] *Henderson v Merrett Syndicates Ltd* [1995] 2 A.C. 145. See above, paras 1–105—1–147, 28–010—28–012.

[142] *Midland Bank Trust Co Ltd v Hett, Stubbs & Kemp* [1977] Ch. 384; *Forster v Outred & Co* [1982] 1 W.L.R. 86; *D. W. Moore & Co Ltd v Ferrier* [1988] 1 W.L.R. 267; *Bell v Peter Browne & Co* [1990] Q.B. 495; *Khan v Falvey & Co* [2002] EWCA Civ 400; [2002] P.N.L.R. 28; *McCarroll v Statham Gill Davies* [2002] EWCA Civ 425; [2003] P.N.L.R. 25.

[143] *Iron Trades Mutual Insurance Co Ltd v Buckenham Ltd* [1989] 2 Lloyd's Rep. 85; *Islander Trucking Ltd v Hogg Robinson & Gardner Mountain (Marine) Ltd* [1990] 1 All E.R. 826; *Punjab National Bank v De Boinville* [1992] 1 W.L.R. 1138; *Knapp v Ecclesiastical Insurance Group plc* [1998] P.N.L.R. 172. See also *Société Commerciale de Reassurance v Eras International Ltd* [1992] 1 Lloyd's Rep. 570 (insurance management agreement); *Henderson v Merrett Syndicates Ltd*, above (Lloyd's underwriting agents).

[144] *Kensington and Chelsea and Westminster Area Health Authority v Wettern Composites Ltd* [1985] 1 All E.R. 346; *London Congregational Union Inc. v Harriss & Harriss* [1988] 1 All E.R. 15; *Wessex Regional Health Authority v HLM Design* (1994) 10 Const. L.J. 165; *New Islington & Hackney Housing Assn Ltd v Pollard, Thomas and Edwards Ltd* [2001] Build L.R. 74.

[145] *Pirelli General Cable Works Ltd v Oscar Faber and Partners* [1983] A.C. 1; *Wessex Regional Health Authority v HLM Design*, above.

[146] For extension of the period in cases of latent damage in the tort of negligence, see above, paras 28–010—28–012.

[147] See *For:*
W.L.R. 267; *It*
*v Peter Brown*
*Mountain (Ma*
P.N.L.R. 172;
[2002] EWCA

[148] *Toprak E*
*Ltd v State of*
*Corp.* [1984] Q
1 W.L.R. 1627

[149] For discl

[150] *Reeves v*

[151] *Arnott v*

[152] *Bowyer* :
para.28–036.

[153] *Archbold*

[154] *Spoor v (*
deliver goods c
*Industries (UK*

[155] *Midland .*

[1584]

...cial damages is that precise amount of pecuniary loss which the claimant can ...ve to have followed from the particular facts set out in his pleadings. Special ...mage must be specifically pleaded and evidence relevant to it cannot be ...duced if only general damages have been pleaded,[36] since the purpose of ...leading special damage is to prevent surprise at the trial by giving the defendant ...rior notice of any item in the claim for which a definite amount can be given in ...evidence, e.g. in a claim for wrongful dismissal, loss of salary during the period ...of notice required by the contract.[37] A claimant who bases his claim on precise ...calculations must give the defendant access to the facts on which they are ...based[38]: thus it was held that where loss of profits was not a necessary con- ...sequence of the alleged breach of contract the claim for such loss should be ...specifically pleaded, in order to give the defendant fair warning of the claim.[39]

**Difficulty of assessment.** The fact that damages are difficult to assess does **26–007** ...not disentitle the claimant to compensation for loss resulting from the defen- ...dant's breach of contract.[40] Where it is clear that the claimant has suffered ...substantial loss, but the evidence does not enable it to be precisely quantified, the ...court will assess damages as best it can on the available evidence.[41] Similarly, the ...fact that the amount of that loss cannot be precisely ascertained, as, for example, ...where it depends on a contingency, does not deprive the claimant of a remedy. ...Where, if the defendant had fully performed his undertaking, there was only a ...chance that the claimant would acquire a benefit or make a profit, the court will ...discount the damages to reflect the likelihood that the benefit or profit would have ...been received.[42] The loss of profits suffered by a claimant as the result of the ...defendant's breach of contract frequently depends on many speculative factors, ...but the courts will always attempt to assess the amount of the loss.[43]

### (b) Nominal Damages

**Nominal damages.** Wherever the defendant is liable for a breach of contract, **26–008** ...the claimant is in general entitled to nominal damages although no actual damage ...is proved[44]; the violation of a right at common law will usually entitle the ...claimant to nominal damages without proof of special damage.[45] Normally, this

[36] Hayward v Pullinger and Partners Ltd [1950] 1 All E.R. 581; Anglo-Cyprian Trade Agencies Ltd v Paphos Wine Industries Ltd [1951] 1 All E.R. 873. See also The Susquehanna [1926] A.C. 655, 661; National Broach and Machine Co v Churchill Gear Machines Ltd [1965] 1 W.L.R. 1199 (this decision was accepted by the appellants in the House of Lords: [1967] 1 W.L.R. 384).
[37] Hayward v Pullinger and Partners Ltd, above. See Vol.II, para.39–194.
[38] Perestrello e Companhia Limitada v United Paint Co Ltd [1969] 1 W.L.R. 570.
[39] ibid.
[40] Chaplin v Hicks [1911] 2 K.B. 786 (below, para.36–039(b)); Simpson v L.N.W. Ry (1876) 1 Q.B.D. 274.
[41] Tai Hing Cotton Mill Ltd v Kamsing Knitting Factory [1979] A.C. 91, 106. cf. below, para.26–088.
[42] See below, paras 26–039—26–040.
[43] See below, paras 26–059—26–062.
[44] Marzetti v Williams (1830) 1 B. & Ad. 415; The Mediana [1900] A.C. 113, 116; Surrey C.C. v Bredero Homes Ltd [1993] 1 W.L.R. 1361 (on this case, see below, para.26–021).
[45] Ashby v White (1704) 2 Ld.Raym. 938; Constantine v Imperial Hotels Ltd [1944] K.B. 693. On nominal damages when a bank wrongly dishonours a customer's cheque, see Vol.II, para.34–316.

situation arises when the defendant's breach of contract has in fact caused no loss to the claimant, but it may also arise when the claimant, although he has suffered loss, fails to prove any loss flowing from the breach of contract,[46] or fails to prove the actual amount of his loss.[47] A regular use of nominal damages, however, is to establish the infringement of the claimant's legal right, and sometimes the award of nominal damages is "a mere peg on which to hang costs."[48]

### (c) Claims for an Agreed Sum

26–009    **Distinction between claims for payment of an agreed sum and claims for damages.** There is an important distinction between a claim for payment of a debt and a claim for damages for breach of contract. A debt is a definite sum of money fixed by the agreement of the parties as payable by one party in return for the performance of a specified obligation by the other party or upon the occurrence of some specified event or condition[49]; damages may be claimed from a party who has broken his contractual obligation in some way other than failure to pay such a debt. (It is also possible that, in addition to a claim for a debt, there may be a claim for damages in respect of consequential loss caused by the failure to pay such a debt at the due date.[50]) The relevance of this distinction is that rules on damages do not apply to a claim for a debt, e.g. the claimant who claims payment of a debt need not prove anything more than his performance[51] or the occurrence of the event or condition[52]; there is no need for him to prove any actual loss suffered by him[53] as a result[54] of the defendant's failure to pay; the whole concept of the remoteness of damage[55] is therefore irrelevant; the law on penalties does not apply to the agreed sum[56]; the claimant's duty to mitigate his

---

[46] *Columbus & Co Ltd v Clowes* [1903] 1 K.B. 244; *Weld-Blundell v Stephens* [1920] A.C. 956; *Taylor & Sons Ltd v Bank of Athens* (1922) 91 L.J.K.B. 776; *James v Hutton and J. Cook & Sons Ltd* [1950] 1 K.B. 9; *Sykes v Midland Bank Executor and Trustee Co Ltd* [1971] 1 Q.B. 113. See below, paras 26–029 *et seq.*

[47] *Erie County Natural Gas and Fuel Co Ltd v Carroll* [1911] A.C. 105; *cf. Government of Ceylon v Chandris* [1965] 3 All E.R. 48; *cf. Tai Hing Cotton Mill Ltd v Kamsing Knitting Factory* [1979] A.C. 91, 106 (see above, para.26–007, text at n.41); *cf. also Dean v Ainley* [1987] 1 W.L.R. 1729.

[48] *Beaumont v Greathead* (1846) 2 C.B. 494, 499. But costs are in the discretion of the court, and sometimes a claimant who recovers nominal damages will not receive costs: *Anglo-Cyprian Trade Agencies Ltd v Paphos Wine Industries Ltd* [1951] 1 All E.R. 873, 874.

[49] *e.g. Alder v Moore* [1961] 2 Q.B. 57 (below, para.26–127); *Hyundai Heavy Industries Co Ltd v Papadopoulos* [1980] 1 W.L.R. 1129, HL (guarantee: see Vol.II, Ch.44); *Damon Compania Naviera SA v Hapag-Lloyd International SA* [1985] 1 W.L.R. 435, 449 (suing in debt to recover an unpaid deposit); *Jervis v Harris* [1996] Ch. 195. See below, para.26–118; Vol.II, Ch.41 (contracts of insurance).

[50] See below, paras 26–089—26–090. Interest may also be payable on a debt: below, paras 26–144 *et seq.*

[51] On the question when an action lies for the price under a contract for the sale of goods, see Vol.II, paras 43–386 *et seq.*

[52] See n.49, above.

[53] See above, paras 26–001, 26–008.

[54] On causation, see below, paras 26–029 *et seq.*

[55] See below, paras 26–044 *et seq.*

[56] See below, para.26–118.

28–042     If a bill or note is payable at sight[180] or on demand, the liability of the acceptor or maker to the holder arises on the date of acceptance or, in the case of a note, on the date of the note (or of its issue if later), and no demand is necessary to establish liability.[181] Accordingly, the limitation period will run from that time. It would appear that the cause of action by the holder of a cheque against the drawer, being the party primarily liable on the instrument, likewise accrues on the date of the cheque (or of its issue if later).[182]

28–043     As regards the drawer of a bill and the indorser of a bill or note, time begins to run in his favour when he receives notice of dishonour, or, if notice of dishonour is excused, from the date of dishonour.[183] If a bill is dishonoured by non-acceptance, and afterwards by non-payment, no fresh cause of action accrues to the holder against the drawer by reason of the dishonour by non-payment.[184]

28–044     It would seem that the cause of action of a drawer of a bill, and of the indorser of a bill or note, who has been compelled to pay the instrument accrues against the acceptor or maker on the making of the payment.[185] Likewise, with respect to the claim of an indorser against the drawer of a bill or prior indorsers of a bill or note, it would seem that the cause of action arises when he is compelled to and does pay the instrument.[186]

28–045     **Securities.** In the case of registered securities, time begins to run in respect of payment of dividends from the date on which the dividend is declared or from the date provided by the declaration for its payment, whichever is the later,[187] and in respect of a scheme or reduction of capital involving an immediate repayment of capital on the date when the scheme or reduction becomes effective.[188] In the case of bearer securities, the question arises whether the document must be presented to the company before the liability of the company accrues, and this is to be determined by reference to the company's articles of association and the terms on which the securities were issued.[189]

---

[180] Bills of Exchange Act 1882, s.10(1)(a).

[181] *Norton v Ellam* (1837) 2 M. & W. 461; *Re Brown's Estate* [1893] 2 Ch. 300, 304; *Re British Trade Corp.* [1932] 2 Ch. 1. But see Bills of Exchange Act 1882, ss.19(2)(c), 52(2), 87(1) (presentment for payment). Contrast (instruments payable at a certain period *after* demand): *Thorpe v Booth* (1826) Ry. & M. 388; *Re Rutherford* (1880) 14 Ch.D. 687.

[182] *Robinson v Hawksford* (1846) 9 Q.B. 52, 59; *Laws v Rand* (1857) 3 C.B. (N.S.) 442, 449; *Re Bethell* (1887) 34 Ch.D. 561.

[183] Bills of Exchange Act 1882, ss.43. 47, 48, 50(2), 55, 87(2), (3); *Kennedy v Thomas* [1894] 2 Q.B. 759.

[184] *Whitehead v Walker* (1842) 9 M. & W. 506; *Wilkinson v Verity* (1871) L.R. 6 C.P. 206, 209.

[185] Bills of Exchange Act 1882, ss.57, 59. But since the claim is analogous to that of a surety against the principal debtor (para.28–047, below), it is arguable that the cause of action arises when his liability to pay is ascertained, or even when he receives notice of dishonour.

[186] Bills of Exchange Act 1882, s.55(1)(2). But contrast *Webster v Kirk* (1852) 17 Q.B. 944 (date of receipt of notice of dishonour).

[187] *Bond v Barrow Haematite Steel* [1902] 1 Ch. 353; *Re Compania de Electricidad de la Provincia de Buenos Aires Ltd* [1980] Ch. 146.

[188] *Re Artisans' Land and Mortgage Corp.* [1904] 1 Ch. 796; *Re Compania de Electricidad de la Provincia de Buenos Aires Ltd*, above.

[189] *Re Compania de Electricidad de la Provincia de Buenos Aires Ltd*, above.

ACCRUAL OF THE CAUSE OF ACTION                    **28–049**

**Principal and surety.** Unless otherwise agreed in the contract of guarantee, **28–046**
the liability of the surety to the creditor arises on the principal debtor's default,
so that time begins to run in favour of both of them at that moment.[190] If the
surety undertakes to pay on demand, a demand is a condition precedent to
liability and the creditor's cause of action accrues only when a demand is made
and not complied with.[191] Where it was agreed that the guarantee should be a
continuing one and should apply to the balance that was then or might at any time
thereafter be owing, it was held that this was a guarantee of each debit balance
as it was constituted, so that the cause of action accrued not when each advance
was made to the principal debtor, but when the debit balance in question was
constituted.[192]

Unless otherwise agreed, the surety's implied right to an indemnity from the **28–047**
principal debtor accrues when the surety's liability to the creditor is ascertained,
and time runs from that moment.[193] If a surety pays a statute-barred debt, he
cannot recover the amount from the principal debtor.[194]

As between co-sureties, the right to contribution of one who has paid more **28–048**
than his share accrues at the time of such payment,[195] and of one who has been
called upon to pay the whole of the debt at the time the claim of the creditor
against him is established.[196] It is immaterial that, at the time of the action for
contribution, time has run out between the creditor and the co-surety.[197]

**Indemnity against liability.** Where a contract of indemnity is to indemnify a **28–049**
person against liability to a third party (eg under a liability insurance policy), the
general modern rule is that the limitation period starts to run when the indemnify-
ing party's liability is established by judgment, arbitration or binding settle-
ment.[198] However, that general rule is subject to the construction of the contract
of indemnity.[199] This may mean that the indemnifying party is liable as soon as
the indemnified party is liable (that is, even before any establishing of that

[190] *Parrs Banking Co v Yates* [1898] 2 Q.B. 460.
[191] *Re Brown's Estate* [1893] 2 Ch. 300; *Bradford Old Bank v Sutcliffe* [1918] 2 K.B. 833; *Esso Petroleum Co Ltd v Alstonbridge Properties Ltd* [1975] 1 W.L.R. 1474; *Bank of Baroda v Patel* [1996] 1 Lloyd's Rep. 390.
[192] *Wright v New Zealand Farmers' Co-operative Association* [1939] A.C. 439. cf. *Hartland v Jukes* (1863) 1 H. & C. 667.
[193] *Wolmershausen v Gullick* [1893] 2 Ch. 514; *Re Richardson* [1911] 2 K.B. 705, 709.
[194] *Coneys v Morris* [1922] 1 Ir.R. 81.
[195] *Davies v Humphreys* (1840) 6 M. & W. 153; *Re Snowdon* (1881) 17 Ch.D. 44.
[196] *Wolmershausen v Gullick*, above; cf. *Robinson v Harkin* [1896] 2 Ch. 415 (contribution between co-trustees).
[197] *Wolmershausen v Gullick*, above.
[198] *County & District Properties Ltd v C. Jenner & Son Ltd* [1976] 2 Lloyd's Rep. 728 (Swanwick J.); *R. H. Green & Silley Weir v British Railways Board* [1985] 1 W.L.R. 570 (Dillon J.); *Telfair Shipping Corp. v Inersea Carriers SA* [1985] 1 W.L.R. 553 (Neill J., who distinguished an indemnity against liability from a general indemnity, express or implied); *Bradley v Eagle Star Insurance Co Ltd* [1989] A.C. 957; *North Atlantic Insurance Co Ltd v Bishopsgate Insurance Co Ltd* [1998] 1 Lloyd's Rep. 459; *City of London v Reeve & Co Ltd* [2000] Build. L.R. 211, 215.
[199] *Telfair Shipping Corp. v Inersea Carriers SA* [1985] 1 W.L.R. 553, 566; *Firma C-Trade S.A. v Newcastle Protection and Indemnity Association* [1991] 2 A.C. 1; *Total Liban SA v Vitol Energy SA* [1999] 2 Lloyd's Rep. 700.

**28-049**        CHAP. 28—LIMITATION OF ACTIONS

liability by, for example, judgment).[200] At the other extreme, the contract may on its true construction provide that the indemnity is conditional on actual payment by the indemnified party in which case the cause of action will accrue only when such payment has been made.[201]

**28-050**    **Non-liability insurance.** Under a non-liability insurance policy, a cause of action would appear to accrue, in the case of insurance against loss, when the casualty causing the loss occurs[202]; and in the case of life or accident insurance, upon the occurrence of the event which gives rise to the claim.[203] But regard must be had to the terms of the policy; on its true construction it may be that the liability of the insurer will not arise unless and until a claim is made or certain other conditions are satisfied.[204]

**28-051**    **Civil Liability (Contribution) Act 1978.** In respect of the special two-year period of limitation[205] for claiming contribution under s.1 of the Civil Liability (Contribution) Act 1978, the right of action to recover contribution accrues on the date on which judgment is given or an arbitral award made.[206] In the absence of any judgment or award, if the person entitled to recover contribution in respect of any damage makes or agrees to make any payment to one or more persons in respect of that damage (whether he admits any liability in respect of the damage or not), time begins to run from the earliest date on which the amount to be paid by him is agreed between him (or his representative) and the person (or each of the persons, as the case may be) to whom the payment is to be made.[207]

**28-052**    **Sale of goods.** In a contract of sale of goods, the property in which has passed to the buyer,[208] the seller's right of action for the price accrues at the time for payment specified in the contract or, if no time is specified, when the seller informs the buyer that he is ready and willing to deliver the goods.[209] If the sale is upon credit, the right of action accrues upon the expiry of the period allowed.[210] The buyer's right of action for breach of the implied term as to title accrues at the time of sale or (in the case of an agreement to sell) at the time when

---

[200] *Bosma v Larsen* [1966] 1 Lloyd's Rep. 22.
[201] *Firma C-Trade SA v Newcastle Protection and Indemnity Association* [1991] 2 A.C. 1.
[202] *Chandris v Argo Insurance Co Ltd* [1963] 2 Lloyd's Rep. 65, approved in *Castle Insurance Co Ltd v Hong Kong Islands Shipping Co Ltd* [1984] A.C. 226. See also *Scott Lithgow v Secretary of State for Defence* (1989) 45 Build. L.R. 1, HL; *Firma C-Trade SA v Newcastle Protection and Indemnity Association* [1991] 2 A.C. 1, 35; *Bank of America National Trust and Savings Assn v Chrismas* [1994] 1 All E.R. 401; *Callaghan v Dominion Insurance Co Ltd* [1997] 2 Lloyd's Rep. 541; *Universities Superannuation Scheme Ltd v Royal Insurance (UK) Ltd* [2000] 1 All E.R. (Comm) 266.
[203] *Re Haycock's Policy* (1876) 1 Ch.D. 611; *London & Midland Bank v Mitchell* [1899] 2 Ch. 161. See also *Virk v Gan Life Holdings plc* (2000) 52 B.M.L.R. 207.
[204] *Virk v Gan Life Holdings plc* (2000) 52 B.M.L.R. 207.
[205] Limitation Act 1980, s.10(1); above, para.28-014.
[206] s.10(2), (3).
[207] s.10(2), (4). In *Knight v Rochdale Healthcare NHS Trust* [2003] EWHC 1831 (QB); [2003] 4 All E.R. 417 it was held that time ran from the date of the agreement even though that agreement was later embodied in a consent order: that is, s.10(4) of the Limitation Act 1980 applied, not s.10(3).
[208] Sale of Goods Act 1979, s.49(1). But see s.49(2).
[209] *ibid.* s.28.
[210] *Helps v Winterbottom* (1831) 2 B. & Ad. 431.

# EXHIBIT "H"

[1984] Vol. 2                     Lloyd's Rep.                                    466

QUEEN'S BENCH DIVISION
(COMMERCIAL COURT)

Feb. 13, 14 and 15, 1984

---

TELFAIR SHIPPING CORPORATION

v.

INERSEA CARRIERS S.A.

(THE "CAROLINE P")

Before Mr. Justice NEILL

**Arbitration - Award - Indemnity - Limitation of time - Iraqi Court found in favour of receivers against owners - Whether owners' claim against charterers time barred - Whether owners entitled to be indemnified by charterers - Whether indemnity covered legal costs and expenses and bank charges - Whether indemnity included sums payable in respect of negligent discharge.**

By a charter-party dated Nov. 5, 1974, the owners let their vessel *Caroline P* to the charterers for a time chartered trip. On Nov. 11, 1974, the charterers sub-let the vessel to Trans-American Steamship who themselves sub-let the vessel on a voyage charter to Tradax S.A.

The charter between the owners and the charterers was in the New York Produce Exchange form and by cl. 8 provided that-

. . . Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain . . .

In due course *Caroline P* was ordered to Houston where she loaded a cargo of about 14,600 tonnes of rice in bags. Two bills of lading dated Dec. 31, 1974 and Jan. 12, 1975 were issued; and typed in after the port of discharge were the words "Free Out".

The vessel arrived at Surabaya, the first port of discharge on Mar. 8, 1975, and sailed from there to Basrah where she berthed on or about Mar. 31.

The cargo was discharged during the course of the next three weeks, discharge being completed at 00 40 hours on Apr. 21, 1975. As the discharge proceeded it was found that many of the bags had been badly damaged. The receivers brought proceedings against the owners in the Iraqi Court at Basrah.

On Dec. 11, 1978, the Court of first instance gave judgment against the owners for 79,490.444 Iraqi dinars plus legal fees and expenses. The owners appealed to the Basrah Court of Appeal who on May 8, 1979, reduced the damages to 57,107.609 Iraqi dinars. That sum was however increased to 79,341.412 Iraqi dinars by the Cassation Court on the owners' further appeal and the receivers' cross-appeal.

The owners sought to recover their losses by bringing proceedings in arbitration against the charterers. Mr. John Potter was appointed sole arbitrator on Mar. 30, 1981, which date was accepted as the relevant date for the purpose of calculating the limitation period.

The arbitrator found in favour of the owners and awarded them the sums claimed and a declaration that the charterers were to indemnify the owners for all further sums and expenses reasonably paid in connection with the cargo claim.

The charterers appealed against that award, the issues for decision being: (1) What was the nature of the indemnity to be implied when an owner's agent was required under the terms of the charter to sign bills of lading "as presented"? (2) At what point did time begin to run for the purpose of a period of limitation where the person who had the benefit of such an indemnity sought to enforce it? (3) What was the extent of the indemnity and in particular did it cover such matters as legal costs and expenses and bank charges? (4) Did the indemnity include sums payable to receivers in respect of claims arising from negligent discharge notwithstanding that the bills were marked "Free Out"?

—*Held*, by Q.B. (Com. Ct.) (NEILL, J.), that (1) the owners were entitled to an implied indemnity which indemnified them against the consequences of the master signing the bills of lading and such an indemnity did not become enforceable by action until at the earliest the liability of the owners to the receivers had been ascertained by the Court of first instance in Basrah (*see* p. 476, col. 1);

(2) even if time began to run for the purposes of the indemnity from the moment when the owners first incurred a liability to the receivers, the receivers could not have brought their claim before the completion of the discharge or at the very earliest at the commencement of the discharge and since discharge had commenced on Apr. 2, 1975, the appointment of the arbitrator on Mar. 30, 1981, was just in time; no *actual* liability was incurred to the receivers before Apr. 2, 1975 (*see* p. 476, cols. 1 and 2);

(3) even if the indemnity was to be construed as an indemnity against the incurring of liability such an indemnity could not have been invoked by the owners until they had incurred some actual liability to the receivers and the arbitrator was correct in his decision that the owners' claim was not time barred (*see* p. 476, col. 2);

(4) once it had been established that the owners were entitled to an indemnity that indemnity should be an adequate indemnity and the owners were entitled to the relief which they obtained from the arbitrator (*see* p. 476, col. 2);

(5) it was uncertain how far the effect of the words "Free Out" in the bills of lading were canvassed in the Iraqi Courts, and on the facts of this case the Court could not reopen the issue of the liability of the owners to the receivers;

there was no ground for interfering with the decision of the arbitrator on this point and the appeal would be dismissed (*see* p. 476, col. 2).

---

The following cases were referred to in the judgment:

Bosma v. Larsen, [1966] 1 Lloyd's Rep. 22;

County & District Properties Ltd. v. C. Jenner & Son Ltd. and Others, [1976] 2 Lloyd's Rep. 728;

Dawson Line Ltd. v. Aktiengesellschaft Adler Fuer Chemische Industrie of Berlin, (C.A.) (1931) 41 Ll.L. Rep. 75; [1932] 1 K.B. 433;

Elder Dempster & Co. v. C. G. Dunn & Co. Ltd., (1909) 15 Com. Cas. 49;

Forster v. Outred & Co., (C.A.) [1982] 1 W.L.R. 1982;

Green (R. H.) & Silley Weir Ltd. v. British Railways Board and Kavanagh (Third Party), (1980) 17 B.L.R. 94;

Hadley v. Baxendale, (1854) 9 Exch. 341;

Littlewood v. George Wimpey & Co. Ltd. (and British Overseas Airways Corporation), (C.A.) [1953] 2 Q.B. 501;

M'Gillivray v. Hope and Another, [1935] A.C. 1.

