BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY  10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAN JUAN NAVIGATION (SINGAPORE) PTE. LTD.,<br><br>Plaintiff,<br><br>- against -<br><br>TRANS POWER CO. LTD.,<br><br>Defendant. | 08 CV 1562 (RMB)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE OR VACATE ORDER OF MARITIME ATTACHMENT AND GARNISHMENT OBTAINED UNDER SUPPLEMENTAL RULE B OF THE SUPPLEMENTAL RULES OF F. R. CIV. P. FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS AND/OR IN THE ALTERNATIVE FOR COUNTER-SECURITY UNDER SUPPLEMENTAL RULE E**

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

601518.00602/6635576v.2

## INTRODUCTION

Defendant Trans Power Co. Ltd. ("Trans Power") respectfully submits this reply memorandum of law in support of its motion pursuant to Supplemental Rule E and F. R. Civ. P. Rule 12.

## THE ENGLISH LAW DECLARATIONS

The issues of English law raised pursuant to notice under F. R. Civ. P. Rule 44.1, relating to this application are set out in the declarations of Nicholas Woo dated March 17 and 27, and May 1, 2008 ("Woo Declaration No. 1", "No. 2," and "No. 3" respectively). And the expert opinions of Nevil Phillips dated March 27, and April 30, 2008 attached as an exhibits to Woo Declaration No. 2 and No. 3.

## ARGUMENT

### POINT I
### THE "TECHNICAL REQUIREMENTS" OF RULE B ARE NOT MET WHERE THE RULE B PLAINTIFF'S CAUSES OF ACTION CANNOT BE SUSTAINED UNDER THE GOVERNING LAW

San Juan's memorandum of law ("Brief") asserts that because it has "satisfied the technical requirements mandated by Rule B," i.e. of not being "found" under the two-prong test, it has carried its burden to show the initial attachment was properly ordered. It cites Ronda Ship Management Inc. v. Doha Asian Games Organizing Committee, 511 F. Supp.2d 399, 403-04 (S.D.N.Y. 2007) for the contention that "the Court looks only to the Complaint …". Brief at 2. San Juan's argument that in adjudicating a Rule E challenge the Court simply accepts the Complaint's pleadings is contrary to the controlling authority in Greenwich Marine, Inc. v. S.S. ALEXANDER, 339 F.2d 901 (2d

Cir. 1965). As stated in Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F. Supp.2d 532, 540-41 (S.D.N.Y. 2007), "courts in this circuit have not been receptive to contingent indemnity claims as bases for maritime arrests [or] attachments."

Quite clearly those courts referred to in Sonito, as well as Judge Kaplan in Bottiglieri di Navigazione SPA v. Tradeline LLC, 472 F. Supp.2d 588 (S.D.N.Y. 2007), looked at the issue of the "doctrines of accrual," as permitted by Greenwich Marine.

Recently Judge Marreno in Suiko Steamship Co. Ltd. v. China National Chartering Corp., 2008 U.S. Dist. LEXIS 16512 *7 (S.D.N.Y. Feb. 22, 2008), amended 2008 U.S. Dist. LEXIS 20313 (S.D.N.Y. Feb. 29, 2008) explained:

> The issue of whether Sanko's claim has accrued is to be determined by English law, as that is the law of the Charter Party. See T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F. Supp. 2d 310, 314 (S.D.N.Y. 2006) ("[T]he law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is reasonable.")

San Juan has not met its burden by its pleading. As Point II of its brief concedes the issue of whether there is a valid admiralty claim must be decided under the applicable substantive, not procedural, law.

## POINT II
### UNDER ENGLISH LAW SAN JUAN'S CLAIMS ARE CONTINGENT INDEMNITY CLAIMS

San Juan's claims are "contingent indemnity" claims. San Juan claims that Trans Power's assertion that San Juan's claims are for "indemnity" is a "mischaracterization". Brief at 3. That is simply because San Juan has chosen to characterize them as "breach" claims and ignore the issue, as stated in the Phillips opinion (Woo Dec. No. 3, Ex. 1) that:

2

> SJN are unable at present to demonstrate any concrete entitlement to substantial monetary relief which at this stage could give rise to an arbitration award capable of being enforced now against security.

Id., ¶ 2.7.

The rest of San Juan's brief is simply a "re-hash" of the highly partisan statements of the English solicitor and barrister that fail to address the point as put by Mr. Woo:

> The point that Trans Power makes in this regard is not that no cause of action on the part of San Juan can possibly have accrued (which would be an absurd proposition, given that it is a fundamental principle of English contract law that a cause of action for breach of contract arises at the time of the breach, irrespective of when the corresponding loss is suffered), <u>but that the damages sought by San Juan for this breach of contract can only be assessed by reference to any liability which they are found to owe up the contractual chain</u> (i.e. an indemnity by way of damages). As no such liability has yet been asserted by San Juan, let alone been determined, and as San Juan has not as yet sought any relief from the arbitral tribunal by way of matters preparatory to or ancillary to the determination of or assessment of the extent of such liability, it is difficult to see how San Juan could at this stage recover a money judgment/award which is at present capable of being enforced against security.

Woo Dec. No. 3, ¶ 8 (emphasis added)

Accordingly, none of the Indemnity Claims are "ripe under English law" so that, as in <u>Bottiglieri</u>, Plaintiff has only an "unripe" indemnity claim so that the Attachment Order should be vacated.

