BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAN JUAN NAVIGATION (SINGAPORE) PTE. LTD., Plaintiff, - against - TRANS POWER CO. LTD., Defendant. | 08 CV 1562 (RMB) |

## DECLARATION OF NICHOLAS WOO UNDER ENGLISH LAW

I, NICHOLAS WOO, declare under penalty of perjury:

1.      I am a partner of the firm of English solicitors, Birketts LLP, with offices at 24-26 Museum Street, Ipswich, Suffolk, England. I was admitted as a solicitor of the Supreme Court of England and Wales on 2nd September 1996 and admitted as a solicitor of the Supreme Court of Singapore in July 1988. I am the same Nicholas Woo who made the declaration of English Law dated 31st March, 2008 in this matter.

2.      I make this second declaration in answer to the "Declaration of English Law" made by Gerard Anthony Hopkins dated 18th April 2008. See Id., paragraph 2.

## ENGLISH LAW – ACCRUAL OF CAUSE OF ACTION AND SECURITY

8.    Mr. Hopkins has in his declaration, spent an inordinate amount of time attempting to explain to this court, the basis of San Juan's claim. Trans Power note that San Juan's claim is stated to be based upon a straight-forward breach of contract. The point that Trans Power makes in this regard is not that no cause of action on the part of San Juan can possibly have accrued (which would be an absurd proposition, given that it is a fundamental principle of English contract law that a cause of action for breach of contract arises at the time of the breach, irrespective of when the corresponding loss is suffered), but that the damages sought by San Juan for this breach of contract can only be assessed by reference to any liability which they are found to owe up the contractual chain (i.e. an indemnity by way of damages). As no such liability has yet been asserted by San Juan, let alone been determined, and as San Juan has not as yet sought any relief from the arbitral tribunal by way of matters preparatory to or ancillary to the determination of or assessment of the extent of such liability, it is difficult to see how San Juan could at this stage recover a money judgement/award which is at present capable of being enforced against security.

9.    I will leave it to Mr. Phillips as Counsel for Trans Power, to rebut the points made by Mr. Young in his opinion appended to Mr. Hopkin's declaration. A copy of Mr. Phillips' rebuttal is enclosed as Exhibit 1.

## SECURITY UP THE CHAIN OF CHARTER PARTIES

10.    I have not seen the claims submissions made by Head Owners against Hanjin. However, it stands to reason that Head Owners claim against Hanjin is one for

3

straight damages and/or an indemnity. On that basis, any claim which San Juan may seek to pass down to Trans Power can be of no more certain or enforceable nature than Hanjin's own claim against San Juan.

11.     Hanjin may not be able to bring the same arguments that Trans Power raises here in terms of providing security. In any case, the fact that Hanjin has voluntarily provided security to Head Owners is not relevant under English Law as to whether San Juan is entitled to security.

12.     The fact that San Juan has volunteered to give security to Hanjin is also irrelevant to the issue of whether San Juan's claims have a "matured" or "ripened" from being contingent indemnity claims. Unless and until Hanjin's claims are settled or paid they and, in turn, San Juan's claims remain contingent indemnity claims.

13.     I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: May 1st, 2008
at Ipswich, England


_____
NICHOLAS WOO

4

EXHIBIT 1

## "FANY"

## C/P dd. 8th January 2008

### REBUTTAL OPINION

### 1.  Prefatory remarks

1.1  I have read and considered an Opinion dated 17th April 2008 by Timothy Young QC in connection with this matter.

1.2  I propose in this Rebuttal Opinion to address the matters raised by Mr. Young in his Opinion. In doing so, I shall endeavour to condescend as necessary to the particulars of his views, if not the style in which they are presented.

