FREEHILL HOGAN & MAHAR LLP
Attorneys for the Plaintiff
SAN JUAN NAVIGATION (SINGAPORE) PTE LTD
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Eric E. Lenck (EL4547)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SAN JUAN NAVIGATION (SINGAPORE) PTE LTD**<br><br>                         **Plaintiff,**<br><br>            **-against-**<br><br>**TRANS POWER CO LTD,**<br><br>                         **Defendant.** | **08-CV-1562 (RMB)** |


**DECLARATION OF GERARD ANTHONY HOPKINS UNDER ENGLISH LAW**

I, GERARD ANTHONY HOPKINS, pursuant to Title 28, § 1746, declare under penalty of perjury:-

1.    I am a partner in the firm of English solicitors, MFB Solicitors, with offices at 45 Moorfields, London EC2Y 9AE, England.  I was admitted as a Solicitor of the Supreme Court of England & Wales in November 1991.

2.    I make this second Declaration in answer to the "Second Declaration of English Law" made by Nicholas Woo dated 1 May 2008.

**A. THE LIEN CLAIMS**

3.    The position is that Trans Power had already defaulted on the payment of hire installment due on 30 January to San Juan with the result that a substantial balance of hire of US$556,450.80 was already due. This was before they

279128

- 2 -

received the Head Owners' notice of lien for US$376,000, which was served on 12 February.

4.   The defaulted hire of US$556,450.80 of course exceeds the figure of US$376,000 mentioned by Mr. Woo in paragraph 4 of his second declaration. No explanation is offered by Mr. Woo as to why Trans Power deny they are in default of the payment of the hire or why they have not paid the balance of hire in excess of the amount liened to San Juan. The Court can draw its own conclusions.

5.   The supposed double-jeopardy that Mr. Woo alludes to in paragraphs 4 and 5 of his second declaration is more imagined than real and is being used by Trans Power as a convenient excuse not to pay any party.

   (a)   Trans Power made no effort before the Rule B was obtained on 15 February or for that matter subsequently to pay the sums liened to Head Owners.

   (b)   Trans Power have not to my knowledge secured the Head Owners in respect of their lien.

   (c)   The reality is that without the Rule B attachment there can be no certainty that Trans Power will pay the defaulted hire to San Juan

   (d)   In any event, Head Owners have taken no steps to secure this lien.

   The easy solution is that the defaulted hire is secured by San Juan's Rule B attachment and the hire will be properly accounted for and the lien resolved in due course. However, without the Rule B the risk of default on the hire and default on the lien remains.

## C. THE COSTS FIGURE

6.   The reasonableness of San Juan's costs estimate has been endorsed by the Head Owners' solicitors in connection with the Head Owners' demand for security (see paragraph 41 of my First Declaration) and it is notable that Mr. Woo does not seek to challenge the figure or its reasonableness.

280378

- 3 -

7.    Mr. Woo still cannot make out his case that 75% of the costs for which security is sought by San Juan as attributable to the crane damage claim. He admits that his assessment is a *"very rough estimate only"*. The suggestion that the events leading to the damage to the crane are likely to be the most factually divisive may or may not be true - in San Juan's view the events are actually quite straight forward. The reality, however, is that the crane damage claim is now relatively small in proportion to the other claims and the costs of DNV performing the metallurgical examination referred to by Mr Woo have been quoted by DNV as being SGD28,000.

## C.  ENGLISH LAW - ACCRUAL OF ACTION

8.    I am sorry if Mr. Woo regards the explanation of the facts and the basis of San Juan's case set out in my First Declaration to be inordinately long. The intention was to properly explain the position to the Court.

9.    It is notable that Mr. Woo does not seek to challenge the recital of the relevant facts in my First Declaration. Indeed it would appear that the information set out in my First Declaration has assisted Mr. Phillips', Trans Power's barrister, understanding of the position leading to the changes from his earlier opinion and so perhaps there was some benefit after all in explaining the position in some detail.

10.    It is also to be welcomed that Mr. Woo now accepts that, as a matter of English law, the cause of action for breach of contract (which this present case concerns) arises or accrues at the time of breach. This admission seems to be in contrast with his earlier assertions to the contrary – see paragraphs 21 and 30 of his first Declaration.

