USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/28/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SAN JUAN NAVIGATION (SINGAPORE)          :
PTE. LTD.,                               :
            Plaintiff,          :
                                                                  :          08 Civ. 1562 (RMB)
         - against -          :
                                                     :          **ORDER**
TRANS POWER CO. LTD.,                    :
            Defendant.        :
------------------------------------------------------------X

**I.     Background**

On or about February 15, 2008, San Juan Navigation (Singapore) Pte. Ltd. ("Plaintiff" or "San Juan") filed a verified amended complaint ("Complaint") against Trans Power Co., Ltd. ("Defendant" or "Trans Power") for the alleged breach of a charter party agreement dated January 8, 2008 ("Charter Party"). (Complaint at 2–5.) Plaintiff alleges that "[a]s a consequence of Trans Power's breaches of the charter party, San Juan has suffered or will suffer" $2,236,495.15 in damages and costs. (Id. at 5.) On or about February 19, 2008, the Court issued to Plaintiff an Amended Order for Process of Maritime Attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), ordering the "seizure of all tangible and intangible property of the Defendant . . . in the amount of $2,236,495.15."[1] (Order of Attachment, dated Feb. 19, 2008 ("Order"), at 1–2.) On or about March 27, 2008, the Court endorsed a stipulation between the parties stating that Defendant consents to Plaintiff's filing of a second amended complaint and "[t]he Court will defer its decision on whether to issue an Order authorizing issuance of a

---

[1] Plaintiff also commenced London arbitration proceedings against Defendant on February 29, 2008, which are currently pending (Second Amended Verified Complaint, dated March 28, 2008 ("Second Amended Complaint"), at 7.)

supplemental . . . Attachment . . . relating to additional damages contained in the Second

Amended Complaint until the right to such an additional attachment has been briefed by the

parties and decided by the Court." (Stipulation and Order, dated March 27, 2008 ("Stipulation"),

at 2.) On or about March 28, 2008, pursuant to the Stipulation, Plaintiff filed a Second Amended

Complaint requesting an additional "Process of Maritime Attachment and Garnishment . . . with

the total amount to be attached being $2,695,743.54." (Second Amended Complaint at 8.)

On or about April 1, 2008, Defendant filed a motion for "vacatur or reduction of

Plaintiff's maritime attachment and, or in the alternative, for countersecurity" arguing, among

other things, that (1) the Order should be vacated because "Plaintiff's claims, both at the time it

made its application for a Rule B attachment and now [are] premature"; (2) Defendant is entitled

to counter-security because its claim for costs is "inextricably intertwined with the original

transaction that is the subject of the English proceeding"; and (3) Defendant "is now 'found'

within the meaning of Rule B so that [Plaintiff] may not obtain an additional Attachment Order

as requested by the Second [Amended] Complaint." (Mem. of Law in Support of Motion to

Reduce or Vacate Order and/or for Countersecurity, dated April 1, 2008 ("Def. Mem."), at 9, 12,

24.)

On or about April 18, 2008, Plaintiff opposed Defendant's motion arguing, among other

things, that (1) Plaintiff "has satisfied all technical requirements mandated by Rule B"; (2) "a

request for countersecurity that [] is not based upon a counterclaim that arises from the

transaction or occurrence that is the subject of the original action is improper"; and (3) "since

the amendments contained in the Second Amended Verified Complaint relate back to the date

of the original pleading . . . [Defendant's] argument that a supplemental [Process of Maritime

Attachment and Garnishment] cannot issue because it is now present in the [Southern District

of New York] must fail." (Mem. of Law in Opposition to Defendant's Motion to Vacate, dated April 18, 2008 ("Opposition"), at 2, 19–20, 22.) On or about May 1, 2008, Defendant filed a reply brief ("Reply"). On or about May 19, 2008, Plaintiff filed a sur-reply ("Sur-Reply"). The parties waived oral argument.

**For the reasons stated below, Defendant's motion to vacate the attachment is denied, Defendant's motion for countersecurity is denied, and Plaintiff is granted leave to file its proposed order for a supplemental attachment pursuant to the Second Amended Complaint.**

## II.    Legal Standard

Rule B is "a relatively broad maritime attachment rule, under which the attachment is quite easily obtained," and a maritime attachment "may be vacated only in certain limited circumstances." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 443–45 (2d Cir. 2006).

A party that asserts "no counterclaim . . . but only a request for costs and attorneys' fees" cannot avail itself of Rule E(7)(a). Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS, 409 F. Supp. 2d 316, 324 n.3 (S.D.N.Y. 2005); see also Pancoast Trading S.A. v. Eurograni S.R.L., No. 07 Civ. 8581, 2008 WL 190376, at *1 (S.D.N.Y. Jan. 22, 2008).

Under Rule 15(c)(2) of the Federal Rules of Civil Procedure, "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2); see also Constr. Exp. Enterps., Uneca v. Nikki Maritime Ltd., 558 F. Supp. 1372, 1375 (S.D.N.Y. 1984).