Moel Tryvan Steam Ship Co. Ltd. v. Kruger & Co. Ltd., (H.L.) [1907] A.C. 272; (C.A.) [1907] 1 K.B. 809;

Richardson In Re, [1911] 2 K.B. 705;

Robinson v. Harkin, [1896] 2 Ch. 415;

Strathlorne Steamship Co. Ltd. v. Andrew Weir & Co., (1934) 50 Ll.L. Rep. 185;

Toplis v. Grave, (1839) 5 Bing (N.C.) 636;

Wolmerhausen v. Gullick, [1893] 2 Ch. 514.

---

This was an appeal by the charterers, Telfair Shipping Corporation from the arbitration award made in favour of the owners, Inersea Carriers S.A. in which the arbitrator held that the charterers were liable to indemnify the owners for the sums awarded against the owners by the Basrah Court of Appeal in the action brought by the receivers against the owners for damage to a cargo of rice in bags.

Mr. Jeremy Cooke (instructed by Messrs. Richards, Butler & Co.) for the charterers; Mr. Jonathan Hirst (instructed by Messrs. Clyde & Co.) for the owners.

The further facts are stated in the judgment of Mr. Justice Neill.

Judgment was reserved.

Tuesday, July 3, 1984

---

**JUDGMENT**

**Mr. Justice NEILL:** The appellants (whom I shall call the "charterers") bring this appeal pursuant to the order giving leave to appeal made by Mr. Justice Parker on Nov. 26, 1983. The appeal is against the award of Mr. John L. Potter dated Sept. 13, 1983. The appeal raises difficult questions as to the nature and extent of an implied indemnity.

By a charter-party dated and concluded in London on Nov. 5, 1974, on a New York Produce Exchange form, the present respondents (whom I shall call the "owners") chartered their motor vessel *Caroline P* to the charterers for trading for a time charter trip on the terms and conditions set out in the charter-party. On Nov. 11, 1974, the charterers concluded a sub-charter on similar terms with another company who themselves further sub-let the vessel on a voyage charter-party to Tradax S.A.

The charter-party between the owners and the charterers provided in cl. 8, as follows:

That the Captain shall prosecute his voyages with the utmost despatch and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's Receipts without prejudice to this Charter-party.

In due course *Caroline P* was ordered to Houston where she loaded a cargo of about 14,600 tonnes of rice in bags. Two bills of lading dated respectively Dec. 31, 1974, and Jan. 12, 1975, were issued and signed by the agents for the charterers on behalf of the master. Both bills of lading had typed in after the name of the discharge port, the words "FREE OUT". According to the arbitrator's reasons the vessel arrived at Surabaya, the first discharge port, on Mar. 8, 1975, and sailed from there to Basrah where she berthed on or about Mar. 31. The cargo was discharged during the course of the next three weeks, discharge being completed at 00 40 hours on Apr. 21, 1975. On p. 10 of his reasons the arbitrator stated that-

| [1984] Vol. 2 | Lloyd's Rep. | **468** |
|---|---|---|
| Q.B. (Com. Ct.) | The "Caroline P" | Neill, J. |

. . . in all probability no rice [which was the cargo with which the arbitration was concerned] was discharged before 2nd April.

As the discharge of the rice proceeded it was found that many bags had been badly damaged and subsequently a substantial amount of re-bagging took place. The damage to the bags and the resulting shortages led to claims being made by the receivers and proceedings were instituted before the Court of first instance in Basrah against the owners' agents.

On Dec. 11, 1978, the Court of first instance gave judgment against the owners' agents in the sum of Iraqi Dinars 79,490.444 plus legal fees and expenses of Iraqi Dinars 500. The owners appealed to the Basrah Court of Appeal who, on May 8, 1979, reduced the damages payable to Iraqi Dinars 57,107.609, but on the owners' further appeal to the Cassation Court and on the charterers' cross-appeal the damages were increased to Iraqi Dinars 79,341.412.

The judgment of the Cassation Court was given on June 5, 1981. All the Courts held that the loss and damage were due to bad stowage. According to the surveyor who attended on board the vessel on the instructions of the Court of first instance in Basrah, however, the damage was caused by a number of factors as set out at the bottom of p. 4 of the reasons.

It is now common ground that of these factors four concerned loading or stowage, one concerned discharge and the sixth factor could be connected with loading or discharge.

Faced with the judgment of the Court of Appeal in Basrah, the owners decided to make a claim against the charterers. The parties agreed to Mr. John Potter acting as sole arbitrator and his appointment was perfected on Mar. 30, 1981. On July 22, 1981, the owners served their points of claim, claiming the sum awarded by the Basrah Court of Appeal. On Nov. 8, 1982, the points of claim were amended to increase the sum claimed to correspond with the figure awarded by the Cassation Court in Baghdad.

In par. 7 of their pleading, the owners put their claim as follows:

> By Clauses 2 and 8 of the Time Charter, the responsibility for bad stowage is upon the Charterers and there is to be implied from Clause 8 that the Charterers will indemnify the Owners in respect of any liability incurred by the Owners under Bills of Lading in respect of matters for which the Charterers are responsible under the Charter-party.

The charterers served a defence which was later amended in which they raised a number of defences including a defence that the claim was time barred. In par. 3 of the amended defence, it was pleaded as follows:

> Further the Charterers received notice of the appointment of the Owners' Arbitrator on 9th April 1981. As discharge of the cargo at Basrah took place in March 1975 the appointment was made more than six years after the claim arose. In the premises the Owners' claim is time-barred.

Despite this plea, however, it is now accepted that the relevant date for the purpose of calculating the limitation period is Mar. 30, 1981.

The matter came on for hearing before the arbitrator on Aug. 15, 1983. By that stage the owners had subdivided their claim under four headings as follows:

(a) £22,808.56, being the sum which was equivalent to the amount they had to provide in Iraqi Dinars under a guarantee plus interest.

(b) U.S. $1378 for legal expenses in Baghdad.

(b) US $1,378 for legal expenses in Baghdad.

(c) £2,852.01, being the bank charges incurred in servicing the guarantee until 19th July 1983 plus interest.

(d) A declaration that they should be indemnified by the charterers in respect of all further sums and expenses reasonably paid in connection with the cargo claim.

The reason why a declaration was sought was that although the Cassation Court had given judgment in June, 1981, it was still hoped that negotiations might result in a settlement at a lower figure than that awarded. By his award, the arbitrator awarded the owners the sums claimed and made the declaration which they sought. He also adjudged that the charterers should pay the owners' costs of the reference and of the award.

In the course of the hearing before the arbitrator he was referred to some of the authorities to which my attention has been drawn and in particular he had to consider conflicting submissions as to the date when the cause of action on the indemnity arose. At p. 9 of his reasons, he expressed his opinion as follows:

> The cases are difficult to reconcile but on the time-bar point it seems to me that I need go no further than finding that the earliest

[1984] Vol. 2                   Lloyd's Rep.                        469
Q.B. (Com. Ct.)              The "Caroline P"                     Neill, J.

date for the cause of action arose on completion of discharge of the damaged cargo, for only then can it be said the facts came into existence to create the liability. . . . In the present case a liability was not established against the Owners under the bill of lading until the judgment of the Iraqi Court in December, 1978 and logically, in my view, it cannot be said that before then a liability had been established against the Owners in excess of those undertaken in the charterparty contract.

I cannot accept the Charterers' contention that the cause of action arose when the breach occurred. Clearly, all the damage complained of was not wholly attributable to the method of stowage but if it were, the existence of any breach regarding that method of stowage would only become apparent at the time of discharge. The Charterers' argument on this point appeared to me to be artificial.

Accordingly, the arbitrator found that the claim by the owners was not barred by effluxion of time because discharge was not completed until Apr. 21, 1975, whereas his appointment had been perfected a little less than six years later, on Mar. 30, 1981.

In the course of the argument before me a number of questions were raised which I can summarise as follows: (1) What is the nature of the indemnity to be implied when an owners' agent is required under the terms of the charter-party to sign bills of lading "as presented"? (2) At what point does time begin to run for the purpose of a period of limitation where the person who has the benefit of such an indemnity seeks to enforce it? (3) What is the extent of the indemnity and in particular does it cover such matters as legal costs and expenses and other expenses including bank charges? (4) Does the indemnity in the present case include sums payable to receivers in respect of claims arising from negligent discharge of the cargo notwithstanding the fact that the bills of lading were marked "FREE OUT"? I shall deal with the first two questions together.

It was common ground that the bills of lading dated Dec. 31, 1974 and Jan. 12, 1975, imposed obligations on the owners which were more onerous than those stipulated in the charter-party. Thus, by cl. 8 of the charter-party, the charterers were responsible for loading, stowing, trimming and discharge. It was also common ground that though the charter-party contained no express indemnity, the owners were entitled to the benefit of an implied indemnity. There was an issue between the parties, however, as to the nature and extent of this implied indemnity.

On behalf of the charterers it was contended that the indemnity was against liability, whereas on behalf of the owners it was contended that the indemnity was against the consequences of signing more onerous bills of lading. The distinction, which at first sight may appear academic, is of importance when one comes to examine the time at which the period of limitation began to run.

Mr. Jeremy Cooke, on behalf of the charterers, placed great reliance on the language used in the speeches in the House of Lords in *Moel Tryvan Steam Ship Co. Ltd. v. Kruger & Co. Ltd.*, [1907] A.C. 272, and in *Elder Dempster & Co. v. C. G. Dunn & Co. (Ltd.)*, (1909) 15 Com. Cas. 49. It is necessary to consider these cases in turn.

In the *Kruger* case, the charter-party contained a clause exempting the owners from liability for stranding and other accidents of navigation even when occasioned by the negligence of the master. It also contained a clause to the effect that the master was to sign clean bills of lading without prejudice to the charter. By mistake the master signed bills of lading presented by the charterers which did not give the owners the exemption provided for in the charter-party. Subsequently, owing to the negligent navigation of the master, there was a total loss of the cargo and the holders of the bills of lading recovered damages against the owners. It was held that the owners were entitled to be indemnified by the charterers. It is important, however, to examine what was said as to the basis for this entitlement.

In the Court of Appeal both the President, Sir Gorell Barnes, and Lord Justice Farwell based the indemnity on the fact that the charterers had been in breach of contract. At the end of his judgment in *Moel Tryvan Ship Co. Ltd. v. Kruger & Co. Ltd.*, [1907] 1 K.B. 809 the President used these words at p. 825:

. . . I base my judgment on this broad ground, that there was a breach of contract on the part of the charterers which has resulted in the loss to the ship owner . . .

and at p. 828 Lord Justice Farwell said this:

. . . Now in the present case the bill of lading tendered is entirely different from the charterparty, and the charterer has therefore committed a breach of contract in preparing and tendering and obtaining the execution of such a contract as that.

Lord Justice Buckley, however, held that the owners were also entitled to recover on the basis that the charterers had requested the owners' agent to sign the bills and the owners were

Case 1:08-cv-01562-RMB    Document 25-9    Filed 04/18/2008    Page 6 of 12
i-law.com
Page 5 of 11

[1984] Vol. 2                      Lloyd's Rep.                             470
Q.B. (Com. Ct.)                  The "Caroline P"                       Neill, J.

therefore entitled to an indemnity. At p. 832 he said:

> The right in law seems to me to follow from this, that he requests him to do an act, and then the law implies that if liability results from the act there will be an indemnity given by the one party to the other.

Mr. Cooke submitted that in the House of Lords the right to an indemnity appears to have been based on a breach of contract. I should set out the relevant passages:

(a) Lord Loreburn, L.C. at p. 276:

> When bills of lading are given they may give rise to rights in persons other than the charterers and on conditions other than those contained in the charterparty; and therefore it is the duty of the charterers who have to present these bills, to provide that they shall not expose the shipowners to risks from which by contract they are to be exempt. . . . It is not a case of warranty. It is a case in which, by contract, the shipowners undertook to carry a cargo on the footing that they were not to be liable for the master's negligent navigation, and the charterers have made them so liable by the bills of lading. Hence arises a duty to give adequate indemnity.

(b) The Earl of Halsbury at p. 277:

> . . . I agree with Sir Gorell Barnes that the defendants were bound by their contract to tender a bill of lading if they thought proper to do so, and that such bill of lading ought to have incorporated in terms what has been called the negligence clause. I think it is their breach of contract that has occasioned the loss. I think there was a contract by them that if the master signed a bill of lading at their request it should not be in the form of a contract which would strike out the negligence clause. . . . as different reasons have been discussed and assigned for the ground upon which the charterers ought to be made liable, I wish to say, inasmuch as I do not concur in some of the reasons given, that I am of opinion that the liability arises from the contract relations between the shipowners and the charterers . . .

(c) Lord James of Hereford at p. 281:

> . . . By contract and by course of business the charterers undertook that the bills of lading they presented to the master should be in accordance with the charter-party. They failed in this respect, and by that failure the respondents were rendered liable for the loss occasioned by the negligence of the master.

Lord Atkinson at p. 282 concurred.

Having considered these passages I have come to the conclusion that Mr. Cooke's submission is well-founded. I shall return later to consider the significance of this conclusion. Before I do so, however, I must examine some of the later cases starting with *Elder, Dempster, & Co. v. C. G. Dunn & Co. Ltd.* (1909) 15 Com. Cas. 49.

In the *Elder, Dempster* case, as in the *Kruger* case, the House of Lords was concerned with a vessel chartered under a voyage charter-party. The charter-party provided that the charterers were "to load, stow and trim the cargo at their own expense, under the direction of the Master" and that the master should "sign bills of lading as presented, without prejudice" to the charter-party. At the conclusion of the loading in a port in Texas of the cargo consisting of bales of cotton the charterers presented bills of lading to the master for signature. Some of the bales which had been loaded, however, were not marked in a way which corresponded with the terms of the bills of lading. On arrival at Le Havre some of the consignees refused to accept the wrongly-marked bales and claimed their value from the owners. As by French law the bills of lading constituted conclusive evidence against the owners of the receipt of the goods by them, the owners paid the claims and sought to recover what they had paid from the charterers.

They put the case in two ways: (a) they asserted that the charterers, by presenting the bills of lading with the marks specified in them, requested the master to sign them and therefore that the charterers were liable to indemnify the owners "from the consequent liability incurred by them"; (b) in the alternative, they asserted that by presenting the bills the charterers "represented and warranted" to the master that the marks specified therein correctly specified the marks on the bales, and they made this representation and warranty intending that the master should sign the bills and that the owners "should thereby incur liabilities thereunder". The speeches in the House of Lords were very short. Lord Loreburn L.C. said that in his opinion both the relevant paragraphs were fully proved. The Earl of Halsbury concurred with the judgment of the Lord Chancellor, but appears to have founded his decision mainly on the fact that it was the duty of the charterers under the charter to have loaded the vessel and taken care that the proper marks were there. Lord Gorell expressed his concurrence, but then went on to say that he thought that the evidence established the cause of action "set out in paragraph 11 of the Points of Claim", that is, the cause of action based on a

representation and warranty. Lord Shaw, too, seems to have taken the view that the charterers were in breach of their obligations under the charter-party relating to the loading of the vessel. Lord Atkinson merely concurred.

I should turn next to the decision of the Court of Appeal in *Dawson Line Ltd. v. Aktiengesellschaft Adler Fuer Chemische Industrie of Berlin*, (1931) 41 Ll.L. Rep. 75; [1932] 1 K.B. 433. This was another voyage charter case where the charter-party required the master to sign the bill of lading as presented by the charterers. The bills of lading which were signed by the master understated the weight of the cargo and the question which arose in the subsequent arbitration was whether the charterers, who, under the charter-party, would ordinarily have been entitled to pay freight "on bill of lading weight less 2 per cent in lieu of weighing", were entitled to deduct 2 per cent. from the outturn weight.

At pp. 78 and 438, Lord Justice Scrutton referred to the *Elder, Dempster* and the *Kruger* cases in his judgment, and continued at pp. 78 and 439:

. . . In those cases I was counsel for the successful parties, and I remember that considerable discussion took place as to the lines upon which the claim to indemnity should be put. Some of the judges and law lords said that the charterers were liable on two grounds. The first of these was that a right to indemnity followed from the terms of the charterparty, because it required the master to sign bills of lading in a particular form, and consequently that the charterers must be liable if loss followed in consequence of presenting inaccurate bills of lading. The second ground - and this has nothing to do with the charterparty but turns upon the principle stated in Sheffield Corporation v. Barclay [1905] A.C. 392, and Birmingham and District Land Co. v. London and North Western Ry. Co., [1886] 34 Ch. D. 261, 272 - that a mere request from the charterers, involving, as it did, the shipowners in a liability in which otherwise they would not have been involved, raised the implication of an indemnity against those consequences. Some of the judges and law lords took one view, some the other, and some both. In this case it is sufficient to say that as the master was required to sign the bill of lading as presented to him, the charterers were bound to present an accurate bill of lading as to the weight shipped. The shippers were the charterers' agent to supply the cargo and present the bill of lading; they presented an inaccurate bill of lading with consequent loss. The charterers must therefore make good that loss.

At pp. 79 and 440, Lord Justice Greer put the matter as follows:

. . . I regard the two cases (Elder Dempster and Kruger) as meaning this and no more, that if the charterer or some person for whom he is responsible, presents a bill of lading to the master which the latter is bound to sign as part of the terms of the contract, there may be implied from the act in presenting the bill of lading, taken together with the terms of the contract, a warranty of the correctness of the figures, description, or marks stated in the bill of lading.

Lord Justice Slesser agreed with the reasons given by Lord Justice Greer.

I come next to *Strathlorne Steamship Co., Ltd. v. Andrew Weir & Co.*, (1934) 50 Ll.L. Rep. 185. In this case the owners had chartered the vessel to the charterers under a time charter-party. By cl. 16 of the charter-party, the charterers agreed:

. . . to indemnify the owners from all consequences or liabilities that may arise from the captain signing bills of lading by the orders of charterers or of their agents, or in otherwise complying with the same. . . .

The charterers sub-chartered the vessel by a voyage charter-party for a voyage from Rangoon to China. On arrival in China some of the goods were delivered without the production of the bills of lading but against letters of guarantee. This was done on the instructions of the charterers' agents. In proceedings in Scotland the owners were found liable to the pledgees of the bills of lading for misdelivery and they claimed an indemnity from the charterers. The owners relied on cl. 16 of the charter-party, but they also based their case on a right to an indemnity at common law, relying on a letter dated Aug. 5, 1924, from the charterers' agents instructing the master to deliver against bills of lading or in the absence of bills against guarantees. The points of claim included these words:

As the said goods . . . were released or delivered by the master on the orders or directions or at the request of the respondents' (charterers') agents, the respondents (charterers) were and are bound to pay the said claim and to indemnify the owners against the same.

Lord Hanworth M.R. considered the claim based on the letter of Aug. 5, and applied the words of Chief Justice Tindal in *Toplis v. Grave*, (1839) 5 Bing (NC) 636:

. . . when an act has been done by the plaintiff under the express directions of

the defendant which occasions an injury to the rights of third persons, yet if such an act is not apparently illegal in itself, but is done honestly and *bona fide* in compliance with the defendant's directions, he shall be bound to indemnify the plaintiff against the consequences thereof.

Lord Justice Slesser agreed and cited the same passage from the judgment of Chief Justice Tindal. He added at p. 194:

   . . . as it seems to me, in the facts of this case all the constituents of an implied promise to indemnify arise.

Lord Justice Romer agreed too, but he also considered the matter on the basis that the ship's agents had wrongly delivered the cargo at the instigation of the charterers. He said this, at p. 195:

   . . . Now, if the agents for the ship do a wrong to their own principals at the instigation of the time charterers, then plainly in accordance with the principle which was applied in the case of *Kruger & Co. Ltd. v. Moel Tryvan Ship Co. Ltd.*, [1907] A.C. 272, the time charterers became liable to indemnify the principals against the consequences of the agents acting on their direction. For these reasons, as well as those given by the other members of the Court, I think this appeal fails.

Finally I come to three cases decided in the last 20 years in which the Court gave specific consideration to the question whether a claim under an indemnity was statute-barred. In each of these cases the indemnity was an express indemnity.

The first of these cases, and the one on which Mr. Cooke placed particular reliance, is *Bosma v. Larsen*, [1966] 1 Lloyd's Rep. 22. In this case the owners chartered a motor vessel to the charterers on time charter. Clause 9 of the charter-party provided:

   9 ... The Master to be under the orders of the Charterers as regards employment, agency, or other arrangements. The Charterers to indemnify the Owners against all consequences or liabilities arising from the Master ... signing Bills of Lading or other documents or otherwise complying with such orders ...

Subsequently a bill of lading was signed by agents on behalf of the master and as ordered by the charterers. On arrival, part of the cargo was found to be damaged. It was accepted for the purpose of the action that under the bill of lading the owners were liable to the receivers

for this damage but that they were not liable under the terms of the charter-party.

In these circumstances the owners claimed to be indemnified by the charterers for the sum they had to pay. The charterers admitted that the indemnity in cl. 9 applied to the case but set up the defence that the claim was barred by statute under the Limitation Act, 1939.

I should refer to parts of the judgment of Mr. Justice McNair. At p. 25 he said this:

   Admittedly the cause of action for an indemnity under Clause 9 of the charterparty is an action founded on simple contract. The writ having been issued on Mar. 12, 1965, the defence succeeds if the cause of action accrued before Mar. 12, 1959. If as the plaintiff contends the cause of action accrued after that date, it fails. In summary, the plaintiff contends that the cause of action accrued at the earliest when judgment was entered against him on Mar. 10, 1962, or alternatively on Dec. 17, 1963, when he paid under the compromise settlement. The defendant on the other hand contends that the cause of action accrued at the latest when the goods were discharged damaged at Naples in July, 1956, and therefore accrued at a date outside the six-year limitation period. . . . as it seems to me, the material question in this case is: When, on the facts stated above, did a factual situation arise which, subject to the effect of the Limitation Act, 1939, would have entitled the plaintiff to have obtained from the Court a judgment against the defendant in respect of the indemnity relied on?

Mr. Justice McNair then referred to some of the authorities to which his attention had been drawn, and at p. 27 he continued:

   Accordingly, in my judgment, the first task of the Court is to construe the document and it is not proper or consistent with the authorities to apply a label to an obligation in a document and then to deduce from that label the legal consequences which may flow from other contracts to which the same label can be attached. . . . Accordingly the issue in this case which I have to decide depends on my view of the proper construction of Clause 9 . . . Though the range of the protection afforded by clauses of this nature to the shipowners has not yet been fully worked out by the decisions of the Courts there have been a number of decisions on the question which are noted in Scrutton on Charterparties, . . . which have established certain instances of incidents which are within or without the protection of the

| [1984] Vol. 2 | Lloyd's Rep. | 473 |
|---|---|---|
| Q.B. (Com. Ct.) | The "Caroline P" | Neill, J. |

Clause; but so far as I know it has never been held that payment by the shipowner of a claim or determination of his liability by a judicial decision was a condition precedent to the shipowner's rights of recovery. It seems to me that the plain meaning of the expression to indemnify against "all liabilities" is that it imposes the obligation to indemnify against the incurring of a liability, not the discharge of that liability by payment or the determination of that liability by judicial process. Indemnity against liability seems to me to be different from reimbursement against sums paid in pursuance of a legal liability. The shipowner is damnified as soon as he comes under a liability. The damnification contemplated by the Clause is the incurring of the liability not the payment. . . . I accordingly conclude that on the agreed facts of this case the plaintiffs' cause of action under Clause 9 of the charter-party arose at the date when the facts came into existence which created their liability to the cargo-owners or their insurers which facts came into existence before the date when the six-year period of limitation began and was not dependent upon either the determination of liability by the Italian Court on Mar. 10, 1962 or the plaintiffs' payment under the compromise settlement on Dec. 17, 1963.

The Judge then considered an argument that since the fusion of law and equity the cause of action on a true indemnity arises as soon as there comes into existence a right to seek equitable relief. The Judge expressed no concluded opinion on this point.

In 1974, *Bosma v. Larsen* was considered by Mr. Justice Swanwick in *County & District Properties Ltd. v. C. Jenner & Son Ltd. And Others*, [1976] 2 Lloyd's Rep. 728. In this case Mr. Justice Swanwick was concerned with express indemnities contained in contracts between building contractors and their sub-contractors. By the relevant clause, sub-contractors agreed to indemnify and save harmless the contractors against and from:

(i) any breach non-observance or non-performance by the subcontractor his servants or agents of the said provisions of the main contract or any of them;

(ii) any act or omission of the subcontractor, his servants or agents which involves the contractor in any liability to the employer under the main contract;

(iii) any claim damage loss or expense due to or resulting from any negligence or breach of duty on the part of the subcontractor his servants or agents.

There was an additional sub-cl. (iv) to which I do not need to refer.

Work on the building site was completed on Oct. 28, 1964. In 1969 the building owners brought proceedings against the main contractors claiming damages for breach of contract. In May, 1971, the main contractors issued third party notices against the sub-contractors. The sub-contractors contended that the claims by the main contractors were barred because six years had elapsed since the completion of the work. At p. 732, Mr. Justice Swanwick summarized the arguments of Counsel:

It was common ground that the claim of the defendants against all third parties was for an indemnity under a simple contract; that the period of limitation was therefore six years from when the cause of action first accrued; that this must be the date when there arose . . . "A factual situation, the existence of which entitles one person to obtain from the Court a remedy against another person . . ." and that this stage would be reached when the defendants were damnified.

Mr. Justice Swanwick next referred to the argument on behalf of the main contractors:

. . . Counsel . . . contends firstly that at common law the damnification of a person indemnified under a contract never occurred until he had had to pay, and had paid, money. He submitted that in equity the rule was relaxed to the extent that time started to run when the fact and extent of the liability of the person to be indemnified was ascertained or established.