### POINT III

#### SAN JUAN HAS OBTAINED SECURITY TWICE FOR THE LIEN CLAIM

As described in the Woo Declaration No. 2, ¶¶ 10-13, Trans Power received a lien notice on sub-hire in the sum of $376,000 from the Head Owner of the vessel (Chang

3

601518.00602/6635576v.2

Sung) that San Juan had chartered to Trans Power (the "Notice"). This meant that, as a matter of English law, if Trans Power paid San Juan the debt represented by the $376,000 subject to the Notice then it would be obliged to pay the same sum to the Head Owner. Id., ¶ 12.

The suggestion, referred to in the Brief, by San Juan's solicitor that Trans Power's argument is undercut because "it has not paid Head Owners the sum claimed in the notice of lien" is misplaced. Brief at 9. Mr. Hopkins cannot argue that because of the Lien Notice Trans Power is liable to pay the Lien Sum twice – in effect Trans Power has given security to Head Owner for San Juan's obligation to pay that sum while, at the same time, San Juan has attached that sum. Of course, San Juan is free to agree with both Trans Power and the Head Owner that the Lien Sum should be paid out of the attached accounts in this Court and the Lien Notice thereupon dissolved but evidently it would prefer to keep the money as hostage while ignoring its own hire obligation to Head Owner.

## POINT IV

### THE "COSTS" CLAIM OF $475,000 SHOULD BE REDUCED PROPORTIONATELY

As stated in Woo Dec. No. 3. ¶ 7, his view that 75% of the $475,000 security for costs is based on the crane damage claim being the "most factually divisive". It is entirely reasonable to request that if security for the Indemnity Claims is reduced then so to should the Costs Sum based on that percentage allocation.

POINT V

**TRANS POWER IS NOW "FOUND" WITHIN THE MEANING OF RULE B SO THAT SAN JUAN MAY NOT OBTAIN AN ADDITIONAL ATTACHMENT ORDER AS REQUESTED BY THE SECOND COMPLAINT**

On or about March 28, 2008, San Juan filed its Second Complaint for a principal claim of $3,409,913.54 for a total claim amount of $4,612,614.54. It is not accompanied by the mandatory Supplemental Rule B(1)(b) affidavit that requires "plaintiff or plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district." San Juan's brief discusses three cases to justify, after several months, why it should be entitled to attempt to attach more than twice the sum of its original complaint despite Trans Power having registered to do business and having an agent for service of process in New York. The cases it cites are inopposite because this factually scenario is one of first impression.

1.   **Heidmar**

Heidmar Inc. v. Anonima Ravennate Di Armamento et al., .32 F. 3d. 264, 267 (5th Cir. 1998) addressed the issue arising from the original filing of a complaint as "one of timing." The Court specifically referred to the compulsory affidavit and purposes of Rule B attachment and held that the "time-of-filing rule" for determining whether a Rule B defendant is found, as opposed to the time of attachment, "furthers the interests of fairness and judicial economy." F.R.Civ. P. 15's "relation back" principles were not discussed, only that it allowed the "conversion of the Rule C arrest to a Rule B

5

attachment to relate back to the original filing of the complaint," which was allowed because of "technical errors". 132 F. 3d at 268.

### 2. Construction Exporting

Construction Exporting Enterprises, UNECA v. Nikki Maritime Ltd. et al., 558 F. Supp. 1372 (S.D.N.Y. 1983) dealt with a Rule B defendant's alleged presence in May, 1982 after which it claimed to have "absented itself from American jurisdiction" for OFAC purposes. Nikki could not be heard to oppose an attachment on the basis that it was "found" at the time the complaint was filed in November, 1982: "[p]resence in the district at times prior to May 18, 1982 will not defeat the right to an attachment to be determined…when the original complaint was filed, to which date the amended complaint relates back." [citing Moore's]. Id. at 1375

The Court further held that a right to an attachment is "not defeated by the filing of a general appearance." Id. et 1375. The Second Circuit has not ruled that a Rule B plaintiff is entitled to amend its claims, by filing an amended complaint without the compulsory Rule B affidavit, and that such amended complaint can ignore the fact that the defendant is registered to do business and is actually "found" in the district.

### 3. Caribbean Yacht

Caribbean Yacht Works Ltd. v. NEENAH, 410 F. Supp. 2d 1261 1265 (S.D. Fla. 2005) dealt with the conversion of a Rule C to a Rule B complaint, following Heidmer, in the absence of prejudice. The only issue in the Rule B challenge of relevance here appears to have been a law firm advising the plaintiff's law firm of its appointment as agent" which was held to be "ineffectual". Id. at 1268.

Nothing in F.R. Civ. P. Rule 15 (c)(2)'s rule on "relation back" addresses the necessity for a Rule B plaintiff to file a mandatory Rule B affidavit – which San Juan deliberately omitted in filing its amended complaint.

The question raised by <u>Centauri Shipping Ltd. v. Western Bulk Carriers KS</u>, (S.D.N.Y. September 7, 2007)[1] is an issue of first impression when a Rule B plaintiff seeks to amend to add additional claims irrespective of Plaintiff's label of "jurisdictional gamesmanship."

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the PMAG in respect of the Indemnity Claims and Lien Claim be vacated and for such other relief as is fair and equitable and as requested herein.

Date:   New York, New York
        May 1, 2008

Respectfully submitted,

BLANK ROME LLP

By: _____
Jeremy J.O. Harwood
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Defendant*

---

[1] Not officially reported, attached as Exhibit 4 to the Harwood affidavit.