1.3  Before seeking to address Mr. Young's observations, I should confirm that I am, as he states, a (senior) junior barrister in Quadrant Chambers (a rival set of commercial barristers' chambers to that from which Mr. Young practises). I have been in practice in the field of maritime and commercial law since 1994. I am the author of and/or a contributor to a number of leading texts on issues of maritime and commercial law, including "*The Merchant Shipping Act 1995: An Annotated Guide*", "*Butterworth's Commercial Court and Arbitration Pleadings*" (marine insurance), and "*The Law of Tug and Tow and of Allied Contracts*" (towage and salvage). I appear frequently in arbitration, and in the English courts at first instance and at appellate level in connection with maritime and commercial matters. For many years I have been identified by independent guides to the legal profession in the UK as a leader in the field of shipping law. In this regard, I was recently described in Legal 500 as "*very talented and a bit of a star*". I state all of this not for self-aggrandisement, but merely to ensure that the Court is not given the wrong impression by Mr. Young's description of me simply as "a junior".

1

1.4    I should also make clear that, at the time that I wrote my original Opinion (which Mr. Young purports to address in his own Opinion), it was far from clear to me the precise basis upon which SJN would seek to pursue any claim against Trans Power. In this regard, it should be noted that, while SJN had (by the date of my Opinion) commenced arbitration proceedings against Trans Power by the appointment of an arbitrator, their notice of appointment did not identify the basis of any cause of action. Nor, for that matter, does any other correspondence which I had (or have) seen provide any clear indication of how SJN intend to pursue any claim against Trans Power - while SJN has, at various stages, purported to adopt communications coming down the contractual chain from the head owners and their own disponent owners (Hanjin), none of those communications make clear how any claim would be pursued by SJN against Trans Power; moreover, the Amended Complaint upon which SJN relies for its claim to Rule B relief in the U.S. is no more fulsome in its detail in that regard. Accordingly, while Mr. Young is trenchant in his criticism of my analysis of SJN's cause of action (in particular, in paragraph 8 of his Opinion), my own Opinion was necessarily more wide-ranging than his own - I did not have the confirmation which he appears to have had to the effect that SJN's claim is one for simple breach of contract.

1.5    In light of the matters revealed in Mr. Young's Opinion, together with the further clarification which emerges from the recent Declaration of Gerard Hopkins provided on behalf of SJN, I am able to refine my own conclusions and observations as set out below.

2.    **Matters of principle**

2.1    At first blush, a reading of Mr. Young's Opinion would suggest that he and I are from a different planet as far as our respective understanding of the relevant principles of English is concerned. Certainly, Mr. Young's choice of tone and phrase would suggest that my own conclusions were those of somebody wholly unfamiliar with the matters in question. My experience (summarised above),

coupled with the matters to which I refer below and a more charitable and realistic reading of my original Opinion ought, however, to reveal that there is a significant amount of common ground between us.

2.2 In saying this, I should make clear that I agree with Mr. Young (and have never sought to suggest other than) that:

(1) A cause of action for breach of contract arises at the time of the breach, irrespective of whether a loss is capable of being assessed at that time.

(2) Accordingly, if (as appears to be contended) SJN's claim is one for damages for breach of contract, SJN will have an accrued cause of action from the date of the breach alleged.

2.3 Thus, there is nothing between Mr. Young and me when it comes to the question of when a cause of action for breach of contract arises. Certainly, there is no confusion on my part between, on the one hand, the accrual of a cause of action for breach of contract and, on the other hand, the evaluation of any loss. Indeed, to labour under any such confusion would be self-evidently absurd - many of the authorities and principles (e.g. of nominal damages) to which I referred in my original Opinion themselves confound it. It would seem that Mr. Young has simply misunderstood my Opinion.

2.4 Nor is there any meaningful difference between Mr. Young's and my expressed understanding of the options open to an English arbitral tribunal when it comes to considering the relief which may be granted in respect of a breach of contract. I agree that, once a cause of action for breach of contract has accrued, it is possible for a tribunal (in addition to granting appropriate declaratory relief) to:

(1) Make an award for damages to be assessed.

3

(2)     Determine (on the balance of probabilities) the issue and extent of any liability owed by A to B, for the purposes of proceeding to establish and quantify A's loss in the context of any claim for damages for breach of contract as between A and C.

(3)     Order that arbitrations between A and B, on the one hand, and A and C, on the other hand, be heard concurrently or be consolidated in order that all issues of liability and quantum of loss as between all parties can be determined together.