11.    Mr. Woo's latest contention in paragraph 8 of his second Declaration to the effect that San Juan's damages for breach of contract can only be assessed by reference to their liability up the contractual chain is with respect inaccurate. For the reasons that have already been stated, the fact that the damages cannot be currently quantified, as a matter of English law, does not prevent the cause

- 4 -

of action accruing and thus the *"ripeness"/"maturity"* challenge that is the basis of Trans Power's challenge to the Rule B .

12.    In any event, there is no substance to Mr. Woo's latest contention because as clearly stated in paragraphs 12 and 20 of my First Declaration the quantum of the claims passing down the chain of charter parties has already been clearly indicated by the Head Owners and Hanjin are likewise seeking to recover the same amounts from San Juan.

13.    I have already explained in paragraph 18 and 19 of my First Declaration that arbitrators have been appointed up and down the contractual chain and San Juan are currently waiting for Head Owners to serve their Claim Submissions on Hanjin and for Hanjin to pass these down to San Juan.  For the reasons I have also explained in paragraphs 17 and 20 of my first Declaration San Juan have to wait for the claims to pass down the chain.  Hence no significance is to be given to the comments in Mr. Phillip's second opinion at paragraphs 2.4 and 2.5. That is not to say that San Juan is not as a matter of English law entitled to security for their claims.  The suggestion by Mr. Woo that the fact that San Juan has not obtained a determination of liability which is capable of enforcement against the security is with respect irrelevant.  The simple test is whether or not there is an accrued cause of action and it follow from that there is an entitlement to security.

14.    In response to Mr. Phillip's comments in paragraphs 2.4(3) and 2.5(3) I would add that it is not in any way surprising that the arbitrators in the present case have not yet made an order for the arbitrations to be run concurrently at this stage. Where there is a chain of Charter Party arbitrations I would usually expect an order for the concurrent running of the London arbitrations to be made shortly after receipt of the Claim Submissions, although there is no specific rule in London Maritime Arbitrators Association that dictates when concurrent arbitrations would or should be ordered.

15.    In the present case, however, the lawyers representing Hanjin and San Juan have made plain their clients' views that the arbitrations should be run concurrently with effectively Head Owners and Trans Power taking the active

- 5 -

role of making submissions etc in relation to those claims passing up and down the chain of Charter Parties.

16. I would also make the point that there is has to date been cooperation between the lawyers handling the London arbitrations on behalf of all the parties in the chain of Charter Parties in relation to the arrangements for the joint testing of the damaged crane parts and this is illustrative of the current *de facto* recognition that the arbitrations will in practice be run concurrently.

17. I will leave it to Mr Young Q.C. as Counsel for San Juan, to rebut the points made by Mr Phillips in his second opinion appended to Mr Woo's second Declaration. A copy of Mr Young Q.C.'s rebuttal is enclosed as Exhibit 1.

## B. SECURITY UP THE CHAIN OF CHARTERPARTIES

18. San Juan have provided security to Hanjin by way of a P&I Club Letter of Undertaking. This was provided on 29 April 2008. A copy of the security given can be seen in Exhibit 2.

19. I am informed by Hanjin's solicitors that Hanjin have also provided security to Head Owners. A copy of the security given can be seen in Exhibit 3. The very slightly smaller amount of security given by Hanjin presumably reflects minor variations in the hire accounting/hire rates applicable between Hanjin and Head Owners.

20. Accordingly, with the exception of Trans Power, all of the other parties in the chain of Charter Parties recognize and accept that there is an entitlement to security for the claims and have duly provided security. This recognition being based on their sound knowledge of English law and practice. There can be no doubt that the parties, all of whom are represented by well-regarded London law firms, would not have provided security if there were not ripe and pending claims for which the respective claimants were entitled to security.

21. The suggestion in Mr Woo's second Declaration that in some way the claims passing down the chain of Charter Parties are in some way uncertain or unenforceable is simply wrong as a matter of English law. The claims are for breach of contract/charter party, and, as Mr. Phillips and Mr. Woo now accept,

280378

- 6 -

liability accrues upon breach and that such liability has already accrued under all of the Charter Parties.