## III.    Analysis

**Motion to Vacate Attachment and for Counter-Security**

Defendant argues, among other things, that "Plaintiff's claims, both at the time it made its application for a Rule B attachment and now [are] premature" because they are "indemnity claims" that are "based on claims that are being made by [a third party] . . . against [Plaintiff]" and "[u]nder English common law, [Plaintiff's] cause of action will only accrue . . . when the [P]laintiff has made payment to . . . the third party."[2]  (Def. Mem. at 2, 9); (Reply at 2.) Defendant also argues that its claim for costs, including attorneys' fees, constitutes a counterclaim that "entitle[s] [it] to counter-security [because it] arise[s] by way of the same transaction or occurrence" that is the subject of the arbitration currently pending in London. (Def. Mem. at 17, 24 (internal quotations omitted).)

Plaintiff counters that its claims are "ripe" and "flow directly from [Defendant's] breach of various charter party provisions" including, among other things, Defendant's "obligation to pay use and hire for the vessel and to redeliver the vessel in good order and condition" and Defendant's liability "for any damage caused to the vessel by stevedores during the loading operations." (Complaint at 3.)  Defendant also argues that under English law, Plaintiff's cause of action for breach of contract accrued when Defendant damaged Plaintiff's vessel on or about January 15, 2008.  (Opposition at 3–4, 7.)  Plaintiff opposes Defendant's request for counter-security because "[Defendant] has not asserted a counterclaim against [Plaintiff]." (Opposition at 22 (internal quotations omitted).)

---

[2] The parties agree that English law determines when Plaintiff's cause of action accrued.  (Def. Mem. at 8); (Opposition at 2).

4

Plaintiff alleges, among other things, that it "tendered the [vessel] into the service of Defendant Trans Power on January 2, 2008"; "[o]n or about January 15, 2008, the jib and grab of the vessel's No. 3 crane sustained serious damage . . . caused by stevedore negligence and/or a breach of the safe berth/safe anchorage warranty in the charter party"; "the damages sustained by the No. 3 crane affect the proper working of the vessel"; "the charter party provides that if damages are caused to the vessel [that] affect . . . the proper working of the vessel . . . said damages shall be repaired without delay [by Defendant] before sailing from the port"; and Defendant did not make "[r]epairs to the jib of the No. 3 crane." (Complaint at 3.) Plaintiff's claims are based upon Defendant's alleged breach of its obligations under the Charter Party and set forth prima facie admiralty claims under Rule B. See Aqua Stoli, 460 F.3d at 445; see also Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979, 2006 U.S. Dist. LEXIS 95870, at *16, 22 (S.D.N.Y. Aug. 15, 2006). Thus, Defendant's application to vacate Plaintiff's attachment is denied. See Rule B(1); see also Aqua Stoli, 460 F.3d at 444.

Because Defendant asserts "no counterclaim . . . but only a request for costs and attorneys' fees," Defendant cannot avail itself of counter-security under Rule E(7)(a). (See Def. Mem. at 17); see also Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS, 409 F. Supp. 2d 316, 324 n.3 (S.D.N.Y. 2005). "[T]he expense of . . . defending against the original complaint [is] a purpose that is beyond the scope of Rule E(7)(a)." Aifos SA v. Midgulf Int'l Ltd., No. 06 Civ. 203 (S.D.N.Y. May 1, 2006) (citation omitted).

**Proposed Supplemental Attachment**

Plaintiff seeks $2,695,743.54 in supplemental security, arguing that "since the amendments contained in the Second Amended Verified Complaint relate back to the date of the original pleading . . . [Defendant's] argument that a supplemental [Process of Maritime

Attachment and Garnishment] cannot issue because it is now present in the [Southern District of New York] must fail." (Second Amended Complaint at 8); (Opposition at 19–20). Defendant counters that it "is now 'found' [in the Southern District of New York] within the meaning of Rule B so that [Plaintiff] may not obtain an additional Attachment Order as requested by the Second [Amended] Complaint." (Def. Mem. at 24.)

The Second Amended Complaint, dated March 28, 2008, relates back to the Complaint filed on February 15, 2008 because "the claim or defense asserted in the amended pleading arose out of the conduct . . . set forth in the original pleading." F.R.C.P. 15(c)(2); see also Constr. Exp. Enters., Uneca v. Nikki Mar. Ltd., 558 F. Supp. 1372, 1375 (S.D.N.Y. 1984) (holding that amended complaint relates back to filing of original complaint). Because Defendant does not claim to have been present in the district on the date that the Complaint was filed, Defendant is not "found" in the Southern District of New York for purposes of Rule B.[3] Id. Therefore, Plaintiff is entitled to submit a proposed order of (additional) attachment and garnishment pursuant to the Second Amended Complaint. See Mar. Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd., 689 F. Supp. 1340, 1355 (S.D.N.Y. 1988) ("[i]f plaintiff seeks to obtain a Rule B(1) attachment, then upon filing the second amended verified complaint, plaintiff should submit a proposed order authorizing process of attachment and garnishment").

---

[3] Defendant claims to have been present in the Southern District of New York as of February 19, 2008 when it "filed with the New York Secretary of State a certificate of doing business" on that date. (Def. Mem. at 12.)

**IV.    Conclusion and Order**

For the reasons stated herein, Defendant's motion to vacate the attachment and for countersecurity is denied [#18], and Plaintiff's application to submit a proposed order authorizing process of additional attachment and garnishment is granted.

Dated:  New York, New York
        July 28, 2008

_____
**RICHARD M. BERMAN, U.S.D.J.**