The Judge then considered the authorities to which he had been referred and the arguments put forward on behalf of the sub-contractors including an argument that, because equity could grant relief by means of a declaration or the setting up of a fund, the cause of action arose immediately upon a breach by the sub-contractor. At p. 734 Mr. Justice Swanwick continued:

These authorities satisfy me that . . . the general rule in cases of indemnity is that while equity will safeguard the position pending the ascertainment of the fact and extent of liability of the person to be indemnified, he has no cause of action until such ascertainment. There is thus a strong body of authority not only in favour of [the main contractors'] proposition as to when the cause of action for an indemnity arises at common law as modified by equity but also to the effect that these rules . . . are universal.

| [1984] Vol. 2 | Lloyd's Rep. | 474 |
|---|---|---|
| Q.B. (Com. Ct.) | The "Caroline P" | Neill, J. |

The Judge then turned his attention to the decision in *Bosma v. Larsen*, which he described as the only authority which had been cited to him which was contrary to the rule which he had just formulated. At p. 735, he continued:

> From this case, as I understood it, all the third parties invited me to deduce the principle that the propositions put forward by [the main contractors] were not of general, and certainly not of universal, application and that every contract of indemnity should be scrutinized to determine from its wording whether . . . the event to be indemnified is a loss or damage or expense, . . . or a breach of contract act or omission of the indemnifier, . . . If I were untrammelled by authority, I could see some attractions in this distinction; I can also see some dangers, for it could mean a multiplicity of writs in respect of defects observed by the contractor, which might or might not result in a claim against him. . . . Having regard to the authorities to which I have referred, I do not feel at liberty to accept the distinction contended for by the third parties; it may be that the case of *Bosma v. Larsen* can be distinguished on its special facts; if not, I fear that I must differ from it, and reaffirm the principles for which [the main contractors] contend. After all, an indemnity against a breach, or an act, or an omission, can only be an indemnity against the harmful consequences that may flow from it, and I take the law to be that the indemnity does not give rise to a cause of action until those consequences are ascertained.

The third of the three cases in which a limitation defence was considered is *R. H. Green & Silley Weir Ltd. v. British Railways Board and Kavanagh (Third Party)*, [1980] 17 B.L.R. 94. In this case the third parties carried out tipping in 1970 and 1971 in a railway cutting owned by the B.R.B. The work was done under an agreement whereby (inter alia) the third parties agreed to indemnify the B.R.B.:

> . . . from and against all liability for personal injury (whether fatal or otherwise) loss of or damage to property and any other loss, damage, costs and expenses which might arise in consequence of the grant or existence of the agreement or of anything done as a result of its grant or existence . . .

In 1974 adjoining landowners brought an action against the B.R.B. complaining of damage. The action made slow progress but eventually, in 1979, the B.R.B. joined the third parties. The third parties asserted that the claim was time-barred. On the trial of a preliminary issue Mr. Justice Dillon held that the relevant clause in the agreement constituted a general indemnity in favour of the B.R.B. and that time did not run against the B.R.B. until the liability, if any, of the B.R.B. to the plaintiffs in the action had been established and ascertained. Mr. Justice Dillon supported the decision of Mr. Justice Swanwick in the *Jenner* case and declined to follow *Bosma v. Larsen*.

From a consideration of these cases and other authorities to which my attention was directed it seems to me that it is possible to identify at least three ways in which a person (A) who has become liable to (B) may be able to obtain redress from (C).

The first way is by an action for damages for breach of contract (or warranty). In such a case (A) will be in a position to claim that the incurring of his liability to (B) flowed directly from an act of (C) which constituted a breach of a contract between (A) and (C) or of a warranty given by (C) to (A). The damages will be assessed in accordance with *Hadley v. Baxendale* principles. The cause of action will date from the date of breach.

The second way is by a claim on an express indemnity. In such a case the extent of the indemnity and the time at which the cause of action arises will depend on the construction of the contract. If the indemnity is an indemnity against liability, as it was held to be in *Bosma v. Larsen*, the cause of action will come into existence when (A) incurs a liability to (B). It may be that in certain circumstances a liability may be incurred for this purpose when the liability is still merely contingent: see *Forster v. Outred & Co.*, [1982] 1 W.L.R. 86. If, however, the indemnity is a general indemnity, as the relevant clause was held to be in *R. H. Green & Silley Weir Ltd. v. British Railways Board and Kavanagh (Third Party)*, then time will not begin to run against (A) for the purpose of pursuing his indemnity against (C) until (A)'s liability to (B) has been established and ascertained: see below. One may notice in passing that, as the arbitrator pointed out in his reasons, Mr. Justice McNair did not deal separately with the words "or consequences" in the contractual indemnity in *Bosma v. Larsen*.

The third way in which (A) may claim against (C) in respect of sums which he has had to pay to (B) is under an implied indemnity. As I understand the matter, such an implied indemnity would prima facie be a general indemnity of the kind recognized by the common law. The rules relating to what I have described as a general indemnity were explained by Lord Justice Fletcher Moulton in *Re Richardson* [1911] 2 K.B. 705 at p. 712 as follows:

If, for instance, B was bound to pay a sum to A and C was bound to indemnify B, . . . then B could not sue C unless he could aver payment to A. It was the same thing whether it was a case of suretyship, indemnity, or contribution. In all cases before you can make a guarantor pay you must prove that you had actually paid the money. No better example of this could be given than the case of *Collinge v. Heywood* (1839) 9 A. & E. 633. That was a contract to indemnify a plaintiff against costs, and it was decided that the cause of action arose when he paid the costs, not when the costs were incurred or the attorney's bill was delivered to him; and it happened that it was a point of cardinal importance in that case to decide the moment when the cause of action arose, because it was a question there of the date from which the Statute of Limitations began to run. There the Court applied the well-known common law principle that before you can avail yourself of your right of indemnity you must shew that you have paid the money . . . The rule in Chancery was somewhat different, and yet, to my mind, it emphasises the fundamental principle that you must have paid before you have a right to indemnity, because the remedy which equity gave was a declaration of a right. You could file a bill against the principal debtor to make him pay the debt so that you would not be called upon to pay it, and then you obtained a declaration that you were entitled to an indemnity. You could in certain cases have a fund set aside in order that you might be indemnified, to avoid the necessity of your having to pay and then to sue for the money you had paid, which perhaps would not repair your loss and credit even if it discharged the debt. But I do not think that equity ever compelled a surety to pay money to the person to whom he was surety before the latter had actually paid. He might be ordered to set a fund aside, but I do not think that he could be ordered to pay.

It seems clear, however, that even in equity time does not begin to run for the purposes of any limitation period until the liability of the person to be indemnified has been ascertained. I can see no satisfactory distinction on this point between claims on an indemnity and claims between sureties or trustees: cf *Wolmershausen v. Gullick,* [1893] 2 Ch. 514; *Robinson v. Harkin,* [1896] 2 Ch. 415; *Littlewood v. George Wimpey & Co. Ltd. (and British Overseas Airways Corporation),* [1953] 2 Q.B. 501, 519.

With this introduction I return to the facts of the instant case.

It will be remembered that in par. 7 of the points of claim in the arbitration the indemnity was put forward as an indemnity against liability to be implied from cl. 8 of the charter-party - in other words an implied contractual indemnity against liability. Before me, however, the arguments as to the true basis of the indemnity were wide-ranging and I do not propose to decide the matter on any point of pleading.

The owners' right to recover can, as I see it, be formulated in a number of ways as follows:

(a) As a claim on a breach of an implied term of the charter-party, the breach consisting of the presentation of the bills of lading for signature. On this basis the cause of action arose at the moment of breach.

(b) As a claim based on an implied indemnity against liability. On this basis the cause of action arose when a liability to the receivers was incurred. Mr. Cooke argued that a contingent liability to the receivers was incurred as soon as the bills of lading were signed and he relied on *Forster v. Outred* (sup.). If such a contingent liability is not enough it seems clear that, as to the majority of the claim at any rate which was a claim for shortages, the cause of action did not arise until the cargo was discharged in the period between Apr. 2 and 21, 1975.

(c) As a claim based on an implied general indemnity. Such an indemnity would, as Mr. Hirst put it, indemnify the owners from the "consequences" of the master signing the bills of lading in terms which were more onerous than the charter-party.

I have had to consider whether or not the true view of this case is that the charterers were in breach of an implied term of the charter-party in putting the bills of lading before the master for signature and that the subsequent losses suffered by the owners flowed from that breach. Such a solution would not seem out of line with some of the speeches in the *Kruger* case. But the case has been argued on the basis of an implied indemnity, the issue being as to the nature of such indemnity. Furthermore, it appears that where a person is entitled to rely on an implied indemnity he can make a claim on such an indemnity in addition to making a claim based on some express provision of his contract with the indemnifier or (semble) a claim for damages for breach of contract. I turn therefore to the implied indemnity.

It seems to me that there is great force in the argument that as a matter of principle an indemnity which is to be implied from the

Case 1:08-cv-01562-RMB     Document 25-9     Filed 04/18/2008     Page 12 of 12
Page 11 of 11
i-law.com

terms of a contract or from the conduct of the potential indemnifier should be an indemnity against the *incurring* of liability. But a long line of cases establishes that at common law a person who is entitled to an indemnity cannot enforce it until he has made a payment to the third party. In *M'Gillivray v. Hope and Another*, [1935] A.C. 1, Lord Tomlin set out the common law rule succinctly at p. 10:

> . . . where one who is liable to pay a sum of money to another is entitled against a third party to be indemnified in whole or in part against what he has so to pay, he cannot recover on the indemnity against this third party where he himself has made no payment in respect of his own liability (see *Collinge v. Heywood*) . . .

This common law rule has now been modified because in equity the person to be indemnified can seek relief as soon as his liability has been ascertained: of *Littlewood v. George Wimpey & Co. Ltd. & Ors.* (sup.) and the cases there cited.

I have therefore come to the conclusion, though not without hesitation, that the implied indemnity to which the owners are entitled in the present case is of the kind suggested by Mr. Hirst, namely, an indemnity against the consequences of the master signing the bills of lading and that such an indemnity did not become enforceable by action until at the earliest the liability of the owners to the receivers had been ascertained by the Court of first instance in Basrah in December, 1978.

In reaching this conclusion I have not overlooked an argument that the owners might have been entitled to invoke the assistance of a Court of equity to obtain declaratory relief or the setting up of a fund before the Iraqi Court had reached its decision. I very much doubt, however, on the facts of this case whether a Court of equity would have given any relief before December, 1978. But even if it had, I do not consider that such an action would have affected the time at which the cause of action for the recovery of any moneys from the charterers would have begun to run: see above.

I should, however, also express a view on the alternative hypothesis that time began to run for the purposes of the indemnity from the moment when the owners first incurred a liability to the receivers. As Mr. Hirst pointed out, the major part of the claims by the receivers was in respect of shortages. I do not see how the receivers could have brought a claim in respect of these shortages before the completion of the period of discharge or, at the very earliest, at the commencement of the discharge. Discharge commenced on Apr. 2, 1975, and even on this basis the appointment of the

arbitrator was just in time. Moreover, even in respect of the damaged bags, the claim by the receivers would have been formulated as a claim in respect of the bags discharged in a damaged condition. Accordingly, as I see it, no *actual* liability was incurred to the receivers before Apr. 2, 1975.

It will be remembered, however, that Mr. Cooke argued that, for the purpose of a claim under the implied indemnity, the relevant date was the date when a *contingent* liability to the receivers was incurred. This date, or these dates, were in December, 1974, or January, 1975, when the bags were badly stowed and when the bills of lading were signed. I see the force of the argument on this point based on the decision of the Court of Appeal in *Forster v. Outred* (sup.), but I have come to the conclusion that even if the indemnity is to be construed as an indemnity against the incurring of liability, such an indemnity could not have been invoked by the owners until they had incurred some *actual* liability to the receivers.

For these reasons I am satisfied that the arbitrator was correct in his decision that the claim by the owners was not time-barred.

I can deal with the two remaining arguments very shortly.

It seems to me that once it is established that the owners are entitled to an indemnity then that indemnity should be an adequate indemnity. The owners were found liable by the Iraqi courts in the sums and to the extent claimed in the arbitration. It has not been suggested that the owners failed to conduct the case properly in Iraq and it is to be observed that the case was taken on appeal to the Cassation Court.

In my judgment they are entitled to the relief which they obtained from the arbitrator. It is to be observed that in the "*Strathlorne*" case the express indemnity was held to cover claims for costs including the costs of the claimants' own solicitors: see *Strathlorne Steamship Co., Ltd. v. Andrew Weir & Co.*, (1934) 50 Ll.L. Rep. 185 at p. 187.

The final argument concerned the effect of the words "FREE OUT" in the bills of lading. It is uncertain how far this point was canvassed before the Iraqi Courts. It seems to me, however, on the facts of this case that the Court cannot reopen the issue of the liability of the owners to the receivers. I see no ground for interfering with the decision of the arbitrator on this point.

For these reasons I have come to the conclusion that this appeal must be dismissed.

# EXHIBIT "I"

Mv FANY
C/P dd 8th January 2008

---

OPINION

---

1.    I have been provided with an Opinion dated 27th March 2008 of Mr. Nevil
      Philips, a junior in Quadrant Chambers, together with a Declaration of Mr.
      Nicholas Woo, a solicitor, dated 31st March 2008, which seems to repeat the
      substance of Mr. Phillips' Opinion.  Mr. Phillips' Opinion is headed "C/P dd
      8th January 2004", but I think it is in error as to the year.  I have been asked to
      comment upon the assertions of English law made by Mr. Phillips and, by
      adoption, by Mr. Woo.

2.    For the purposes of this Opinion, I will simply assume that the factual position
      is as stated by Mr. Phillips and use his abbreviations.   As I understand it, the
      question is whether there is an accrued enforceable cause of action under the
      proper law of the charter, namely English law, which vested in SJN before the
      determination of SJN's liability to the registered owners of the vessel for the
      crane damage.

3.    Mr. Phillips' argument is that SJN's claim is for an indemnity and that no
      cause of action for an indemnity arises before the determination of the liability
      in respect of which the indemnity is granted.    He says that no substantial
      recovery by SJN is possible until that time.

4.    If the critical issue is whether there is already in existence an accrued cause of
      action, Mr. Phillips' Opinion wholly misses the point.    He confuses the
      existence of the cause of action with the evaluation of the liability.

1

5.    SJN's cause of action is for breach of charter by Trans Power for both the Crane Damage and the Hull Damage.

6.    In English law, the cause of action for breach of contract accrues when the breach occurs, irrespective of the occurrence of damage.   This is an old and well established rule, devised principally in the context of limitation, going back to the early 18th century: Gould v Johnson (1702) 2 Salk. 422.  In 1881, in Gibbs v Guild (1881) 8 Q.B.D.296 at p. 302,  Field J. felt able to say this

> "...it was well settled that actions on assumpsit the time ran from the breach of contract, for that was the gist of the action, and the subsequent damage, although happening within the six years next before suit, did not prevent the application of the statute [of Limitations]: *Battley v Faulkner* [(1820) 3 B.& Ald. 288]..."

And he might also have referred to Howell v Young (1826) 5 B.&C. 259 where the following was said:

> "In an action in assumpsit, the Statute of Limitations begins to run not from the time when the damage results from breach of promise, but the time when the breach of promise takes place".

7.    Thus the questions of assessment of damage to which Mr. Phillips refers are irrelevant to the accrual and existence of the cause of action for breach. Recoverable damages may not be capable of assessment until later, but that is irrelevant.   Thus it was that in the leading case of Hochster v De La Tour (1853) 2 E & B 678, the court of Queen's Bench Division held that an action for anticipatory breach lay even though it would only be later that the damages could be assessed.   At page 691 Lord Campbell LC, delivering the judgment of the court said:

> "An argument against the action before the 1[st] of June is urged from the difficulty of calculating damages: but this argument is equally strong against an action before the 1[st] of September, when the three months would expire.  In either case, the jury in assessing the damages would be justified in looking to all that had happened, or was likely to happen, to increase or mitigate the loss of the plaintiff down to the day of trial".

8.    Mr. Phillips' reasoning is in fundamental error since he takes as the premise (in paragraph 1.5.2) that SJN's claim must (necessarily) take the form of

2

either a claim for an indemnity or a claim for damages in respect of loss suffered and, if no loss is proved, only nominal damages are recoverable[1]. This is to misstate the position. The cause of action for an indemnity, strictly speaking such as the right of a surety to be indemnified, arises out of a promise to indemnify, but that is not this case which is a claim for breach of contract although the damages payable will (in part at least) achieve the *effect* of an indemnity. He confuses the cause of action with the effect.

9.      However, even this is incomplete, since many contracts of indemnity sound in damages. The paradigm is the contract of marine insurance and it is illuminating to consider the decision of Megaw J. (as he then was) in Chandris v Argo Insurance Co. Ltd. [1963] 2 Lloyd's Rep. 65[2]. The question there was whether a claim against insurers for general and particular average losses accrued only after the publication of an average adjustment. Megaw J. held that the cause of action accrued at the time of the initial casualty and the action was time-barred. The headnote of the report reads, significantly in the present context, as follows

> "1) that a cause of action depended on the existence of facts (irrespective of a plaintiff's knowledge or ability to prove them) which it was essential for a plaintiff to plead in order to prevent his statement of claim being struck out as not showing a cause of action; (2) that an action on a marine policy was for unliquidated damages and it was not a condition precedent that a plaintiff should quantify his claim..."

10.     There is a further question with Mr. Phillips' argument. Even in the case of a pure indemnity (i.e. a promise to pay an indemnity as such), there is an equitable cause of action for the establishment of a fund by the indemnifier.

---

[1] Incidentally, the principle of nominal damages itself demonstrates that the suffering of damage is not essential to the accrual of the cause of action

[2] Approved by the Privy Council in The Potoi Chau 1983 2 Lloyd's Rep. 236. This is distinct from liability insurance: see Bradley v Eagle Star Insurance Co [1989] A.C. 957, a claim concerned with the rights of third parties to insurance contracts arising under the Third Parties (Rights against Insurers) Act 1930 which effects a statutory assignment of bankrupt assureds' rights to claimants. In Firma C-Trade v Newcastle Protection and Indemnity Association [1991] 2 A.C. 1, a claimant under the 1930 Act failed since the underlying insurance (membership of a P&I Club) contained a "pay to be paid" clause, so that the obligation of the Club was expressly conditional on the member having first paid the claim of the claimant. Payment was a true condition precedent to liability.

This was explained by the Court of Appeal in <u>In re Richardson</u> <u>*ex parte*</u> <u>the</u> <u>Governors of St. Thomas's Hospital</u> [1911] 2 K.B. 705 a case of an indemnity of a trustee by a *cestui qui trust*. In that case, Cozens-Hardy MR said this (at page 709):

> "Equity has always taken a wider and more liberal view of these rights of indemnity than the old Common Law courts did. It is settled at common law that, given a contract of indemnity, no action could be maintained until actual loss had been incurred. The common law view was first pay and then come to the court under your agreement to indemnify. In equity that was not the view taken, Equity has always recognised the existence of a larger and wider right in the person entitled to indemnity. He was entitled, in a Court of Equity, if he was a surety whose liability to pay had become absolute, to maintain an action against the principal debtor and to obtain an order that he should pay off the creditor and relieve the surety. *Another way in which the indemnity was often worked out in the Court of Chancery was by ordering a fund to be set apart to meet the liability as and when it arose. So that in the view of the Court of Equity it was not necessary for the person entitled to the indemnity to be ruined by having to pay the full amount in the first instance. He had full power to take proceedings under which that fate might be averted and he might substantially protect himself and secure his position by coming to the Court.*" (emphasis added)

11.   Thus, it will be seen that the position is altogether more complex than portrayed by Mr. Phillips, but one thing is absolutely clear: in English law, the disponent owner's cause of action for vessel damage caused by a sub-charterer accrues at the moment of the breach and is not inchoate or unaccrued until the liability of the disponent owner to the registered owner has been resolved and determined. If that is what Mr. Phillips is saying then he is utterly wrong.

12.   Mr. Phillips' statements at paragraphs 2.1 and 2.2 must be read in the light of my above account of the law; what he says is correct only in a very limited sense which is not relevant to the present situation at all. His statement that SJN "...*will not be able to obtain an award from a London arbitration tribunal for substantive (i.e. other than declaratory) or substantial (i.e. other than nominal or trivial) relief...*" is wrong but particularly so if, by that statement,

4

he seeks to imply that there is no extant accrued cause of action.    It is wrong because, in such a case as he envisages, a London arbitration tribunal could and often does take one of three courses each of which is inconsistent with his proposition, namely:

(i)    Tribunals can determine the issue of liability and make an award for substantial damages "to be assessed"; this is not a declaratory award nor is it an award for nominal damages and importantly it would not be legally possible if the cause of action had not already accrued. Sitting as a London arbitrator myself, I have made such an award and there has been no appeal. It is not quite the situation in Household Machines Ltd v Cosmos Exporters Ltd. [1947] K.B. 217, to which Mr. Phillips refers[3] in which I note Lewis J said this at pages 219-220 in a passage which I will quote in full since it is highly germane as indicating (a) the existence of a valid enforceable cause of action (b) the nature of the relief actually sought and (c) the nature of what he regarded himself as doing:

> "*The defendants in this counterclaim ask further for a declaration of indemnity.*  They say that the plaintiffs knew that the purchase was for re-sale to exporters and that the plaintiffs are bound to indemnify them in respect of anything which they may have to pay Sasha and which may properly be passed on by the defendants to the plaintiffs. *Mr. O'Malley has argued that such a declaration is unheard of. I venture to think that there is power in the court to grant such a declaration in a proper case.* Indeed, the Rules of the Supreme Court seem to indicate that it is right to do so. The reason is obvious, namely, that if such a declaration could not be made there might, in some cases, have to be two bites at a cherry; in other words, it would encourage multiplicity of actions. If I gave judgment in this action for a sum by way of damages to the defendants without taking into consideration the fact that there may be other damages due to the defendants from the plaintiffs arising out of what may be called the chain of contracts entered into, it seems to me that the defendants' claim would be finished. They could not bring another action, because they can only come once to the court in respect of the same breach of contract and they must therefore recover or fail to recover damages once and for all.

---

[3] Incidentally, his case reference [1947] 1 K.B. 217 is not quite right since there was only one single volume of the King's Bench Reports in 1047.

It is said that Sasha has made a claim against the defendants, and has said: "Here is my claim, but I do not know yet whether it will be larger still when I am sued by my buyers." The material for deciding that claim is not before me. But if I rejected the prayer for a declaration, I might be doing a very serious injustice, because Sasha's buyers might claim from him in circumstances entitling him to hand on that claim or part of it to the defendants, and the defendants, then having had to pay, might be in law and on the facts of the case entitled to go against the plaintiffs. *Therefore I propose to do what may be an unusual thing and order a declaration. ….*" (emphasis added)

(ii)     Tribunals can actually determine, on the balance of probabilities, the issue of the liability of the claimant to the third party and also its extent and award substantial damages accordingly using the evidence before them and making a determination on the balance of probabilities.   It must be understood that whilst an award against the claimant in favour of the third party is *a* way of determining the amount of the claimants' liability, it is not the only way.   Indeed, there was once a view that an award between A and B was inadmissible as between B and C, it being a confidential determination to which C was not party, although the current view is that it is good evidence as a foreseeable head of loss: <u>The Sargasso</u> [1994 ] 1 Lloyd's Rep. 412. That case also leads to the next point.

(iii)     A very common method involves either consolidated arbitrations or more usually concurrent hearings before similarly composed tribunals using the same evidence and producing concurrent awards; it is not necessary to have identical tribunals, but it is in practice both common and achievable.   This leads to the award in the dispute between A and B and the award between B and C to be published simultaneously. However, if Mr. Phillips were right, this would be legally impossible since B's cause of action against C would not have come into existence until the publication of the award as between A and B and thus the appointment of the tribunal in the dispute between B and C

6

could not lawfully be possible until that moment.    This is of course nonsense and it derives from Mr, Phillips' failure to distinguish between the accrual of the cause of action and the proof of damage.

13.    I should however comment on certain passages in Mr. Phillips' Opinion which call for special consideration in addition to the above more general points.

14.    His paragraph 2.1.2 contains the above confusions, but also it concludes by saying "...*Without such a crystallised liability (either by judgment, arbitral award or reasonable compromise) to the relevant third party, the claim of the innocent party remains contingent, and unliquidated*".    Those concluding words are, with the utmost respect to Mr. Phillips, badly misleading if they seek to suggest that there is no accrued cause of action. The word "contingent" is quite wrong and inappropriate; the cause of action which SJN here advance is not founded on a "contingent" liability in any material sense. The fact that it is "unliquidated" (whatever he may mean by that term) does not mean that the cause of action is not accrued.    There is a distinction between claims for liquidated damages (such as demurrage) and claims for unliquidated damages (that is damages at large which need to be assessed as not being liquidated by the parties' contract), but a claim for unliquidated damages (which is by far the most common form of contractual claim) is accrued and "ripe" before liquidation.    Paragraph 2.1.2 is a deeply flawed piece of legal reasoning.

15.    Mr. Phillips' references to Grobbelaar v News Group Newspapers [2002] 1 W.L.R. 3024 are wildly far from the mark.    That was a case of a defamation action where, a corrupt footballer had sued a newspaper for defamation (a tortious claim, it should be noted) and the House of Lords held that the jury's verdict that there had been a defamation was not to be overturned but, on the evidence of his corruption, the claimant had no reputation deserving of legal protection and the defamation damaged an already flawed reputation, so the

7

claimant was awarded nominal damages only.   That simply has no relevance whatsoever to the present debate.