2.5     However, it will be noted that:

(1)     As matters stand in the present case, there has been no determination of the kind referred to in paragraph 2.4(1) above. Even if such an award were made, it would not be possible to assess the damages in question without reference to the existence of an underlying liability on the part of SJN to Hanjin up the contractual chain. As matters stand, no such liability has been determined; nor does SJN appear to contend that such a liability ought (prior to it actually being determined, admitted or compromised as between Hanjin and SJN) to be found to exist on the balance of probabilities.

(2)     Nor, as regards paragraph 2.4(2) above, as far as I am aware, has there been any suggestion that SJN will seek to invite the Tribunal (prior to any such liability actually being determined, admitted or compromised as between Hanjin and SJN) to make any determination to the effect that (on the balance of probabilities) they owe a liability to Hanjin. Indeed, I should be surprised if, simply for the purposes of the present Rule B dispute, SJN would wish to encourage the suggestion that the Tribunal

4

would be likely to make any such determination of liability on SJN's part (not least because of the possible impact of any such finding up the charterparty chain).

(3)  As far as concerns paragraph 2.4(3) above, there is no general power to consolidate arbitrations or order that they be heard concurrently under English law. Section 35 of the Arbitration Act 1996 provides that such a power may only be exercised by a tribunal or tribunals where the various parties agree; absent such agreement, no tribunal has the power to order consolidation or concurrency. The 2006 Terms of the London Maritime Arbitrators Association (under which many maritime arbitrations are conducted in the UK) provide for a power to order concurrency (see Term 14(b)), but not consolidation. Accordingly, the scope for consolidation and concurrency is not wide. As it is, there has been no order in either respect in the present case.

2.6  Further, while Mr. Young makes reference to the comments of Cozens-Hardy M.R. in In re Richardson [1911] 2 K.B. 705 regarding the possibility of an "*equitable cause of action for the establishment of a fund*" by a party liable to indemnify:

(1)  Fletcher Moulton L.J. in the same case (as cited by Neill J. in The Caroline P [1984] 2 Lloyd's Rep. 466 at 474-5) stated as follows (emphasis supplied):

"*If, for instance, B was bound to pay a sum to A and C was bound to indemnify B, . . . then B could not sue C unless he could aver payment to A. It was the same thing whether it was a case of suretyship, indemnity, or contribution. In all cases before you can make a guarantor pay you must prove that you had actually paid the money.* No better example of this could be given than the case of Collinge v. Heywood (1839) 9 A. & E. 633. That was a contract to indemnify a plaintiff against costs, and it was*

5

> *decided that the cause of action arose when he paid the costs, not when the costs were incurred or the attorney's bill was delivered to him; and it happened that it was a point of cardinal importance in that case to decide the moment when the cause of action arose, because it was a question there of the date from which the Statute of Limitations began to run. There the Court applied the well-known common law principle that before you can avail yourself of your right of indemnity you must shew that you have paid the money . . . the rule in Chancery was somewhat different, and yet, to my mind, it emphasises the fundamental principle that you must have paid before you have a right to indemnity, because the remedy which equity gave was a declaration of a right. You could file a bill against the principal debtor to make him pay the debt so that you would not be called upon to pay it, and then you obtained a declaration that you were entitled to an indemnity. You could in certain cases have a fund set aside in order that you might be indemnified, to avoid the necessity of your having to pay and then to sue for the money you had paid, which perhaps would not repair your loss and credit even if it discharged the debt. But I do not think that equity ever compelled a surety to pay money to the person to whom he was surety before the latter had actually paid. He might be ordered to set a fund aside, but I do not think that he could be ordered to pay.*"

(2)    Thus, Fletcher Moulton L.J. appeared to make clear that:

    (a)    As far as the right to an indemnity is concerned, equity and the common law both provided that the party seeking the indemnity had to prove payment in the first instance before he could claim to have a right of indemnity. Failing that, the only remedy available was one of a declaration of a right.

    (b)    The right to the establishment of a fund arose only in cases of true indemnity (i.e. "*suretyship, indemnity, or contribution*"). There was no suggestion that a party would be ordered to establish such a fund in the case of a simple breach of contract.