22.    It is disappointing that having accepted that the claims of San Juan are for breach of contract and thus have accrued / "ripened" Mr. Woo seeks to again inaccurately suggest that San Juan's claims in some way are contingent indemnity claims. The claims are not by way of indemnity and are certainly not contingent and this has already been explained in my First Declaration.

23.    In summing up,

(a) San Juan's claims are for breach of contract and the cause of action has accrued.

(b) There is, as a matter of English law, an entitlement to security for an accrued claim and security would as a matter of practice be ordered by the English Courts even if there has not yet been an assessment or quantification of the damages.

(c) In the present case, the damages being claimed has been quantified in some detail by the Head Owners – see paragraph 63 and exhibit A to my First Declaration – and security has been provided by all the other parties in the chain of Charter Parties.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

DATED May 19, 2008

at 46, Moorfields, London, England.

_____

**GERARD ANTHONY HOPKINS**

280378

**EXHIBIT 1**

Mv FANY
C/P dd 8th January 2008

_____

OPINION

_____

1.    I have been provided with a "Rebuttal Opinion" dated 30th April 2008 of Mr.
      Nevil Phillips and have been asked to comment.

2.    I should begin by saying that I regret that Mr. Phillips has mistaken the spirit
      (or "tone") in which I wrote my Opinion.  I had not appreciated that Mr.
      Phillips had not understood the legal basis of SJN's claim as being one for
      damages for breach of charter or that he had not been properly appraised of
      the facts before giving his opinion; that was why I thought his first Opinion
      was so fundamentally flawed.  However I did think his first Opinion was
      wrong and, upon re-reading it, I remain of that view.

3.    That said, it now appears that Mr. Phillips agrees with me on the English law.
      His Rebuttal Opinion is not therefore really a "rebuttal" at all but, as he says
      in paragraph 1.5, a "refinement".  He agrees, at paragraph 2.2, that the cause
      of action for breach of contract accrues as at the date of breach irrespective of
      whether a loss is capable of being assessed at that time and, since SJN's claim
      is for damages for breach of contract, then the relevant cause of action has
      accrued.  It is an *existing* accrued cause of action, not a future cause of action;
      as such, a Mareva injunction (Freezing Order) could be made in England in
      accordance with Steamship Mutual v Thakur Shipping as cited by Mr.
      Phillips.  The Order would be based upon the claimant establishing "a good
      arguable case" for the amount of the claim made against him.  As it happens,
      only recently I obtained an Order in just such a situation from Mr. Justice
      Flaux and the fact that the third party's claim had not been assessed did not
      mean that the learned judge could not form a view as to the amount of money
      covered by the Order.

1

4.   In the light of this, Mr. Phillips' point at paragraph 2.5(1) is not easy to understand.   He says *"As matters stand, no such liability [of SJN to the Hanjin, head owners] has been determined; nor does SJN appear to contend that such a liability ought (prior to it actually being determined, admitted or compromised as between Hanjin and SJN) to be found to exist on the balance of probabilities"*, but the fact that the liability of SJN to the head owners has not been determined (i.e. assessed), does not mean that SJN do not already have an accrued cause of action in damages in respect of that liability; nor does it mean that a Mareva/Freezing Order would not be granted with reference to the 'good arguable case'[1] as to the extent of that liability.

5.   As a postscript to his paragraph 2.5, I should add that he is right that there is no general power to consolidate arbitrations, but London Maritime Arbitrators do, under the 2006 LMAA Terms, have the power to order concurrent arbitrations.   Concurrency is common in cases such as the present (indeed as an arbitrator I have ordered concurrency in two sets of my on-going cases) and the fact that it has not been done in this case yet means nothing.