16.    Mr. Phillips says at paragraph 2.1.4 *"Perhaps self-evidently, a claim for declaratory relief ...has no monetary value and a judgment which provides only for a declaration cannot be enforced against any given security..."*.  It is not "self-evident" and it is not right.   He speaks of "a claim for declaratory relief...", whereas SJN's claim is not for a declaration but for damages; he says a declaratory award cannot be enforced against security, but it depends what the declaration states and indeed what the terms of the security are.   I agree that a declaration "that C do pay to B whatever sum is hereafter determined to be due from B to A" might well not be enforceable against some securities, but a declaration based upon the equitable cause of action I mentioned above that "that C do establish a fund of US$X with which B shall be entitled to discharge his liability to A" would in many cases produce a financial result.      However, at the risk of repeating myself, none of this has any bearing at all on whether the cause of action for damages has already accrued save that such orders are themselves premised upon there being an extant accrued cause of action.

17.    At paragraph 2.1.6, Mr. Phillips says *"All of this is a reflection of a well-established principle to the effect that, under English law, a cause of action will only accrue upon a contract or any other obligation to indemnify a person against a liability to a third party when the claimant has made payment to (and thereby discharged any liability to) the third party and not upon the happening of the event that gives rise to the indemnity"* and he refers to paragraph 28-049 of *Chitty on Contracts* and the decision of Neill J in <u>The Caroline P</u> [1984] 2 Lloyd's Rep. 466.   This is obfuscatory and misleading since it confuses contracts to indemnify with claims for breach of contract where the damages are intended to make good by indemnifying the claimant. I agree that there is a general principle that contracts to indemnify against

8

liabilities (such as liability insurance, see above) may require the establishment of the liability before the cause of action accrues, but:

(a) This is always a question of construction of the particular contract to indemnify. A careful reading of the relevant paragraph from Chitty will show that it says "*However that general rule is subject to the construction of indemnity. This may mean that the indemnifying party is liable as soon as the indemnified party is liable (that is even before any establishing of that liability by, for example, judgment*". Mr. Phillips might usefully have mentioned this; and

(b) As I have said, the present case is not that of a contract to indemnify against a liability but a claim for damages for breach of contract. His reference to The Caroline P shows that very contrast. That was a claim by a shipowner for an indemnity under a contract to indemnify arising out of the charterer's issuing bills of lading which exposed the shipowner to a greater liability than he had undertaken pursuant to the charter. It was not, in the view of Neill J., a breach of charter to issue such a bill but there was an implied promise of indemnity. It being a case of a promise to indemnify and not breach there was a different commencement of the limitation period, which was critical in that case, although I should note that the judge also held that, even viewed as a claim of damages, the claim was still not time-barred.

18.  At paragraph 3.1, Mr. Phillips refers to the English law on Freezing Orders (the old *Mareva* injunction). Now, on one level this is irrelevant since it is a case about a Rule B attachment, but he seems to suggest that an English court would refuse to grant a party in the intermediate position of SJN a Freezing Order in this case. That is, with the utmost respect, absolute nonsense and if he dared present that argument to an English court, he would be laughed out of that court. He refers to two cases.

9

19.    The first is <u>The Siskina</u> [1979] A.C. 210[4]. That was concerned with the rules of service of process out of the jurisdiction and whether, under the Rules of the Supreme Court, it was sufficient that the only jurisdictional link with England was the claim for a *Mareva* injunction with no other substantive relief linked to England. The House of Lords, construing the service out of the jurisdiction rules, held that they required a substantive cause of action linked to England and not merely the injunction. It had no connection with the present question whatsoever.

20.    The second case was <u>C Inc. v L</u> [2001] 2 Lloyd's Rep. 459. It was a highly complicated case also concerned with extra-jurisdictional service. Aikens J accepted that a *Mareva* injunction could not be granted where there was no accrued cause of action, but he held that there was in that case an accrued cause of action for an indemnity in relation to a trustee's right to be indemnified in respect of a liability incurred in that capacity. He held that the cause of action accrued when the liability was incurred. That latter conclusion militates strongly against Mr. Phillips' argument and in any event does not apply to damages for breach of contract.

21.    Although English security proceedings are irrelevant in a Rule B case, if Mr. Phillips is saying that an English court faced with an application by SJN in the present circumstances would not make a Freezing Order, he is mistaken. The court has to be satisfied that there is a "good arguable case" (see <u>The Niedersachsen</u> [1983] 1 W.L.R. 1412) and, here, the court would look at the evidence of the proposed claim and the claimant's assessment of the likely claim against him (plus interest and costs) and make an Order reflecting a fair view of that case as being a good arguable case. This is the common experience.

---

[4] This is the proper case reference

22.    Mr. Phillips' conclusion at paragraphs 3.2 and 3.3 is, for all these reasons completely wrong and riddled with confusion.    To describe a cause of action for breach of contract as "inchoate" when the breach has occurred but the damages remain to be assessed is an abuse of that word and, in law, simple nonsense if it seeks to suggest that there is no accrued cause of action.


TIMOTHY YOUNG Q.C.

20 Essex Street,                                          17th April 2008
LONDON WC2R 3AL

11



20

ESSEX STREET

Called 1977, silk 1996, BA BCL (Oxon)

# TIMOTHY YOUNG QC

QUEEN'S COUNSEL
TIMOTHY YOUNG QC

Timothy Young QC's principal area of practice is international trade, embracing shipping, commodities, insurance, the carriage and sale of goods, banking and related disciplines. He appears principally in the High Court and the Court of Appeal before various arbitration tribunals. He also acts as an arbitrator, either sole or as a member of a panel, accepting appointments under the rules of the London Maritime Arbitrators Association, the London Court of International Arbitration, the International Chamber of Commerce or other appropriate trade body or ad hoc, if required.

Born in 1953, he was educated at Malvern College (1967-1971), (Exhibitioner 1967 and Scholar 1970),

He attended The Institut Britannique de la Sorbonne (1971-1972), then Magdalen College, Oxford (1972-1976) (Exhibitioner) - BA Jurisprudence 1975 - First Class. He is an Honorary Senior Mackinnon Scholar (BCL First Class) Gray's Inn - Birkenhead Scholar (1977)

He was a Lecturer in Law at St Edmund Hall, Oxford (1976-1980)

He was called to the Bar (Gray's Inn) in 1977 and has practised since 1978 at 3 Essex Court and 20 Essex Street. He took silk in 1996.

A member of the London Commercial and Common Law Bar Association and a supporting member of the London Maritime Arbitrators Association.

### INTERNATIONAL ARBITRATION
Regularly appointed by the International Chamber of Commerce, and the London Court of International Arbitration. Supporting member of the London Maritime Arbitrators Association.

Appearing frequently as advocate before arbitrations under all three institutions in relation to all manner of trading and financial disputes.

Also, prior to its supersession by the Financial Ombudsman Service, on the panel of arbitrators of the Securities and Futures Association

### AREAS OF SPECIALISATION
International trade - Shipping - Commodities - Insurance - Carriage and Sale of Goods and Banking.

### PRINCIPAL CASES
**Commodities / Sales of Goods**
*Concordia Trading v Richco International* [1991] 1 Lloyd's Rep. 475 (Evans J- FOB sale- sellers'duty to tender documents).

13

TIMOTHY YOUNG QC
QUEEN'S COUNSEL

*Bangladesh Export Import v Sucden-Kerry* [1995] 2 Lloyd's Rep. 1 (CA - Frustration and refusal of import licences under cif contract).

*Soon Hua Seng v Glencore* [1996] 1 Lloyd's Rep. 398 (Mance J- cif sellers'obligation on tender of shipping documents).

*Glencore Grain v Lebanese Organisation for International Commerce* [1997] 2 Lloyd's Rep. 386 (CA- The Panchaud Freres principle and non- compliance with letter of credit establishment obligations).

**Shipping**

*Balli Trading v Afalona* [1993] 1 Lloyd's Rep. 1 (CA- Incorporation of timecharter terms in bill of lading).

*President of India v Jebsens* [1991] 1 Lloyd's Rep. 1 (HL.- Laytime calculation).

*Ellis Shipping v Voest Alpine* [1992] 2 Lloyd's Rep. 109 (CA- Freight and Laytime and demurrage exceptions).

*The Griparion* [1994] 1 Lloyd's Rep. 533 (Rix J - Demise charters and allegations of inducing fraud).

*The Island Archon* [1994] 2 Lloyd's Rep. 227 (CA-implied indemnities in timecharters).

*The Gregos* [1994] 1 W.L.R 1465 (HL - Timecharter redelivery obligations).

*Anderson v A-G for New Zealand* [1995] 2 Lloyd's Rep. 264 (unseaworthiness not caused by a want of due diligence).

*Fyffes Group v Reefer Express Lines* [1996] 2 Lloyd's Rep.171 (Moore-Bick J COA; obligations and damages).

*Baghlaf Al Zafer Factory v Pakistan National Shipping Corporation* [1998] 2 Lloyd's Rep. 229 [2000] 1 Lloyd's Rep. 1 (exclusive jurisdiction clause, Hague-Visby Rules).

*Baghlaf Al Zafer Factory Co. Br. for Industry Ltd v. Pakistan National Shipping Co. and Anor (No.2)* [C.A.] [1998] 2 Lloyd's Rep. 229.

*Nordstern Allgemeine Versicherungs A.G. v. Intrnav Ltd; Same v. Katsamas and Stamoulis* (C.A.) [1999] 2 Lloyd's Rep. 139.

*UBC Chartering Ltd v. Liepaya Shipping Co, Ltd (The "Liepaya")* [Q.B. (Com.Ct) [1999] 1 Lloyd's Rep. 649 - Premature Termination.

*Neuva Fortuna Corporation v. Tata Ltd (The "Nea Elpis")* [Q.B. (Comm. Ct.) [1999] 2 Lloyd's Rep. 497 - Agency - Undisclosed principal - Joint venture partner and co-principal.

*The "Tychy"* [C.A.] [1999] 2 Lloyd's Rep. 10 - Admiralty practice - Arrest of vessel - Application to st aside - Slot charter - Rectification and Novation

*Brownsville Holdings Ltd and Anor v. Adamjee Insurance Co. Ltd; (The "Milasan")* [2000] 1 Lloyd's Rep. 458 - Insurance (Marine) - Total loss - Insured peril.

*Standard Chartered Bank v. Pakistan National Shipping Corporation and Others (No. 2)* [C.A.] [2000] 1 Lloyd's Rep. 218 - Bill of Lading - Deceit - Conspiracy.

*Whistler International Ltd v. Kawasaki Kisen Kaisha Ltd (The "Hill Harmony")* [C.A.] ] [2001] 1 Lloyd's Rep. 147 - Charterparty (Time) - Employment - Navigation.

14

The *"JORDAN II"Jindal Iron and Steel Co ltd and Others v Islamic Solidarity Shipping Company* [2005] 1 Lloyd's Rep 57 (House of Lords); [2003] 2 Lloyd's Rep 87 (Court of Appeal and First Instance) The three Courts reviewed various aspects of the law on cargo claims, including the construction of "FIOST" clauses in Charterparties and Bill of Lading Contracts, and the extent to which the Hague Convention abrogates freedom of contract.

**Arbitration**

*Triad v Stellar Chartering* [1993] 2 Lloyd's rep 388 [Abandonment and amendments].

*Almare v Derby* [1989] 2 Lloyd's rep 376 [Ad hoc reference].

*Petredec v Tokumaru* [1994] 1 Lloyd's Rep. 162 [wrongly named parties and appointment of arbitrator by court).

**Banking**

*Instituto Bancario San Paolo v Yamaichi Inter Ltd.* (unreported 1996 - Waller J - options in quasi-Eurobond issue.

*Sea Voyager v Norbulk AS* (Arbitration 1997-inter-bank payment letters).

*Standard Chartered Bank v Pakistan National Shipping Corporation* [1998] 1 Lloyd's Rep. 684 and 656.

*Cresswell J and CA* (UCP 400, false bills of lading).

*Standard Chartered Bank v. Pakistan National Shipping Corporation and Others* (No. 2) [C.A.] [2000] 2 Lloyd's Rep. 511 - Bill of lading - Deceit - Conspiracy

*Standard Chartered Bank v. Pakistan National Shipping Corporation and Others* (No.3) [Q.B. (Com. Ct.)] [1999] 2 Lloyd's Rep. 139; 2001 1 Lloyd's Rep. 147

**Publications**

Co-author of a work in Lloyd's of London Press Maritime Law Library series entitled "Voyage Charters" (LLP- 1993 and 2006).

QUEEN'S COUNSEL TIMOTHY YOUNG QC

15

EXHIBIT "J"

## Sally Crane

| | |
|---|---|
| **From:** | Gerard Hopkins |
| **Sent:** | 04 April 2008 17:38 |
| **To:** | Sally Crane; Dominic McAleer |
| **Subject:** | FW: "FANY" |
| **Attachments:** | 20080404170654124.pdf |

---

**From:** Bentham, Sonja on behalf of Andrews, Alex T.[SMTP:AANDREWS@REEDSMITH.COM]
**Sent:** 04 April 2008 17:35:30
**To:** linos.choo@dlapiper.com
**Cc:** Gerard Hopkins; nicholas-woo@birketts.co.uk; Andrews, Alex T.
**Subject:** "FANY"
**Auto forwarded by a Rule**

Further to our e-mail of 20th March, we have obtained some further information from our clients on the cost of hull and crane repairs and attach our clients' breakdown together with further supporting documents.

<<20080404170654124.pdf>>

In terms of our earlier e-mail of 20th March item 1, the balance on final hire account remains as set out, item 3 time and bunker consumption remains as set out and on the estimate in 9 for Class occasional surveys, we are awaiting details of costs for agents, Class, Superintendent.

In terms of the attachments:-

1.    We attach the updated invoice in respect of hull repairs to include repair work to nos. 1 and 2 portside hull plate and our clients have marked and deducted Owners' items.

2.    The detailed crane repair invoice is attached, the total having reduced to US$92,894.61. The item *"SE"* noted at point 4 of our e-mail of 20th March is an Owners' item and you will note that US$14,521 is claimed as stores relating to the claim damage the balance of the invoice being Owners' items.

3.    Accordingly, subject to the invoices still to be received on which an estimate of US$20,000 has been placed, the claim for cost of hull and crane damage repairs totals US$1,411,596.67 using exchange rates as at invoice dates. That is an increase of US$10,921.57 over our e-mail of 20th March so we are dealing with marginal variations.

Therefore, we would put the security request at a total of US$3,815,000 and look forward to hearing from you whether our clients' claim will be voluntarily secured.

Best regards.

**Alex Andrews**
**Partner**
AAndrews@reedsmith.com
+44 (0) 20 7772 5850

Reed Smith Richards Butler LLP
Beaufort House

07/04/2008

15 St. Botolph Street
London EC3A 7EE
DX 1066 City / DX18 London
T: +44 (0) 20 7247 6555
F: +44 (0) 20 7247 5091
www.reedsmith.com

Reed Smith Richards Butler LLP is a limited liability partnership registered in England (registered
no. OC303620) with its registered office at Beaufort House, Tenth Floor, 15 St. Botolph Street,
London EC3A 7EE, England. Reed Smith Richards Butler LLP is regulated by the Solicitors
Regulation Authority.

A list of members of Reed Smith Richards Butler LLP, and their professional qualifications, is
available at the registered office. Any reference in this email to a partner of Reed Smith Richards
Butler LLP is to a person who is a member of Reed Smith Richards Butler LLP or to an employee of
equivalent standing. Reed Smith Richards Butler LLP is associated with Reed Smith LLP of
Delaware, USA.

This e-mail is confidential and may be protected by legal privilege. If you have received it in error,
you are on notice of its status. Please notify us immediately by reply e-mail and then delete this
message from your system. Please do not copy it or use it for any purposes, or disclose its contents
to any other person. Thank you for your cooperation. Please contact us on **+44 (0) 20  7247 6555** if
you need assistance.

<div align="right">Disclaimer Version RS.UK.1.01.03</div>

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

07/04/2008

| # | Item | Amount | Description |
|---|---|---|---|
| 1 | Hull Repair | | |
| | | $ 1,292,262.49 | Total Repair Costs |
| | | $15,716.00 | Less Owner's expense(ME-01, ME-04, ME-05, ME-06 & Additional - 4(1,2,3,5,&6) |
| | | $ 1,276,546.49 | Claim Amount |
| 2 | Crane Repair | | |
| | | $92,894.61 | |
| 3 | Spare Parts supply for Crane Repair | | |
| | | ₩2,354,000 | |
| 4 | Spare Parts supply for Crane Repair | | |
| | | $7,956.00 | Air Filter 1 PC: $26 |
| | | | Return Filter 1 PC: $260 |
| | | | Axial Piston Pump 1 PC: $4,550 |
| | | | Hydraulic Block(No.5) 1 PC: $1,300 |
| | | | Hydraulic Block(No.6) 1 PC: $910 |
| | | | Pressure Relief Valve(DB 20K)_ 1 PC: $390 |
| | | | Pilot to Open Check Valve(4CK 300) 1PC: $260 |
| | | | Pilot to Open Check Valve(4CK 120) 1PC: $260 |
| 5 | Crane Design Drawing | | |
| | | ₩603,200 | |
| 6 | Spare Parts supply for Crane Repair | | |
| | | $ 19,360 | Total Invoice Value |
| | | $ 4,839 | Less Owner's expense |
| | | $ 14,521 | Claim Amount |
| 7 | Paint Costs | | |
| | | $11,507.22 | |

$ 1,403,425.32
₩2,354,000
¥603,200



Tel: 0086 755 2689 7360
FAX: 0086 755 26093842
Mobil: 139029 34002

博福鑫泰船舶修理 (深圳) 有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | Amount USD |
|------|-------------|------------|

# *INVOICE*

MV：FANY          ITEM №：2K08 02018-2

**REPAIRING OF WATER BALLAST TANK STEEL PLATES**

| Item | Description | Unit | Qtty | U/Price | Amount USD |
|------|-------------|------|------|---------|------------|
| 1、 | DRY DOCK EXPEND | | | | |
| 1) | Pilots for ship's docking | time | 1 | 2000 | $2,000.00 |
| | Pilots for ship's undocking | time | 1 | 2000 | $2,000.00 |
| | Pilots for ship's arrival | time | 1 | 2000 | $2,000.00 |
| | Pilots for ship's departure | time | 1 | 2000 | $2,000.00 |
| 2) | Tugs for ship's docking | time | 1 | 5500 | $5,500.00 |
| | Tugs for ship's undocking | time | 1 | 5500 | $5,500.00 |
| | Tugs for ship's arrival | time | 1 | 5500 | $5,500.00 |
| | Tug for ship's departure | time | 1 | 5500 | $5,500.00 |
| 3) | Riggers,handle for ship's docking | time | 1 | 2000 | $2,000.00 |
| | Riggers,handle for ship's undocking | time | 1 | 2000 | $2,000.00 |
| | Riggers,handle for ship's arrival | time | 1 | 2000 | $2,000.00 |
| | Riggers,handle for ship's departure | time | 1 | 2000 | $2,000.00 |
| 4) | Wharfage, | day | 9 | 1350 | $12,150.00 |
| 5) | Shore power | | | | |
| | Electric power connection, | line/time | 2 | 140 | $280.00 |
| | Current supply, | KWH | 6900 | 0.45 | $3,105.00 |
| | Hire frequency charger | day | 8 | 90 | $720.00 |
| 6) | Cooling water | | | | |
| | Cooling water line to conn./disconn., | line/time | 1 | 52 | $52.00 |
| | Cooling water supply , | line/day | 7 | 54 | $378.00 |
| 7) | Fire watchman, 2 men, | day | 14 | 160 | $2,240.00 |
| | Frontier safety watchman | day | 14 | 80 | $1,120.00 |
| 8) | Galley garbage | day | 14 | 40.6 | $568.40 |
| 9) | Fire water line to connect/disconnect, | line/time | 4 | 54 | $216.00 |
| | Fire water line to keep pressure, | line/day | 70 | 40 | $2,800.00 |
| | Put fire extinguisher | day | 14 | 44 | $616.00 |
| 10) | Fresh water line to conn./disconn. | line/time | 1 | 52 | $52.00 |
| | Fresh water supply, | ton | 200 | 3.25 | $650.00 |
| 12) | Gas free | | | | |
| | Cost of initial inspection | | 1 | 180 | $180.00 |

2K08 02018 FANY-HULL(Quotation)          E.&.O.E          2008-03-17page:1

Tel: 7086 755 2689 7360
FAX: 0086 755 26693842

 博福鑫泰船舶修理 （深圳） 有限公司

*INVOICE*

Mobil: 139039 34002

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*    xjtbf@sohu.com

| Item | Description | | | | Amount USD |
|------|-------------|---|---|---|-----------|
| | Cost of subsequent inspection | time | 5 | 40 | $200.00 |
| | 13) Telephone line to Conn./disconn., | | | | $90.00 |
| | 14) Ballast for undocking | | | | |
| | Ballast water line to Conn./disconn., | line/time | 3 | 54 | $162.00 |
| | Ballast water supply | ton | 1500 | 0.54 | $810.00 |
| | Remove and refit vent head,renew packing | pc | 4 | 54 | $216.00 |
| | 15) Rental of shore crane, | set/hour | 23 | 180 | $4,140.00 |
| | 18) Vent fan supply (5sets*2day) | set/8hrs | 10 | 70 | $700.00 |
| | Line connect/discon. | line/time | 5 | 15 | $75.00 |
| | 19) Cleaning oil tank : | | | | |
| | A  №3oil tank to be cleaned 114m³ | M3 | 114 | 13 | $1,482.00 |
| | dirty oil to be reclaimed and disposed | ton | 2 | 200 | $400.00 |
| | B  M/E L.O sump tank 23.2m³ | M3 | 50 | 13 | $650.00 |
| | dirty oil to be reclaimed and disposed | ton | 0.2 | 200 | $40.00 |
| | C  M/E L.O store  tank20.8m³ | M3 | 50 | 13 | $650.00 |
| | dirty oil to be reclaimed and disposed | ton | 0.3 | 200 | $60.00 |
| | D  M/E №1L.O CY L.O store  tank 12.9m³ | M3 | 50 | 13 | $650.00 |
| | dirty oil to be reclaimed and disposed | ton | 0.7 | 200 | $140.00 |
| | E  M/E №2L.O CY L.O store  tank 17.5m³ | M3 | 50 | 13 | $650.00 |
| | dirty oil to be reclaimed and disposed | ton | 0.5 | 200 | $100.00 |
| | F  Charge for storing oil about 26tons | day | 9 | 480 | $4,320.00 |
| | G  certificate included | | 1 | 230 | $230.00 |
| | 22) Open/clsoe manhole | pc | 20 | 65 | $1,300.00 |
| | Renew rubber packing | pc | 20 | 20 | $400.00 |
| | 23) Dry docking | | | | |
| | Dockage for first two days | 2 days | 1 | 36000 | $36,000.00 |
| | Dockage for each subsequent  day | day | 6 | 14500 | $87,000.00 |
| | 24) Gangway on/off | time | 3 | 975 | $2,925.00 |
| | 25) Cherry picker rental | hour.set | 4 | 80 | $320.00 |
| | 26) Pick up other superitendents | time | 12 | 60 | $720.00 |
| 2、 | **STEEL PLATES(straight  flat  hull) TO BE RENEWED** | | | | |
| HI-00 | Hull preparation and painting | | | | |
| HI-06 | Hull painting | | | | |
| | painted with 3 coats( in & out side ) | coat.m² | 3300 | 0.5 | $1,650.00 |
| HW-00 | ER shell plate to be cut and renewed | | | | |

Tel: 0086 755 2689 7360
FAX: 0086 755 26693842
Mobil: 139029 34003

 博福鑫泰船舶修理 （深圳） 有限公司

*INVOICE*

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| HW-01 | E/R S/S : | | | | | | | | |
| | double curve | δ14 | x 1800 | x 8000 | x 2pc | kg | 3225.6 | 8 | $25,804.80 |
| | double curve | δ14 | x 800 | x 3600 | x 1pc | kg | 322.56 | 8 | $2,580.48 |
| | double curve | δ14 | x 1800 | x 2100 | x 2pc | kg | 846.72 | 8 | $6,773.76 |
| | double curve | δ14 | x 800 | x 5300 | x 1pc | kg | 474.88 | 8 | $3,799.04 |
| | double curve | δ14 | x 1800 | x 1500 | x 1pc | kg | 302.4 | 8 | $2,419.20 |
| | double plate for oil tank via welding hole | | | | | | | | |
| | | δ10 | x 80 | x 100 | x 58pc | kg | 580 | 5 | $2,900.00 |
| | vacuum test | | | | | m | 79.7 | 40 | $3,188.00 |
| | UT | | | | | loc | 30 | 40 | $1,200.00 |
| HW-02 | №1PS AND №2PS shell plate to cut and renewed | | | | | | | | |
| | UT | | | | | loc | 86 | 40 | $3,440.00 |
| | single curve | δ16 | x 5900 | x 1800 | x 2pc | kg | 2718.7 | 6 | $16,312.32 |
| | double curve | δ20 | x 1800 | x 5700 | x 1pc | kg | 1641.6 | 7 | $11,491.20 |
| | single curve | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 6 | $12,528.00 |
| | single curve | δ16 | x 1900 | x 3400 | x 1pc | kg | 826.88 | 6 | $4,961.28 |
| | single curve | δ16 | x 1800 | x 3400 | x 1pc | kg | 783.36 | 6 | $4,700.16 |
| | double curve | δ20 | x 1800 | x 5700 | x 1pc | kg | 1641.6 | 7 | $11,491.20 |
| | | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 5 | $10,440.00 |
| | single curve | δ16 | x 950 | x 3400 | x 1pc | kg | 413.44 | 6 | $2,480.64 |
| | | δ20 | x 950 | x 5700 | x 1pc | kg | 866.4 | 5 | $4,332.00 |
| | | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 5 | $10,440.00 |
| | single curve | δ16 | x 1800 | x 3400 | x 1pc | kg | 783.36 | 6 | $4,700.16 |
| | double curve | δ20 | x 1800 | x 5700 | x 1pc | kg | 1641.6 | 7 | $11,491.20 |
| | | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 5 | $10,440.00 |
| | single curve | δ20 | x 1600 | x 2800 | x 1pc | kg | 716.8 | 6 | $4,300.80 |
| | double curve | δ20 | x 1600 | x 5700 | x 1pc | kg | 1459.2 | 7 | $10,214.40 |
| | double curve | AH36 | δ16 | x 800 | x 2800 | x 1pc | kg | 286.72 | 8 | $2,293.76 |
| | double curve | AH36 | δ16 | x 800 | x 7250 | x 1pc | kg | 742.4 | 8 | $5,939.20 |
| | double curve | AH36 | δ16 | x 1250 | x 3200 | x 1pc | kg | 512 | 8 | $4,096.00 |
| | vacuum test | | | | | m | 128.7 | 40 | $5,148.00 |
| HW-03 | №1PORT SIDE : | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 8pc | m | 8.8 | 30 | $264.00 |
| | round pipe | | Φ32 | x 7000 | x 2pc | m | 14 | 25 | $350.00 |

Tel: 0086 755 3689 7360

FAX: 0086 755 3669384?