    (c)    In any event, there was no *right* to an order that a fund should be established - whether or not the wrongdoer would be ordered to

establish a fund was matter for the court seised of the underlying dispute as to the claim for the indemnity, and the claim to the establishment of a fund would form a cause of action in its own right, which cause of action the relevant tribunal would determine as with any other claim to substantive relief.

(3)    Accordingly, it would be questionable whether the authority of In re Richardson provides any support for an application to the U.S. courts for a Rule B attachment in the present case, where:

    (a)    The claim is stated to be a simple one for damages for breach of contract.

    (b)    The tribunal seised of the underlying dispute (i.e. the London arbitration tribunal) has not been presented with any cause of action for the establishment of a fund.

2.7    Against this background, I would emphasise that the only point that I sought to make in my earlier Opinion was that, whether or not they have an accrued cause of action, SJN are unable at present to demonstrate any concrete entitlement to substantial monetary relief which at this stage could give rise to an arbitration award capable of being enforced now against security. In stating this, I was not seeking to suggest:

(1)    More than emerges from authorities such as:

    (a)    The Caroline P in which Neill J. stated at page 474 *et seq* as follows:

7

"*From a consideration of these cases and other authorities to which my attention was directed it seems to me that it is possible to identify at least three ways in which a person (A) who has become liable to (B) may be able to obtain redress from (C).*

*The first way is by an action for damages for breach of contract (or warranty). In such a case (A) will be in a position to claim that the incurring of his liability to (B) flowed directly from an act of (C) which constituted a breach of a contract between (A) and (C) or of a warranty given by (C) to (A). The damages will be assessed in accordance with Hadley v. Baxendale principles. The cause of action will date from the date of breach.*

*The second way is by a claim on an express indemnity. In such a case the extent of the indemnity and the time at which the cause of action arises will depend on the construction of the contract. If the indemnity is an indemnity against liability, as it was held to be in Bosma v. Larsen, the cause of action will come into existence when (A) incurs a liability to (B). It may be that in certain circumstances a liability may be incurred for this purpose when the liability is still merely contingent: see Forster v. Outred & Co., [1982] 1 W.L.R. 86. If, however, the indemnity is a general indemnity, as the relevant clause was held to be in R. H. Green & Silley Weir Ltd. v. British Railways Board and Kavanagh (Third Party), then time will not begin to run against (A) for the purpose of pursuing his indemnity against (C) until (A)'s liability to (B) has been established and ascertained: see below. One may notice in passing that, as the arbitrator pointed out in his reasons, Mr. Justice McNair did not deal separately with the words "or consequences" in the contractual indemnity in Bosma v. Larsen.*

*The third way in which (A) may claim against (C) in respect of sums which he has had to pay to (B) is under an implied indemnity. As I understand the matter, such an implied indemnity would prima facie be a general indemnity of the kind recognized by the common law. ...*

*It seems clear, however, that even in equity time does not begin to run for the purposes of any limitation period until the liability of the person to be indemnified has been ascertained. I can see no satisfactory distinction on this point between claims on an indemnity and claims between sureties or trustees: cf Wolmershausen v. Gullick, [1893] 2 Ch. 514; Robinson v. Harkin, [1896] 2 Ch. 415; Littlewood v. George Wimpey & Co. Ltd. (and British Overseas Airways Corporation), [1953] 2 Q.B. 501, 519.*

*... in equity the person to be indemnified can seek relief as soon as his liability has been ascertained: of <u>Littlewood v. George Wimpey & Co. Ltd. & Ors.</u> (sup.) and the cases there cited.*"

(b)   <u>Steamship Mutual v Thakur Shipping</u> [1986] 2 Lloyd's Rep. 439, a case concerning an application for Mareva relief (i.e. a freezing order) in which Sir John Donaldson M.R. stated as follows:

*"The situation which has given rise to the present application is that Thakur Shipping Co. Ltd. have one of their ships enterd with the club, the shipowners were faced with the arrest of their vessel, and the club gave a guarantee to the claimants as a result of which they refrained from arresting the vessel. Of course, a counter-undertaking was given by Thakur Shipping Co. Ltd. to the club, and Mr. Kealey, for the club, says that there is good reason to believe that (a) the club is going to be called upon to pay under its guarantee, and (b) that Thakur Shipping Co. Ltd. will default on their undertaking. They say that, in those circumstances, they are entitled to a Mareva injunction.*

*... we asked Mr. Kealey what the cause of action was that we were being asked to support. The answer is that the only cause of action that they can conceivably have at the moment is a cause of action for a declaration that, in the event of the club having to honour its guarantee and in the further event of the shipowners being called upon to pay the club under their undertaking and perhaps in the further event of the shipowners not meeting their obligation, the shipowners will be liable to the club. It seems to me that no such declaratory relief needs a Mareva injunction to support it.*

*What the club really wants is security for a future cause of action - a cause of action which will give rise to entitlement to monetary relief. I think that that would be contrary to a long line of authority which says that s. 37 is to be used in support of an existing legal or equitable right. I furthermore think that if we extended it to this case, even assuming we have jurisdiction to do so, it would be difficult to see what possible limits there could be to the Mareva jurisdiction, since whenever it was apprehended that someone was likely in the future to commit a breach of contract, and it was further apprehended that if they did and if judgment were given against them they might be unable to meet the judgment debt, it*

9

> *would follow that the fearful plaintiff was entitled to a Mareva injunction. That plainly is not the case.*"

    (2)    That there are not cases (such as those to which Mr. Young refers in paragraphs 9 and 16 of his Opinion - none of which appears to apply in the present case) in which:

        (a)    Certain contracts of indemnity may sound in damages.

        (b)    Certain declaratory relief may be capable of enforcement against security.

2.8    In the circumstances, it seems to me that Mr. Young's attack upon my earlier Opinion was unjustified:

    (1)    His comments were made in circumstances in which SJN's position with regard to the precise nature of the cause of action for which it contends was not made clear until after my Opinion was provided.

    (2)    My comments with regard specifically to the accrual of a cause of action for an indemnity were not inaccurate as a matter of principle; the authorities referred to above demonstrate that.

    (3)    Similarly, my comments with regard to the availability of Mareva/freezing order  relief with regard to a claim for an indemnity were not in error; again, the authorities referred to above make that plain.

    (4)    There has never been any suggestion by me that a cause of action for a breach of contract arises at any time other than at the time of the breach.

To suggest that I may have contended otherwise is absurd. Accordingly, Mr. Young's hyperbolic criticism is entirely misplaced.

(5)     Paragraph 3.1 of my earlier Opinion stated nothing more than the principle that a claim to declaratory relief alone will not give rise to any right to security. This is no more than the principle reflected in the decision in Steamship Mutual v Thakur Shipping above. However, as far as concerns the question of whether SJN would be entitled to security by way of Mareva/freezing order relief before the English courts at this stage in respect of a claim simply for damages for breach of contract (a matter which, as Mr. Young correctly observes, is irrelevant given that the application in question in the present case is for a Rule B attachment), I have seen nothing (beyond a bald statement to the effect that they "will suffer" certain losses) which evidences any attempt by SJN to contend or explain the basis for any contention that there is a good arguable case to the effect that they will owe the relevant liability to Hanjin (and, therefore, that they have a good arguable case to the effect that they will be found liable to Hanjin, which would be necessary for the relevant Mareva/freezing order relief).

(6)     My reference in my earlier Opinion to Grobelaar v News Group Newspapers Ltd [2002] 1 WLR 3024 was only for the purpose of providing an indication of the level of nominal damages ordinarily awarded under English law;  a simple reading of paragraph 2.1.5 of that Opinion makes this abundantly clear. Accordingly, there was nothing "*wildly far from the mark*" in that reference, as Mr. Young suggests. He has simply misinterpreted the relevant paragraph.

11

**Quadrant Chambers**
**10 Fleet Street**
**London**
**EC4Y 1AU**

**Nevil Phillips**

**30th April 2008**