6.   Mr. Phillips also appears to accept that there is a difference between, on the one hand, a claim for damages for breach where the damages are intended in <u>effect</u> to indemnify the claimant in respect of his liability to others and, on the other hand, a claim in debt under a <u>contract of indemnity</u> (such as a contract suretyship or guarantee[2] or a statutory right to contribution).   It is in relation to a pure contract of indemnity (as a opposed to a breach of contract claim we are dealing with here) that the equitable right to the establishment of a fund arises. When Mr Phillips says, at paragraph 2.6(2)(b) in relation to <u>In re Richardson</u>, that *"there was no suggestion that a party would be ordered to establish such a fund in the case of a simple breach of contract"*, he may be

---

[1] A 'good arguable case' is less demanding than a case 'on the balance of probabilities': see eg <u>Bols Distilleries v Superior Yacht Services</u> [2007] 1 W.L.R. 12 – this was a decision of the Privy Council which contains broadly speaking the same people as sit in the House of Lords and thus treated as of the highest authority

[2] However it should be noted that some contracts of guarantee operate so as to render the guarantor personally liable to ensure performance by the principal debtor and in such cases, the claim is for damages for breach: <u>Lep Air Services v Rolloswin</u> [1973] A.C. 331 (House of Lords).

2

correct, but there was no occasion for such a suggestion since breach was not in issue in that case (reliance on the absence of an *obiter dictum* is an unusual approach to legal reasoning) and, in any event, the existence of the accrued cause of action for breach would make it appropriate for the grant of Mareva/Freezing Order relief.

6    When it comes to it, Mr Phillips agrees with me in my account of the relevant English law.    Therefore, when he says, at paragraph 2.7, that the only point that he sought to make in his earlier Opinion was that "...*whether or not they have an accrued cause of action, SJN are unable at present to demonstrate any concrete entitlement to substantial monetary relief which at this stage could give rise to an arbitration award capable of being enforced against security...*", he is in truth accepting that SJN *do* have an accrued, and thus enforceable, cause of action for breach of charter, and his final qualification is no more than a gloss that the assessment of damages is not currently straightforward or "concrete" (which word is not an English legal term of art in any event". The difficulty of assessing damages, however, has never been a bar to the recovery of substantial damages.    The commentary in Chitty on Contracts 29[th] Ed. at para 26.007 puts Mr. Phillips' comment into its proper perspective; the learned editors say this:

> "*The fact that damages are difficult to assess does not disentitle the claimant to compensation for loss resulting from the defendant's breach of contract [relying on the Court of Appeal decision in <u>Chaplin v Hicks</u> [1911] 2 K.B. 786].    Where it is clear that the claimant has suffered substantial loss, but the evidence does not enable it to be precisely quantified, the court will assess damages as best it can on the available evidence [relying on the Privy Council decision in <u>Tai Hing Cotton Mill v Kamsing Knitting Factory</u> [1979] A.C. 91].    Similarly the fact that the amount of that loss cannot be precisely ascertained, as, for example, where it depends on a contingency, does not deprive the claimant of a remedy...*".

3

Even though the assessment of damages is necessarily carried out after a breach, the date on which those damages are deemed in law to have been suffered is in principle the date of the breach itself: <u>Johnson v Agnew</u> [1980] A.C. 367.

7.    Mr. Phillips says that my criticism of ("attack on") his first Opinion was unjustified.    I do not agree.    My criticism was wholly justified, although I now appreciate that he did not understand the nature of SJN's case and sympathize with him accordingly.    The unquestionable fact is that SJN's cause of action for substantial damages for breach of charter is accrued, existing and enforceable in English law and the fact that an assessment has yet to be made does not alter that in any way.    Whilst I have already mentioned the <u>Steamship Mutual</u> and <u>Caroline P</u> cases, I ought to repeat in the interests of clarity that neither of those decisions gives any support whatsoever to the proposition that SJN have no such accrued and enforceable cause of action or that an English court would not order security by means of an arrest or Mareva/Freezing Order as appropriate.

(i)    The claimants in <u>The Caroline P</u> merely required one way in which they had a cause of action which was not time-barred.    The judgment makes clear that there are three different ways in which a party can claim in respect of a liability to another party. The first of these is by a claim for breach of contract and as Neill J. makes clear at page 474 of the judgment as cited by Mr Phillips on page 8 of his second opinion *"The cause action of action accrues at the date of breach."* Mr Phillips of course now recognises at paragraph 2.2(2) of his second opinion that San Juan's case is one for breach of contract and it is not necessary to look any further than this.