Mobil: 139019 34003

 博福鑫泰船舶修理 （深圳）有限公司

*INVOICE*

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|------------|
| | round pipe | Φ32 | x 3200 | x 1pc | m | 3.2 | | 25 | $80.00 |
| | round bar | Φ20 | x 9000 | x 4pc | m | 18 | | 25 | $450.00 |
| | round bar | Φ20 | x 3200 | x 2pc | m | 6.4 | | 25 | $160.00 |
| | round bar | Φ20 | x 800 | x 8pc | m | 6.4 | | 25 | $160.00 |
| 2) | frame for top side tank to but and renewed | | | | | | | | |
| | vertical frame | L12 | x 90 | x 200 | x 4200 | x 1pc | kg | 121 | 7.25 | $877.25 |
| | | L12 | x 90 | x 150 | x 5200 | x 1pc | kg | 125 | 7.25 | $906.25 |
| | frame | δ14 | x 600 | x 600 | x 6pc | kg | 241.92 | 5.75 | $1,391.04 |
| | | δ14 | x 1200 | x 2600 | x 2pc | kg | 698.88 | 5.75 | $4,018.56 |
| | | δ14 | x 1350 | x 1350 | x 2pc | kg | 408.24 | 5.75 | $2,347.38 |
| 4) | fixed ear plate for staging | | | | | | | | |
| | | δ10 | x 80 | x 80 | x 26pc | kg | 260 | 5 | $1,300.00 |
| 5) | frame for low side tank cut and renewed | | | | | | | | |
| | | δ14 | x 600 | x 2200 | x 2pc | kg | 295.68 | 6 | $1,774.08 |
| | | δ14 | x 1200 | x 2200 | x 1pc | kg | 295.68 | 6 | $1,774.08 |
| | | δ14 | x 350 | x 450 | x 1pc | kg | 17.64 | 6 | $105.84 |
| | | δ14 | x 1750 | x 1750 | x 1pc | kg | 343 | 6 | $2,058.00 |
| 7) | shell plate for replacing the big dent | | | | | | | | |
| | double curve | AH36 | δ16 | x 1300 | x 4000 | x 1pc | kg | 665.6 | 8 | $5,324.80 |
| 8) | DBT | | | | | | | | |
| | bracket to be cut and renewed | | | | | | | | |
| | | δ12 | x 600 | x 1300 | x 3pc | kg | 224.64 | 6 | $1,347.84 |
| | | δ12 | x 700 | x 1300 | x 3pc | kg | 262.08 | 6 | $1,572.48 |
| | | δ14 | x 1000 | x 2000 | x 2pc | kg | 448 | 6 | $2,688.00 |
| | vertical frame | L12 | x 90 | x 200 | x 4000 | x 1pc | kg | 115 | 7.5 | $862.50 |
| | T-frame for cargo hold to be cut and renewed | | | | | | | | |
| | | δ12 | x 1300 | x 1500 | x 2pc | kg | 374.4 | 5.75 | $2,152.80 |
| | | δ12 | x 180 | x 1600 | x 2pc | kg | 55.296 | 5.75 | $317.95 |
| HW-04 | №1Stb side | | | | | | | | |
| | handrail for main deck to be cut and renewed | | | | | | | | |
| | round pipe | Φ32 | x 1600 | x 1pc | m | 1.6 | | 25 | $40.00 |
| 1) | shell plate to be cut and renewed | | | | | | | | |
| | UT | | | | loc | 40 | | 40 | $1,600.00 |
| | double curve | δ16 | x 1700 | x 7850 | x 1pc | kg | 1708.2 | 7 | $11,957.12 |
| | double curve | δ16 | x 1800 | x 7850 | x 1pc | kg | 1808.6 | 7 | $12,660.48 |

Tel: 0086 755 2680 7360

FAX: 0086 755 26093842

Mobil: 159029 34002



博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

*INVOICE*

| Item | Description | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|
| | Single curve | δ20 | x 1700 | x 1700 | x 1pc | kg | 462.4 | 6 | $2,774.40 |
| | single curve | δ20 | x 1800 | x 1700 | x 1pc | kg | 489.6 | 6 | $2,937.60 |
| | single curve | δ20 | x 2000 | x 1750 | x 1pc | kg | 560 | 6 | $3,360.00 |
| | single curve | δ20 | x 2000 | x 1600 | x 1pc | kg | 512 | 6 | $3,072.00 |
| | single curve | δ20 | x 1750 | x 1700 | x 1pc | kg | 476 | 6 | $2,856.00 |
| | single curve | δ20 | x 1550 | x 1400 | x 1pc | kg | 347.2 | 6 | $2,083.20 |
| | vacuum test | | | | | m | 80.1 | 40 | $3,204.00 |
| 2) | deformed dent to be ground and welded to smooth | | | | | | | | $450.00 |
| | | δ30 | x 500 | x 500 | x 1pc | | | | |
| 3) | frame to be cut and renewed | | | | | | | | |
| | | δ14 | x 1300 | x 1300 | x 2pc | kg | 378.56 | 5 | $1,892.80 |
| 4) | bracket for low side tank to be cut and renewed | | | | | | | | |
| | | δ14 | x 600 | x 1300 | x 6pc | kg | 524.16 | 5.75 | $3,013.92 |
| 5) | general access hole | δ14 | x 400 | x 2000 | x 1pc | kg | 89.6 | 3.45 | $309.12 |
| 6) | fixed ear plate for staging | δ10 | x 80 | x 80 | x 20pc | kg | 200 | 5 | $1,000.00 |
| 7) | staging for low side tank | L63 | x 63 | x 100 | x 18pc | kg | 180 | 5 | $900.00 |
| 8) | DBT | | | | | | | | |
| | bracket to be cut and renewed | | | | | | | | |
| | | δ12 | x 600 | x 1300 | x 2pc | kg | 149.76 | 6 | $898.56 |
| | | δ12 | x 700 | x 1300 | x 2pc | kg | 174.72 | 6 | $1,048.32 |
| | | δ14 | x 1000 | x 2000 | x 2pc | kg | 448 | 6 | $2,688.00 |
| | T-frame for cargo hold to be cut and renewed | | | | | | | | |
| | | δ12 | x 1300 | x 1500 | x 2pc | kg | 374.4 | 5.75 | $2,152.80 |
| | | δ12 | x 180 | x 1600 | x 2pc | kg | 55.296 | 5.75 | $317.95 |
| 9) | top side tank | | | | | | | | |
| | | δ12 | x 1300 | x 1300 | x 3pc | kg | 486.72 | 5.75 | $2,798.64 |
| | | δ12 | x 80 | x 1300 | x 2pc | kg | 19.968 | 5.75 | $114.82 |
| 10) | frame for №1S/side upper side tank to be added | | | | | | | | |
| | | δ14 | x 1500 | x 1500 | x 3pc | kg | 756 | 5.75 | $4,347.00 |
| 11) | frame for №1S/ side down side tank to be added | | | | | | | | |
| | | δ14 | x 1000 | x 1000 | x 3pc | kg | 336 | 5.75 | $1,932.00 |
| 12) | frame for №1S/ side T-bar | | | | | | | | |
| | triangular plate | δ14 | x 1500 | x 1500 | x 2pc | kg | 504 | 5.75 | $2,898.00 |
| | face plate | δ14 | x 100 | x 1500 | x 2pc | kg | 33.6 | 5.75 | $193.20 |
| 13) | general access hole for №1down side tank | | | | | | | | |

Tel: 0086 755 2689 7560
FAX: 0086 755 26893842

 博福鑫泰船舶修理（深圳）有限公司

*INVOICE*

Mobil: 139029 34001
*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*     xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|---|
| | | δ20 | x 500 | x 1800 | x 1pc | kg | 144 | 3.45 | $496.80 |
| HW-05 | №2 Port side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 8pc | m | 8.8 | 30 | $264.00 |
| | round pipe | | Φ32 | x 9000 | x 1pc | m | 9 | 25 | $225.00 |
| | round pipe | | Φ32 | x 3000 | x 1pc | m | 3 | 25 | $75.00 |
| | round bar | | Φ20 | x 9000 | x 2pc | m | 18 | 25 | $450.00 |
| | round bar | | Φ20 | x 800 | x 4pc | m | 3.2 | 25 | $80.00 |
| 2) | frame for top side tank to be cut and renewed | | | | | | | | |
| | | δ14 | x 1300 | x 1300 | x 2pc | kg | 378.56 | 5.75 | $2,176.72 |
| | | δ14 | x 1200 | x 2600 | x 2pc | kg | 698.88 | 5.75 | $4,018.56 |
| 3) | fixed ear plate for staging | δ10 | x 80 | x 80 | x 26pc | kg | 260 | 5 | $1,300.00 |
| 4) | general access hole | δ14 | x 400 | x 2000 | x 2pc | kg | 179.2 | 3.45 | $618.24 |
| HW-05 | №2 Stbt side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 10pc | m | 11 | 30 | $330.00 |
| | round pipe | | Φ32 | x 9000 | x 1pc | m | 9 | 25 | $225.00 |
| | round pipe | | Φ32 | x 6000 | x 1pc | m | 6 | 25 | $150.00 |
| | round bar | | Φ20 | x 9000 | x 2pc | m | 18 | 25 | $450.00 |
| | round bar | | Φ20 | x 6000 | x 2pc | | 12 | 25 | $300.00 |
| | round bar | | Φ20 | x 800 | x 8pc | m | 6.4 | 25 | $160.00 |
| | platform for hatch coaming to cut and renewed ,checker plated (double flanging) | | | | | | | | |
| | checker plate | δ6 | x 350 | x 700 | x 1pc | kg | 12 | 6 | $72.00 |
| | bracket | δ8 | x 50 | x 250 | x 2pc | kg | 20 | 5 | $100.00 |
| 2) | shell plate to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 30 | 40 | $1,200.00 |
| | single curve | δ18 | x 1800 | x 6430 | x 2pc | kg | 3333.3 | 6 | $19,999.87 |
| | single curve | δ20 | x 1800 | x 2200 | x 2pc | kg | 1267.2 | 6 | $7,603.20 |
| | single curve | δ20 | x 1000 | x 2000 | x 1pc | kg | 320 | 6 | $1,920.00 |
| | single curve | δ20 | x 1600 | x 2000 | x 1pc | kg | 512 | 6 | $3,072.00 |
| | single curve | δ18 | x 1380 | x 4100 | x 1pc | kg | 814.75 | 6 | $4,888.51 |
| | single curve | δ20 | x 1400 | x 2200 | x 1pc | kg | 492.8 | 6 | $2,956.80 |
| | single curve | δ20 | x 2000 | x 1600 | x 1pc | kg | 512 | 6 | $3,072.00 |
| | single curve | δ20 | x 1800 | x 2200 | x 1pc | kg | 633.6 | 6 | $3,801.60 |
| | single curve | δ18 | x 6430 | x 1800 | x 1pc | kg | 1666.7 | 6 | $9,999.94 |



Tel: 0086 755 2689 7360

FAX: 0086 755 26693842

Mobil: 139039 34002

博福鑫泰船舶修理 （深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| | single curve | δ18 | x 1250 | x 4000 | x 1pc | kg | 720 | 6 | $4,320.00 |
| | single curve | δ20 | x 2200 | x 1260 | x 1pc | kg | 443.52 | 6 | $2,661.12 |
| | vacuum test | | | | | m | 117.4 | 40 | $4,696.00 |
| | vertical frame for №2top side tank to be cut and renewed | | | | | | | | |
| | | L12 | x 90 | x 200 | x 7200 | x 1pc | kg | 207 | 7.25 | $1,500.75 |
| | | L12 | x 90 | x 150 | x 7200 | x 1pc | kg | 173 | 7.25 | $1,254.25 |
| | strong frame to be cut and renewed | | | | | | | | |
| | frame | δ12 | x 1000 | x 2000 | x 2pc | kg | 384 | 5.75 | $2,208.00 |
| | | δ12 | x 1400 | x 1630 | x 2pc | kg | 438.14 | 5.75 | $2,519.33 |
| | | δ12 | x 180 | x 1200 | x 1pc | kg | 20.736 | 5.75 | $119.23 |
| | | δ12 | x 180 | x 180 | x 4pc | kg | 40 | 5.75 | $230.00 |
| | | δ14 | x 300 | x 500 | x 2pc | kg | 33.6 | 5.75 | $193.20 |
| | | δ14 | x 120 | x 1800 | x 2pc | kg | 48.384 | 5.75 | $278.21 |
| | angle bar for staging | | | | | | | | |
| | | L6 | x 63 | x 63 | x 1000 | x 20pc | | 200 | 5 | $1,000.00 |
| 3) | manhole cover for №1&№2 passage to be cut and renewed | | | | | | 2 | 30 | $60.00 |
| | | δ10 | x 50 | x 200 | x 2pc | | | | |
| | screw | M14 | x 60 | x 2pc | | | | |
| 5) | №2Port Side : | | | | | | | | |
| | vertical frame | L12 | x 90 | x 200 | x 5000 | x 1pc | kg | 144 | 6.5 | $936.00 |
| | | L12 | x 90 | x 150 | x 4000 | x 1pc | kg | 96 | 6.5 | $624.00 |
| | bracket to be cut and renewed | | | | | | | | |
| | | δ12 | x 600 | x 1300 | x 3pc | kg | 224.64 | 5 | $1,123.20 |
| | | δ12 | x 700 | x 1300 | x 3pc | kg | 262.08 | 5 | $1,310.40 |
| | | δ14 | x 100 | x 2000 | x 3pc | kg | 67.2 | 5 | $336.00 |
| | general access hole for main deck | | | | | | | | |
| | | δ16 | x 500 | x 600 | x 1pc | kg | 38.4 | 3 | $115.20 |
| | №2 Stbd top Side tank : | | | | | | | | |
| | | L12 | x 90 | x 200 | x 3000 | x 1pc | kg | 86 | 7.25 | $623.50 |
| HW-06 | №3 Port side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 1pc | kg | 1.1 | 30 | $33.00 |
| | round pipe | Φ32 | x 600 | x 1pc | m | 1 | 25 | $25.00 |
| | round bar | Φ20 | x 600 | x 1pc | m | 1 | 25 | $25.00 |
| | face plate for hatch coaming bracket to be cut and renewed | | | | | | | | |
| | | δ14 | x 180 | x 800 | x 1pc | kg | 16.128 | 5 | $80.64 |
| | | δ14 | x 180 | x 600 | x 1pc | kg | 12.096 | 5 | $60.48 |

2K08 02018 FANY-HULL(Quotation)          E.&.O.E          2008-03-17page:7



Tel: 0086 755 2689 7360
FAX: 0086 755 36693042
Mobil: 139029 34003

**博福鑫泰船舶修理 （深圳）有限公司**
*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| | | δ14 | x 300 | x 400 | x 1pc | kg | 13.44 | 5 | $67.20 |
| 2) | shell plate for top side tank to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 20 | 40 | $800.00 |
| | | δ18 | x 700 | x 3450 | x 1pc | kg | 347.76 | 6 | $2,086.56 |
| | | δ18 | x 700 | x 1000 | x 1pc | kg | 100.8 | 6 | $604.80 |
| | single curve | δ18 | x 1800 | x 3450 | x 3pc | kg | 2682.7 | 7 | $18,779.04 |
| | single curve | δ18 | x 1000 | x 3600 | x 1pc | kg | 518.4 | 7 | $3,628.80 |
| | vacuum test | | | | | m | 23.2 | 40 | $928.00 |
| 4) | fixed ear plate for staging | δ10 | x 80 | x 80 | x 8pc | kg | 80 | 5 | $400.00 |
| | shell plate for low side tank to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 22 | 40 | $880.00 |
| | single curve | δ18 | x 1800 | x 4200 | x 1pc | kg | 1088.6 | 7 | $7,620.48 |
| | single curve | δ18 | x 1400 | x 4200 | x 1pc | kg | 846.72 | 7 | $5,927.04 |
| 5) | vacuum test | | | | | m | 40.4 | 40 | $1,616.00 |
| 6) | angle bar to be cut and renwed | | | | | | | | |
| | | L12 | x 90 | x 150 | x 4500 | x 1pc | kg | 108 | 7.25 | $783.00 |
| 7) | general access hole | δ14 | x 600 | x 1200 | x 1pc | kg | 80.64 | 3.45 | $278.21 |
| 8) | shell plate for №3cargo hold PS to be cut and renewed | | | | | | | | |
| | | δ18 | x 10000 | x 3600 | x 1pc | kg | 5184 | 5 | $25,920.00 |
| HW-07 | №3 Stbd. side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 10pc | m | 11 | 30 | $330.00 |
| | round pipe | Φ32 | x 9000 | | x 1pc | m | 9 | 25 | $225.00 |
| | round pipe | Φ32 | x 6000 | | x 1pc | m | 6 | 25 | $150.00 |
| | round bar | Φ20 | x 9000 | | x 2pc | m | 18 | 25 | $450.00 |
| | | Φ20 | x 6000 | | x 2pc | m | 12 | 25 | $300.00 |
| | | Φ20 | x 800 | | x 8pc | m | 6.4 | 25 | $160.00 |
| 2) | platform for hatch coaming to be cut and renewed | | | | | | | | |
| | checker plate | | | | | | | | |
| | | δ6 | x 350 | x 700 | x 1pc | kg | 11.76 | 6 | $70.56 |
| | | δ8 | x 50 | x 250 | x 2pc | kg | 20 | 5 | $100.00 |
| | | L10 | x 100 | x 100 | x 1800 | x 2pc | kg | 58 | 6 | $348.00 |
| 3) | shell plate for top side tank to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 20 | 40 | $800.00 |
| | | δ18 | x 1800 | x 4100 | x 1pc | kg | 1062.7 | 6 | $6,376.32 |
| | | δ18 | x 1400 | x 4100 | x 1pc | kg | 826.56 | 6 | $4,959.36 |

Tel: 0086 755 2689 7360
FAX: 0086 755 26693842
Mobil: 139029 34002

 博福鑫泰船舶修理（深圳）有限公司

*INVOICE*

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

| Item | Description | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|
| 4) | vacuum test | | | | m | 23.2 | 40 | $928.00 |
| 5) | fixed ear plate | δ10 | x 80 | x 80 | x 8pc | kg | 80 | 5 | $400.00 |
| HW-08 | №4 Port side | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 16pc | m | 17.6 | 30 | $528.00 |
| | round pipe | Φ32 | x 6000 | x 3pc | m | 18 | 25 | $450.00 |
| | round pipe | Φ32 | x 3000 | x 1pc | m | 3 | 25 | $75.00 |
| | round bar | Φ20 | x 6000 | x 5pc | m | 30 | 25 | $750.00 |
| | round bar | Φ20 | x 3000 | x 1pc | m | 3 | 25 | $75.00 |
| | round bar | Φ20 | x 800 | x 8pc | m | 6.4 | 25 | $160.00 |
| 3) | №4 shell plate to be cut and renewed | | | | | | | |
| | UT | | | | loc | 66 | 40 | $2,640.00 |
| | | δ18 | x 1850 | x 2750 | x 1pc | kg | 732.6 | 5 | $3,663.00 |
| | | δ16 | x 900 | x 3450 | x 1pc | kg | 397.44 | 5 | $1,987.20 |
| | | δ16 | x 1800 | x 3450 | x 1pc | kg | 794.88 | 5 | $3,974.40 |
| | | δ16 | x 1000 | x 7220 | x 1pc | kg | 924.16 | 5 | $4,620.80 |
| | | δ16 | x 1800 | x 7220 | x 1pc | kg | 1663.5 | 5 | $8,317.44 |
| | | δ16 | x 1000 | x 7850 | x 1pc | kg | 1004.8 | 5 | $5,024.00 |
| | single curve | δ18 | x 1800 | x 7850 | x 1pc | kg | 2034.7 | 6 | $12,208.32 |
| | single curve | δ20 | x 1700 | x 7850 | x 1pc | kg | 2135.2 | 6 | $12,811.20 |
| | | δ18 | x 1700 | x 7220 | x 1pc | kg | 1767.5 | 5 | $8,837.28 |
| | single curve | δ22 | x 2350 | x 4550 | x 1pc | kg | 1881.9 | 6 | $11,291.28 |
| | vacuum test | | | | m | 149 | 40 | $5,960.00 |
| 4) | plate in cargo hold bo be cut and renewed | | | | | | | |
| | | δ12 | x 2500 | x 3000 | x 16pc | kg | 11520 | 5 | $57,600.00 |
| | | δ12 | x 350 | x 2800 | x 16pc | kg | 1505.3 | 5 | $7,526.40 |
| | | δ12 | x 120 | x 2800 | x 16pc | kg | 516.1 | 5 | $2,580.48 |
| | | δ12 | x 120 | x 2500 | x 18pc | kg | 518.4 | 5 | $2,592.00 |
| | bulb bar cut and renew | δ16 | x 160 | x 800 | x 16pc | kg | 294.4 | 6.5 | $1,913.60 |
| 5) | frame in low side tank cut and renewed | | | | | | | |
| | | δ14 | x 1400 | x 1400 | x 2pc | kg | 439.04 | 5.75 | $2,524.48 |
| | angle bar staging in low side tank | | | | | | | |
| | | L8 | x 75 | x 75 | x 1000 | x 40pc | kg | 400 | 5 | $2,000.00 |
| | | L8 | x 75 | x 75 | x 800 | x 40pc | kg | 400 | 5 | $2,000.00 |
| | | L8 | x 75 | x 75 | x 1500 | x 20pc | kg | 20 | 5 | $100.00 |
| 6) | general access hole | δ14 | x 600 | x 1200 | x 2pc | kg | 161.28 | 3.45 | $556.42 |

Tel: 0086 755 2689 7360
FAX: 0086 755 26693843
Mobil: 139029 34002



博福鑫泰船舶修理 （深圳） 有限公司

BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|------------|
| | fixed ear plate | δ10 | x 80 | x 80 | x 36pc | kg | 360 | 5 | $1,800.00 |
| 9) | hatch coaming to be cut and renewed | | | | | | | | |
| | | δ14 | x 1500 | x 1300 | x 1pc | kg | 218.4 | 5 | $1,092.00 |
| | | δ20 | x 250 | x 1500 | x 1pc | kg | 60 | 5 | $300.00 |
| | deformed S/S flat iron to be fair up | | | | | | | | |
| | | δ16 | x 45 | x 1500 | x 1pc | kg | 10 | 5 | $50.00 |
| | fixed ear plate for hatch cover to be welded and cut off ater finishing | | | | | | | | |
| | | δ30 | x 50 | x 150 | x 1pc | kg | 10 | 5 | $50.00 |
| | to operate erect up staging | | | | | | | | |
| | fixed ear plate for hatch cover to be welded and cut off ater finishing | | | | | | | | |
| | | δ20 | x 200 | x 200 | x 2pc | kg | 20 | 5 | $100.00 |
| 10) | frame for №4PS cargo hold to be cut and renewed | | | | | | | | |
| | | δ14 | x 350 | x 2400 | x 16pc | kg | 1505.3 | 5 | $7,526.40 |
| | | δ16 | x 120 | x 2600 | x 16pc | kg | 638.98 | 5 | $3,194.88 |
| HW-09 | №4 Stbt side | | | | | | | | |
| 1) | shell plate for top side tank to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 4 | 40 | $160.00 |
| | single curve | δ16 | x 1450 | x 1350 | x 1pc | kg | 250.56 | 7 | $1,753.92 |
| | vacuum test | | | | | m | 7.2 | 40 | $288.00 |
| | UT | | | | | loc | 12 | 40 | $480.00 |
| | | δ16 | x 530 | x 4400 | x 1pc | kg | 298.5 | 6 | $1,790.98 |
| | | δ16 | x 1800 | x 4400 | x 1pc | kg | 1013.8 | 6 | $6,082.56 |
| | vacuum test | | | | | m | 22.3 | 40 | $892.00 |
| 2) | fixed ear plate | δ10 | x 80 | x 80 | x 8pc | kg | 80 | 5 | $400.00 |
| HW-10 | №5 Portt side | | | | | | | | |
| 1) | shell plate to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 90 | 40 | $3,600.00 |
| | double curve | δ14 | x 1800 | x 8000 | x 1pc | kg | 1612.8 | 7 | $11,289.60 |
| | double curve | δ14 | x 1800 | x 3700 | x 1pc | kg | 745.92 | 7 | $5,221.44 |
| | double curve | δ16 | x 1800 | x 3700 | x 1pc | kg | 852.48 | 7 | $5,967.36 |
| | double curve | δ16 | x 1800 | x 8000 | x 1pc | kg | 1843.2 | 7 | $12,902.40 |
| | single curve | δ22 | x 2500 | x 4250 | x 1pc | kg | 1870 | 6 | $11,220.00 |
| | single curve | δ22 | x 1700 | x 4250 | x 1pc | kg | 1271.6 | 6 | $7,629.60 |
| | double curve | δ16 | x 2000 | x 5500 | x 1pc | kg | 1408 | 7 | $9,856.00 |
| | double curve | δ16 | x 1300 | x 5500 | x 1pc | kg | 915.2 | 7 | $6,406.40 |