(ii)    The <u>Steamship Mutual case</u> is simply authority for the fact that a Mareva injunction (Freezing Order) could not be made in England in respect of a future cause of action. However, since Mr Phillips now

4

accepts that San Juan have a accrued cause of action in the current matter the <u>Steamship Mutual case</u> is no relevance whatsoever to Trans Power's arguments about *"ripeness"* and in fact supports San Juan's position.

If and to the extent that Mr Phillips may persist in seeking to say otherwise, he is simply wrong.

TIMOTHY YOUNG Q.C.

20 Essex Street,                                        20th May 2008
LONDON WC2R 3AL

5

**EXHIBIT 2**



West of England

Luxembourg

Our Ref:  IC/IC/I/2007/007342
Your Ref: nk

23 April 2008

Hanjin Shipping Co Ltd
Hanjin Shipping Building, 25-11,
Yoeuido-Dong, Youngdeungpo-Ku,
Seoul
P.O Box 843,
South Korea

Dear Sirs

Vessel:          "FANY"
Charterparty:    13 June 2007
Owner:    Hanjin Shipping Co Ltd
Charterer: San Juan Navigation (Singapore) Pte Ltd
Claim: Owners' claims howsoever made arising under or in connection with the Charterparty including without limitation claims arising in January 2008 at the loadport of Waigeo in connection with alleged damage to the vessel, her hull machinery and equipment and claims or indemnities for the repair cost, delay, time and expense relating to the same.

In consideration of your forthwith releasing from arrest or attachment and/or refraining from arresting or otherwise detaining or attaching any vessel or property or funds of interest of any kind in the same or associated ownership, management or control of Charterers for the purpose of founding jurisdiction and/or obtaining security in respect of the Claim arising out of the Charterparty and of your refraining from commencing and/or prosecuting legal or arbitration proceedings in respect of the Claim otherwise than before the arbitration tribunal referred to below, we hereby undertake to pay you within 14 days of your written demand such sum or sums as may be found due to you from the Charterers in respect of the Claim either as may be agreed in writing between the parties or as may be adjudged by a final and unappealable arbitral award of the Competent Tribunal or if appeals are made, after final determination of all appeals therefrom, provided always that the total sum of our liability hereunder shall not in any circumstances exceed US$3,993,678.46 (Three Million Nine Hundred and Ninety Three Thousand Six Hundred and Seventy Eight United States Dollars and Forty Six Cents only) inclusive of interest and costs.

It is agreed that the Claim shall be subject to English law and to London Arbitration and that the arbitrators already appointed in accordance with the Charterparty (Christopher Moss and Mark Hamsher or those duly appointed in substitution or replacement thereof) shall be the Competent Tribunal within the meaning of this Letter of Undertaking to hear and determine the Claim. We warrant that we have received irrevocable authority from the Charterers to give this Letter of Undertaking in these terms.

It is irrevocably agreed by you that the Charterer has liberty to replace this Letter of Undertaking in whole or in part with acceptable alternative security up to the maximum amount secured herein provided

The West of England Ship Owners Mutual Insurance Association (Luxembourg)
Registered in Luxembourg No: RCB 8963

Managers: West of England Insurance Services (Luxembourg) S.A.
Registered Office:
33 Boulevard Prince Henri
L-1724 Luxembourg
G.D. Luxembourg
T +(352) 4700671  F+(352) 225253

UK Branch:
Tower Bridge Court
224-226 Tower Bridge Road
London SE1 2UP
T +(44) (0)20 7716 6000  F +(44) (0)20 7716 6100

Email: mail@westpandi.com

- 2 -

always that such security is acceptable to you (such acceptance not to be unreasonably withheld). If alternative security is put in place this Letter of Undertaking will be automatically void and cancelled and will be returned to us. It is irrevocably agreed by you that an escrow account (multi-party or otherwise) which responds to the Claim in arbitration will be considered acceptable alternative security and that if this is offered it will be acceptable by you.