Tel: 0086 755 2689 7360
FAX: 0086 755 26693842
Mobil: 139039 34002

博福鑫泰船舶修理 （深圳） 有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|------------|
| | double curve | δ16 | x 1800 | x 8000 | x 1pc | kg | 1843.2 | 7 | $12,902.40 |
| | double curve | δ16 | x 1600 | x 8000 | x 1pc | kg | 1638.4 | 7 | $11,468.80 |
| | double curve | δ16 | x 1800 | x 1700 | x 1pc | kg | 391.68 | 7 | $2,741.76 |
| | double curve | δ16 | x 1600 | x 1700 | x 1pc | kg | 348.16 | 7 | $2,437.12 |
| | single curve | δ16 | x 1400 | x 2350 | x 1pc | kg | 421.12 | 6 | $2,526.72 |
| | single curve | δ14 | x 1800 | x 8000 | x 1pc | kg | 1612.8 | 6 | $9,676.80 |
| | double curve | δ14 | x 3700 | x 1800 | x 1pc | kg | 745.92 | 7 | $5,221.44 |
| | double curve | δ14 | x 1800 | x 2350 | x 1pc | kg | 473.76 | 7 | $3,316.32 |
| | single curve | δ16 | x 1800 | x 2350 | x 1pc | kg | 541.44 | 6 | $3,248.64 |
| | vacuum test | | | | | m | 222.3 | 40 | $8,892.00 |
| 2) | strong bracket for top side tank to be cut and renewed | | | | | | | | |
| | | δ16 | x 280 | x 750 | x 17pc | kg | 456.96 | 5.75 | $2,627.52 |
| | | δ16 | x 300 | x 750 | x 7pc | kg | 201.6 | 5.75 | $1,159.20 |
| | | δ16 | x 200 | x 750 | x 12pc | kg | 230.4 | 5.75 | $1,324.80 |
| 3) | general access hole | δ16 | x 500 | x 2000 | x 2pc | kg | 256 | 3.45 | $883.20 |
| | | δ16 | x 1800 | x 2000 | x 1pc | kg | 460.8 | 3.45 | $1,589.76 |
| 4) | angle bar staging | L8 | x 75 | x 75 | x 1000 | x 20pc | kg | 200 | 5 | $1,000.00 |
| | | L8 | x 75 | x 75 | x 1200 | x 20pc | kg | 240 | 5 | $1,200.00 |
| | | L8 | x 75 | x 75 | x 1500 | x 20pc | kg | 300 | 5 | $1,500.00 |
| | ear plate for staging | δ10 | x 80 | x 80 | x 23pc | kg | 230 | 5 | $1,150.00 |
| 6) | shell plate to be cut and renewed in E/R P/Side | | | | | | | | |
| | double curve | δ14 | x 1800 | x 2200 | x 1pc | kg | 443.52 | 8 | $3,548.16 |
| | UT | | | | | loc | 4 | 40 | $160.00 |
| HW-11 | №5 Stbd side | | | | | | | | |
| 1) | handrail for main deck to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1100 | x 10pc | m | 11 | 30 | $330.00 |
| | round pipe | Φ32 | x 9000 | | x 1pc | m | 9 | 25 | $225.00 |
| | round pipe | Φ32 | x 6000 | | x 1pc | m | 6 | 25 | $150.00 |
| | round bar | Φ20 | x 9000 | | x 2pc | m | 18 | 25 | $450.00 |
| | round bar | Φ20 | x 6000 | | x 2pc | m | 12 | 25 | $300.00 |
| | round bar | Φ20 | x 800 | | x 6pc | m | 4.8 | 25 | $120.00 |
| | face plate for hatch coaming bracket to be cut and renewed | | | | | | | | |
| | | δ14 | x 180 | x 600 | x 1pc | kg | 12.096 | 5 | $60.48 |
| 2) | №5 cargo hold Stb side shell plate to be cut and renewed | | | | | | | | |
| | UT | | | | | loc | 62 | 40 | $2,480.00 |

Tel: 0086 755 3689 7360
FAX: 0086 755 26893847
Mobil: 139019 34003



**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| | single curve | δ16 | x 1600 | x 2300 | x 1pc | kg | 471.04 | 6 | $2,826.24 |
| | single curve | δ16 | x 2380 | x 1100 | x 1pc | kg | 335.1 | 6 | $2,010.62 |
| | single curve | δ14 | x 1800 | x 8700 | x 1pc | kg | 1753.9 | 6 | $10,523.52 |
| | double curve | δ14 | x 1800 | x 8700 | x 1pc | kg | 5261.8 | 7 | $36,832.32 |
| | single curve | δ14 | x 6150 | x 1800 | x 1pc | kg | 1239.8 | 6 | $7,439.04 |
| | double curve | δ14 | x 6150 | x 1800 | x 2pc | kg | 2479.7 | 7 | $17,357.76 |
| | single curve | δ14 | x 1800 | x 6200 | x 1pc | kg | 1249.9 | 6 | $7,499.52 |
| | single curve | δ14 | x 600 | x 3200 | x 1pc | kg | 215.04 | 6 | $1,290.24 |
| | single curve | δ14 | x 1000 | x 600 | x 1pc | kg | 67.2 | 6 | $403.20 |
| | double curve | δ14 | x 3900 | x 2000 | x 2pc | kg | 1747.2 | 7 | $12,230.40 |
| | single curve | δ16 | x 1300 | x 8000 | x 1pc | kg | 1331.2 | 6 | $7,987.20 |
| | UT | | | | | loc | 14 | 40 | $560.00 |
| | vacuum test | | | | | m | 219 | 40 | $8,760.00 |
| | | δ16 | x 2000 | x 4000 | x 2pc | kg | 2048 | 5 | $10,240.00 |
| | | δ16 | x 1400 | x 4000 | x 1pc | kg | 716.8 | 5 | $3,584.00 |
| | | δ16 | x 2000 | x 2000 | x 1pc | kg | 512 | 5 | $2,560.00 |
| 4) | vertical frame to be cut and renewed | | | | | | | | |
| | | L12 | x 90 | x 150 | x 1000 | x 2pc | kg | 48 | 6.5 | $312.00 |
| 5) | fixed ear plate for staging | δ10 | x 80 | x 80 | x 26pc | kg | x 260 | 5 | $1,300.00 |
| 6) | general access hole | δ14 | x 600 | x 800 | x 4pc | kg | 215.04 | 3 | $645.12 |
| 7) | erect up angle bar staging for low side tank | | | | | | | | |
| | | L6 | x 63 | x 63 | x 1000 | x 40pc | pcs | 400 | 5 | $2,000.00 |
| 8) | bulkhead to be cut and renewed | | | | | | | | |
| | | δ8 | x 200 | x 600 | x 2pc | kg | 20 | 5 | $100.00 |
| | ER/3F O/S TS draft word to be cut and renewed | | | | | | | | |
| | | δ8 | x 200 | x 200 | x 11pc | pcs | 110 | 5 | $550.00 |
| HW-12 | cable box for №4and №5cargo hold passage to be cut and renewed | | | | | | | | |
| | | δ8 | x 600 | x 1100 | x 2pc | kg | 84.48 | 5 | $422.40 |
| | | δ8 | x 600 | x 700 | x 2pc | kg | 53.76 | 5 | $268.80 |
| | | δ8 | x 700 | x 1100 | x 1pc | kg | 49.28 | 5 | $246.40 |
| | | δ8 | x 800 | x 1100 | x 2pc | kg | 112.64 | 5 | $563.20 |
| | drill hold | | | | x 32pc | pcs | 32 | 3 | $96.00 |
| | screw | | M10 | x 30 | x 32pc | pcs | 32 | 2 | $64.00 |
| | rubber pillow | δ4 | x 800 | x 1100 | x 1pc | m | 1.1 | 20 | $22.00 |
| HW-13 | platform for №3crane to be cut and renewed | | | | | | | | |

Tel: 0086 755 2689 7360
FAX: 0086 755 26693842
Mobil: 139029 34001



**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| | | δ14 | x 80 | x 1100 | x 10pc | kg | 100 | 5 | $500.00 |
| | | δ14 | x 250 | x 1100 | x 1pc | kg | 30.8 | 6 | $184.80 |
| | round pipe | bent | Φ32 | x 9000 | x 2pc | m | 18 | 30 | $540.00 |
| | round bar | bent | Φ20 | x 9000 | x 4pc | m | 36 | 30 | $1,080.00 |
| | checker plate | bent | δ6 | x 1500 | x 2000 | x 4pc | kg | 576 | 6.5 | $3,744.00 |
| | high location | | | | | | | | $100.00 |
| HW-14 | Safty fence for deck manhole | | | | x 20pc | pc | 20 | 30 | $600.00 |
| SW-00 | staging | | | | | | | | |
| SW-01 | shell plate renewed | | | | | | | | |
| | P: | | 24 | x 1.3 | x 16 | M3 | 499.2 | 4 | $1,996.80 |
| | | | 12 | x 1.3 | x 16 | M3 | 249.6 | 4 | $998.40 |
| | | | 40 | x 1.3 | x 12 | M3 | 624 | 4 | $2,496.00 |
| | | | 18 | x 2.6 | x 15 | M3 | 702 | 4 | $2,808.00 |
| | | | 8 | x 3.17 | x 15 | M3 | 444 | 4 | $1,776.00 |
| | S: | | 1.1 | x 2.60 | x 12 | M3 | 312 | 4 | $1,248.00 |
| | | | 2.28 | x 1.30 | x 15 | M3 | 546 | 4 | $2,184.00 |
| | | | 3.1 | x 1.30 | x 15 | M3 | 495 | 4 | $1,980.00 |
| | | | 4.12 | x 1.30 | x 15 | M3 | 234 | 4 | $936.00 |
| | | | 5.2 | x 2.60 | x 15 | M3 | 780 | 4 | $3,120.00 |
| | | | 6.12 | x 3.17 | x 15 | M3 | 666 | 4 | $2,664.00 |
| SW-02 | №1cargo hold | | | | | | | | |
| | P: | | 16 | x 1.3 | x 12 | M3 | 249.6 | 4 | $998.40 |
| | S: | | 22 | x 1.3 | x 12 | M3 | 343.2 | 4 | $1,372.80 |
| | №2cargo hold | | | | | | | | |
| | P: | | 6 | x 1.3 | x 12 | M3 | 93.65 | 4 | $374.60 |
| | S: | | 14 | x 1.3 | x 12 | M3 | 218.4 | 4 | $873.60 |
| | №3cargo hold | | | | | | | | |
| | P: | | 22 | x 1.3 | x 12 | M3 | 343.2 | 4 | $1,372.80 |
| | S: | | 10 | x 1.3 | x 12 | M3 | 156 | 4 | $624.00 |
| | №4cargo hold | | | | | | | | |
| | P: | | 28 | x 1.3 | x 12 | M3 | 436.8 | 4 | $1,747.20 |
| | S: | | 6 | x 1.3 | x 12 | M3 | 93.6 | 4 | $374.40 |
| | №5cargo hold | | | | | | | | |
| | P: | | 28 | x 1.3 | x 16 | M3 | 582.4 | 4 | $2,329.60 |
| | S: | | 24 | x 1.3 | x 16 | M3 | 499.2 | 4 | $1,996.80 |



Tel: 0066 755 2689 7360
FAX: 0086 755 26693842
Mobil: 139039 34002

博福鑫泰船舶修理 （深圳） 有限公司

BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|------|-------------|---|---|---|---|---|---|---|------------|
| SW-03 | №1top side tank | | 14 | x 2.0 | x 2 | M3 | 56 | 5 | $280.00 |
| | №2top side tank | P | 8 | x 2.0 | x 2 | M3 | 32 | 5 | $160.00 |
| | | S | 10 | x 2.0 | x 2 | M3 | 40 | 5 | $200.00 |
| | №3top side tank | | 6 | x 2.0 | x 2 | M3 | 24 | 5 | $120.00 |
| | №5top side tank | P | 28 | x 2.0 | x 2 | M3 | 112 | 5 | $560.00 |
| | | S | 16 | x 3.2 | x 4 | M3 | 204.8 | 5 | $1,024.00 |
| SW-04 | №4 low side tank | | 28 | x 2.0 | x 2 | M3 | 112 | 5 | $560.00 |
| SW-05 | deck | P/S x 24 | 2 | x 1.3 | x 2 | M3 | 124.8 | 4 | $499.20 |
| ME-00 | machinery and electrical work: | | | | | | | | |
| ME-01 | ER removal and refitting of filter ,renewal of seal | | | | | | | | $162.00 |
| | | | Φ200 | x 200 | x 1pc | | | | *OWNER'S EXPENSE* |
| | filter to be newly fabricated | | Φ200 | x 200 | x 1pc | | *₱782.00* | | $620.00 |
| | | | Φ140 | x 100 | x 2pc | | | | *OWNER'S EXPENSE* |
| | the following fitting to be machined | | | | | | | | |
| | flange | | Φ200 | | x 2pc | | | | |
| | mothr board | | Φ200 | x 200 | x 1pc | | | | |
| | seal plane | | Φ200 | Φ180 | x 1pc | | | | |
| ME-02 | the cable be removal and reconnection upon completion | | | | | | | | $760.00 |
| 1) | power supply line to be connected and disconnected for socket box | | | | | | | | |
| | | | 2 *2.5² | 8m | x 1pc | | | | |
| 2) | detecter line to be connected and disconnected | | | | | | | | |
| | | | 4 *0.75² | 6m | x 1pc | | | | |
| 3) | flange to be removed and refitted | | | | x 3pc | | | | |
| ME-03 | №1 65kw 1set motor to be lifted odwn and taken to workshop ,disjointed and cleaned | | | | | | | | $1,164.00 |
| 1) | renewal of import bearing with yard's supplied | | | | | | | | $612.00 |
| | NTN6314C3 | | | | x 1pc | | | | |
| | NTN6214C3 | | | | x 1pc | | | | |
| 2) | stator coil for electrical engine to be rewinded | | | | | | | | $4,120.00 |
| | enamel wire | | Φ1.2 | 15kg | | | | | |
| | enamel wire | | Φ1.0 | 20kg | | | | | |
| | be varnished baken | | | | | | | | |
| ME-04 | №2 65kw 1set motor to be lifted down and taken to workshop disjointed and cleaned | | | | | | | | $1,164.00 |
| 1) | renewal of import bearing with yard's supplied | | | | | | | | $612.00 |
| | NTN62413C3 | | | | x 2pc | | | | |
| 2) | stator coil rewund | | | | | | | | *OWNER'S EXPENSE* |



Tel: 0086 755 2689 7360
FAX: 0086 755 26693842
Mobil: 139029 34002

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

INVOICE

xjtbf@sohu.com

| Item | Description | | | | Amount USD |
|---|---|---|---|---|---|
| | enamel wire | Φ1.0 | 32kg | $5.896 | $4,120.00 |
| ME-05 | №3 65kw 1set motor to be lifted down and taken to workshop disjointed and cleaned | | | | $1,164.00 |
| 1) | renewal of import bearing with yard's supplied | | | | $612.00 |
| | NTN6315C3 | | x 1pc | | |
| | NTN6215C3 | | x 1pc | | OWNER'S EXPENSE |
| 2) | stator coil rewund | | | $5,896 | $4,120.00 |
| | enamel wire | Φ1.0 | 32kg | | |
| ME-06 | lamp 2 sets | | | $100 | $100.00 |
| 1) | the following fitting to be renewed with yard's supply | | | | OWNER'S EXPENSE |
| | toggle switch | | x 2pc | | |
| | battery 5# | | x 4pc | | |
| | lamp holder | | x 2pc | | |
| | bulb | | x 2pc | | |
| | plastic seat for battery | | x 2pc | | |
| | connecting line to be rewelded | | x 8pc | | |
| ME-08 | the following cable pipe on deck and interrelated fitting to be renewed | | | | |
| | pipe to be cut into half & protected with asbestus . | | | | $370.00 |
| | | Φ273 | x 3100 | x 1pc | $896.00 |
| | | Φ273 | x 600 | x 1pc | $289.00 |
| | | Φ34 | x 1100 | x 1pc | $27.50 |
| | expansion joint | Φ273 | x 220 | x 1pc | $560.00 |
| | | Φ60 | x 2400 | x 2pc | $163.00 |
| | flange | DN50 | | x 4pc | $20.00 |
| | | DN25 | | x 1pc | $2.50 |
| | sleeve | Φ100 | | x 2pc | $55.00 |
| | pipe clamp | L75 | x 200 | x 3pc | $75.00 |
| | | L50 | x 200 | x 3pc | $75.00 |
| | drill hole | M16 | | x 4pc | $20.00 |
| ME-09 | DN 168 *1pc vent cap to be removed and refitted | | | | $40.00 |
| 1) | the following to be renewed | | | | |
| | air vent pipe | Φ168 | x 600 | x 1pc | $87.00 |
| | flange | DN150 | | x 1pc | $12.50 |
| ME-10 | manhole cover for ER oil tank to refitted | | | | $180.00 |
| | seal to be renewed with yard's suppl | x 600 | x 450 | x 6pc | $180.00 |
| | additional--3 | | | | |

2K08 02018 FANY-HULL (Quotation)          E.&.O.E          2008-03-17page:15

Tel: 0086 755 2689 7369
FAX: 0086 755 26691842
Mobil: 130030 34002

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Supply for ventilation (380V 5sets*2day) | | | | | set.day | 10 | 70 | $700.00 |
| | line connect / disconnect | | | | | time.line | 5 | 15 | $75.00 |
| 2 | Manhole be closed | | | | | pc | 20 | 10 | $200.00 |
| | renewed the gaskets | | | | | pc | 20 | 20 | $400.00 |
| | man hole opened and closed & gasket renewed | | | | | pc | 4 | 40 | $160.00 |
| 3 | No.1 S/S deformed web plate to be cut and renewed | | | | | | | | |
| | | δ12 | x 400 | x 600 | x 2pc | kg | 46.08 | 5 | $230.40 |
| | low side tank | δ12 | x 400 | x 400 | x 2pc | kg | 30.72 | 6 | $184.32 |
| 5 | No.1PS frame for low side tank to be cut and renewed | | | | | | | | |
| | | δ14 | x 800 | x 1300 | x 2pc | kg | 232.96 | 6 | $1,397.76 |
| | | δ14 | x 600 | x 1400 | x 1pc | kg | 94.08 | 6 | $564.48 |
| | angle bar  L6 | x 63 | x 63 | x 1000 | x 32pc | kg | 320 | 5 | $1,600.00 |
| 6 | No.2 PS T-bar for cargo hold to be cut and renewed | | | | | | | | |
| | | δ12 | x 1400 | x 1400 | x 1pc | kg | 188.16 | 5 | $940.80 |
| | | δ18 | x 120 | x 1500 | x 1pc | kg | 25.92 | 5 | $129.60 |
| | pipe clamp to be cut and renewed | | | | | | | | |
| | L6 | x 63 | x 63 | | x 1pc | kg | 10 | 5 | $50.00 |
| | | Φ20 | x 800 | | x 1pc | m | 1 | 25 | $25.00 |
| 7 | General access hole for No.5 S/S cargo hold | | | | | | | | |
| | | δ14 | x 600 | x 600 | x 1pc | kg | 40.32 | 3 | $120.96 |
| 8 | Handrail for No.2 crane platform to be cut and renewed | | | | | | | | |
| | stanchion | δ14 | x 80 | x 1200 | x 8pc | m | 9.6 | 30 | $288.00 |
| | round pipe | δ6 | Φ32 | x 9000 | x 2pc | m | 18 | 25 | $450.00 |
| | round bar | | Φ20 | x 9000 | x 4pc | kg | 36 | 25 | $900.00 |
| | No.4 cargo hold to be cut and renewed | | | | | | | | |
| | | δ8 | x 800 | x 2300 | x 1pc | kg | 117.76 | 5 | $588.80 |
| | | δ8 | x 500 | x 1500 | x 1pc | kg | 48 | 5 | $240.00 |
| | | δ8 | x 70 | x 1800 | x 1pc | m | 1.8 | 50 | $90.00 |
| | flat iron | δ6 | x 50 | x 800 | x 2pc | kg | 20 | 5 | $100.00 |
| | | δ6 | x 50 | x 2300 | x 2pc | m | 4.6 | 50 | $230.00 |
| | the following to be faired up | | | | | | | | |
| | | δ8 | x 150 | x 2300 | x 1pc | kg | 22.08 | 4 | $88.32 |
| | | δ8 | x 300 | x 1500 | x 1pc | kg | 28.8 | 4 | $115.20 |
| 11 | No.1S/S hydraulic platform to be cut and renewed | | | | | | | | |
| | | L10 | x 100 | x 100 | x 2000 | x 2pc | kg | 64 | 6 | $384.00 |



Tel: 0086 755 2689 7360
FAX: 0086 755 26693842
Mobil: 139029 34002

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

| Item | Description | | | | | | | Amount USD |
|---|---|---|---|---|---|---|---|---|
| 12 | Stiffener for No.2 S/S top side to be cut and renewed | | | | | | | |
| | | δ16 | x 400 | x 800 | x 3pc | kg | 122.88 | 6 | $737.28 |
| | round bar | Φ20 | x 400 | x 3pc | | m | 3 | 25 | $75.00 |
| 13 | Frame for No.2 S/S top side tank to be cut and renewed | | | | | | | |
| | | δ12 | x 1350 | x 1400 | x 1pc | kg | 181.44 | 6 | $1,088.64 |
| | | δ12 | x 80 | x 1500 | x 1pc | kg | 11.52 | 6 | $69.12 |
| | additional -4 | | | | | | | |
| ① | Renewal of stainless nuts of all man holes | M20 | x 680pc | | pc | 680 | 2.8 | $1,904.00 |
| ② | Side of propeller to be welded & ground | | | | | | | $278.00 |
| | | 30 | x 120 | x 1pc | pc | | | |
| ③ | Re-welding of leaking pipe in side tank | | | | | | | OWNER'S EXPENSE $160.00 |
| | | 15 | x 20 | x 1600 | x 1pc | | | | $160.00 |
| | | 15 | x 10 | Φ189 | x 2pc | | | | $200.00 |
| | cherry picker cooperated for 2 hours | | | | | | | $160.00 |
| 4 | No.3 deck crane platform staging | 2m | *4m | *10m | | | | $320.00 |
| ⑤ | No.5 stbd cargo hold leaking, Old seam to be re-welding | | | | | | | $300.00 |
| | | 10 | x 20 | x 200 | x 3pc | | $3,042.— | | $300.00 |
| | Doubler | 10 | x 300 | x 300 | x 1pc | | | | $100.00 |
| ⑥ | No.5 port cargo hold leaking, Old plate hole to be re-welding | | | | | | | $100.00 |
| | | 10 | x | Φ20 | x 1pc | | | | OWNER'S EXPENSE |
| 7 | Stiffener for cargo hold frame to be cut and renewed | | | | | | | |
| | | δ12 | x 400 | x 1000 | x 26pc | kg | 998.4 | 5 | $4,992.00 |
| 8 | Strong frame for top side tank to be cut and renewed | | | | | | | |
| | | δ12 | x 600 | x 900 | x 2pc | kg | 103.68 | 6 | $622.08 |
| 9 | №1 & №2 P/side hull plate renewed: | | | | | | | |
| | | δ20 | x 1800 | x 7250 | x 1pc | kg | 2088 | 5 | $10,440.00 |
| | | δ20 | x 1800 | x 5700 | x 1pc | kg | 1641.6 | 5 | $8,208.00 |
| | | δ20 | x 1600 | x 3200 | x 1pc | kg | 819.2 | 5 | $4,096.00 |
| | | | | | | | | | $229,262.49 |



Tel: 0086 755 2689 7360

FAX: 0086 755 26693842

Mobile: 13923763403

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | Amount USD |
|------|-------------|------------|
| | ## INVOICE | |
| | MV: FANY          ITEM №: 2K08 02018 | |
| | Crane jib to be repaired | |
| 1、 | Dismantling of jib | |
| | 1)  Hook dismantled and deposited onboard | $60.00 |
| | 2)  Hook wire dismantled and deposited onboard | $600.00 |
| | 3)  Lifting wire dismantled and deposited onboard | $700.00 |
| | 4)  Blancing wire rope dismantled | $60.00 |
| | 5)  Crab cable dismantled | $60.00 |
| | 6)  Jib to be dismantled | $620.00 |
| | 7)  Staging & High work | $200.00 |
| | 8)  Shore crane cooperated | $1,500.00 |
| 2、 | Jib repair | |
| | 1)  Renewal of high strength steel (AH36) | |
| | A  for main structure | |
| |     U-shaped    δ8  x 1340  x 4200  x 2pc | |
| |     U-shaped    δ8  x 1340  x 8000  x 2pc | |
| |     U-shaped    δ8  x 1340  x 6500  x 2pc | |
| |     U-shaped    δ8  x 1340  x 7200  x 2pc | |
| |     δ8  x 850  x 4200  x 2pc | |
| |     δ8  x 850  x 8000  x 2pc | |
| |     δ8  x 850  x 6500  x 2pc | |
| |     δ8  x 850  x 7200  x 2pc | |
| | B  for beam structure | |
| |     δ8  x 2800  x 600  x 2pc | |
| |     δ8  x 816  x 1640  x 2pc | |
| |     δ8  x 816  x 1000  x 2pc | |
| |     δ8  x 710  x 2800  x 2pc | |
| |     δ8  x 450  x 2000  x 1pc | |
| |     δ8  x 315  x 3200  x 2pc | |
| |     δ8  x 418  x 3200  x 1pc | |
| |     δ8  x 2000  x 600  x 2pc | |
| |     δ8  x 970  x 860  x 4pc | |
| |     δ8  x 800  x 2000  x 2pc | |

2K08 02018 FANY-CRANE JIB INVOICE(Invoice)          E.&.O.E          2008-03-20page:1