This Letter of Undertaking shall be governed by and construed in accordance with English law and subject to the exclusive jurisdiction of the High Court in London to which we hereby agree to submit for the purpose of any dispute and or process for the enforcement hereof. We confirm that within 7 days of your first written request to do so we shall appoint English solicitors to accept service of any process.

Yours faithfully
For:   **West of England Insurance Services**
       **(Luxembourg) S.A.**
       (As Managers)


A Paulson
Director

**EXHIBIT 3**



Britannia

30 April 2008

The Britannia Steam Ship
Insurance Association Limited

Changsung Shipping Co Ltd
2nd Fl, Youone Bldg
75-95, Seosomun-dong, Chung-gu
Seoul, 100-110
Korea

*Managers*
Tindall Riley (Britannia) Limited
New City Court
20 St Thomas Street
London SE1 9RR

Tel  +44 (0)20 7407 3588
Fax +44 (0)20 7403 3942
www.britanniapandi.com

Dear Sirs,

**FANY**
**Charterparty :** 19 October 2006
**Owner:**        Changsung Shipping Co., Ltd
**Charterer:**    Hanjin Shipping Co., Ltd

**Claim:**   Owners' claims howsoever made arising under or in connection with the Charterparty including without limitation claims arising in January 2008 at the loadport of Waigeo in connection with alleged damage to the vessel, her hull machinery and equipment and claims or indemnities for the repair cost, delay, time and expense relating to the same.

In consideration of your forthwith releasing from arrest or attachment and/or refraining from arresting or otherwise detaining or attaching any vessel or property or funds of interest of any kind in the same or associated ownership, management or control of Charterers for the purpose of founding jurisdiction and/or obtaining security in respect of the Claim arising out of the Charterparty and of your refraining from commencing and/or prosecuting legal or arbitration proceedings in respect of the Claim otherwise than before the arbitration tribunal referred to below, we hereby undertake to pay you within 14 days of your written demand such sum or sums as may be found due to you from the Charterers in respect of the Claim either as may be agreed in writing between the parties or as may be adjudged by a final and unappealable arbitral award of the Competent Tribunal or, if appeals are made, after final determination of all appeals therefrom, provided always that the total sum of our liability hereunder shall not in any circumstances exceed US$3,815,000 (Three Million Eight Hundred and Fifteen Thousand United States Dollars only) inclusive of interest and costs.

It is agreed that the Claim shall be subject to English law and to London Arbitration and that the arbitrators already appointed in accordance with the Charterparty (Christopher Moss and Mark Hamsher or those duly appointed in substitution or replacement thereof and any umpire or third arbitrator that may be appointed) shall be the Competent Tribunal within the meaning of this Letter of Undertaking to hear and determine the Claim.  We warrant that we have received irrevocable authority from the Charterers to give this Letter of Undertaking in these terms.

g:\brit\claimhan\pkb\letters\fany changsung shipping.doc

The Britannia Steam Ship Insurance Association Limited  Registered Office: New City Court, 20 St Thomas Street, London SE1 9RR
Registered number 10340 England  Authorised and regulated by the Financial Services Authority

It is irrevocably agreed by you that the Charterer has liberty to replace this Letter of Undertaking in whole or in part with acceptable alternative security up to the maximum amount secured herein provided always that such security is acceptable to you (such acceptance not to be unreasonably withheld).    If acceptable alternative security is put in place this Letter of Undertaking will be automatically void and cancelled and will be returned to us.    It is agreed by you that an escrow account (multi-party or otherwise) held in London with a first class Bank which responds to the Claim will in principle be considered acceptable alternative security.

This Letter of Undertaking shall be governed by and construed in accordance with English law and subject to the exclusive jurisdiction of the High Court in London to which we agree to submit for the purpose of any dispute and or process for the enforcement hereof.  We confirm that within 7 days of your first written request to do so we shall appoint English solicitors to accept service of any process.

Yours faithfully
for THE BRITANNIA STEAM SHIP INSURANCE ASSOCIATION LIMITED

Director
Tindall Riley (Britannia) Ltd
MANAGERS

g:\brit\claimhan\pkb\letters\fany changsung shipping.doc