Tel: 0086 755 2689 7360

FAX: 0086 755 26693842

Mobile: 13923763403



**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

_INVOICE_

xjtbf@sohu.com

| Item | Description | | | | Amount USD |
|------|-------------|---|---|---|------------|
| | | δ8 | x 450 | x 1800 | x 2pc | |
| | | δ8 | x 300 | x 2100 | x 2pc | |
| | | δ8 | x 420 | x 2200 | x 1pc | |
| | | δ10 | x 1250 | x 1100 | x 1pc | |
| | edge folding | δ10 | x 1250 | x 600 | x 1pc | |
| C | for inner member stiffener | | | | | |
| | | δ10 | x 90 | x 1000 | x 48pc | |
| | | δ10 | x 90 | x 280 | x 44pc | |
| | | δ10 | x 90 | x 830 | x 44pc | |
| | | δ10 | x 90 | x 710 | x 44pc | |
| | | δ10 | x 90 | x 1700 | x 10pc | |
| | | δ10 | x 418 | x 315 | x 8pc | |
| | | δ10 | x 493 | x 700 | x 2pc | |
| | | δ10 | x 800 | x 400 | x 2pc | |
| | | δ10 | x 411 | x 260 | x 3pc | |
| | pad | δ6 | x 25 | x 26000 | x 4pc | |
| | pad | δ6 | x 25 | x 830 | x 6pc | |
| | pad | δ6 | x 25 | x 520 | x 8pc | |
| | pad | δ6 | x 25 | x 280 | x 8pc | |
| 2) | jib connection flange | δ36 | x 310 | x 680 | x 2pc | |
| A | dismantled / refitted to new jib | | | | | $600.00 |
| B | revised | | | | | $720.00 |
| C | machined | | | | | $860.00 |
| 3) | jib bearing body (2pcs) | | | | | |
| A | dismantled / refitted | | | | | $880.00 |
| B | one flange badly distorted, revised by hot/ press/assisting tools | | | | | $820.00 |
| C | positioner | L150 | x 150 | δ10 | x 600 | x 2pc | $140.00 |
| | | L150 | x 150 | δ10 | x 800 | x 2pc | |
| D | machined | | | | | $1,200.00 |
| 4) | pully on P/S. side | | | | | |
| A | dismantled & cut & refitted on new jib | | | | x 11pc | $726.00 |
| B | revised by hot / press in shop | | | | x 11pc | $385.00 |
| C | renewal of shell plate | | δ8 | Φ415 | x 1pc | |
| D | renewal for base plate | δ10 | x 120 | x 400 | x 1pc | |
| E | guard newly made | | Φ20 | Φ415 | x 2pc | |

2K08 02018 FANY-CRANE JIB INVOICE(Invoice)     E.&.O.E     2008-03-20page:2

Tel: 0086 755 2689 7360

FAX: 0086 755 26693842

Mobile: 13923763402

博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

*INVOICE*

xjtbf@sohu.com

| Item | Description | | | | | Amount USD |
|------|-------------|---|---|---|---|-----------|
| | F  guard plate revised | | Φ20 | | x 20pc | $300.00 |
| 5) | top of sheave body | sheave | Φ780 | | x 4pc | |
| | | sheave | Φ686 | | x 3pc | |
| | | δ32 | x 560 | x 1740 | x 1pc | |
| | A  cut & refitted on the new jib | | | | | $1,360.00 |
| | B  guard plate renewed | | | | | |
| | | δ8 | x 400 | x 300 | x 4pc | |
| | | δ8 | x 150 | x 400 | x 1pc | |
| | | δ8 | x 350 | x 50 | x 1pc | |
| | drilling | | Φ16 | | x 12pc | $30.00 |
| | | δ8 | x 350 | x 200 | x 1pc | |
| | | δ8 | x 350 | x 120 | x 1pc | |
| | | δ8 | x 450 | x 50 | x 1pc | |
| | | δ8 | x 350 | x 450 | x 1pc | |
| | | δ8 | x 420 | x 450 | x 1pc | |
| | | δ8 | x 220 | x 200 | x 1pc | |
| | *the above calculated by weight in total :12018.58 kg × $ 4.5/ kg* | | | | | $54,083.61 |
| 6) | eye plate cut/refit | | | | x 8pc | $320.00 |
| 7) | newly made and fit clinometer | | | | | $200.00 |
| 8) | make and weld letters S.W.L. 30MT 24° ~45°  on new jib | | | | | $300.00 |
| 9) | UT | | | 51M | | $2,300.00 |
| 10) | Painting( top paints supplied by Owners) | | | | | $850.00 |
| 11) | assistant material | L150 | x 150 | x 9000 | x 12pc | $3,340.00 |
| | | L150 | x 150 | x 1500 | x 4pc | |
| | | L150 | x 150 | x 500 | x 4pc | |
| 3、 | Fitting | | | | | |
| 1) | Jib transitted to anchorage | | | | | $800.00 |
| 2) | Long vehicle to cooperate | | | | | $650.00 |
| 3) | Moving crane to cooperate | | | | | $650.00 |
| 4) | Jib  refitted | | | | | $800.00 |
| 5) | Shore crane cooperated (co-operated by ship's crane) | | | | | $0.00 |
| 6) | Lifting wire refitted | | | | | $800.00 |
| 7) | Hook wire  refitted | | | | | $900.00 |
| 8) | Blancing wire rope dismantled | | | | | $200.00 |
| 9) | Crab cable dismantled | | | | | $300.00 |

Tel: 0086 755 2680 7360

FAX: 0086 755 26693842

Mobile: 13923763402



博福鑫泰船舶修理（深圳）有限公司

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

INVOICE

xjtbf@sohu.com

| Item | Description | Amount USD |
|------|-------------|------------|
| | 10) Draging wire (400m) cooperated | $400.00 |
| | 11) Hook refitted | $60.00 |
| | 12) Staging & High work | $200.00 |
| 4、 | Loading test | $8,800.00 |
| 5、 | Overtime       18man 01-Mar.& 02-Mar. | $2,880.00 |
| 6、 | General services | |
| | 1) Port entry | $100.00 |
| | 2) Boarding Pass | $100.00 |
| | 3) Fire precaution under the requirement of the harbour master | $100.00 |
| | 4) Fire watch | $240.00 |
| | 5) Transportation Services | |
| | A  to/from SHAJIAO anchorage ; two times | $400.00 |
| | B  Land : SHenZhen to ShaJiao two times | $300.00 |
| | C  Land : SHenZhen to HuangPu ship yard  five times | $1,000.00 |
| | TOTAL : | $92,894.61 |

**Payoff on completion**

Bank and Account :

The HongKong and ShangHai banking corporation limited Des Voeux road west branch

Hong Kong

Account №: 026 391 318 838

In favour of :BOFU (HK) LIMITED

Swift code : HSBC HK HHH KH

博福鑫泰船舶修理（深圳）有限公司

BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.

2008-03-19

2K08 02018 FANY-CRANE JIB INVOICE(Invoice)         E.&.O.E         2008-03-20page:4



**SUNAMI MARINE CO.,LTD.**
652-0831 HYOGO P.O.BOX 55 4-22,1-CHOME,
SHICHINOMIYA-CHO, HYOGO-KU,
KOBE, JAPAN

tel:(078)651-5477
fax:(078)671-7077

# INVOICE

C 1

| | |
|---|---|
| Messrs. | Chang Sung Shipping Co., 2nd Floor, Yoowon-Building, 75-95, Seosomun-Dong, Jung-Ku, Seoul, Korea. |

No.          801220
Date:     January 23, 2008

Ship's Name    M/V "FANY"

© O P Y

Destination    DHL to Seoul

Payment    Within 30 days after date of invoice.

| Item | Description | Quantity | Unit Price | Amount |
|---|---|---|---|---|
| | M/V "FANY" ENGINE DEPARTMENT | | | |
| | DECK CRANE TYPE: KH-3024 MAKER: FUKUSHIMA LTD. | | | |
| 1 | Design drawing for Jib complete, | 1 SET | ¥600,000.- | ¥600,000.- |
| | TOTAL: | | | ¥600,000.- |
| | DHL charge: | | | ¥3,200.- |
| | | | | ¥603,200.- ********* |

SUNAMI MARINE CO.,LTD.

For Manager
Business Department

Bankers: Mizuho Bank, Ltd., Kobe-Chuo Branch Account No. 0146276



# SUNAMI MARINE CO.,LTD.
652-0831 HYOGO P.O.BOX 55 4-22,1-CHOME,
SHICHINOMIYA-CHO, HYOGO-KU,
KOBE,JAPAN

tel:(078)651-5477
fax:(078)671-7077

## PACKING LIST

Consignee.    To Master and Owners of M/V "FANY"
c/o Chang Sung Shipping Co.
2nd Floor, Yoowon Bldg., 75-95, Seosomun-Dong,
Jung-Ku, Seoul 100-814, Korea.
Tel:02-757-4356
Attn: Mr. Lee Kwang Min

No.      CSS-0050
Date:    January 23, 2008

Shipping Mark

Buyer.

Ship's Name    M/V "FANY"  (Flag: South Korea)
Shipping Method DHL from Kobe to Seoul
Payment       Within 30 days after date of invoice.
Freight:      Prepaid

SHIP'S SPARE PARTS IN TRANSIT

| Packing No. | Item | Description | Quantity | Net | Gross |
|---|---|---|---|---|---|
| | | M/V "FANY" ENGINE DEPARTMENT | | | |
| | | DECK CRANE TYPE: KH-3024 MAKER: FUKUSHIMA LTD. | | | |
| | 1 | Design drawing for Jib complete. | 1 SET | | |

TOTAL : One (1) Package Only.

SUNAMI MARINE CO.,LTD.

For Manager
Business Department





SUNAMI MARINE CO., LTD.   様

2008年1月25日

DHL ジャパン株式会社
国内請求事務課　三浦
TEL: 06-6581-9928
FAX: 06-6581-9920

## 料金のご案内

CARGO RECEIPT NO. _____ 2190260365 _____

DESTINATION _____ KOREA(0.5KGS) _____

WEIGHT CHARGE _____ ¥3,200 _____

INSURANCE FEE _____

OTHER CHARGE _____

TOTAL _____ ¥3,200 _____

お支払いは、後日郵送いたしますご請求書にてお振り込みください。
ご利用いただきありがとうございました。



*INVOICE*

Tel: 0086 755 2689 7360

FAX: 0086 755 26693842

Mobile: 13923763402

**博福鑫泰船舶修理（深圳）有限公司**

*BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.*

xjtbf@sohu.com

| Item | Description | Amount USD |
|------|-------------|------------|

# INVOICE

MV: FANY          ITEM № : 2K08 02018

**STORES**

| | | |
|---|---|---|
| 1、 | Hoisting wire rope          UNI-ROPE " SPECIAL",Z LAY | $5,300.00 |
| | Φ35   *U4   *SeS(39) *241.5M     x 1pc | |
| | One side thimble S25C JISB 280 NON-ROTATION | |
| | Thimble inner   Φ100  sleeve -SS41B | |
| | Offer DIA36mm , with copy of CCS Cert. Wire rope thimbles (A type breaking strength 897KN | |
| 2、 | Luffing wire rope          UNI-ROPE " SH",Z LAY | $2,589.00 |
| | Φ26   *U4   *SeS39 *194.5M     x 1pc | |
| | One side thimble S25C JISB 280 | |
| | Thimble inner   Φ80  sleeve -SS41B | |
| | Offer DIA26mm , with copy of CCS Cert. Wire rope thimbles (A type breaking strength 468KN | |
| 3、 | Ballancing wire rope      Φ9     80M     x 2pc | $632.00 |
| | Stainless steel SUS30 | |
| | Offer DIA9mm , with copy of CCS Cert. Stainless steel 320 | |
| 4、 | Grab cable :type: 3PNCT-H 22*3c+8*3c     160M   #14,52 | $6,000.00 |
| | Overall Dia 35.7 , 3000V/min | |
| ⑤ | Battery for JRC Start type :NBB345A     x 2pc | $356.00 |
| ⑥ | Brother cartridge | $56.00 |
| | 1)    LC57M     x 2pc | |
| | LC57Y     x 2pc | |
| | LC57C     x 2pc | |
| | LC57BK     x 2pc | DON'T'S EXTRAST |
| | Additional-1: | |
| ① | Cockroach killer spray type | |
| | offer 24pc/box     x 1pc | $62.00 |
| ② | Cockroach killer eat type | |
| | offer 50pkt/box     x 9pc | $63.00 |
| ③ | Hydrant V/V cover machino type 40A     x 2pc | $54.00 |
| ④ | Hydrant V/V cover machino type 50A     x 3pc | $99.00 |
| ⑤ | 3-position fog nozzle 50A with machino coupling     x 4pc | $616.00 |

INVOICE

Tel: 0086 755 2689 7360

FAX: 0086 755 26895842



博福鑫泰船舶修理（深圳）有限公司

Mobile: 13923763402

BOFU PROSPERITY SHIP REPAIR (SHENZHEN) LTD.

xjtbf@sohu.com

| Item | Description | | Amount USD |
|---|---|---|---|
| 6 | Marine non-watertight fluorescent ceiling lights | x 4pc | $304.00 |
| | offer 110V20W*2L-750MM | | |
| | | | $1,200.00 |
| | **Additional -2:** | | |
| 7 | Cable shoes type R ID =10MM | x 20pc | |
| 8 | Cable shoes type BID=10MM | x 30pc | |
| 9 | Cable shoes plier | x 1pc | |
| 10 | Flange OD=127 ID=60 with 3hole DIA=10MM | x 50pc | |
| 11 | Battery 12V200AH | x 4pc | |
| 12 | Wire rope APS          20m | x 1pc | |
| | **Additional - 3:** | | |
| 1 | Globe Check-Down V/V  5K-32A | x 2pc | $210.00 |
| 2 | Flange 5K-50A | x 10pc | $48.00 |
| 3 | Curtain for Bathroom aps | x 2pc | $96.00 |
| | **Additional - 4** | | |
| 1 | Magnetic Contactor, TYPE: SC- 7N | x 1pc | $486.00 |
| 2 | Magnetic Contactor, TYPE: SC- 5N | x 1pc | $435.00 |
| 3 | Ball Bearing, 6315 ZZC3 | x 5pc | $375.00 |
| 4 | Ball Bearing, 6308 ZZC3 | x 3pc | $54.00 |
| | **Additional - 5** | | |
| 1 | Hose with steel wire APS, ID=50mm, OD=60mm, 50mtrs/coil | x 1pc | $325.00 |
| | | concluded cost: | $19,360.00 |

$4,839 In total

Remark:
1)  Delivery on 2days after confirmation
2)  Payment: Cash on delivery

2K08 02018 FANY stores.xls(Invoice)          E.&.O.E          2008-03-10page:2

# COMMERCIAL INVOICE

| (1) Shipper/Exporter | (5) No & date of invoice |
|---|---|
| 朝光요뙨株式會社<br>CHOKWANG JOTUN LTD.<br>(2) For Account & Risk of Messrs.<br><br>CHANG SUNG SHIPPING<br><br>(3) Notify party | ⓙ JOTUN    CKJ080319-31    MAR. 19, 2008<br>(6) Bankers<br><br>Hana Bank. Pusan Jungang Branch<br>A/C No : 310-810010-89004 (for ₩ A/C)<br>          310-810007-63832 (for US$ A/C)<br><br>(7) Remarks |

| (4) Port of loading | (8) O/T No. | Dry Dock Paints for |
|---|---|---|
| HUNGPU S/Y | 800308/11/12/13/18 | M/V " FANY " |
| (9) Purch ORD No. | (10) Delivery Date<br>Around the end of FEB.<br>to MAR. 3rd in 2008 | in CHINA |

| (11) Pkgs & Q'ty shipped | | (12) Description of Goods | (13) Q'ty/unit<br>(LT) | (14) U/Price<br>(US$/LT) | (15) Amount<br>(US$) |
|---|---|---|---|---|---|
| LT | CAN | Marine Paint & Thinner | | | |
| (19.20 | x 18) | PRIMASTIC UNIVERSAL AL R/T | 345.60 | $5.80 | $2,004.48 |
| (18.00 | x 18) | SAFEGUARD UNIVERSAL ES GREY | 324.00 | $5.03 | $1,629.72 |
| (20.00 | x 11) | A/F SEAFORCE 30 D/RED | 220.00 | $12.91 | $2,840.20 |
| (19.64 | x 10) | PIONER T/C OCEAN BLUE(E992) | 196.40 | $4.14 | $813.10 |
| (5.00 | x 2) | PIONER T/C WHITE | 10.00 | $4.00 | $40.00 |
| (18.70 | x 10) | JOTAMASTIC 87 GREY 38 | 187.00 | $5.96 | $1,114.52 |
| (18.70 | x 10) | JOTAMASTIC 87 RED 49 | 187.00 | $5.96 | $1,114.52 |
| (20.00 | x 3) | JOTAGUARD FD BLACK | 60.00 | $4.31 | $258.60 |
| (20.00 | x 3) | JOTAGUARD FD BROWN | 60.00 | $4.47 | $268.20 |
| (20.00 | x 3) | ALKYPRIMER GREY | 60.00 | $2.74 | $164.40 |
| (20.00 | x 6) | PILOT II YELLOW 2 | 120.00 | $3.75 | $450.00 |
| (20.00 | x 2) | PILOT II GREY 38 | 40.00 | $3.09 | $123.60 |
| (20.00 | x 7) | THINNER NO.17 | 140.00 | $2.05 | $287.00 |
| (20.00 | x 4) | THINNER NO.7 | 80.00 | $1.98 | $158.40 |
| (20.00 | x 1) | THINNER NO.2 | 20.00 | $1.98 | $39.60 |
| | 108 can | S.TOTAL | 669.60 LTRS | | $11,306.34 |
| | | ZONE SURCHARGE | | $0.30 | $200.88 |
| | | G.TOTAL | | | $11,507.22 |

CHOKWANG JOTUN LTD.

PRESIDENT

(16) Signed by

(17) Payment Terms : Within 60days after the date of Inv.



**Jotun Paints Delivery Ticket** (佐敦油漆收货单)

**JOTUN**
Jotun Coatings

International

| D.T.NO. 发货单号: 800308 | P.O.NO.订单号: 101215 | Delivery Date. 发货日期: |
|---|---|---|

| Vessel Name 船名 FANY | Owner Name 船东 |
|---|---|

Delivery Address 交货地址

Invoice Address 发票地址

| Code 编码 | English Name 英文名称 | Package/件 | Full/桶 | Code 编码 | English Name 英文名称 | Package/件 | Full/桶 |
|---|---|---|---|---|---|---|---|
| 防污漆 | | | | 丙烯酸漆 | | | |
| √ 0TVDRDWVA | A/F SEAFORCE 30 DR | 20 | 5 | 0FV001WVA | PIONER TC STD 001 WHITE | | |
| 0TVLRDWVA | A/F SEAFORCE 30 LR | | | 0FV038WVA | PIONER TC STD 038 GREY | | |
| 0TWDRDWVA | A/F SEAFORCE 60 DR | | | 0FV049WVA | PIONER TC STD 049 RED | | |
| 0TWLRDWVA | A/F SEAFORCE 60 LR | | | 0FV099WVA | PIONER TC STD 099 BLACK | | |
| 0TXDRDWVA | A/F SEAFORCE 90 DR | | | 363137WVA | PIONER TC STD 137 GREEN | | |
| 0TXLRDWVA | A/F SEAFORCE 90 LR | | | 环氧漆 | | | |
| 醇酸底漆 | | | | 334CASCNA | PRIMASTIC STD B | | |
| 0BJ038WVA | ALKYD PRIMER GREY | | | 334CALEVA | PRIMASTIC CC B | | |
| 0BJ049WVA | ALKYD PRIMER RED | | | 334038SVA | PRIMASTIC 038 GREY A | | |
| 环氧漆 | | | | 334049SVA | PRIMASTIC 049 RED A | | |
| 332ALUQSA | JOTAMASTIC 87 AL A | | | 344ALUSVA | PRIMASTIC UNIVERSAL AL A | | |
| 332ARTQSA | JOTAMASTIC 87 AL RT A | | | √344ARTSVA | PRIMASTIC UNIVERSAL AL RT A | 16 | 11 |
| √ 332CASCSA | JOTAMASTIC 87 STD B | 2.7 | 12 | √344CASDMA | PRIMASTIC UNIVERSAL STD B | 3.2 | 11 |
| 332CALEVA | JOTAMASTIC 87 CC B | | | 344CALEVA | PRIMASTIC UNIVERSAL CC B | | |
| 332GRESVA | JOTAMASTIC 87 038 GREY A | | | 0QZCPBDNA | SAFEGUARD UNIVERSAL ES STD B | | |
| 332REDSVA | JOTAMASTIC 87 049 RED A | | | 0QZGRESQA | SAFEGUARD UNIVERSAL ES GRE A | | |
| 醇酸面漆 | | | | 0QZREDSQA | SAFEGUARD UNIVERSAL ES RED A | | |
| 0FN001WVA | PILOT II STD 001 WHITE | | | 稀释剂 | | | |
| √ 0FN038WVA | PILOT II STD 038 GREY | 20 | 2 | √092217WVA | THINNER NO.17 | 20 | 4 |
| 0FN049WVA | PILOT II STD 049 RED | | | √092202WVA | THINNER NO.2 | 20 | 1 |
| 0FN149WVA | PILOT II STD 149 GREY | | | √092207WVA | THINNER NO.7 | 20 | 2 |
| 0FN256FVA | PILOT II STD 256 RED | | | 乙烯漆 | | | |
| 363256FVA | PILOT II STD 256 YELLOW | | | 0HRALUWVA | VINYGUARD SILVERGREY 8B | | |
| √0QZGRERVA | SAFEGUARD UNIVERSS GREY COMP.A | 15 | 11 | 0HRARTWVA | VINYGUARD SILVERGREY 8B RT | | |
| √0QZCPBDVA | SAFEGUARD UNIVER COMP.B | 3 | | √0RV099VA | JOTAGUARD FD BLACK COMP.A | 15 | 3 |
| √0FV001FVA | PIONER TC STD 001WHITE | 5 | 2 | √0RV8RWVA | JOTAGUARD GD BROWN COMP.A | 15 | 3 |
| √32038SVA | JOTAMASTIC 87 STD 038 GREY A | 16 | | √0RVCPBFVA | JOTAGUARD FD COMP.B | 5 | 6 |
| √32049BVA | JOTAMASTIC 87 STD 049 RED A | 16 | | 6√0BJGRENVA | ALKYDPRIMER GREY | 20 | 3 |
| | | | | √362002WVA | PILOT II STD | 20 | 2 |
| | | | | 6√0FVXANX20 | PIONER TC STD 022 BLUE | 20 | 3 |

10A    On behalf of owner and manager (船东代表)
Sign & Stamp (签字&盖章)

Agent (代理):

Title (职位):

All deliveries are subject to a maritime lien of the vessel. The maritime lien attaches the vessel regardless of change in ownership. The beneficiary thereof having recourse at all times to the vessel for payment. Interest charges for late payment will be 1% pr.month and any cost and fees including, but not limited to lawyers fees, for enforcement of defaulted payments will be at buyers costs and expense. 所有货物应受制船舶的海事优先权规则，船舶所有权将随货物的变动，即无论船舶如何变化。因此，受益人可时期对该船给出的索取，逾期付款的月利息及其他的相关费用为1%。凡不包括律师费用。该诉讼长约付款系列的相关费用由买方负担。


International

**Jotun Paints Delivery Ticket (佐敦油漆收货单)**


Jotun Coatings

D.T.NO. 发货单号: **200:371**    P.O.NO.订单号:    Delivery Date. 发货日期:

Vessel Name 船名 **FANY**    Owner Name 船东

Delivery Address 交货地址

Invoice Address 发票地址

| Code 编码 | English Name 英文名称 | Package/件数 | Full 箱 | Code 编码 | English Name 英文名称 | Package/件数 | Full 箱 |
|---|---|---|---|---|---|---|---|
| **防污漆** | | | | **丙烯酸漆** | | | |
| 0TVDRDWVA | A/F SEAFORCE 30 DR | | | 0FV001WVA | PIONER TC STD 001 WHITE | | |
| 0TVLRDWVA | A/F SEAFORCE 30 LR | | | 0FV038WVA | PIONER TC STD 038 GREY | | |
| 0TWDRDWVA | A/F SEAFORCE 60 DR | | | 0FV049WVA | PIONER TC STD 049 RED | | |
| 0TWLRDWVA | A/F SEAFORCE 60 LR | | | 0FV099WVA | PIONER TC STD 099 BLACK | | |
| 0TXDRDWVA | A/F SEAFORCE 90 DR | | | 383137WVA | PIONER TC STD 137 GREEN | | |
| 0TXLRDWVA | A/F SEAFORCE 90 LR | | | **环氧漆** | | | |
| **醇酸底漆** | | | | 334CASCNA | PRIMASTIC STD B | | |
| 0BJ038WVA | ALKYD PRIMER GREY | | | 334CALEVA | PRIMASTIC CC B | | |
| 0BJ049WVA | ALKYD PRIMER RED | | | 334038SVA | PRIMASTIC 038 GREY A | | |
| **环氧漆** | | | | 334049SVA | PRIMASTIC 049 RED A | | |
| 332ALUQSA | JOTAMASTIC 87 AL A | | | 344ALUSVA | PRIMASTIC UNIVERSAL AL A | | |
| 332ARTQSA | JOTAMASTIC 87 AL RT A | | | 344ARTSVA | PRIMASTIC UNIVERSAL AL RT A | | |
| 332CASCSA | JOTAMASTIC 87 STD B | | | 344CASDMA | PRIMASTIC UNIVERSAL STD B | | |
| 332CALEVA | JOTAMASTIC 87 CC B | | | 344CALEVA | PRIMASTIC UNIVERSAL CC B | | |
| 332GRESVA | JOTAMASTIC 87 038 GREY A | | | 0QZCPBDNA | SAFEGUARD UNIVERSAL ES STD B | | |
| 332REDSVA | JOTAMASTIC 87 049 RED A | | | 0QZGRESQA | SAFEGUARD UNIVERSAL ES GRE A | | |
| **醇酸面漆** | | | | 0QZREDSQA | SAFEGUARD UNIVERSAL ES RED A | | |
| 0FN001WVA | PILOT II STD 001 WHITE | | | **稀释剂** | | | |
| 0FN038WVA | PILOT II STD 038 GREY | | | 092217WVA | THINNER NO.17 | | |
| 0FN049WVA | PILOT II STD 049 RED | | | 092202WVA | THINNER NO.2 | | |
| 0FN149WVA | PILOT II STD 149 GREY | | | 092207WVA | THINNER NO.7 | | |
| 0FN256FVA | PILOT II STD 256 RED | | | **乙烯漆** | | | |
| 363258FVA | PILOT II STD 258 YELLOW | | | 0HRALUWVA | VINYGUARD SILVERGREY 88 | | |
| 0FN002WVA | PILOT II STD 002 YELLOW | 20 | 2 | 0HRARTWVA | VINYGUARD SILVERGREY 88 RT | | |

On behalf of owner and manager (船东代表)
Sign & Stamp (签字&盖章)

Agent (代理):

Title (职位)

All deliveries are subject to a maritime lien on the vessel. The maritime lien attaches the vessel regardless of change in ownership. The beneficiary is entitled to having recourse at all times to the vessel for payment. Interest charges for late payment will be 1% p.t.month and any cost and fees including, but not limited to lawyers fees, for enforcement of delayed payments will be at buyers costs and expense. 所有的运输均须缴纳船舶所承受的海事优先权索赔额。船舶海事优先权依附于船舶，而无论船东的变化。因此，受偿人对其限有正由船舶付款的追索权。延期付款的每月利息及其它成本的相关费用为1%。船不包括的停车费用。罪妙纳行货的付款前延发生的停留费用由此方担负。



**Jotun Paints Delivery Ticket (佐敦油漆收货单)**



Jotun Coatings

D.T.NO. 发货单号: R800 312    P.O.NO.订单号:    Delivery Date.发货日期:

Vessel Name 船名: FANY    Owner Name 船东

Delivery Address 交货地址:

Invoice Address 发票地址:

| Code 编码 | English Name 英文名称 | Package升/罐 | Pail 罐 | Code 编码 | English Name 英文名称 | Package升/罐 | Pail 罐 |
|---|---|---|---|---|---|---|---|
| 防污漆 | | | | 丙烯酸漆 | | | |
| 0TVORDWVA | A/F SEAFORCE 30 DR | | | 0FV001WVA | PIONER TC STD 001 WHITE | | |
| 0TVLRDWVA | A/F SEAFORCE 30 LR | | | 0FV038WVA | PIONER TC STD 038 GREY | | |
| 0TWDRDWVA | A/F SEAFORCE 60 DR | | | 0FV049WVA | PIONER TC STD 049 RED | | |
| 0TWLRDWVA | A/F SEAFORCE 60 LR | | | 0FV099WVA | PIONER TC STD 099 BLACK | | |
| 0TXDRDWVA | A/F SEAFORCE 90 DR | | | 383137WVA | PIONER TC STD 137 GREEN | | |
| 0TXLRDWVA | A/F SEAFORCE 90 LR | | | 环氧漆 | | | |
| 醇酸底漆 | | | | 334CASCNA | PRIMASTIC STD B | | |
| 0BJ038WVA | ALKYD PRIMER GREY | | | 334CALEVA | PRIMASTIC CC B | | |
| 0BJ049WVA | ALKYD PRIMER RED | | | 334038SVA | PRIMASTIC 038 GREY A | | |
| 环氧漆 | | | | 334049SVA | PRIMASTIC 049 RED A | | |
| 332ALUQSA | JOTAMASTIC 87 AL A | | | 344ALUSVA | PRIMASTIC UNIVERSAL AL A | | |
| 332ARTQSA | JOTAMASTIC 87 AL RT A | | | 344ARTSVA | PRIMASTIC UNIVERSAL AL RT A | | |
| 332CASCSA | JOTAMASTIC 87 STD B | | | 344CASDMA | PRIMASTIC UNIVERSAL STD B | | |
| 332CALEVA | JOTAMASTIC 87 CC B | | | 344CALEVA | PRIMASTIC UNIVERSAL CC B | | |
| 332GRESVA | JOTAMASTIC 87 038 GREY A | | | 0QZCPBDNA | SAFEGUARD UNIVERSAL ES STD B | | |
| 332REDSVA | JOTAMASTIC 87 049 RED A | | | 0QZGRESQA | SAFEGUARD UNIVERSAL ES GRE A | | |
| 醇酸面漆 | | | | 0QZREDSQA | SAFEGUARD UNIVERSAL ES RED A | | |
| 0FN001WVA | PILOT II STD 001 WHITE | | | 稀释剂 | | | |
| 0FN038WVA | PILOT II STD 038 GREY | | | 092217WVA | THINNER NO.17 | | |
| 0FN049WVA | PILOT II STD 049 RED | | | 092202WVA | THINNER NO.2 | | |
| 0FN149FVA | PILOT II STD 149 RED | | | 092207WVA | THINNER NO.7 | | |
| 0FN256FVA | PILOT II STD 256 RED | | | 乙烯漆 | | | |
| 363258FVA | PILOT II STD 258 YELLOW | | | 0HRALUWVA | VINYGUARD SILVERGREY 88 | | |
| 36320FDSVA | PILOT II STD 002 YELLOW | 20 | 2 | 0HRARTWVA | VINYGUARD SILVERGREY 88 RT | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | 2. | | | | |

On behalf of owner and manager (船东和管理者)
Sign & Stamp (签字及盖章)

Agent(代理):

Title(职位)

All deliveries are subject to a maritime lien of the vessel. The maritime lien attaches the vessel regardless of change in ownership. The lien includes all monies to the vessel for payment, interest charges for late payment will be 1 % pr.month and any cost and fees including, but not limited to lawyers fees, for enforcement of defaulted payments will be at buyers costs and expenses. 所有运输均受船舶留置权的制约.船舶留置权不受船舶所有权变化的影响. 因此, 受损人对拖欠付款的追索包括所有款项,即发生人针对追款的费用及其他的相关费用为1%.

凡不能按时付款时.依据执行违约的付款的产生的拖延费用由买方负担.

 

**International**

**Jotun Paints Delivery Ticket** (佐敦油漆收货单)

JOTUN Coatings

D.T.NO. 发货单号: 800313.    P.O.NO.订单号: 102028    Delivery Date. 发货日期:

Vessel Name 船名 FANY    Owner Name 船东

Delivery Address 交货地址

Invoice Address 发票地址

| Code 编码 | English Name 英文名称 | Package 件数 | Pail 桶 | Code 编码 | English Name 英文名称 | Package 件数 | Pail 桶 |
|---|---|---|---|---|---|---|---|
| 防污漆 | | | | 丙烯酸漆 | | | |
| 0TVDRDWVA | A/F SEAFORCE 30 DR | 20 | 6 | 0FV001WVA | PIONER TC STD 001 WHITE | | |
| 0TVLRDWVA | A/F SEAFORCE 30 LR | | | 0FV038WVA | PIONER TC STD 038 GREY | | |
| 0TWDRDWVA | A/F SEAFORCE 60 DR | | | 0FV049WVA | PIONER TC STD 049 RED | | |
| 0TWLRDWVA | A/F SEAFORCE 60 LR | | | 0FV099WVA | PIONER TC STD 099 BLACK | | |
| 0TXDRDWVA | A/F SEAFORCE 90 DR | | | 383137WVA | PIONER TC STD 137 GREEN | | |
| 0TXLRDWVA | A/F SEAFORCE 90 LR | | | 环氧漆 | | | |
| 醇酸底漆 | | | | 334CASCNA | PRIMASTIC STD B | | |
| 0BJ038WVA | ALKYD PRIMER GREY | | | 334CALEVA | PRIMASTIC CC B | | |
| 0BJ049WVA | ALKYD PRIMER RED | | | 334038SVA | PRIMASTIC 038 GREY A | | |
| 环氧漆 | | | | 334049SVA | PRIMASTIC 049 RED A | | |
| 332ALUQSA | JOTAMASTIC 87 AL A | | | 344ALUSVA | PRIMASTIC UNIVERSAL AL A | | |
| 332ARTQSA | JOTAMASTIC 87 AL RT A | | | 344ARTSVA | PRIMASTIC UNIVERSAL AL RT A | 16 | 7 |
| 332CASCSA | JOTAMASTIC 87 STD B | 27 | 8 | 344CASDMA | PRIMASTIC UNIVERSAL STD B | 3.2 | 7 |
| 332CALEVA | JOTAMASTIC 87 CC B | | | 344CALEVA | PRIMASTIC UNIVERSAL CC B | | |
| 332GRESVA | JOTAMASTIC 87 038 GREY A | | | 0QZCPBDNA | SAFEGUARD UNIVERSAL ES STD B | | |
| 332REDSVA | JOTAMASTIC 87 049 RED A | | | 0QZGRESQA | SAFEGUARD UNIVERSAL ES GRE A | | |
| 醇酸面漆 | | | | 0QZREDSQA | SAFEGUARD UNIVERSAL ES RED A | | |
| 0FN001WVA | PILOT II STD 001 WHITE | | | 稀释剂 | | | |
| 0FN038WVA | PILOT II STD 038 GREY | | | 092217WVA | THINNER NO.17 | 20 | 3 |
| 0FN049WVA | PILOT II STD 049 RED | | | 092202WVA | THINNER NO.2 | 20 | 3 |
| 0FN149WVA | PILOT II STD 149 GREY | | | 092207WVA | THINNER NO.7 | 20 | 2 |
| 0FN256FVA | PILOT II STD 256 RED | | | 乙烯漆 | | | |
| 383256FVA | PILOT II STD 256 YELLOW | | | 0HRALUWVA | VINYGUARD SILVERGREY 88 | | |
| 0QZGRERDA | SAFEGUARD UNIVER ES GREY COMP. A | 15 | 7 | 0HRARTWVA | VINYGUARD SILVERGREY 88 RT | | |
| 0RZCPB DVA | SAFEGUARD UNIVER ES COMP. B | 3 | 7 | | | | |
| 332038SVA | JOTAMASTIC 87 STD 038 GREY COMP. A | 16 | 4 | | | | |
| 332049SVA | JOTAMASTIC 87 STD 049 RED COMP. A | 16 | 4 | | | | |

55

On behalf of owner and manager
Sign & Stamp (签字及盖章)

Title (职位):

Agent (代理):

All deliveries are subject to a maritime lien of the vessel. The maritime lien attaches the vessel regardless of change in ownership. The beneficiary before having recourse at all times to the vessel for payment. Interest charges for late payment will be 1 % pr. month and any cost and fees including, but not limited to lawyers fees, for enforcement of defaulted payments will be at buyers costs and expense. 所有运输或送货顺延要照海事留置权诉讼手段的。因无论船东的变化。因此。受益人对默认付出偿前货款的追索以。某期付未的权利及其其地的付关费用为1%。时间运输法律费用。强制执行诉讼的用须海事所发生付费均由买方负担。

 **International**

**Jotun Paints Delivery Ticket (佐敦油漆收货单)**

 **JOTUN**
Jotun Coatings

D.T.NO. 发货单号： D800-318    P.O.NO.订单号： 101214 / 101600    Delivery Date. 发货日期：

Vessel Name 船名 FAN J    Owner Name 船东

Delivery Address 交货地址

Invoice Address 发票地址

| Code 编码 | English Name 英文名称 | Package升/桶 | Pail 桶 | Code 编码 | English Name 英文名称 | Package升/桶 | Pail 桶 |
|---|---|---|---|---|---|---|---|
| **防污漆** | | | | **丙烯酸漆** | | | |
| 0TVDRDWVA | A/F SEAFORCE 30 DR | | | 0FV001WVA | PIONER TC STD 001 WHITE | | |
| 0TVLRDWVA | A/F SEAFORCE 30 LR | | | 0FV038WVA | PIONER TC STD 038 GREY | | |
| 0TWDRDWVA | A/F SEAFORCE 60 DR | | | 0FV049WVA | PIONER TC STD 049 RED | | |
| 0TWLRDWVA | A/F SEAFORCE 60 LR | | | 0FV099WVA | PIONER TC STD 099 BLACK | | |
| 0TXDRDWVA | A/F SEAFORCE 90 DR | | | 383137WVA | PIONER TC STD 137 GREEN | | |
| 0TXLRDWVA | A/F SEAFORCE 90 LR | | | **环氧漆** | | | |
| **醇酸底漆** | | | | 334CASCNA | PRIMASTIC STD B | | |
| 0BJ038WVA | ALKYD PRIMER GREY | | | 334CALEVA | PRIMASTIC CC B | | |
| 0BJ049WVA | ALKYD PRIMER RED | | | 334038SVA | PRIMASTIC 038 GREY A | | |
| **环氧漆** | | | | 334049SVA | PRIMASTIC 049 RED A | | |
| 332ALUQSA | JOTAMASTIC 87 AL A | | | 344ALUSVA | PRIMASTIC UNIVERSAL AL A | | |
| 332ARTQSA | JOTAMASTIC 87 AL RT A | | | 344ARTSVA | PRIMASTIC UNIVERSAL AL RT A | | |
| 332CASCSA | JOTAMASTIC 87 STD B | | | 344CASDMA | PRIMASTIC UNIVERSAL STD B | | |
| 332CALEVA | JOTAMASTIC 87 CC B | | | 344CALEVA | PRIMASTIC UNIVERSAL CC B | | |
| 332GRESVA | JOTAMASTIC 87 038 GREY A | | | 0QZCPBDNA | SAFEGUARD UNIVERSAL ES STD B | | |
| 332REDSVA | JOTAMASTIC 87 049 RED A | | | 0QZGRESQA | SAFEGUARD UNIVERSAL ES GRE A | | |
| **醇酸面漆** | | | | 0QZREDSQA | SAFEGUARD UNIVERSAL ES RED A | | |
| 0FN001WVA | PILOT II STD 001 WHITE | | | **稀释剂** | | | |
| 0FN038WVA | PILOT II STD 038 GREY | | | 092217WVA | THINNER NO.17 | | |
| 0FN049WVA | PILOT II STD 049 RED | | | 092202WVA | THINNER NO.2 | | |
| 0FN149WVA | PILOT II STD 149 GREY | | | 092207WVA | THINNER NO.7 | | |
| 0FN256FVA | PILOT II STD 256 RED | | | **乙烯漆** | | | |
| 363258FVA | PILOT II STD 258 YELLOW | | | 0HRALUWVA | VINYGUARD SILVERGREY 88 | | |
| 0FDXANY2C | PIONER TC E992 BLUE | 19.64 | 7 | 0HRARTWVA | VINYGUARD SILVERGREY 88 RT | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | 7 | | | | |

On behalf of owner and manager (船东代表)
Sign & Stamp (签字&盖章)

Agent (代理):

Title (职位)

All deliveries are subject to a maritime lien on the vessel. The maritime lien attaches the vessel regardless of change in ownership. The beneficiary thereof having recourse at all times to the vessel for payment. Interest charges for late payment will be 1% pr.month and any cost and fees including, but not limited to lawyers fees, for enforcement of defaulted payments will he at buyers costs and expense. 所交货品将对船舶实行留置权权益，船舶将承担偿付的职责，受益人对付拖欠的款项的要求，无期付款的将有1%利息及其他的追收费用1%。
任何包括律师诉讼费用 (如诉讼针对船舶的付款责任实施) 的追收费用由买方负担。

EXHIBIT "K"

# FACSIMILE TRANSMISSION

## M F B
### S O L I C I T O R S

**Confidentiality Notice**
The information contained in this fax is confidential and
may be privileged. It is only for the use of the intended
recipient. If you are not the named or intended recipient,
please notify us immediately. In such an event, you must
not make any use of this fax or the information contained in
it and you may not disclose the contents to any other
person. Please contact us immediately if any part of this
fax is inadequately received.

**4 5    M O O R F I E L D S**
**L O N D O N    E C 2 Y    9 A E**

**TELEPHONE: 020 7330 8000**
**FACSIMILE: 020 7256 6778**
**EMAIL: mail@m-f-b.co.uk**
**WEBSITE: www.m-f-b.co.uk**

**DIRECT**
**TEL:**                                020 7330 8015

**EMAIL:**        swolsey@m-f-b.co.uk

TOTAL NUMBER OF PAGES            4

DATE:        9 April 2008

TO:          **DLA PIPER**
ATTN:        Linos Choo
FAX NO:      020 7796 6666

OUR REF:     SW/WOE/0118/278463
MATTER:      **MV "FANY" – C/P dd 13.06.07**

## WITHOUT PREJUDICE & SUBJECT TO CONTRACT

We refer to our discussion and attach a wording proposed for a Club Letter of Guarantee for your clients'
consideration. Whilst this message is sent on a WP and subject to contract basis we confirm that steps
are being put in place to allow security to be put up once you have response, terms are agreed and we
have final instructions.

Please confirm based on our telephone discussion yesterday evening that, in light of the extended
deadline now being suggested by the Head Owners of 21 April 2008 that your client will not insist on the
original deadline imposed for actually placing the security of 11 April 2007, which we appreciate was the
date that Head Owners may have originally advised to your client to respond.

Otherwise, in relation to quantum, this is based upon your club clients' request for security of
US$4,062,119.57 of 4 April 2008 less a further payment made direct from our client to yours this week
of US$68,441.11, which reduces the overall security necessary to US$3,993,678.46.

The wording is standard save that at Paragraph 3 it provides for replacement of the Guarantee, with
alternative security and is a provision required by our client. Clearly there may be potential that an
escrow agreement and account may be established which would provide one amount of security for all of
the claims passing up and down the charter chain and without the need for separate guarantees at each
step of the chain either being put up, or if already in placed, which could be returned.

· Stuart Blaxell · Joanna Bruce · Faye Doherty · Edward Gray · Ian Hawkes · Gerard Hopkins · Andrew Hughes ·
· Peter Jago · Michael Mitchell, *Master Mariner* · Mark Seward · Jonathan Watson · Simon Wolsey · Andrew Wright ·
Regulated by the Solicitors Regulation Authority

2

That is what paragraph 3 of the guarantee addresses and we understand this is acceptable in principle.

We look forward to receiving your confirmation that this wording is acceptable to you so we can take matters forward with our Client.

We look forward to hearing from you.

Kind regards

Simon Wolsey
**MFB Solicitors**

To: Hanjin Shipping Co Ltd

Hanjin Shipping Building, 25-11,

Youdo-Dong, Youndeungpo-Ku, Seoul

P.O Box 843, South Korea


**Vessel:"FANY"**

**Charterparty:** 13 June 2007

**Owner:** Hanjin Shipping Co Ltd

**Charterer:** San Juan Navigation (Singapore) Pte Ltd

**Claim:** Owners' claims howsoever made arising under or in connection with the Charterparty including without limitation claims arising in January 2008 at the loadport of Waigeo in connection with alleged damage to the vessel, her hull machinery and equipment and claims or indemnities for the repair cost, delay, time and expense relating to the same.

In consideration of your forthwith releasing from arrest or attachment and/or refraining from arresting or otherwise detaining or attaching any vessel or property or funds or interest of any kind in the same or associated ownership, management or control of Charterers for the purpose of founding jurisdiction and/or obtaining security in respect of the Claim arising out of the captioned charterparty and of your refraining from commencing and/or prosecuting legal or arbitration proceedings in respect of the said Claim otherwise than before the arbitration tribunal referred to below, we hereby undertake to pay you within 14 days of your written demand such sum or sums as may be found due to you from the Charterers, San Juan Navigation (Singapore) Pte Ltd, in respect of your said Claim either as may be agreed in writing between the parties or as may be adjudged by a final arbitral award of the Competent Tribunal which is no longer subject to appeal or by the final and conclusive judgment of the High Court or Court of Appeal in London on final appeal therefrom, provided always that the total sum of our liability hereunder shall not in any circumstances exceed US$3,993,678.46 ( Three Million Nine Hundred and Ninety Three Thousand Six Hundred and Seventy Eight United States Dollars and Forty Six Cents only) inclusive of interest and costs.

It is agreed that the above mentioned Claim shall be subject to English law and to London Arbitration and we agree that Christopher Moss and Mark Hamsher (or those duly appointed in substitution or replacement thereof) shall be the Competent Tribunal within the meaning of this Guarantee to hear and determine your above Claim. We warrant that we have received irrevocable authority from the Charterers to give this Letter of Guarantee in these terms.

It is irrevocably agreed by you that the Charterer has liberty to replace this Letter of Guarantee in whole or in part with acceptable alternative security up to the maximum amount secured herein and on provision of such alternative security this Guarantee

278452

2

will stand automatically reduced by the amount of the same and this Guarantee will be returned and be replaced by us with an identically worded Guarantee save in such reduced amount as is then appropriate. If alternative security at the maximum level of our liability is put in place this Guarantee will be automatically void and cancelled and will be returned to us. It is irrevocably agreed by you that an escrow account (multi–party or otherwise) which responds to the Claim in arbitration will be considered acceptable alternative security and that if this is offered it will be accepted by you.

This Guarantee shall be governed by and construed in accordance with English law and subject to the exclusive jurisdiction of the High Court in London to which we hereby agree to submit for the purpose of any dispute and or process for the enforcement hereof. We confirm that our address for service of any process is West of England Insurance Services (Luxembourg) S.A. Tower Bridge Court 224-226 Tower Bridge Road London SE1 2UP.

Yours faithfully

278452

**Gerard Hopkins**

| | |
|---|---|
| **From:** | Choo, Linos [Linos.Choo@dlapiper.com] |
| **Sent:** | 14 April 2008 10:18 |
| **To:** | Gerard Hopkins |
| **Subject:** | m/v 'FANY' |
| **Attachments:** | 18674153_1.doc |

Dear Gerard,

W/P

I refer to Simon Wolsley's fax of 9 April 2008.

Please find attached our recommended amendments to the WOE LOU wording for your attention.

Assuming the above is acceptable to you, please proceed with the issue of the LOU.

As advised on several occasions, our clients and their Club's preferred option is to drop out of this dispute all together. They have no knowledge of it and their presence is simply adding an extra layer of costs. Head Owners have no problem so it is really up to your clients to advise whether they have any problem with this. If not, then we can proceed to work out the mechanics and the LOU can address Changsung's claim directly and its quantum can be reduced accordingly.

I look forward to hearing from you.

Kind regards

**Linos Choo**
Solicitor

DLA Piper UK LLP

T +44 (0)20 7796 6580
F +44 (0)20 7796 6780
M +44 (0)7967 199884
E linos.choo@dlapiper.com

**Legal Business Dispute Resolution Team of the Year 2008**

www.dlapiper.com
Please consider the environment before printing this email.

<<18674153_1.doc>>

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

14/04/2008

To: Hanjin Shipping Co Ltd

Hanjin Shipping Building, 25-11,

Youdo-Dong, Youndeungpo-Ku, Seoul

P.O Box 843, South Korea

*14.4*

*HANJIN / DLA*

*DRAFT.*

**Vessel:** "FANY"

**Charterparty:** 13 June 2007

**Owner:** Hanjin Shipping Co Ltd

**Charterer:** San Juan Navigation (Singapore) Pte Ltd

**Claim:** Owners' claims howsoever made arising under or in connection with the Charterparty including without limitation claims arising in January 2008 at the loadport of Waigeo in connection with alleged damage to the vessel, her hull machinery and equipment and claims or indemnities for the repair cost, delay, time and expense relating to the same.

In consideration of your forthwith releasing from arrest or attachment and/or refraining from arresting or otherwise detaining or attaching any vessel or property or funds of interest of any kind in the same or associated ownership, management or control of Charterers for the purpose of founding jurisdiction and/or obtaining security in respect of the Claim arising out of the captioned charterparty and of your refraining from commencing and/or prosecuting legal or arbitration proceedings in respect of the said Claim otherwise than before the arbitration tribunal referred to below, we hereby undertake to pay you within 14 days of your written demand such sum or sums as may be found due to you from the Charterers, San Juan Navigation (Singapore) Pte Ltd, in respect of the~~your said~~ Claim either as may be agreed in writing between the parties or as may be adjudged~~adjusted~~ by a final arbitral award or if appeals are made, after all appeals~~af the conclusive judgment of the High Court or Court of Appeal in London on final appeal therefrom~~, provided always that the total sum of our liability hereunder shall not in any circumstances exceed US$3,993,678.46 (Three Million Nine Hundred and Ninety Three Thousand Six Hundred and Seventy Eight United States Dollars and Forty Six Cents only) inclusive of interest and costs.

It is agreed that the ~~above-mentioned~~ Claim shall be subject to English law and to London Arbitration and that the arbitrators appointed in accordance with the Charterparty~~we agree that Christopher Moss and Mark Hamsher (or those duly appointed in substitution or replacement thereof)~~ shall be the Competent Tribunal within the meaning of this Guarantee to hear and determine the~~your above~~ Claim. We warrant that we have received irrevocable authority from the Charterers to give this Letter of Guarantee in these terms.

It is irrevocably agreed by you that the Charterer has liberty to replace this Letter of Guarantee in whole or in part with acceptable alternative security in the same~~up to the maximum~~ amount secured herein provided always that such security is acceptable to you.~~and on provision of such alternative security this Guarantee will stand automatically reduced by the amount of the same and this Guarantee will be returned and be replaced by us with an identically worded Guarantee save in such reduced amount as is then appropriate.~~ If alternative security acceptable to you ~~at the maximum level of our liability~~ is put in place this Guarantee will be automatically void and cancelled and will be

returned to us. It is irrevocably agreed by you that an escrow account (multi-party or otherwise) which responds to the Claim ~~in arbitration~~ in full will be considered acceptable alternative security and that if this is offered it will be acceptable by you.

This Guarantee shall be governed by and construed in accordance with English law and subject to the exclusive jurisdiction of the High Court in London to which we hereby agree to submit for the purpose of any dispute and or process for the enforcement hereof. We confirm that our address for service of any process is West of England Insurance Services (Luxembourg) S.A. Tower Bridge Court 224-226 Tower Bridge Road London SE1 2UP.

Yours faithfully